IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., | § § § | |
| Plaintiff, | § § | |
| V. | § § | CAUSE NO. 1:20-cv-763-RP |
| UNIVERSITY OF TEXAS AT AUSTIN; JAMES B. MILLIKEN, Chancellor of the University of Texas System in his Official Capacity, STEVEN LESLIE, Executive Vice Chancellor for Academic Affairs of the University of Texas System in his Official Capacity, DANIEL H. SHARPHORN, Vice Chancellor and General Counsel of the University of Texas System in his Official Capacity, JAY HARTZELL, Interim President of the University of Texas at Austin in his Official Capacity, BOARD OF REGENTS OF THE TEXAS STATE UNIVERSITY SYSTEM, DAVID J. BECK, CHRISTINA MELTON CRAIN, KEVIN P. ELTIFE, R. STEVEN HICKS, JODIE LEE JILES, JANIECE LONGORIA, NOLAN PEREZ, KELCY L. WARREN, AND JAMES C. "RAD" WEAVER, as Members of the Board of Regents in Their Official Capacities, DANIEL JAFFE, Interim Executive Vice President and Provost, RACHELLE HERNANDEZ, Senior Vice Provost for Enrollment Management and Student Success, and MIGUEL WASIELEWSKI, Executive Director for Office of Admissions, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

**<u>DEFENDANTS' ORIGINAL ANSWER</u>**

TO THE HONORABLE COURT:

Subject to their Motion to Dismiss, Defendants file this their Original Answer to the Complaint of Plaintiff Students for Fair Admissions, Inc. ("SFFA").  Except as expressly admitted, Defendants deny each and every allegation contained in the Complaint.

**Preliminary Statement**

**A.     The Plaintiff**

Plaintiff Students for Fair Admissions, Inc. ("SFFA") is a Virginia nonprofit corporation formed in 2014 to serve as a vehicle for litigating university admissions policies.  It has three officers—Edward Blum, Abigail Fisher, and Richard Fisher.  Blum and the Fishers also sit on SFFA's board of directors, and they comprise a majority of the board.

**B.     The Prior Unsuccessful Lawsuits**

This is SFFA's third lawsuit against these defendants in the past three years, and it is the *fourth* in a series of suits that SFFA's officers and directors have orchestrated against UT Austin, the UT System, and their respective officials.  These suits, collectively, have now occupied the better part of the last twelve years.

SFFA most recently sued UT Austin and the other defendants in state court in 2019, raising essentially the same claims it raises here.  SFFA nonsuited the claims in its last suit.  In the suit that immediately preceded it, also in state court, SFFA's claims were dismissed with prejudice on March 5, 2019 for lack of standing, following an evidentiary hearing at which SFFA failed to demonstrate it had any individual members who would have had standing to bring suit in their own right.

But Abigail Fisher first sued UT Austin in this Court in 2008, following UT's denial of her application for admission the same year.  That litigation, which lasted from 2008 through 2016, is

commonly referred to as *Fisher v. University of Texas*. Ms. Fisher was unsuccessful in that case, losing her arguments in the United States District Court, in the United States Court of Appeals for the Fifth Circuit, and ultimately, in the United States Supreme Court. Each court upheld the validity of UT Austin's admissions program.

Ms. Fisher's involvement in her 8-year litigation against Defendants came about as a result of a friendship between her father, Richard Fisher, and Blum. Blum had been searching for unsuccessful undergraduate applicants to be the plaintiff in the suit against UT Austin he was then organizing. Blum has alternately described himself as "Yenta the Matchmaker" and "the architect" for the lawsuits he puts together, including Fisher's and SFFA's prior suits against UT Austin.

Once again using SFFA, Blum and the Fishers here seek yet another opportunity to challenge UT Austin's admissions program. They cannot accept that each court in the *Fisher* litigation ruled against their equal protection arguments and determined that UT Austin may lawfully consider race as one of many factors—a "factor of a factor of a factor," *see Fisher v. University of Texas at Austin*, 579 U.S. ___, ___ (2016) ("*Fisher II*") (slip op., at 5) (quoting *Fisher v. University of Texas at Austin*, 645 F. Supp. 2d 587, 608 (W.D. Tex. 2009))—in seeking to foster a diverse student body, which benefits the education of all students.

Having lost the legal arguments they asserted from 2008 through 2018, Blum and the Fishers continue to seek a new and different result. Here, they argue that UT Austin's admissions program is prohibited both by provisions of the Texas Constitution and a Texas statute, as well as the United States Constitution and federal statutes.

Their claims in this lawsuit once again re-package the same allegations and arguments that were unsuccessful in prior litigation. Indeed, SFFA suggests that "the Supreme Court should overrule any decision holding that the Fourteenth Amendment or federal civil rights law ever permit

the use of racial preferences to achieve 'diversity,'" relief that this Court of course has no power to grant.  SFFA likewise continues to suggest that UT has already achieved a "critical mass" of students from historically underrepresented groups.  As it did in the prior litigation, SFFA bases its argument on the false premise that the overall percentage of non-white students at UT Austin is high enough that, in the opinion of Blum and the Fishers, there is enough diversity already.  Pl.'s Orig. Compl. ¶ 272.  Ms. Fisher made the same arguments in the prior suit in this Court, but both this Court and the United States Supreme Court found significant evidence justifying UT's inclusion of race as a factor in its holistic admissions program.  *Fisher II*, 579 U.S. at __ (slip op., at 13-15).

