IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., | § § § | |
| Plaintiff, | § § | |
| V. | § § | CAUSE NO. 1:20-cv-763-RP |
| UNIVERSITY OF TEXAS AT AUSTIN; JAMES B. MILLIKEN, Chancellor of the University of Texas System in his Official Capacity, STEVEN LESLIE, Executive Vice Chancellor for Academic Affairs of the University of Texas System in his Official Capacity, DANIEL H. SHARPHORN, Vice Chancellor and General Counsel of the University of Texas System in his Official Capacity, JAY HARTZELL, President of the University of Texas at Austin in his Official Capacity, BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM, DAVID J. BECK, CHRISTINA MELTON CRAIN, KEVIN P. ELTIFE, R. STEVEN HICKS, JODIE LEE JILES, JANIECE LONGORIA, NOLAN PEREZ, KELCY L. WARREN, AND JAMES C. "RAD" WEAVER, as Members of the Board of Regents in Their Official Capacities, DANIEL JAFFE, Interim Executive Vice President and Provost, RACHELLE HERNANDEZ, Senior Vice Provost for Enrollment Management and Student Success, and MIGUEL WASIELEWSKI, Executive Director for Office of Admissions, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | |
| Defendants. | | |

**DEFENDANTS' FIRST AMENDED ANSWER**

TO THE HONORABLE COURT:

Defendants file this their First Amended Answer to the Amended Complaint of Plaintiff Students for Fair Admissions, Inc. ("SFFA") ("the Amended Complaint"). Except as expressly admitted, Defendants deny each and every allegation contained in the Amended Complaint.

**Preliminary Statement**

### A.    The Plaintiff

Plaintiff Students for Fair Admissions, Inc. ("SFFA") is a Virginia nonprofit corporation formed in 2014 to serve as a vehicle for litigating university admissions policies. It has three officers— Edward Blum, Abigail Fisher, and Richard Fisher. Blum and the Fishers also sit on SFFA's board of directors, and they comprise a majority of the board.

### B.    The Prior Unsuccessful Lawsuits

This is SFFA's third lawsuit against these defendants in the past three years, and it is the *fourth* in a series of suits that SFFA's officers and directors have orchestrated against UT Austin, the UT System, and their respective officials. These suits, collectively, have now occupied the better part of the last twelve years.

SFFA most recently sued UT Austin and the other defendants in state court in 2019, raising essentially the same claims it raises here. SFFA nonsuited the claims in its last suit. In the suit that immediately preceded it, also in state court, SFFA's claims were dismissed with prejudice on March 5, 2019 for lack of standing, following an evidentiary hearing at which SFFA failed to demonstrate it had any individual members who would have had standing to bring suit in their own right.

But Abigail Fisher first sued UT Austin in this Court in 2008, following UT's denial of her application for admission the same year. That litigation, which lasted from 2008 through 2016, is commonly referred to as *Fisher v. University of Texas*. Ms. Fisher was unsuccessful in that case, losing

her arguments in the United States District Court, in the United States Court of Appeals for the Fifth Circuit, and ultimately, in the United States Supreme Court.  Each court upheld the validity of UT Austin's admissions program.

Ms. Fisher's involvement in her 8-year litigation against Defendants came about as a result of a friendship between her father, Richard Fisher, and Blum.  Blum had been searching for unsuccessful undergraduate applicants to be the plaintiff in the suit against UT Austin he was then organizing. Blum has alternately described himself as "Yenta the Matchmaker" and "the architect" for the lawsuits he puts together, including Fisher's and SFFA's prior suits against UT Austin.

Once again using SFFA, Blum and the Fishers here seek yet another opportunity to challenge UT Austin's admissions program.  They cannot accept that each court in the *Fisher* litigation ruled against their equal protection arguments and determined that UT Austin may lawfully consider race as one of many factors—a "factor of a factor of a factor," *see Fisher v. University of Texas at Austin*, 579 U.S. ___, ___ (2016) ("*Fisher II*") (slip op., at 5) (quoting *Fisher v. University of Texas at Austin*, 645 F. Supp. 2d 587, 608 (W.D. Tex. 2009))—in seeking to foster a diverse student body, which benefits the education of all students.

Having lost the legal arguments they asserted from 2008 through 2018, Blum and the Fishers continue to seek a new and different result.  Here, they argue that UT Austin's admissions program is prohibited both by provisions of the Texas Constitution and a Texas statute, as well as the United States Constitution and federal statutes.

Their claims in this lawsuit once again re-package the same allegations and arguments that were unsuccessful in prior litigation.  Indeed, SFFA suggests that "the Supreme Court should overrule any decision holding that the Fourteenth Amendment or federal civil rights law ever permit the use of racial preferences to achieve 'diversity,'" relief that this Court of course has no power to grant.

