## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, <br><br> *Plaintiff*, <br><br> v. <br><br> UNIVERSITY OF TEXAS AT AUSTIN; JAMES B. MILLIKEN, Chancellor of the University of Texas System in his Official Capacity; STEVEN LESLIE, Executive Vice Chancellor for Academic Affairs of the University of Texas System in his Official Capacity; DANIEL H. SHARPHORN, Vice Chancellor and General Counsel of the University of Texas System in his Official Capacity; JAY HARTZELL, Interim President of the University of Texas at Austin in his Official Capacity; BOARD OF REGENTS OF THE TEXAS STATE UNIVERSITY SYSTEM; DAVID J. BECK, CHRISTINA MELTON CRAIN, KEVIN P. ELTIFE, R. STEVEN HICKS, JODIE LEE JILES, JANIECE LONGORIA, NOLAN PEREZ, KELCY L. WARREN, AND JAMES C. "RAD" WEAVER, as Members of the Board of Regents in Their Official Capacities; DANIEL JAFFE, Interim Executive Vice President and Provost; RACHELLE HERNANDEZ, Senior Vice Provost for Enrollment Management and Student Success; and MIGUEL WASIELEWSKI, Executive Director for Office of Admissions, <br><br> *Defendants.* | Case No. 1:20-cv-00763-RP |

## REPLY MEMORANDUM IN SUPPORT OF
## PROPOSED DEFENDANT-INTERVENORS' MOTION TO INTERVENE

SFFA concedes that its lawsuit against University of Texas at Austin ("UT") raises issues of "national importance," yet it opposes intervention of the very students, student organizations, and future applicants (collectively, "Students") that will be most harmed if SFFA prevails. Moreover, SFFA does not merely seek to enjoin UT's race-conscious admissions policy (the "Policy") as plaintiffs did in *Hopwood* and *Fisher*. Here, SFFA invited this intervention by seeking to eliminate race-conscious admissions programs altogether and prohibit admissions officers from becoming *aware* of an applicant's race, thus directly implicating Students' First Amendment rights in a way not present in *Hopwood*, *Fisher*, or *Harvard* (as a private college). And unlike in *Harvard*, UT has not opposed Students' motion, deflating SFFA's arguments regarding prejudice. Accordingly, Students meet the requirements for intervention as of right. Students alternatively urge for permissive intervention based on their unique ability to develop relevant evidence in this case of "national importance," and they are willing to structure their intervention accordingly.

## I.     MOVANTS ARE ENTITLED TO INTERVENE AS OF RIGHT.

**Protectable Interest.** The Fifth Circuit has held that an interest may satisfy Rule 24 "even if the intervenor does not have an enforceable legal entitlement." *Texas v. United States*, 805 F.3d 653, 659-60 (5th Cir. 2015). Accordingly, SFFA's suggestion that Students' protectable interest in this litigation must be a legally enforceable right, *see* ECF No. 29 ("Opp.") at 2-3, is simply wrong, and SFFA's discussion of *Schuette v. BAMN* is irrelevant. The pertinent question is whether Students' identified interests are "of the type that the law deems worthy of protection." *Texas*, 805 F.3d at 659. Students' "compelling" interests in the benefits that flow from a diverse student body plainly meet this standard. *See* ECF No. 25 ("Mem.") at 6.

But Students' interests do not end there. SFFA's unprecedented proposed remedy to bar UT admissions officers from *being aware or learning* the race or ethnicity of any applicant directly

impairs Students' constitutionally protected right to free expression in the application process. *See* Mem. at 11. Further, the Policy is necessary to counteract the discriminatory effects of UT's historical and ongoing reliance on standardized SAT test scores, *id.* at 12-13, a distinct argument from the one considered in *Hopwood*. Students have concrete, protectable interests in this litigation that are distinguishable from those of the movants in the cases relied upon by SFFA.

SFFA's arguments otherwise are unpersuasive. SFFA implicitly acknowledges that Texas NAACP's high school members have a personalized interest by focusing its criticism on the "UT seniors and two UT student organizations." Opp. at 3-4. But even those students' and organizations' declarations clearly reflect their specific, discrete interests in preservation of the Policy. The individual students have prior ties to Texas and identify with historically marginalized groups who will be the most harmed by the race-blind system that SFFA demands. Mem. at 3-5, 8-9. The all-but-certain drop in diversity will likewise have concrete effects on the Black Students Alliance, which relies on high numbers of Black students to carry out its mission, and on the Texas Orange Jackets, which depends on membership diversity. ECF No. 24-11 ¶ 3; ECF No. 24-12 ¶¶ 5, 13-16. Indeed, the First Circuit in *Harvard* relied on similar student testimony in rejecting SFFA's race-blind alternative that would depress Black student enrollment because of the harm it would cause to other students. *See* 980 F.3d 157, 195 & n.33 (1st Cir. 2020).