### C.      UT Austin's Admission Program

UT Austin's central mission, as a public institution, involves educating the future leaders of Texas, in a State that is increasingly diverse.  Like virtually every other selective university in America, UT Austin has concluded that assembling a student body that not only is exceptionally talented, but also richly diverse, is key to achieving its mission.  UT Austin has a broad vision of student body diversity, which looks to many factors, including socioeconomic background, race and ethnicity, extracurricular interests, demonstrated leadership, hardships overcome, and special talents.

UT Austin's own experience has confirmed the judgment of the Nation's highest ranked colleges and universities that student body diversity is critical to preparing students to succeed in the world they will enter when they leave campus.  This same judgment concerning the important role of diversity is echoed by policies in America's military and in its leading companies.  The educational benefits of student body diversity include, but are not limited to: bringing unique and direct perspectives to the issues and topics discussed and debated in classrooms; promoting cross-racial understanding; breaking down racial and ethnic stereotypes; creating an environment in which

students do not feel like spokespersons for their race; and preparing students to participate in—and to serve as leaders within—an increasingly diverse workforce and society.

These benefits enhance the education that every UT student receives.  As the United States Supreme Court has repeatedly recognized, these objectives mirror the approved compelling state interest in student body diversity, and UT Austin's program remains lawful and narrowly tailored to achieve them.

## Admissions and Denials

Defendants respond to the allegations in the Complaint as follows and hereby:

DENY the allegations contained in the first, second, and third sentences of the introductory paragraph of SFFA's Complaint to the extent they may contain any factual allegations.

## I.       Jurisdiction and Venue

1.   ADMIT that this Court has original jurisdiction over civil matters arising under the laws of the United States and may exercise supplemental jurisdiction, but otherwise DENY the remaining allegations contained in Paragraph 1 of the Complaint.

2.   ADMIT that venue is proper in the Western District of Texas.

## II.      The Parties

### A.      Plaintiff

3.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of Paragraph 3 of the Complaint.

4.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint.

5.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint.

6.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations regarding Applicants' race and DENY the remaining allegations contained in Paragraph 6 of the Complaint.

7.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint.

8.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations regarding Applicants' readiness to apply to transfer and DENY the remaining allegations and implications contained in Paragraph 8 of the Complaint.

### B.    Defendants

9.    ADMIT the allegations contained in Paragraph 9 of the Complaint.

10.   ADMIT the allegations contained in Paragraph 10 of the Complaint.

11.   ADMIT the allegations contained in Paragraph 11 of the Complaint.

12.   ADMIT the allegations contained in the first and final sentences of Paragraph 12 of the Complaint.  ADMIT the Chancellor is responsible for all aspects of UT System operations and has oversight of the admissions policy at UT Austin but otherwise DENY the allegations contained in the second sentence of Paragraph 12 to the extent Plaintiff alleges the Chancellor administers or supervises UT Austin's admissions policy.

13.   ADMIT the allegations contained in Paragraph 13 of the Complaint.

14.   ADMIT the allegations contained in Paragraph 14 of the Complaint.

15.   DENY that Jay Hartzell is Interim President of UT Austin, and instead aver that he is President of UT Austin; otherwise ADMIT the allegations contained in Paragraph 15 of the Complaint.

16.   ADMIT the allegations contained in Paragraph 16 of the Complaint.

17.   ADMIT the allegations contained Paragraph 17 of the Complaint.

18.   ADMIT the allegations contained in Paragraph 18 of the Complaint.

### III. The History UT Austin's Admissions Policies

#### A.      Pre-1997

19.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint.  These historical allegations regarding *all* admissions practices prior to 1997 are legally immaterial to the claims pleaded in the Complaint, and none of Defendants' current employees possesses personal knowledge that would be sufficient to enable Defendants to form a belief about the truth of those allegations.

20.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint.  These historical allegations regarding *all* admissions practices prior to 1997 are legally immaterial to the claims pleaded in the Complaint, and none of Defendants' current employees possesses personal knowledge that would be sufficient to enable Defendants to form a belief about the truth of those allegations.

21.   DENY Plaintiff's characterization of UT Austin's 1996 admissions system as "race-based" but otherwise ADMIT the remaining allegations contained in Paragraph 21 of the Complaint.

### B.    1997

22.   ADMIT that the Fifth Circuit decided *Hopwood v. Texas*, 78 F.3d 932 (5th Cir. 1996) in 1996, but otherwise Paragraph 22 of the Complaint states conclusions of law, which require no response. To the extent a response is required, Defendants DENY SFFA's characterization of *Hopwood*—the opinion speaks for itself.

23.   ADMIT the allegations contained in Paragraph 23 of the Complaint.

24.   ADMIT the allegations contained in Paragraph 24 of the Complaint.

25.   ADMIT the allegations contained in Paragraph 25 of the Complaint.

26.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Complaint.