SFFA likewise continues to suggest that UT has already achieved a "critical mass" of students from historically underrepresented groups.  As it did in the prior litigation, SFFA bases its argument on the false premise that the overall percentage of non-white students at UT Austin is high enough that, in the opinion of Blum and the Fishers, there is enough diversity already.  Pl.'s Orig. Compl. ¶ 272.  Ms. Fisher made the same arguments in her prior suit in this Court, but both this Court and the United States Supreme Court found significant evidence justifying UT's inclusion of race as a factor in its holistic admissions program.  *Fisher II*, 579 U.S. at __ (slip op., at 13-15).

### C.      UT Austin's Admission Program

UT Austin's central mission, as a public institution, involves educating the future leaders of Texas, a State that is increasingly diverse.  Like virtually every other selective university in America, UT Austin has concluded that assembling a student body that not only is exceptionally talented, but also richly diverse, is key to achieving its mission.  UT Austin has a broad vision of student body diversity, which looks to many factors, including socioeconomic background, race and ethnicity, extracurricular interests, demonstrated leadership, hardships overcome, and special talents.

UT Austin's own experience has confirmed the judgment of the Nation's highest ranked colleges and universities that student body diversity is critical to preparing students to succeed in the world they will enter when they leave campus.  This same judgment concerning the important role of diversity is echoed by policies in America's military and in its leading companies.  The educational benefits of student body diversity include, but are not limited to: bringing unique and direct perspectives to the issues and topics discussed and debated in classrooms; promoting cross-racial understanding; breaking down racial and ethnic stereotypes; creating an environment in which students do not feel like spokespersons for their race; and preparing students to participate in—and to serve as leaders within—an increasingly diverse workforce and society.

These benefits enhance the education that every UT student receives.  As the United States Supreme Court has repeatedly recognized, these objectives mirror the approved compelling state interest in student body diversity, and UT Austin's program remains lawful and narrowly tailored to achieve them.

### Admissions and Denials

Defendants respond to the allegations in the Amended Complaint as follows and hereby:

DENY the allegations contained in the first, second, and third sentences of the introductory paragraph of SFFA's Amended Complaint to the extent they may contain any factual allegations.

## I.      Jurisdiction and Venue

1.    ADMIT that this Court has original jurisdiction over civil matters arising under the laws of the United States and may exercise supplemental jurisdiction, but otherwise DENY the remaining allegations contained in Paragraph 1 of the Amended Complaint.

2.    ADMIT that venue is proper in the Western District of Texas.

## II.     The Parties

### A.      Plaintiff

3.    DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of Paragraph 3 of the Amended Complaint.

4.    DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Amended Complaint.

5.    DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 5 of the Amended Complaint.

6.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations regarding Applicants' race and DENY the remaining allegations contained in Paragraph 6 of the Amended Complaint.

7.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Amended Complaint.

8.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations regarding Applicants' readiness to apply to transfer and DENY the remaining allegations and implications contained in Paragraph 8 of the Amended Complaint

### B.   Defendants

9.   ADMIT the allegations contained in Paragraph 9 of the Amended Complaint.

10.  ADMIT the allegations contained in Paragraph 10 of the Amended Complaint.

11.  ADMIT the allegations contained in Paragraph 11 of the Amended Complaint.

12.  ADMIT the allegations contained in the first and final sentences of Paragraph 12 of the Amended Complaint.  ADMIT the Chancellor is responsible for all aspects of UT System operations and has oversight of the admissions policy at UT Austin but otherwise DENY the allegations contained in the second sentence of Paragraph 12 to the extent Plaintiff alleges the Chancellor administers or supervises UT Austin's admissions policy.

13.  ADMIT the allegations contained in Paragraph 13 of the Amended Complaint.

14.  ADMIT the allegations contained in Paragraph 14 of the Amended Complaint.

15.  ADMIT the allegations contained in Paragraph 15 of the Amended Complaint.

16.  ADMIT the allegations contained in Paragraph 16 of the Amended Complaint.

17.  ADMIT the allegations contained Paragraph 17 of the Amended Complaint.

18.  ADMIT the allegations contained in Paragraph 18 of the Amended Complaint.

### III. The History UT Austin's Admissions Policies

#### A.       Pre-1997

19.  DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 19 of the Amended Complaint.  These historical allegations regarding *all* admissions practices prior to 1997 are legally immaterial to the claims pleaded in the Amended Complaint, and none of Defendants' current employees possesses personal knowledge that would be sufficient to enable Defendants to form a belief about the truth of those allegations.

20. DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Amended Complaint.  These historical allegations regarding *all* admissions practices prior to 1997 are legally immaterial to the claims pleaded in the Amended Complaint, and none of Defendants' current employees possesses personal knowledge that would be sufficient to enable Defendants to form a belief about the truth of those allegations.