SFFA's attempts to distinguish *Brumfield* and *Black Fire Fighters* on the basis that they involved efforts to "divest concrete benefits from the intervenors," are unavailing. Opp. at 4. The threatened benefits there were not any more concrete than those at issue here: both cases involved threats to *opportunities,* not guaranteed benefits. *See also Texas*, 805 F.3d at 659-60. The same threats loom here: SFFA's efforts to prohibit race in admissions jeopardizes Students' access to Texas's flagship university and related educational opportunities.

**Impairment.** SFFA also wrongly asserts that Students' interests will "not be impaired" because several of them "will graduate before this case has even gone to trial." Opp. at 4. SFFA offers no support for the notion that movants must prove that their interest will persist through a projected trial date. Nor could they. And SFFA ignores that Students include not only current UT students but also organizations of current students and future applicants to UT undergraduate and graduate programs who need to share their racialized experiences. *See* ECF No. 24-10, ¶ 10, Ex. N, McBride Supp. Decl. ¶¶ 6-9; Ex. O, Kufour Supp. Decl. ¶¶ 6-9; Ex. P, BSA Supp. Decl. ¶ 5. SFFA also ignores the potential negative *stare decisis* effects, which this Circuit has held supports intervention. *See, e.g.*, *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 829 (5th Cir. 1967).

**Inadequate representation.** The Fifth Circuit's presumption of adequate representation by governmental entities does not apply here. First, it applies only where the entity is charged *by law* with representing the intervenors' interests. *See Texas*, 805 F.3d at 661. UT is not obligated to defend Students' rights to free expression and organizational diversity. But more importantly, as described in Students' brief at pp.11-14, and just as SFFA is arguing in support of its intervention in *United States v. Yale Univ.*, No. 20-cv-1534 (D. Conn.), ECF Nos. 5, 40, the interests of UT and Students do not "align precisely." *Brumfield v. Dodd*, 749 F.3d 399, 345 (5th Cir. 2014).

In any event, Students have rebutted any presumption by showing adversity of interests with UT. *See Texas*, 805 F.3d at 662 (adequate representation rebuttable by establishing adversity); *Brumfield*, 749 F.3d at 346 (finding adversity of interest where parents' interests—in vouchers— were more narrow and personalized than the State's countervailing interests, and parents took legal position "different from that of the state"). Unlike in *Hopwood* and *Fisher*, SFFA requests a nationwide injunction barring consideration of race and awareness of race in admissions, which, given the First Amendment considerations at issue, Students are uniquely positioned to counter.

*Compare* Am. Compl. ¶ 244, *with Fisher v. UT*, 570 U.S. 297, 315 (2013) (Scalia, J., concurring), and *Hopwood v. Texas*, 78 F.3d 932, 955 (5th Cir. 1996); *see also* Mem. at 10-11. The arguments presented in *Hopwood* and *Fisher* are also revealing: in over a decade of litigation, UT did not develop Students' distinct argument that current racial tensions and discrimination tied to UT's legacy of segregation—including continued reliance on racially biased standardized test scores— necessitate race-conscious admissions. Finally, the Supreme Court's more recent decisions in *Fisher* and *Grutter* clarifying the lawful contours of race-conscious admissions magnified the significance of subjective factors related to campus climate, feelings of tokenization, and how alternatives will impact applicant behavior. Students are best positioned to offer this evidence. Indeed, court rulings since *Fisher* have recognized that student testimony bears on whether race-conscious admission policies satisfy the Supreme Court's standards. *See SFFA v. Harvard*, 397 F. Supp. 3d 126, 178, 194-95, (D. Mass. 2019), *aff'd by* 980 F.3d 157, 195 & n.33, 200-01 & n.40.