27.   DENY the allegations contained in Paragraph 27 of the Complaint.

28.   ADMIT the allegations contained in Paragraph 28 of the Complaint.

### C.    1998-2004

29.   ADMIT that in 1997, the Texas Legislature passed House Bill 588, Tex. Educ. Code § 51.803 (1997), often referred to as the "Top Ten Percent Plan," but otherwise DENY the remaining allegations contained in Paragraph 29 of the Complaint.  House Bill 588 must be read in conjunction with the administrative regulations promulgated by the Texas Higher Education Coordinating Board, which provide additional requirements for Texas seniors who rank in the top 10% of their high school classes.

30.   ADMIT the allegations contained in Paragraph 30 of the Complaint.

31.   ADMIT the allegations contained in Paragraph 31 of the Complaint except to the use of the term "race-neutral" and that the independent clause of the sentence fails to take into account certain variances due to scholarship programs and portfolio or audition requirements that may exist for certain programs.

32.  ADMIT the allegations contained in Paragraph 32 of the Complaint except to the use of the term "race-neutral."

33.  DENY the allegations contained in Paragraph 33 of the Complaint.

34.  ADMIT that Paragraph 34 quotes portions of statements by former UT Austin President Larry Faulkner.

35.  ADMIT that Paragraph 35 selectively quotes portions of prior press releases by UT Austin. These statements, however, must be read in context.  For example, the complete first quotation states: "The University of Texas at Austin has effectively compensated for the loss of affirmative action, partly by increasing recruiting and financial aid for minority students." *The University of Texas at Austin's experience with the "Top 10 Percent" Law* (Jan. 16, 2003), https://news.utexas.edu/2003/01/16/the-university-of-texas-at-austins-experience-with-the-top-10-percent-law/.

36.  ADMIT the allegations contained in Paragraph 36 of the Complaint except to the use of the term "race-neutral."

37.  ADMIT the allegations contained in Paragraph 37 of the Complaint.

**D.    2004-2008**

38.  DENY the allegations contained in Paragraph 38 of the Complaint.

39.  ADMIT that the Supreme Court decided *Grutter v. Bollinger*, 539 U.S. 306 (2003) on June 23, 2003 and that the second sentence of Paragraph 39 quotes portions of the Supreme Court's decision, but otherwise DENY as to SFFA's characterization of *Grutter*—the opinion speaks for itself.

40.  ADMIT that Paragraph 40 quotes portions of the Supreme Court's decision in *Grutter*, but otherwise DENY as to SFFA's characterization—the opinion speaks for itself.

41. DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 41 of the Complaint.

42. ADMIT the allegations contained in Paragraph 42 of the Complaint.

43. ADMIT the allegations contained in Paragraph 43 of the Complaint.

44. ADMIT that UT Austin began to include race as a subfactor within the PAI but otherwise DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 44 of the Complaint.

45. DENY the allegations contained in Paragraph 45 of the Complaint.

46. ADMIT that one goal of UT Austin's admission policy was to improve diversity in its student body and its classrooms but otherwise DENY as to SFFA's characterizations in Paragraph 46 of the Complaint.

47. ADMIT the allegations contained in Paragraph 47 of the Complaint.

### E.  2008-2016

48. ADMIT the allegations contained in Paragraph 48 of the Complaint.

49. ADMIT the allegations contained in the first sentence Paragraph 49 of the Complaint but otherwise DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 49.

50. ADMIT Paragraph 50 quotes portions of UT Austin's brief on the merits in *Fisher II* but otherwise DENY as to SFFA's characterization—the filing speaks for itself.

51. DENY as to SFFA's summary characterization of UT Austin's prior arguments—the record speaks for itself.

52. DENY as to SFFA's summary characterization of UT Austin's prior arguments—the record speaks for itself.

53.  ADMIT the allegations contained in Paragraph 53 of the Complaint to the extent it may contain any factual allegations.

54.  ADMIT that the Supreme Court vacated the Fifth Circuit's opinion in *Fisher v. University of Texas at Austin*, 570 U.S. 297 (2013) ("*Fisher I*") in 2013, but otherwise Paragraph 54 of the Complaint contains conclusions of law, which require no response.  To the extent a response is required, Defendants DENY SFFA's characterization of *Fisher I*—the opinion speaks for itself.

55.  DENY that the first sentence of Paragraph 55 of the Complaint accurately quotes portions of the Supreme Court's decision in *Fisher I*.  The quoted sentence actually reads: "Strict scrutiny requires the university to demonstrate with clarity that its 'purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is necessary ... to the accomplishment of *its* purpose.'"  *Id.* at 309.  ADMIT that the second sentence accurately quotes portions of the Supreme Court's decision in *Fisher I* but otherwise DENY as to SFFA's characterization—the opinion speaks for itself.

56.  Paragraph 56 ADMIT that Paragraph 56 of the Complaint quotes a portion of Justice Scalia's concurring opinion in *Fisher I*.

57.  ADMIT that Paragraph 57 of the Complaint quotes a portion of Justice Thomas's concurring opinion in *Fisher I*.

58.  Paragraph 58 of the Complaint contains conclusions of law, which require no response.  To the extent a response is required, Defendants DENY SFFA's characterization of Justice Ginsburg's dissent in *Fisher I*—the opinion speaks for itself.

59.  ADMIT Paragraph 59 quotes portions of UT Austin's responsive briefing to petitioner's writ of certiorari in *Fisher II* but otherwise DENY as to SFFA's characterization—the filing speaks for itself.