21. DENY Plaintiff's characterization of UT Austin's 1996 admissions system as "race-based" but otherwise ADMIT the remaining allegations contained in Paragraph 21 of the Amended Complaint.

#### B.       1997

22.  ADMIT that the Fifth Circuit decided *Hopwood v. Texas*, 78 F.3d 932 (5th Cir. 1996) in 1996, but otherwise Paragraph 22 of the Amended Complaint states conclusions of law, which require no response.  To the extent a response is required, Defendants DENY SFFA's characterization of *Hopwood*—the opinion speaks for itself.

23. ADMIT the allegations contained in Paragraph 23 of the Amended Complaint.

24.  ADMIT the allegations contained in Paragraph 24 of the Amended Complaint.

25.   ADMIT the allegations contained in Paragraph 25 of the Amended Complaint.

26.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the Amended Complaint.

27.   DENY the allegations contained in Paragraph 27 of the Amended Complaint.

28.   ADMIT the allegations contained in Paragraph 28 of the Amended Complaint.

### C.   1998-2004

29.   ADMIT that in 1997, the Texas Legislature passed House Bill 588, Tex. Educ. Code § 51.803 (1997), often referred to as the "Top Ten Percent Plan," but otherwise DENY the remaining allegations contained in Paragraph 29 of the Amended Complaint.  House Bill 588 must be read in conjunction with the administrative regulations promulgated by the Texas Higher Education Coordinating Board, which provide additional requirements for Texas seniors who rank in the top 10% of their high school classes.

30.   ADMIT the allegations contained in Paragraph 30 of the Amended Complaint.

31.   ADMIT the allegations contained in Paragraph 31 of the Amended Complaint except to the use of the term "race-neutral" and that the independent clause of the sentence fails to take into account certain variances due to scholarship programs and portfolio or audition requirements that may exist for certain programs.

32.   ADMIT the allegations contained in Paragraph 32 of the Amended Complaint except to the use of the term "race-neutral."

33.   DENY the allegations contained in Paragraph 33 of the Amended Complaint.

34.   ADMIT that Paragraph 34 quotes portions of statements by former UT Austin President Larry Faulkner.

35.   ADMIT that Paragraph 35 selectively quotes portions of prior press releases by UT Austin. These statements, however, must be read in context.  For example, the complete first quotation states:

"The University of Texas at Austin has effectively compensated for the loss of affirmative action, partly by increasing recruiting and financial aid for minority students." *The University of Texas at Austin's experience with the "Top 10 Percent" Law* (Jan. 16, 2003), https://news.utexas.edu/2003/01/16/the-university-of-texas-at-austins-experience-with-the-top-10-percent-law/.

36. ADMIT the allegations contained in Paragraph 36 of the Amended Complaint except to the use of the term "race-neutral."

37. ADMIT the allegations contained in Paragraph 37 of the Amended Complaint.

**D.    2004-2008**

38. DENY the allegations contained in Paragraph 38 of the Amended Complaint.

39. ADMIT that the Supreme Court decided *Grutter v. Bollinger*, 539 U.S. 306 (2003) on June 23, 2003 and that the second sentence of Paragraph 39 quotes portions of the Supreme Court's decision, but otherwise DENY as to SFFA's characterization of *Grutter*—the opinion speaks for itself.

40.  ADMIT that Paragraph 40 quotes portions of the Supreme Court's decision in *Grutter*, but otherwise DENY as to SFFA's characterization—the opinion speaks for itself.

41.  ADMIT that Paragraph 41 selectively quotes portions of a prior press release by UT Austin. These statements, however, must be read in context. *The University of Texas at Austin reacts to the Supreme Court's affirmative action decisions* (June 23, 2003), https://news.utexas.edu/2003/06/23/the-university-of-texas-at-austin-reacts-to-the-supreme-courts-affirmative-action-decisions/.

42.  ADMIT the allegations contained in Paragraph 42 of the Amended Complaint.

43.  ADMIT the allegations contained in Paragraph 43 of the Amended Complaint.

44.  ADMIT that UT Austin began to include race as a subfactor within the PAI but otherwise DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 44 of the Amended Complaint.

45. DENY the allegations contained in Paragraph 45 of the Amended Complaint.

46. ADMIT that one goal of UT Austin's admission policy was to improve diversity in its student body and its classrooms but otherwise DENY as to SFFA's characterizations in Paragraph 46 of the Amended Complaint.

47. ADMIT the allegations contained in Paragraph 47 of the Amended Complaint.

### E.   2008-2016

48. ADMIT the allegations contained in Paragraph 48 of the Amended Complaint.

49. ADMIT the allegations contained in the first sentence Paragraph 49 of the Amended Complaint but otherwise DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 49.

50. ADMIT Paragraph 50 quotes portions of UT Austin's brief on the merits in *Fisher II* but otherwise DENY as to SFFA's characterization—the filing speaks for itself.