**Timeliness.** SFFA's claim of untimeliness also fails. The clock "does not run from the date…of the existence of the case," as SFFA suggests, but rather from the date the intervenor became aware her "[stake] would no longer be protected by the existing parties." *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376-77 (5th Cir. 2001). Further, prejudice under this element is "'not [measured by] the inconvenience to the existing parties,' but rather whether entry is delayed." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994). Students' timing—within weeks of UT's Amended Answer and two months of UT's original Answer—is plainly reasonable under Fifth Circuit law and causes no prejudice to the parties. *See id.* at 1205 (intervention timely two years after litigation began, two months after interest learned); *Ass'n of Prof'l Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir. 1986) (five months between interest learned and intervention); *see also SFFA v. UNC*, 319 F.R.D. 490, 498 (M.D.N.C. 2017) (intervention three months after Answer).

Students did not delay their Intervention, and they will adapt to any scheduling order entered here.

## II. ALTERNATIVELY, THIS COURT SHOULD GRANT PERMISSIVE INTERVENTION INSTEAD OF RELEGATING MOVANTS TO AMICI.

Alternatively, this Court should grant permissive intervention. SFFA's primary basis for opposing permissive intervention is that it would cause undue delay. Opp. at 9-10. But as explained in their opening brief, Students can and will streamline their contributions. Students will participate in depositions already anticipated by the parties, and will otherwise contribute evidence primarily through limited fact and expert testimony and declarations. This approach proved effective in SFFA's case challenging UNC's race-conscious admission plan. There, with student-intervenors similarly represented by the Lawyers' Committee for Civil Rights, intervenors did not disrupt discovery and the parties concluded trial in less than two weeks. No. 14-cv-954, ECF 219 at 6 (M.D.N.C. Oct. 20, 2020) (trial protocol; actual trial lasted 8 days). Students, here, are willing to limit their discovery requests, and if necessary, tailor the topics upon which they propound and provide discovery, as well as adhere to any other court protocols.

*Amicus curiae* status is insufficient to protect Students' interests. SFFA is wrong to assert that Students "are chiefly concerned with matters of law, policy, and historical fact." Opp. at 10. Students are concerned with presenting evidence, which *amicus* status ordinarily does not allow.

SFFA relies heavily on dicta from *Harvard*, where different considerations applied. There, the university opposed Students' participation, which UT has not done. This case also involves access to a publicly-funded, flagship state institution and virtually all Students are Texas residents. These circumstances have a stronger parallel with *UNC*, where SFFA's arguments against intervention failed because "the result of this litigation will have a direct and significant impact on North Carolinians' access to UNC–Chapel Hill." 319 F.R.D. at 497. The same is true here.

For the reasons stated here and in ECF No. 25, Students respectfully request intervention.

So dated this 30th day of December, 2020.

*/s/ Brian C. Pidcock*
Brian C. Pidcock
State Bar No. 24074895
**HUNTON ANDREWS KURTH LLP**
600 Travis St.
Houston, TX 77002
Tel. (713) 220-4200
brianpidcock@HuntonAK.com

David Hinojosa*
State Bar No. 24010689
Genevieve Bonadies Torres*
**LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW**
1500 K Street, NW, Suite 900
Washington, DC 20005
Tel. (202) 662-8600
dhinojosa@lawyerscommittee.org
gbonadies@lawyerscommittee.org

Ryan P. Phair*
Carter C. Simpson*
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037
Tel. (202) 955-1500
rphair@huntonak.com
csimpson@huntonak.com

Alan R. Kabat*
Bernabei & Kabat, PLLC
1400 - 16th Street, N.W., Suite 500
Washington, D.C. 20036-2223
Tel. (202) 745-1942 (ext. 242)
Kabat@BernabeiPLLC.com

*Pro hac vice* motion pending

*Attorneys for proposed Student and
Organizational Defendant-Intervenors*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served on counsel of

record for Plaintiff via the Court's electronic filing and service system and also via email service

as indicated below, on this the 30th day of December, 2020, as follows:

William S. Consovoy
Cameron T. Norris
Steven C. Begakis
**CONSOVOY MCCARTHY PLLC**
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
will@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com

John J. McKetta, III
Matthew C. Powers
William Christian
Marianne W. Nitsch
**GRAVES DOUGHERTY, HEARON & MOODY, P.C.**
401 Congress Avenue, Suite 2700
Austin, Texas 78701
(512) 480-5725 (phone)
(512) 539-9938 (fax)
mmcketta@gdhm.com
mpowers@gdhm.com
wchristian@gdhm.com
mnitsch@gdhm.com

*/s/ Brian C. Pidcock*
Brian C. Pidcock