60.  ADMIT the allegations contained in Paragraph 60 of the Complaint to the extent it may contain any factual allegations.

61.  ADMIT Paragraph 61 quotes portions of the Supreme Court's decision in *Fisher II* but otherwise DENY as to SFFA's characterization—the opinion speaks for itself.

62.  ADMIT Paragraph 62 quotes portions of the Supreme Court's decision in *Fisher II* but otherwise DENY as to SFFA's characterization—the opinion speaks for itself.

63.  ADMIT Paragraph 63 quotes portions of the Supreme Court's decision in *Fisher II* but otherwise DENY as to SFFA's characterization—the opinion speaks for itself.

64.  DENY that Paragraph 64 of the Complaint accurately quotes a portion of Justice Thomas's dissent in *Fisher II*.  Justice Thomas instead wrote: "[A] State's use of race in higher education admissions *decisions* is categorically prohibited by the Equal Protection Clause."

65.  ADMIT that Paragraph 65 of the Complaint quotes a portion of Justice Thomas's dissent in *Fisher II*.

66.  Paragraph 66 of the Complaint contains conclusions of law, which require no response.  To the extent a response is required, Defendants DENY SFFA's characterization of Justice Alito's dissent in *Fisher II*—the opinion speaks for itself.

67.  ADMIT that Paragraph 67 of the Complaint quotes a portion of Justice Alito's dissent in *Fisher II*.

### F.      The Kroll Report

68.  ADMIT that the first sentence of Paragraph 68 quotes portions of UT Austin's self-description of its admissions process.   DENY the remaining allegations contained in Paragraph 68 of the Complaint.

69. DENY the allegations contained in Paragraph 69 of the Complaint.

70. DENY the allegations contained in Paragraph 70 of the Complaint.

71. DENY the allegations contained in Paragraph 71 of the Complaint.

72. DENY the allegations contained in Paragraph 72 of the Complaint.

73. ADMIT the allegations contained in the Paragraph 73 of the Complaint to the extent it may contain any factual allegations, but DENY SFFA's characterization of *Fisher II*—the opinion speaks for itself.

74. DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 74 of the Complaint. To the extent the allegations are based upon the referenced document, the document speaks for itself.

75. DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 75 of the Complaint. To the extent the allegations are based upon the referenced document, the document speaks for itself.

76. DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 76 of the Complaint. To the extent the allegations are based upon the referenced document, the document speaks for itself.

77. DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 77 of the Complaint. To the extent the allegations are based upon the referenced document, the document speaks for itself.

78. DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 78 of the Complaint. To the extent the allegations are based upon the referenced document, the document speaks for itself.

79. DENY the allegations contained in Paragraph 79 of the Complaint. To the extent the allegations are based upon the referenced document, the document speaks for itself.

80. DENY the allegations contained in Paragraph 80 of the Complaint. To the extent the allegations are based upon the referenced document, the document speaks for itself.

81. DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 81 of the Complaint. To the extent the allegations are based upon the referenced document, the document speaks for itself.

82. DENY the allegations contained in Paragraph 82 of the Complaint.

83. DENY the allegations contained in Paragraph 83 of the Complaint.

84. DENY the allegations contained in Paragraph 84 of the Complaint.

85. ADMIT the allegations contained in the last sentence of Paragraph 85 of the Complaint but DENY the remaining allegations and characterizations in the paragraph.

### G.    Post-*Fisher II*

86. DENY the allegations contained in Paragraph 86 of the Complaint to the extent the term "to use" race means that race is used a preference or mechanical plus-factor, otherwise ADMIT.

87. ADMIT that Paragraph 87 quotes portions of statements by former UT Austin President Gregory Fenves.

88. ADMIT that UT Austin released its UDIAP in March 2017 but otherwise DENY SFFA's remaining characterization of the UDIAP contained in Paragraph 88 of the Complaint. To the extent the allegations are based upon the referenced document, the document speaks for itself.

89. ADMIT that the majority of UT Austin's entering freshman class is admitted through the Top Ten Percent Plan and non-white but otherwise DENY SFFA's characterization of the UDIAP

contained in Paragraph 89 of the Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

90.  DENY the allegations in Paragraph 90, including SFFA's characterization of the UDIAP. To the extent the allegations are based upon the referenced document, the document speaks for itself.

91.  ADMIT that applicants to UT Austin for first-year undergraduate admission may select from among the racial categories appearing in the ApplyTexas and Coalition for College application forms; otherwise DENY the remaining allegations contained Paragraph 91 of the Complaint.

92.  DENY the allegations contained Paragraph 92 of the Complaint.

93.  ADMIT the allegations contained in the Paragraph 93 of the Complaint.

94.  ADMIT the allegations contained in the Paragraph 94 of the Complaint.

95.  ADMIT that Paragraph 95 of the Complaint quotes portions of Section 51.803(k)(1) of the Texas Education Code, but otherwise the remaining allegations in Paragraph 95 state a conclusion of law, which requires no response.

96.  DENY the allegations contained Paragraph 96 of the Complaint.

97.  ADMIT that UT Austin reported "racial/ethnic" status as a factor that was "considered" in the admissions process during the identified years and that it listed some but not all factors as "very important" during those years but deny the remaining allegations and characterizations in Paragraph 97.