51. DENY as to SFFA's summary characterization of UT Austin's prior arguments—the record speaks for itself.

52. DENY as to SFFA's summary characterization of UT Austin's prior arguments—the record speaks for itself.

53. ADMIT the allegations contained in Paragraph 53 of the Amended Complaint to the extent it may contain any factual allegations.

54. ADMIT that the Supreme Court vacated the Fifth Circuit's opinion in *Fisher v. University of Texas at Austin*, 570 U.S. 297 (2013) ("*Fisher I*") in 2013, but otherwise Paragraph 54 of the Amended Complaint contains conclusions of law, which require no response. To the extent a response is required, Defendants DENY SFFA's characterization of *Fisher I*—the opinion speaks for itself.

55. DENY that the first sentence of Paragraph 55 of the Amended Complaint accurately quotes portions of the Supreme Court's decision in *Fisher I*. The quoted sentence actually reads: "Strict scrutiny requires the university to demonstrate with clarity that its 'purpose or interest is both

constitutionally permissible and substantial, and that its use of the classification is necessary ... to the accomplishment of *its* purpose.'"  *Id.* at 309.  ADMIT that the second sentence accurately quotes portions of the Supreme Court's decision in *Fisher I* but otherwise DENY as to SFFA's characterization—the opinion speaks for itself.

56.  ADMIT that Paragraph 56 of the Amended Complaint quotes a portion of Justice Scalia's concurring opinion in *Fisher I* but otherwise DENY as to SFFA's characterization—the opinion speaks for itself.

57.  ADMIT that Paragraph 57 of the Amended Complaint quotes a portion of Justice Thomas's concurring opinion in *Fisher I* but otherwise DENY as to SFFA's characterization—the opinion speaks for itself.

58.  Paragraph 58 of the Amended Complaint contains conclusions of law, which require no response.  To the extent a response is required, Defendants DENY SFFA's characterization of Justice Ginsburg's dissent in *Fisher I*—the opinion speaks for itself.

59.  ADMIT Paragraph 59 quotes portions of UT Austin's responsive briefing to petitioner's writ of certiorari in *Fisher II* but otherwise DENY as to SFFA's characterization—the filing speaks for itself.

60.  ADMIT the allegations contained in Paragraph 60 of the Amended Complaint to the extent it may contain any factual allegations.

61.  ADMIT Paragraph 61 quotes portions of the Supreme Court's decision in *Fisher II* but otherwise DENY as to SFFA's characterization—the opinion speaks for itself.

62.  ADMIT Paragraph 62 quotes portions of the Supreme Court's decision in *Fisher II* but otherwise DENY as to SFFA's characterization—the opinion speaks for itself.

63. ADMIT Paragraph 63 quotes portions of the Supreme Court's decision in *Fisher II* but otherwise DENY as to SFFA's characterization—the opinion speaks for itself.

64. ADMIT that Paragraph 64 of the Amended Complaint accurately quotes a portion of Justice Thomas's dissent in *Fisher II* but otherwise DENY as to SFFA's characterization—the opinion speaks for itself.

65. ADMIT that Paragraph 65 of the Amended Complaint quotes a portion of Justice Thomas's dissent in *Fisher II*.

66. Paragraph 66 of the Amended Complaint contains conclusions of law, which require no response.  To the extent a response is required, Defendants DENY SFFA's characterization of Justice Alito's dissent in *Fisher II*—the opinion speaks for itself.

67. ADMIT that Paragraph 67 of the Amended Complaint quotes a portion of Justice Alito's dissent in *Fisher II*.

### F.    The Kroll Report

68. ADMIT that the first sentence of Paragraph 68 quotes portions of UT Austin's self-description of its admissions process.   DENY the remaining allegations contained in Paragraph 68 of the Amended Complaint.

69. DENY the allegations contained in Paragraph 69 of the Amended Complaint.

70. DENY the allegations contained in Paragraph 70 of the Amended Complaint.

71.  DENY the allegations contained in Paragraph 71 of the Amended Complaint.

72. DENY the allegations contained in Paragraph 72 of the Amended Complaint.

73.   ADMIT the allegations contained in the Paragraph 73 of the Amended Complaint to the extent it may contain any factual allegations, but DENY SFFA's characterization of *Fisher II*—the opinion speaks for itself.

74.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 74 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

75.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 75 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

76.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 76 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

77.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 77 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

78.   DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 78 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

79.   DENY the allegations contained in Paragraph 79 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

80.   DENY the allegations contained in Paragraph 80 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

81. DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 81 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

82. DENY the allegations contained in Paragraph 82 of the Amended Complaint.

83. DENY the allegations contained in Paragraph 83 of the Amended Complaint.

84. DENY the allegations contained in Paragraph 84 of the Amended Complaint.

85. ADMIT the allegations contained in the last sentence of Paragraph 85 of the Amended Complaint but DENY the remaining allegations and characterizations in the paragraph.