98.  ADMIT that UT Austin reports that all factors in its admission decisions are "very important" but DENY the remaining allegations and characterizations in Paragraph 98.

IV.    **Plaintiff's Proposed Alternatives**

    A.    **Combination of the Top Ten Percent Plan and Race-Neutral Holistic Admissions**

99.    DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 99 of the Complaint.

100.    DENY the allegations and accuracy of the data contained in Paragraph 100 of the Complaint, including that Plaintiff's use of numbers rounded to the tens place omits significant digits and fails to precisely reflect admissions data.

101.    DENY the allegations contained in Paragraph 101 of the Complaint.

102.    DENY the allegations contained in Paragraph 102 of the Complaint.

103.    DENY the allegations and accuracy of the data contained in Paragraph 103 of the Complaint.

104.    DENY the allegations contained in Paragraph 104 of the Complaint.

105.    DENY the allegations contained in Paragraph 105 of the Complaint.

106.    DENY the allegations and accuracy of the data contained in Paragraph 106 of the Complaint, including that Plaintiff's use of numbers rounded to the tens place omits significant digits and fails to precisely reflect admissions data.

107.    DENY the allegations contained in Paragraph 107 of the Complaint.

108.    DENY the allegations contained in Paragraph 108 of the Complaint.

109.    DENY the allegations and accuracy of the data contained in Paragraph 109 of the Complaint, including that Plaintiff's use of numbers rounded to the tens place omits significant digits and fails to precisely reflect admissions data.

110.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the referenced hypothetical alternative, and DENY the allegations contained in Paragraph 110 of the Complaint, including with respect to its characterizations and implications.

111.     DENY the allegations contained in Paragraph 111 of the Complaint.

112.     DENY the allegations contained in Paragraph 112 of the Complaint

**B.     Additional Race-Neutral Alternatives**

113.     ADMIT the allegations contained in Paragraph 113 of the Complaint except to the use of the term "race-neutral."

114.     DENY that UT Austin could achieve the goals of its compelling government intertest in student body diversity under the hypothetical referenced in Paragraph 114 of the Complaint, and DENY the characterizations and implications in Paragraph 114.

115.     DENY that UT Austin could achieve the goals of its compelling government intertest in student body diversity under the hypothetical referenced in Paragraph 115 of the Complaint, and DENY the characterizations and implications in Paragraph 115.

116.     DENY that UT Austin could achieve the goals of its compelling government intertest in student body diversity under the hypothetical referenced in Paragraph 116 of the Complaint, and DENY the characterizations and implications in Paragraph 116.

117.     DENY the allegations contained in Paragraph 117 of the Complaint, including with respect to its characterizations and implications.

### 1. Greater Use of Non-Racial Preferences

118.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations regarding unspecified colleges and universities in Paragraph 118 of the Complaint.

119.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 119 of the Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

120.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 120 of the Complaint.

121.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 121 of the Complaint.

122.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 122 of the Complaint.

123.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 123 of the Complaint.

124.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 124 of the Complaint.

125.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 125 of the Complaint.

126.     DENY the allegations contained in Paragraph 126 of the Complaint.

127.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 127 of the Complaint.

128.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations concerning unidentified studies contained in Paragraph 128 of the Complaint.

129.     DENY the allegations and accuracy of the data contained in Paragraph 129 of the Complaint, including that Plaintiff's use of numbers rounded to the tens place omits significant digits and fails to precisely reflect admissions data.

130.     DENY the allegations and accuracy of the data contained in Paragraph 130 of the Complaint, including that Plaintiff's use of numbers rounded to the tens place omits significant digits and fails to precisely reflect admissions data.

131.     DENY the allegations contained in Paragraph 131 of the Complaint, including with respect to its characterizations and implications.

### 2.     Greater Use of Financial Aid and Scholarships

132.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 132 of the Complaint.

133.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 133 of the Complaint.

134.     ADMIT the allegations contained in Paragraph 134 of the Complaint.

135.     DENY the allegations contained in Paragraph 135 of the Complaint.

136.     DENY the allegations contained in Paragraph 136 of the Complaint.

### 3. Increased Recruitment and Other Steps Designed to Encourage More Qualified Minority Students to Apply for Admission

137. DENY that UT Austin could achieve the goals of its compelling government intertest in student body diversity under the hypothetical referenced in Paragraph 137 of the Complaint, and DENY the characterizations and implications in Paragraph 137.

138. DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 138 of the Complaint. To the extent the allegations are based upon the referenced document, the document speaks for itself.

139. DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 139 of the Complaint. To the extent the allegations are based upon the referenced document, the document speaks for itself.

140. DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 140 of the Complaint. To the extent the allegations are based upon the referenced document, the document speaks for itself.

141. ADMIT that UT reported the Texas Community College Fair numbers cited in Paragraph 141 of the Complaint but DENY the characterization of those figures as reflecting a reduction in UT's recruitment efforts, which UT has improved and continues to improve.