### G.      Post-*Fisher II*

86. DENY the allegations contained in Paragraph 86 of the Amended Complaint to the extent the term "to use" race means that race is used a preference or mechanical plus-factor, otherwise ADMIT.

87. ADMIT that Paragraph 87 quotes portions of statements by former UT Austin President Gregory Fenves.

88. ADMIT that UT Austin released its UDIAP in March 2017 but otherwise DENY SFFA's remaining characterization of the UDIAP contained in Paragraph 88 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

89. ADMIT that the majority of UT Austin's entering freshman class is admitted through the Top Ten Percent Plan and non-white but otherwise DENY SFFA's characterization of the UDIAP contained in Paragraph 89 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

90.   DENY the allegations in Paragraph 90, including SFFA's characterization of the UDIAP.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

91.   ADMIT that applicants to UT Austin for first-year undergraduate admission may select from among the racial categories appearing in the ApplyTexas and Coalition for College application forms; otherwise DENY the remaining allegations contained Paragraph 91 of the Amended Complaint.

92.   DENY the allegations contained Paragraph 92 of the Amended Complaint.

93.   ADMIT the allegations contained in the Paragraph 93 of the Amended Complaint.

94.   ADMIT the allegations contained in the Paragraph 94 of the Amended Complaint.

95.   ADMIT that Paragraph 95 of the Amended Complaint quotes portions of Section 51.803(k)(1) of the Texas Education Code, but otherwise the remaining allegations in Paragraph 95 state a conclusion of law, which requires no response.

96.   DENY the allegations contained Paragraph 96 of the Amended Complaint.

97.   ADMIT that UT Austin reported "racial/ethnic" status as a factor that was "considered" in the admissions process during the identified years and that it listed some but not all factors as "very important" during those years but deny the remaining allegations and characterizations in Paragraph 97.

98.  ADMIT that UT Austin reports that all factors in its admission decisions are "very important" but DENY the remaining allegations and characterizations in Paragraph 98.

## IV.   Plaintiff's Proposed Alternatives
### A.   Combination of the Top Ten Percent Plan and Race-Neutral Holistic Admissions

99.      DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 99 of the Amended Complaint

---

100.     DENY the allegations and accuracy of the data contained in Paragraph 100 of the Amended Complaint, including that Plaintiff's use of numbers rounded to the tens place omits significant digits and fails to precisely reflect admissions data.

101.     DENY the allegations contained in Paragraph 101 of the Amended Complaint.

102.     DENY the allegations contained in Paragraph 102 of the Amended Complaint.

103.     DENY the allegations and accuracy of the data contained in Paragraph 103 of the Amended Complaint.

104.     DENY the allegations contained in Paragraph 104 of the Amended Complaint.

105.     DENY the allegations contained in Paragraph 105 of the Amended Complaint.

106.     DENY the allegations and accuracy of the data contained in Paragraph 106 of the Amended Complaint, including that Plaintiff's use of numbers rounded to the tens place omits significant digits and fails to precisely reflect admissions data.

107.     DENY the allegations contained in Paragraph 107 of the Amended Complaint.

108.     DENY the allegations contained in Paragraph 108 of the Amended Complaint.

109.     DENY the allegations and accuracy of the data contained in Paragraph 109 of the Amended Complaint, including that Plaintiff's use of numbers rounded to the tens place omits significant digits and fails to precisely reflect admissions data.

110.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the referenced hypothetical alternative, and DENY the allegations contained in Paragraph 110 of the Amended Complaint, including with respect to its characterizations and implications.

111.     DENY the allegations contained in Paragraph 111 of the Amended Complaint.

112.     DENY the allegations contained in Paragraph 112 of the Amended Complaint.

**B.     Additional Race-Neutral Alternatives**

113.     ADMIT the allegations contained in Paragraph 113 of the Amended Complaint except to the use of the term "race-neutral."

114.     DENY that UT Austin could achieve the goals of its compelling government intertest in student body diversity under the hypothetical referenced in Paragraph 114 of the Amended Complaint, and DENY the characterizations and implications in Paragraph 114.

115.     DENY that UT Austin could achieve the goals of its compelling government intertest in student body diversity under the hypothetical referenced in Paragraph 115 of the Amended Complaint, and DENY the characterizations and implications in Paragraph 115.

116.     DENY that UT Austin could achieve the goals of its compelling government intertest in student body diversity under the hypothetical referenced in Paragraph 116 of the Amended Complaint, and DENY the characterizations and implications in Paragraph 116.

117.     DENY the allegations contained in Paragraph 117 of the Amended Complaint, including with respect to its characterizations and implications.