142. DENY the allegations contained in Paragraph 142 of the Complaint.

### 4. Elimination of Admissions Policies and Practices that Harm Minorities

143. DENY the allegations contained in Paragraph 143 of the Complaint.

144.     DENY the allegations contained in Paragraph 144 of the Complaint.  Additionally, Section 51.803 of the Texas Education Code prohibits any consideration of legacy status by UT Austin in first-time undergraduate admissions.  Tex. Educ. Code § 51.803(a-4).

145.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 145 of the Complaint.

146.     DENY the allegations contained in Paragraph 146 of the Complaint.

**5.     Elimination of Harms Caused by Racial Preferences**

147.     DENY the allegations contained in Paragraph 147 of the Complaint, including with respect to its characterizations and implications.

148.     Paragraph 148 of the Complaint states a conclusion of law, which requires no response.

149.     DENY the allegations contained in Paragraph 149 of the Complaint.

150.     ADMIT that the identified students come from different cultures, experiences, and backgrounds but otherwise DENY the remaining allegations contained in Paragraph 150 of the Complaint.

151.     DENY the allegations contained in Paragraph 151 of the Complaint, including with respect to its characterizations and implications.

152.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 152 of the Complaint, including with respect to its characterizations and implications.

153.    DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 153 of the Complaint, including with respect to its characterizations and implications.

154.    DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 154 of the Complaint, including with respect to its characterizations and implications.

155.    DENY the allegations contained in Paragraph 155 of the Complaint, including with respect to its characterizations and implications.

156.    DENY the allegations contained in Paragraph 156 of the Complaint.

157.    DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 157 of the Complaint.

158.    DENY the allegations contained in Paragraph 158 of the Complaint, including with respect to its characterizations and implications.

159.    DENY the allegations contained in Paragraph 159 of the Complaint, including with respect to its characterizations and implications.

160.    DENY the allegations contained in Paragraph 160 of the Complaint, including with respect to its characterizations and implications.

161.    DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 161 of the Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

162.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 162 of the Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

163.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 163 of the Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

164.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 164 of the Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

165.     DENY the allegations contained in Paragraph 165 of the Complaint.

166.     DENY the allegations contained in Paragraph 166 of the Complaint.

## V.     Racial Balancing Allegations

167.     DENY the allegations contained in Paragraph 167 of the Complaint.

168.     DENY the allegations contained in Paragraph 168 of the Complaint.

169.     DENY the allegations and accuracy of the data contained in Paragraph 169 of the Complaint, including that Plaintiff's use of numbers rounded to the tens place omits significant digits and fails to precisely reflect admissions and enrollment data.