**1.     Greater Use of Non-Racial Preferences**

118.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations regarding unspecified colleges and universities in Paragraph 118 of the Amended Complaint.

119.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 119 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

120.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 120 of the Amended Complaint.

121.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 121 of the Amended Complaint.

122.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 122 of the Amended Complaint.

123.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 123 of the Amended Complaint.

124.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 124 of the Amended Complaint.

125.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 125 of the Amended Complaint.

126.     DENY the allegations contained in Paragraph 126 of the Amended Complaint.

127.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 127 of the Amended Complaint.

128.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations concerning unidentified studies contained in Paragraph 128 of the Amended Complaint.

129.     DENY the allegations and accuracy of the data contained in Paragraph 129 of the Amended Complaint, including that Plaintiff's use of numbers rounded to the tens place omits significant digits and fails to precisely reflect admissions data.

130.     DENY the allegations and accuracy of the data contained in Paragraph 130 of the Amended Complaint, including that Plaintiff's use of numbers rounded to the tens place omits significant digits and fails to precisely reflect admissions data.

131.     DENY the allegations contained in Paragraph 131 of the Amended Complaint, including with respect to its characterizations and implications.

### 2.     Greater Use of Financial Aid and Scholarships

132.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 132 of the Amended Complaint.

133.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 133 of the Amended Complaint.

134.     ADMIT the allegations contained in Paragraph 134 of the Amended Complaint.

135.     DENY the allegations contained in Paragraph 135 of the Amended Complaint.

136.     DENY the allegations contained in Paragraph 136 of the Amended Complaint.

### 3.     Increased Recruitment and Other Steps Designed to Encourage More Qualified Minority Students to Apply for Admission

137.     DENY that UT Austin could achieve the goals of its compelling government intertest in student body diversity under the hypothetical referenced in Paragraph 137 of the Amended Complaint, and DENY the characterizations and implications in Paragraph 137.

138.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 138 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

139.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 139 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

140.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 140 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

141.     ADMIT that UT reported the Texas Community College Fair numbers cited in Paragraph 141 of the Amended Complaint but DENY the characterization of those figures as reflecting a reduction in UT's recruitment efforts, which UT has improved and continues to improve.

142.     DENY the allegations contained in Paragraph 142 of the Amended Complaint.

### 4.     Elimination of Admissions Policies and Practices that Harm Minorities

143.     DENY the allegations contained in Paragraph 143 of the Amended Complaint.

144.     DENY the allegations contained in Paragraph 144 of the Amended Complaint. Additionally, Section 51.803 of the Texas Education Code prohibits any consideration of legacy status by UT Austin in first-time undergraduate admissions.  Tex. Educ. Code § 51.803(a-4).

145.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 145 of the Amended Complaint.

146.     DENY the allegations contained in Paragraph 146 of the Amended Complaint.

### 5.  Elimination of Harms Caused by Racial Preferences

147.    DENY the allegations contained in Paragraph 147 of the Amended Complaint, including with respect to its characterizations and implications.

148.    Paragraph 148 of the Amended Complaint states a conclusion of law, which requires no response.

149.    DENY the allegations contained in Paragraph 149 of the Amended Complaint.

150.    ADMIT that the identified students come from different cultures, experiences, and backgrounds but otherwise DENY the remaining allegations contained in Paragraph 150 of the Amended Complaint.

151.    DENY the allegations contained in Paragraph 151 of the Amended Complaint, including with respect to its characterizations and implications.

152.    DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 152 of the Amended Complaint, including with respect to its characterizations and implications.

153.    DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 153 of the Amended Complaint, including with respect to its characterizations and implications.

154.    DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 154 of the Amended Complaint, including with respect to its characterizations and implications.

155.    DENY the allegations contained in Paragraph 155 of the Amended Complaint, including with respect to its characterizations and implications.

156.      DENY the allegations contained in Paragraph 156 of the Amended Complaint.

157.      DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 157 of the Amended Complaint.

158.      DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 158 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

159.      DENY the allegations contained in Paragraph 159 of the Amended Complaint, including with respect to its characterizations and implications.

160.      DENY the allegations contained in Paragraph 160 of the Amended Complaint, including with respect to its characterizations and implications.

161.      DENY the allegations contained in Paragraph 161 of the Amended Complaint, including with respect to its characterizations and implications.

162.      DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 162 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

163.      DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 163 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

164.       DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 164 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

165.     DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in Paragraph 165 of the Amended Complaint.  To the extent the allegations are based upon the referenced document, the document speaks for itself.

166.     DENY the allegations contained in Paragraph 166 of the Amended Complaint.

167.     DENY the allegations contained in Paragraph 167 of the Amended Complaint.

**V.     Racial Balancing Allegations**

168.     DENY the allegations contained in Paragraph 168 of the Amended Complaint.

169.     DENY the allegations contained in Paragraph 169 of the Amended Complaint.

170.      DENY the allegations and accuracy of the data contained in Paragraph 170 of the Amended Complaint, including that Plaintiff's use of numbers rounded to the tens place omits significant digits and fails to precisely reflect admissions and enrollment data.