170.     DENY the allegations contained in Paragraph 170 of the Complaint.

171.     DENY the allegations contained in Paragraph 171 of the Complaint.

172.     DENY the allegations contained in Paragraph 172 of the Complaint.

173.     DENY the allegations contained in Paragraph 173 of the Complaint.

174.       DENY the allegations contained in Paragraph 174 of the Complaint.

## VI.    Governing Law

### A.    Federal Law

175.       ADMIT that Paragraph 175 accurately quotes portions of the Fourteenth Amendment.

176.       ADMIT that Paragraph 176 accurately quotes portions Section 1981 of Title 42 of the U.S. Code.

177.       ADMIT that Paragraph 177 quotes portions of Section 1983 of Title 42 of the U.S. Code.

178.       ADMIT that Paragraph 178 quotes portions of Title VI of the Civil Rights Act of 1964.

179.       Paragraph 179 of the Complaint states a conclusion of law, which requires no response.

180.       Paragraph 180 of the Complaint states a conclusion of law, which requires no response.

181.       Paragraph 181 of the Complaint states a conclusion of law, which requires no response.

182.       Paragraph 182 of the Complaint states a conclusion of law, which requires no response.

183.       Paragraph 183 of the Complaint states a conclusion of law, which requires no response.

184.      Paragraph 184 of the Complaint states a conclusion of law, which requires no response.

185.      Paragraph 185 of the Complaint states a conclusion of law, which requires no response.

186.      Paragraph 186 of the Complaint states a conclusion of law, which requires no response.

187.      Paragraph 187 of the Complaint states a conclusion of law, which requires no response.

188.      Paragraph 188 of the Complaint states a conclusion of law, which requires no response.

189.      Paragraph 189 of the Complaint states a conclusion of law, which requires no response.

190.      Paragraph 190 of the Complaint states a conclusion of law, which requires no response.

191.      Paragraph 191 of the Complaint states a conclusion of law, which requires no response.

192.      Paragraph 192 of the Complaint states a conclusion of law, which requires no response.

193.      Paragraph 193 of the Complaint states a conclusion of law, which requires no response.

194.      Paragraph 194 of the Complaint states a conclusion of law, which requires no response.

195.      Paragraph 195 of the Complaint states a conclusion of law, which requires no response.

196.      Paragraph 196 of the Complaint states a conclusion of law, which requires no response.

**B.      State Law**

197.      ADMIT that Paragraph 197 accurately quotes portions of Section 3 of the Texas Bill of Rights.

198.      Paragraph 198 of the Complaint states a conclusion of law, which requires no response.

199.      Paragraph 199 of the Complaint states a conclusion of law, which requires no response.

200.      Paragraph 200 of the Complaint states a conclusion of law, which requires no response.

201.       Paragraph 201 of the Complaint states a conclusion of law, which requires no response.

202.      Paragraph 202 of the Complaint states a conclusion of law, which requires no response.

203.      Paragraph 203 of the Complaint states a conclusion of law, which requires no response.

204.      Paragraph 204 of the Complaint states a conclusion of law, which requires no response.

205.        Paragraph 205 of the Complaint states a conclusion of law, which requires no response.

206.        Paragraph 206 of the Complaint states a conclusion of law, which requires no response.

207.        Paragraph 207 of the Complaint states a conclusion of law, which requires no response.

208.        Paragraph 208 of the Complaint states a conclusion of law, which requires no response.

**VII.    Claims for Relief**

209.        DENY the allegations contained in Paragraph 209 of the Complaint.

**Count I**

210.        REPEAT and REALLEGE the responses to every allegation set forth in the preceding paragraphs in response to the allegations contained in Paragraph 210 of the Complaint.

211.        DENY the allegations contained in Paragraph 211 of the Complaint.

212.        DENY the allegations contained in Paragraph 212 of the Complaint.

213.        DENY the allegations contained in Paragraph 213 of the Complaint.

214.        DENY the allegations contained in Paragraph 214 of the Complaint.

215.        DENY the allegations contained in Paragraph 215 of the Complaint.

216.        DENY that Plaintiff is entitled to a declaratory judgment, permanent injunction, or any other relief whatsoever.

217.      DENY that Plaintiff is entitled to attorneys' fees, costs, or any other relief whatsoever.

## Count II

218.      REPEAT and REALLEGE the responses to every allegation set forth in the preceding paragraphs in response to the allegations contained in Paragraph 218 of the Complaint.

219.      DENY the allegations contained in Paragraph 219 of the Complaint.

220.      DENY the allegations contained in Paragraph 220 of the Complaint, to the extent it may contain any factual allegations.

221.      DENY the allegations contained in Paragraph 221 of the Complaint.

222.      DENY the allegations contained in Paragraph 222 of the Complaint.

223.      DENY the allegations contained in Paragraph 223 of the Complaint.

224.      DENY the allegations contained in Paragraph 224 of the Complaint.

225.      DENY the allegations contained in Paragraph 225 of the Complaint.

226.      DENY that Plaintiff is entitled to a declaratory judgment, permanent injunction, or any other relief whatsoever.

227.      DENY that Plaintiff is entitled to attorneys' fees, costs, or any other relief whatsoever.

## Count III

228.      REPEAT and REALLEGE the responses to every allegation set forth in the preceding paragraphs in response to the allegations contained in Paragraph 228 of the Complaint.

229.      DENY the allegations contained in Paragraph 229 of the Complaint.

230.    DENY the allegations contained in Paragraph 230 of the Complaint, to the extent it may contain any factual allegations.

231.    DENY the allegations contained in Paragraph 231 of the Complaint.

232.    DENY the allegations contained in Paragraph 232 of the Complaint.

233.    DENY the allegations contained in Paragraph 233 of the Complaint.

234.    DENY the allegations contained in Paragraph 234 of the Complaint.

235.    DENY the allegations contained in Paragraph 235 of the Complaint.

236.    DENY that Plaintiff is entitled to a declaratory judgment, permanent injunction, or any other relief whatsoever.

237.    DENY that Plaintiff is entitled to attorneys' fees, costs, or any other relief whatsoever.

## Count IV

238.    REPEAT and REALLEGE the responses to every allegation set forth in the preceding paragraphs in response to the allegations contained in Paragraph 238 of the Complaint.

239.    DENY the allegations contained in Paragraph 239 of the Complaint.

240.    DENY the allegations contained in Paragraph 240 of the Complaint, to the extent it may contain any factual allegations.

241.    DENY the allegations contained in Paragraph 241 of the Complaint, to the extent it may contain any factual allegations.

242.    DENY the allegations contained in Paragraph 242 of the Complaint, to the extent it may contain any factual allegations.

243.        DENY the allegations contained in Paragraph 243 of the Complaint.

244.        DENY the allegations contained in Paragraph 244 of the Complaint.

245.        DENY the allegations contained in Paragraph 245 of the Complaint.

246.        DENY the allegations contained in Paragraph 246 of the Complaint.

247.        DENY the allegations contained in Paragraph 247 of the Complaint.

248.        DENY the allegations contained in Paragraph 248 of the Complaint.

249.        DENY the allegations contained in Paragraph 249 of the Complaint.

250.        DENY that Plaintiff is entitled to a declaratory judgment, permanent injunction, or any other relief whatsoever.

251.        DENY that Plaintiff is entitled to attorneys' fees, costs, or any other relief whatsoever.

## Count V

252.         REPEAT and REALLEGE the responses to every allegation set forth in the preceding paragraphs in response to the allegations contained in Paragraph 252 of the Complaint.

253.        DENY the allegations contained in Paragraph 253 of the Complaint, to the extent it may contain any factual allegations.

254.        DENY the allegations contained in Paragraph 254 of the Complaint, to the extent it may contain any factual allegations.

255.        DENY the allegations contained in Paragraph 255 of the Complaint, to the extent it may contain any factual allegations.

256.        DENY the allegations contained in Paragraph 256 of the Complaint, to the extent it may contain any factual allegations.