171.     DENY the allegations contained in Paragraph 171 of the Amended Complaint.

172.     DENY the allegations contained in Paragraph 172 of the Amended Complaint.

173.     DENY the allegations contained in Paragraph 173 of the Amended Complaint.

174.     DENY the allegations contained in Paragraph 174 of the Complaint Amended Complaint.

175.     DENY the allegations contained in Paragraph 175 of the Amended Complaint.

**VI.     Governing Law**

176.     ADMIT that Paragraph 176 accurately quotes portions of the Fourteenth Amendment.

177.    ADMIT that Paragraph 177 accurately quotes portions Section 1981 of Title 42 of the U.S. Code.

178.    ADMIT that Paragraph 178 quotes portions of Section 1983 of Title 42 of the U.S. Code.

179.    ADMIT that Paragraph 179 quotes portions of Title VI of the Civil Rights Act of 1964.

180.    Paragraph 180 of the Amended Complaint states a conclusion of law, which requires no response.

181.    Paragraph 181 of the Amended Complaint states a conclusion of law, which requires no response.

182.    Paragraph 182 of the Amended Complaint states a conclusion of law, which requires no response.

183.    Paragraph 183 of the Amended Complaint states a conclusion of law, which requires no response.

184.    Paragraph 184 of the Amended Complaint states a conclusion of law, which requires no response.

185.    Paragraph 185 of the Amended Complaint states a conclusion of law, which requires no response.

186.    Paragraph 186 of the Amended Complaint states a conclusion of law, which requires no response.

187.    Paragraph 187 of the Amended Complaint states a conclusion of law, which requires no response.

188.     Paragraph 188 of the Amended Complaint states a conclusion of law, which requires no response.

189.     Paragraph 189 of the Amended Complaint states a conclusion of law, which requires no response.

190.     Paragraph 190 of the Amended Complaint states a conclusion of law, which requires no response.

191.     Paragraph 191 of the Amended Complaint states a conclusion of law, which requires no response.

192.     Paragraph 192 of the Amended Complaint states a conclusion of law, which requires no response.

193.     Paragraph 193 of the Amended Complaint states a conclusion of law, which requires no response.

194.     Paragraph 194 of the Amended Complaint states a conclusion of law, which requires no response.

195.     Paragraph 195 of the Amended Complaint states a conclusion of law, which requires no response.

196.     Paragraph 196 of the Amended Complaint states a conclusion of law, which requires no response.

197.     Paragraph 197 of the Amended Complaint states a conclusion of law, which requires no response.

## VII.   Claims for Relief

198.     DENY the allegations contained in Paragraph 198 of the Amended Complaint.

## Count I

199.     REPEAT and REALLEGE the responses to every allegation set forth in the preceding paragraphs in response to the allegations contained in Paragraph 199 of the Amended Complaint.

200.     DENY the allegations contained in Paragraph 200 of the Amended Complaint.

201.     DENY the allegations contained in Paragraph 201 of the Amended Complaint.

202.     DENY the allegations contained in Paragraph 202 of the Amended Complaint.

203.      DENY the allegations contained in Paragraph 203 of the Amended Complaint.

204.     DENY the allegations contained in Paragraph 204 of the Amended Complaint.

205.     DENY that Plaintiff is entitled to a declaratory judgment, permanent injunction, or any other relief whatsoever.

206.     Paragraph 206 of the Amended Complaint states a conclusion of law, which requires no response.

207.     DENY that Plaintiff is entitled to attorneys' fees, costs, or any other relief whatsoever.

## Count II

208.     REPEAT and REALLEGE the responses to every allegation set forth in the preceding paragraphs in response to the allegations contained in Paragraph 208 of the Amended Complaint.

209.     DENY the allegations contained in Paragraph 209 of the Amended Complaint.

210.     DENY the allegations contained in Paragraph 210 of the Amended Complaint, to the extent it may contain any factual allegations.

211.     DENY the allegations contained in Paragraph 211 of the Amended Complaint.

212.     DENY the allegations contained in Paragraph 212 of the Amended Complaint.

213.     DENY the allegations contained in Paragraph 213 of the Amended Complaint.

214.     DENY the allegations contained in Paragraph 214 of the Amended Complaint.

215.     DENY the allegations contained in Paragraph 215 of the Amended Complaint.

216.     DENY that Plaintiff is entitled to a declaratory judgment, permanent injunction, or any other relief whatsoever.

217.     Paragraph 217 of the Amended Complaint states a conclusion of law, which requires no response.

218.     DENY that Plaintiff is entitled to attorneys' fees, costs, or any other relief whatsoever.

**Count III**

219.      REPEAT and REALLEGE the responses to every allegation set forth in the preceding paragraphs in response to the allegations contained in Paragraph 219 of the Amended Complaint.