257.        DENY the allegations contained in Paragraph 257 of the Complaint.

258.        DENY the allegations contained in Paragraph 258 of the Complaint.

259.        DENY that Plaintiff is entitled to declaratory or injunctive relief, attorneys' fees, costs, or any other relief whatsoever.

## Count VI

260.        REPEAT and REALLEGE the responses to every allegation set forth in the preceding paragraphs in response to the allegations contained in Paragraph 260 of the Complaint.

261.        DENY the allegations contained in Paragraph 261 of the Complaint, to the extent it may contain any factual allegations.

262.        DENY the allegations contained in Paragraph 262 of the Complaint.

263.        DENY the allegations contained in Paragraph 263 of the Complaint.

264.        DENY the allegations contained in Paragraph 264 of the Complaint.

265.        DENY the allegations contained in Paragraph 265 of the Complaint.

266.        DENY the allegations contained in Paragraph 266 of the Complaint.

267.        DENY the allegations contained in Paragraph 267 of the Complaint.

268.        DENY that Plaintiff is entitled to declaratory or injunctive relief, attorneys' fees, costs, or any other relief whatsoever.

**Count VII**

269.     REPEAT and REALLEGE the responses to every allegation set forth in the preceding paragraphs in response to the allegations contained in Paragraph 269 of the Complaint.

270.     DENY the allegations contained in Paragraph 270 of the Complaint, to the extent it may contain any factual allegations.

271.     DENY the allegations contained in Paragraph 271 of the Complaint.

272.     DENY the allegations contained in Paragraph 272 of the Complaint.

273.     DENY the allegations contained in Paragraph 273 of the Complaint.

274.     DENY the allegations contained in Paragraph 274 of the Complaint.

275.     DENY the allegations contained in Paragraph 275 of the Complaint.

276.     DENY the allegations contained in Paragraph 276 of the Complaint.

277.     DENY that Plaintiff is entitled to declaratory or injunctive relief, attorneys' fees, costs, or any other relief whatsoever.

**Count VIII**

278.     REPEAT and REALLEGE the responses to every allegation set forth in the preceding paragraphs in response to the allegations contained in Paragraph 278 of the Complaint.

279.     DENY the allegations contained in Paragraph 279 of the Complaint, to the extent it may contain any factual allegations.

280.     DENY the allegations contained in Paragraph 280 of the Complaint.

281.     DENY the allegations contained in Paragraph 281 of the Complaint.

282.     DENY the allegations contained in Paragraph 282 of the Complaint.

283.     DENY the allegations contained in Paragraph 283 of the Complaint.  The quotation in question states: "BISD does not argue that its hiring and promotion policies represent a plan reasonably designed to end discriminatory school practices or a plan to incorporate work force diversity programs." *Beaumont Indep. Sch. Dist. v. Wortham*, No. 09-05-443 CV, 2006 WL 2623077, at *5 (Tex. App.—Beaumont Sept. 14, 2006, no pet.).

284.     DENY the allegations contained in Paragraph 284 of the Complaint.

285.     DENY the allegations contained in Paragraph 285 of the Complaint.

286.     DENY the allegations contained in Paragraph 286 of the Complaint.

287.     DENY the allegations contained in Paragraph 287 of the Complaint.

288.     DENY the allegations contained in Paragraph 288 of the Complaint.

289.     DENY the allegations contained in Paragraph 289 of the Complaint.

290.     DENY the allegations contained in Paragraph 290 of the Complaint.

291.     DENY that Plaintiff is entitled to declaratory or injunctive relief, attorneys' fees, costs, or any other relief whatsoever.

DENY that Plaintiff is entitled to any of the relief requested in the Prayer for Relief (a)–(f) of the Complaint.

### **Affirmative Defenses**

1.  SFFA has failed to state a claim upon which relief can be granted.

2.  SFFA's claims are barred by sovereign immunity under the Eleventh Amendment of the United States Constitution.

3.  SFFA's claims fail for lack of subject matter jurisdiction, including for lack of standing.

4.   SFFA's claims are barred by res judicata and collateral estoppel.

5.   Defendants reserve the right to assert additional affirmative defenses as they become known through discovery.

Defendants therefore pray that this Court dismiss this case for lack of subject matter jurisdiction, or in the alternative, enter judgment for Defendants and against Plaintiff and award Defendants their costs of court and all relief, whether at law or in equity, to which they may show themselves to be justly entitled.

Respectfully Submitted,

GRAVES DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2700
Austin, Texas  78701
(512) 480-5725 (phone)
(512) 539-9938 (fax)

By:  /s/ Matthew C. Powers
    John J. McKetta, III
    Texas State Bar No. 13711500
    mmcketta@gdhm.com
    Matthew C. Powers
    Texas State Bar No. 24046650
    mpowers@gdhm.com
    William Christian
    State Bar No. 00793505
    wchristian@gdhm.com
    Marianne W. Nitsch
    Texas State Bar No. 24098182
    mnitsch@gdhm.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record for Plaintiff via the Court's electronic filing and service system and also via email service as indicated below, on this the 16th day of October, 2020, as follows:

William S. Consovoy
Cameron T. Norris
Steven C. Begakis
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
will@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com

/s/ Matthew C. Powers
Matthew C. Powers