220.     DENY the allegations contained in Paragraph 220 of the Amended Complaint.

221.     DENY the allegations contained in Paragraph 221 of the Amended Complaint, to the extent it may contain any factual allegations.

222.     DENY the allegations contained in Paragraph 222 of the Amended Complaint.

223.     DENY the allegations contained in Paragraph 223 of the Amended Complaint.

224.     DENY the allegations contained in Paragraph 224 of the Amended Complaint.

225.     DENY the allegations contained in Paragraph 225 of the Amended Complaint.

226.     DENY the allegations contained in Paragraph 226 of the Amended Complaint.

227.     DENY that Plaintiff is entitled to a declaratory judgment, permanent injunction, or any other relief whatsoever.

228.     Paragraph 228 of the Amended Complaint states a conclusion of law, which requires no response.

229.     DENY that Plaintiff is entitled to attorneys' fees, costs, or any other relief whatsoever.

## Count IV

230.     REPEAT and REALLEGE the responses to every allegation set forth in the preceding paragraphs in response to the allegations contained in Paragraph 230 of the Amended Complaint.

231.     DENY the allegations contained in Paragraph 231 of the Amended Complaint.

232.     DENY the allegations contained in Paragraph 232 of the Amended Complaint, to the extent it may contain any factual allegations.

233.     DENY the allegations contained in Paragraph 233 of the Amended Complaint, to the extent it may contain any factual allegations.

234.     DENY the allegations contained in the first five sentences Paragraph 234 of the Amended Complaint, to the extent it may contain any factual allegations. DENY KNOWLEDGE

OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in the remainder of Paragraph 234.  To the extent the allegations in the remainder of Paragraph 234 are based upon the referenced document, the document speaks for itself.

235.      DENY the allegations contained in Paragraph 235 of the Amended Complaint.

236.      DENY the allegations contained in the first two sentences of Paragraph 236 of the Amended Complaint.  DENY KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations contained in the remainder of Paragraph 236.  To the extent the allegations in the remainder of Paragraph 236 are based upon the referenced document, the document speaks for itself.

237.      DENY the allegations contained in Paragraph 237 of the Amended Complaint.

238.      DENY the allegations contained in Paragraph 238 of the Amended Complaint.

239.      DENY the allegations contained in Paragraph 239 of the Amended Complaint.

240.      DENY the allegations contained in Paragraph 240 of the Amended Complaint.

241.      DENY the allegations contained in Paragraph 241 of the Amended Complaint.

242.      DENY that Plaintiff is entitled to a declaratory judgment, permanent injunction, or any other relief whatsoever.

243.      Paragraph 243 of the Amended Complaint states a conclusion of law, which requires no response.

244.      DENY that Plaintiff is entitled to attorneys' fees, costs, or any other relief whatsoever.

DENY that Plaintiff is entitled to any of the relief requested in the Prayer for Relief (a)–(f) of the Amended Complaint.

## **<u>Affirmative Defenses</u>**

1.   SFFA has failed to state a claim upon which relief can be granted.

2.   SFFA's claims are barred by sovereign immunity under the Eleventh Amendment of the United States Constitution.

3.   SFFA's claims fail for lack of subject matter jurisdiction, including for lack of standing.

4.   SFFA's claims are barred by res judicata and collateral estoppel.

5.   Defendants reserve the right to assert additional affirmative defenses as they become known through discovery.

Defendants therefore pray that this Court dismiss this case for lack of subject matter jurisdiction, or in the alternative, enter judgment for Defendants and against Plaintiff and award Defendants their costs of court and all relief, whether at law or in equity, to which they may show themselves to be justly entitled.

Respectfully Submitted,

GRAVES DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2700
Austin, Texas  78701
(512) 480-5725 (phone)
(512) 539-9938 (fax)

By:  /s/ Matthew C. Powers
    John J. McKetta, III
    Texas State Bar No. 13711500
    mmcketta@gdhm.com
    Matthew C. Powers
    Texas State Bar No. 24046650
    mpowers@gdhm.com
    William Christian
    State Bar No. 00793505
    wchristian@gdhm.com
    Marianne W. Nitsch
    Texas State Bar No. 24098182
    mnitsch@gdhm.com

    **ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

 I hereby certify that a true and correct copy of the foregoing has been served on counsel of

record for Plaintiff via the Court's electronic filing and service system and also via email service as

indicated below, on this the 30th day of November, 2020, as follows:

William S. Consovoy
J. Michael Connolly
Cameron T. Norris
Steven C. Begakis
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
will@consovoymccarthy.com
mike@ consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com

       /s/ Matthew C. Powers
       Matthew C. Powers