IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| UNIVERSITY OF TEXAS AT AUSTIN; | § | |
| JAMES B. MILLIKEN, *Chancellor of the* | § | |
| *University of Texas System in his Official Capacity*; | § | |
| STEVEN LESLIE, *Executive Vice Chancellor* | § | |
| *for Academic Affairs of the University of Texas System* | § | |
| *in his Official Capacity*; DANIEL H. | § | |
| SHARPHORN, *Vice Chancellor and* | § | |
| *General Counsel of the University of Texas* | § | 1:20-CV-763-RP |
| *System in his Official Capacity*; | § | |
| JAY HARTZELL, *President of the* | § | |
| *University of Texas at Austin in his* | § | |
| *Official Capacity*; BOARD OF REGENTS | § | |
| OF THE UNIVERSITY OF TEXAS | § | |
| SYSTEM; DAVID J. BECK, CHRISTINA | § | |
| MELTON CRAIN, KEVIN P. ELTIFE, R. | § | |
| STEVEN HICKS, JODIE LEE JILES, | § | |
| JANIECE LONGORIA, NOLAN PEREZ, | § | |
| KELCY L. WARREN, and JAMES C. | § | |
| "RAD" WEAVER, *as Members of the Board* | § | |
| *of Regents in Their Official Capacities*; | § | |
| DANIEL JAFFE, *Interim Executive Vice* | § | |
| *President and Provost*; RACHELLE | § | |
| HERNANDEZ, *Senior Vice Provost for* | § | |
| *Enrollment Management and Student* | § | |
| *Success*; and MIGUEL WASIELEWSKI, | § | |
| *Executive Director for Office of Admissions*, | § | |
| | § | |
| Defendants. | § | |

## **ORDER**

Before the Court is a Motion to Intervene filed by eight University of Texas at Austin

("UT") students of color ("student Movants"), [1] and three organizations—the Texas National

---

[1] Student Movants are Adaylin Alvarez, Morgan Bennett, Brianna Mallorie McBride, Liz Kufour, Desiree
Ortega-Santiago, Nima Rahman, Alexandra Trujillo, and Rosaleen Xiong.

Association for the Advancement of Colored People ("Texas NAACP"), the Black Student Alliance

("BSA"), and the Texas Orange Jackets (together, "organizational Movants"). (Dkt. 24). Plaintiff

Students for Fair Admissions, Inc. ("SFFA") and Movants filed briefing related to the motion.

(Dkts. 25, 29, 32). Having considered the parties' arguments, the evidence, and the relevant law, the

Court will grant the motion to intervene.

## I. BACKGROUND

SFFA brought this action against Defendants,[2] all associated with UT in an official capacity,

challenging UT's undergraduate race-conscious admissions policy. (Am. Compl., Dkt. 13, at 1–2).

SFFA asserts causes of action under the Equal Protection Clause of the United States Constitution

and Title VI of the Civil Rights Act of 1964. (*Id.* at 2). The Movants seeking to intervene as

Defendants are eight UT students and three organizations:

1. Movant Adaylin Alvarez is a senior studying English and Biology who identifies as

Mexican American. (Dkt. 24-2, ¶¶ 2-3).

2. Movant Morgan Bennett is a senior studying Radio, Television and Film who identifies as

Black. (Dkt. 24-3, ¶¶ 2-3).

3. Movant Liz Kufour is a senior double majoring in Business Management and African &

African Diaspora studies who identifies as a Black, Ghanaian American. (Dkt. 24-4, ¶¶ 2-3).

---

[2] Defendants are the University of Texas at Austin ("UT Austin"), the Board of Regents of the University of Texas System ("the UT System Board of Regents"), James B. Milliken, Chancellor of the University of Texas System in his Official Capacity; Steven Leslie, Executive Vice Chancellor for Academic Affairs of the University of Texas System in his Official Capacity; Daniel H. Sharphorn, Vice Chancellor and General Counsel of the University of Texas System in his Official Capacity; Jay Hartzell, President of the University of Texas at Austin in his Official Capacity; David J. Beck, Christina Melton Crain, Kevin P. Eltife, R. Steven Hicks, Jodie Lee Jiles, Janiece Longoria, Nolan Perez, Kelcy L. Warren, and James C. "Rad" Weaver, as Members of the Board of Regents in their Official Capacities; Daniel Jaffe, Interim Executive Vice President and Provost; Rachelle Hernandez, Senior Vice Provost for Enrollment Management and Student Success; and Miguel Wasielewski, Executive Director for Office of Admissions.

4. Movant Brianna McBride is a senior double majoring in Communications and Leadership, and Government who identifies as African American. (Dkt. 25-5, ¶¶ 2-3).

5. Movant Desiree Ortega is a senior studying Neuroscience and Mexican American Studies at UT who identifies as Mexican American, Puerto Rican American, and Latina. (Dkt. 25-6, ¶¶ 2-3).

6. Movant Nima Rahman is a senior double majoring in Neuroscience and Plan II who identifies as an Asian American, Pakistani American, and Muslim woman. (Dkt. 25-7, ¶¶ 2-3).

7. Movant Alexandra Trujillo is a senior majoring in Advertising, with minors in Business and in African and African Diaspora Studies, who identifies as Venezuelan and Latinx. (Dkt. 25-8, ¶¶ 2-3).

8. Movant Rosaleen Xiong is a senior majoring in Computer Science who identifies as Asian American. (Dkt. 25-9, ¶¶ 2-3).

Movant Texas NAACP coordinates the Texas branches of the NAACP, whose principal objectives include "achieving equal rights; eliminating racial prejudice; and seeking enactment and enforcement of federal, state, and local civil rights laws." (Decl. of Texas NAACP, Dkt. 24-10, ¶ 4). Texas NAACP has African American members who have applied or intend to apply to UT. (*Id.* at ¶ 10). Texas NAACP also has a chapter at UT that relies on Black students to carry out its mission. (*Id.* ¶¶ 13–14.).

Movant BSA is a student organization at UT that is "committed to uplifting and empowering the Black community at UT . . . with the ultimate goal of developing extraordinary leaders and promoting unity." (BSA Decl., Dkt. 11, ¶ 3). BSA hosts weekly programming and a new student orientation to help foster belonging and support the academic and leadership growth of its

3

members. (*Id.* ¶¶ 5–7). BSA states that it relies on sufficient Black enrollment to fulfill its mission

and build an inclusive campus. (*Id.*).

Movant Texas Orange Jackets is a student organization at UT that is a women's honorary

service organization and serves as the official host of UT. (Texas Orange Jackets Decl., Dkt. 24-12,

¶¶ 3-4). It states its members are women and nonbinary individuals of diverse racial and ethnic

backgrounds, including Black, Indigenous, Latinx, and Asian American backgrounds. (*Id.* ¶¶ 3, 7).

Texas Orange Jackets states that it seeks to "better UT, empower everyone to be leaders in their

communities, and promote four core tenets: service, leadership, scholarship, and community." (*Id.* ¶

3).

## II. DISCUSSION

Movants seek to intervene by right, or in the alternative, permissively. (Mot. Intervene, Dkt.

24). SFFA objects that movants should not be granted intervention by right or permissively. (Dkt.

29). For the following reasons, the Court finds that Movants are entitled to intervene by right. The

Court would also exercise its discretion to permit them to intervene permissively.

### A.  Intervention by Right

Intervention by right is governed by Federal Rule of Civil Procedure 24(a). To intervene by

right, the prospective intervenor either must be "given an unconditional right to intervene by a

federal statute," FED. R. CIV. P. 24(a)(1), or must meet each of the four requirements of Rule

24(a)(2):

> (1) the application for intervention must be timely; (2) the applicant must have an interest
> relating to the property or transaction which is the subject of the action; (3) the applicant
> must be so situated that the disposition of the action may, as a practical matter, impair or
> impede his ability to protect that interest; (4) the applicant's interest must be inadequately
> represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). "Although the movant bears the burden of

establishing its right to intervene, Rule 24 is to be liberally construed." *Id.* (internal quotation marks

omitted). "Federal courts should allow intervention where no one would be hurt and the greater

justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir.1994) (internal quotation

marks omitted). However, the Fifth Circuit has also cautioned courts to be "circumspect about

allowing intervention of right by public-spirited citizens in suits by or against a public entity for

simple reasons of expediency and judicial efficiency." *City of Hous. v. Am. Traffic Sols., Inc.*, 668 F.3d

291, 294 (5th Cir. 2012). Movants claim that they satisfy each of the requirements of Rule 24(a)(2),

while SFFA contends that none of the four requirements are met. The Court will consider each in

requirement in turn.

### 1.   Timeliness

First, Movants' motion to intervene is timely. Factors relevant to timeliness include (1) how long

the intervenor knew or should have known of their stake in the case; (2) prejudice, if any, the

existing parties may suffer because the intervenor failed to intervene earlier; (3) prejudice, if any, the

intervenor may suffer if not permitted to intervene; and (4) any unusual circumstances. *See Stallworth

v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977). "The timeliness inquiry is contextual" and "is

not limited to chronological considerations but is to be determined from all the circumstances."

*Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (internal

quotation marks omitted). The timeliness inquiry is "concerned only with the prejudice caused by

the applicants' delay, not that prejudice which may result if intervention is allowed." *Edwards v. City of

Houston*, 78 F.3d 983, 1002 (5th Cir. 1996).

Movants argue that their motion to intervene, filed on December 16, 2020, was filed "as

soon as it was apparent that UT could not adequately represent their stake in the case." (Dkt. 25, at

7). Movants filed their motion to intervene within two months of Defendants' answer and within

weeks of Defendants' amended answer. (Dkts. 11, 14). Movants further argue there is no prejudice

to the parties because discovery has not begun and the motion to intervene was filed before any

5

hearings had been held. (*Id.*). SFFA's only argument that parties would be prejudiced is that a scheduling order has already been entered after input from the parties. (Dkt. 29, at 9). However, it is unlikely that allowing Movants to intervene would disrupt the current scheduling order, (Dkt. 33), which was entered by the Court the week before this Order. The Court finds the motion to intervene was timely filed. *See Wal–Mart*, 834 F.3d at 565 ("Because [movant] sought intervention before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded, the [movant's] motion was timely"); *Ass'n of Prof'l Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir. 1986) (finding motion to intervene timely where five months passed between interest learned and intervention).

### 2.   Movants' Interest

Second, Movants assert they have a sufficient interest in the preservation of UT's race-conscious admissions policy. (Dkt. 25, at 7). Although "there is not any clear definition of the nature of the interest that is required for intervention of right," the key inquiry is whether the interest alleged is "legally protectable." *New Orleans Pub. Serv. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984). "[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Texas v. United States*, 805 F.3d at 659. A movant has a legally protectable interest if it is the beneficiary of the regulations at issue. *Wal−Mart*, 834 F.3d at 568−69; *Texas*, 805 F.3d at 660−61.

Movants argue they have a Rule 24(a)(2) interest in the "educational benefits that flow from a diverse student body." (Dkt. 25, at 7) (citing *Grutter v. Bollinger*, 539 U.S. 306, at 330–33 (2003); *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 310 (2013) ("Fisher I"); *Fisher v. Univ. of Texas at Austin*, 136 S. Ct. 2198, at 2210-11 (2016) ("Fisher II"); *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 306 (1978))).

Movants also argue they have a Rule 24(a)(2) interest as the beneficiaries of UT's race-conscious admissions policy. (Dkt. 25, at 8–9). Student movants state that they "experience the vast educational benefits that flow from a diverse student body resulting from" UT's admissions policy, such as learning from cross-racial interactions. (*Id.*; Alvarez Decl., Dkt. 24-2, ¶ 14; Bennett Decl., Dkt. 24-3, ¶ 15; Ortega Decl., Dkt. 24-7, ¶¶ 14, 19; Rahman Decl., Dkt. 24-8, ¶¶ 7, 9; Trujillo Decl., Dkt. 24-9, ¶ 9). Student movants also explain that reductions in racial diversity at UT, which they assert would result from changes to the admissions policy, would exacerbate the perception that UT is unwelcoming to students of color. (*See* Kufour Decl., Dkt. 24-4, ¶ 12; McBride Decl., Dkt. 24-5, ¶¶ 18–19; Xiong Decl., Dkt. 25-9, at ¶ 9).

Similarly, Organizational Movants attest that they have justiciable interests on behalf of their organizations and members, which would be harmed through the elimination of UT's race-conscious admissions policy. (Dkt. 25, at 9). Texas NAACP states that it relies on UT's policy to allow its high school members to share how racialized experienced have impacted them and to fully express their aspirations in their UT applications. (*Id.*; Dkt. 24-10, ¶¶ 9–11). Texas NAACP further states that UT's current admissions policy is important to allow its members to feel welcomed by UT and not be "isolated and alienated on UT's predominantly white campus." (*Id.*).

BSA explains that it relies on UT's admissions policy to create a diverse student body with a sufficient Black population from varied backgrounds to help make them feel safe at UT and foster academic and leadership growth. (Dkt. 25, at 10; Dkt. 24-11, ¶¶ 5–10). Texas Orange Jackets similarly states that it relies on a diverse student body to advance its core mission of making students feel welcome on the UT campus and that its members individually benefit from the diversity cultivated by UT's admissions policy. (Dkt. 25, at 10; Dkt. 24-12).

SFFA argues that Movants do not have a Rule 24(a)(2) interest because UT is not constitutionally required to have a race-conscious admissions policy. (Dkt. 29, at 3) (citing *Schuette v.*

*BAMN*, 572 U.S. 291 (2014)). However, Movants counter that the Fifth Circuit has held that an interest may satisfy Rule 24 "even if the intervenor does not have an enforceable legal entitlement." (Dkt. 32, at 2) (citing *Texas v. United States*, 805 F.3d at 659–60). The possibility that Movants' interest could be eliminated if UT voluntarily revoked its race-conscious admissions program does not prevent Movants from intervening. *Texas v. United States*, 805 F.3d at 661 ("[R]evocability is present in nearly every case in which a government program gives rise to the intervenors' interest.").

The pertinent question is whether Movants' identified interests are "of the type that the law deems worthy of protection." *Id.* at 659. While SFFA argues that only UT itself has an interest in the benefits of a diverse student body, (Dkt. 29, at 4), the Court finds that students are beneficiaries of UT's admissions policy and the resulting student diversity. (*See* Dkt. 25, at 6). This is true for students intending to apply to UT, such as the NAACP members who are currently high school students, as well as for the current UT students and student organizations that have an interest in the continued diversity of their educational experience. Thus, Movants have a sufficient interest in preserving UT's race-conscious admissions policy.

### 3.   Impact on Movants' Interest

Third, movants argue that elimination of UT's race-conscious admissions policy would impair movants from protecting their interests. Impairment "does not demand that the movant be bound by a possible future judgment, and the current requirement is a great liberalization of the prior rule." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). A prospective intervenor "must demonstrate only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Id.* at 344; *see also Grutter*, 188 F.3d at 399.

Movants argue that elimination of UT's race-conscious admissions policy will likely reduce diversity within the UT student body, directly threatening their interests in a diverse student body. (Dkt. 25, at 11) (citing *Fisher II*, 136 S. Ct. at 2212 (showing stagnant Black student population at UT

prior to adoption of race in holistic admissions); *Grutter*, 188 F.3d at 400 (finding likelihood that

"access to the University for African-American and Latino/a students will be impaired to some

extent" and this probability "is more than sufficient to meet the minimal requirements of the

impairment element")).[3]

Movants further highlight that SFFA seeks to alter the UT admissions process to "not

permit those engaged in the decisional process to be aware of or learn the race or ethnicity of any

applicant for admission," (Am. Compl., Dkt. 13, at ¶ 244(d)), which Movants claim would infringe

on high school students' First Amendment speech rights to speak about their race and ethnicity in

the college admissions process. (Dkt. 25, at 11–12).

SFFA argues that the Movants that are current UT students will not be personally impacted

in a change to UT admissions as they have already been admitted to UT and may graduate before

this action affects diversity at UT. (Dkt. 29, at 5). These arguments do not apply to the NAACP

members who will apply to UT in the future, as their admissions process could be impacted.

Similarly, BSA and Texas Orange Jackets are ongoing student organizations whose members and

missions are affected by future changes to the UT student body. As to current UT students who

may graduate from UT before this litigation is complete, Movants argue that they need not

demonstrate their interest will persist through a projected trial date, only that they have a current

interest that would be impaired. SFFA has not provided the Court with any precedent that would

prevent students from intervening in this action because they will eventually graduate from UT. The

Court is persuaded that each of the Movants' interests could be impaired by the outcome of this

action, including currents students' interests in the benefits of a diverse student body.

---

[3] SFFA argues that the remedies it seeks would not reduce diversity at UT. (Dkt. 29, at 6 n.1). Without commenting on the ultimate merits of this lawsuit, the Court limits this Order to finding that Movants' have demonstrated a sufficient probability of impairment of their interest to meet their burden for intervention.

4.   <u>Movants' Interests Inadequately Represented by Defendants</u>

Fourth, Movants argue that Defendants will not and cannot adequately represent their

interests. Movants have the burden of demonstrating inadequate representation, a burden the

Supreme Court has generally referred to as "minimal," requiring only a showing "that representation

of [the intervenor's] interest 'may be' inadequate" *Trbovich v. United Mine Workers*, 404 U.S. 528, 538

n.10 (1972). There are two exceptions to this general rule, under which the representation is

presumed to be adequate. The first presumption occurs "when the putative representative is a

governmental body or officer charged by law with representing the interests of the absentee." *Texas*

*v. United States*, 805 F.3d at 661 (quoting *Edwards*, 78 F.3d at 1005). The second presumption arises

when the would-be intervenor has the same ultimate objective as a party to the lawsuit. *Id.* "If the

same ultimate objective presumption applies, the applicant for intervention must show adversity of

interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption."

*Texas v. United States*, 805 F.3d at 661 (internal quotation marks omitted). "Similarly, if the

government-representative presumption applies, the intervenor must show that its interest is in fact

different from that of the [governmental entity] and that the interest will not be represented by [it]."

*Id.* (alterations in original) (internal quotation marks omitted).

SFFA argues for both exceptions, first arguing UT is a public university presumed to

represent the interests of Movants. (Dkt. 32, at 6). However, Movants argue that the presumptions

only apply where the state is required by law to represent the intervenor's interests, which is not the

case for UT Defendants as to Movants' rights to free speech and organizational diversity. (Dkt. 32,

at 4). Although UT is a public entity, SFFA has not demonstrated that Defendants are legally

required to represent Movants' interests in this action. (*See* Dkt. 32, at 6). Second, SFFA argues that

because Defendants and Movants both seek to preserve UT's admissions policy, they have the same

ultimate objective. (Dkt. 32, at 6). To the extent that Defendants and Movants share this objective,

and if Defendants are legally required to represent Movants' interests, Movants have overcome any presumption of adequate representation by demonstrating specific ways their interests diverge from Defendants' in this action. *See Wal–Mart*, 834 F.3d at 569 ("Even assuming, *arguendo*, that either of the two presumptions of adequate representation applies, [Movant] has shown 'adversity of interest' and 'that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it].'")

Movants argue that, unlike Defendants, they can advocate for the constitutionality of a race-conscious admissions policy without competing considerations. (Dkt. 25, at 13) (citing *Cf. Christa McAuliffe Intermediate Sch. PTO v. DeBlasio*, No. 18-11657, 2020 WL 1432213, at *7 (S.D.N.Y. Mar. 24, 2020) (students allowed to intervene in part because defendant may be "reticent to present all colorable contentions")); *see also Brumfield*, 749 F.3d at 346 ("The state has many interests in this case—maintaining not only the [program at issue] but also its relationship with the federal government and with the courts that have continuing desegregation jurisdiction. The parents do not have the latter two interests; their only concern is keeping [the program].").

Movants argue that they will present evidence unique from that of Defendants, including evidence of UT's history of segregation and discrimination to demonstrate why a race-conscious policy is necessary. (Dkt. 25, at 13). Although SFFA argues that UT has previously relied on its discriminatory history to defend its current admissions policy, (Dkt. 32, at 8), Movants provide specific examples of evidence they intend to use that UT has not previously put forward and is unlikely to now. For instance, Movants also argue UT's ongoing reliance on standardized test scores in admissions perpetuates racial discrimination and necessitates a race-conscious admissions policy. (Dkt. 25, at 13–14). Similarly, Movants state they will argue that the Kroll report, which SFFA alleges revealed students were preferentially admitted to UT outside the holistic review process, (Am. Compl., Dkt 13, at 13), further bolsters the need for UT to use a race-conscious admissions

11

policy, which UT is unlikely to argue. (Dkt. 25, at 14–15). By pointing to evidence and arguments that defend Movants' interests but are unlikely to be put forth by Defendants, Movants have demonstrated that their interests would diverge during litigation. *See Wal–Mart*, 834 F.3d at 569 (granting motion to intervene where movant "highlights arguments that the [defendant] cannot make given difference in the objectives of the [defendant] and [movant]").

SFFA relies on *Hopwood*, where two UT student organizations' motion to intervene was denied in a challenge to UT School of Law's admissions, and *Fisher I*, where the court denied a motion to intervene by high-school students who intended to apply to UT, current UT students, and UT student groups. (Dkt. 25, at 7); *Hopwood v. State of Tex.*, 21 F.3d 603, 605–06 (5th Cir. 1994); *Fisher v. Univ. of Tex. at Austin*, No. 1:08-cv-263 (W.D. Tex. 2008) (Docs. 63, 72). However, Movants argue that this case is distinguishable from *Hopwood* and *Fisher I* because of the broad relief sought by SFFA—an injunction barring any consideration of race or awareness of race in admissions, (Am. Compl., Dkt. 13, at ¶244(d)), which Movants argue will impact applicants' first amendment rights. (Dkt. 32, at 4–5). Movants also argues that the passage of time since *Hopwood* and *Fisher I* has demonstrated that UT has not adopted their proposed argument related to the use of standardized test scores in subsequent litigation. (*Id.* at 5). Movants similarly argue that the development of caselaw since *Hopwood* and *Fisher I* has demonstrated the importance of subjective factors in litigation related to campus climate, feelings of tokenization, and how alternative admissions policies could impact applicant behavior, which student movants are best positioned to offer evidence about, as they have in other recent litigation. (*Id.*) (citing *SFFA v. Harvard*, 397 F. Supp. 3d 126, 178, 194–95, (D. Mass. 2019), aff'd by 980 F.3d 157, 195 & n.33, 200-01 & n.40.).

The Court agrees with Movants that his case is sufficiently distinguishable from the intervenor denials in *Hopwood* and *Fisher I*. Here, Movants have sufficiently demonstrated that their interests may diverge from that of Defendants. Movants have sufficiently demonstrated that, since

*Hopwood* and *Fisher I*, Defendants have not put forward the evidence that Movants are proposing and that other courts have relied on evidence that Movants' are uniquely positioned to offer. Accordingly, Movants have met all four requirements of Rule 24(a)(2) and are entitled to intervene by right.

## B. Permissive Intervention

Alternatively, on a timely motion, a court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact. FED. R. CIV. P. 24(b)(1)(B). The relevant factors to consider are whether the motion was timely, whether the would-be intervenor's claim or defense shares a common question of law or fact with the main action, and whether the intervention will cause undue delay or prejudice. FED. R. CIV. P. 24(b); *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185,189 n.2 (5th Cir. 1989).

Movants argue that they share common issues of law and fact with Defendants, as the dispute bears on Movants' interests in the benefits of a diverse student body and the benefits of UT's current admissions policy. Similar to Movants' Rule 24(a)(2) interest in this action, the Court finds that Defendants' and Movants' defenses share common questions of law and fact.

Additionally, the Court has already found that Movants' motion was timely. The analysis as to whether the intervention will cause undue delay or prejudice is essentially the same as the timeliness analysis.  As a result, the Court finds that SFFA would not be unduly prejudiced and there would not be undue delay. Although unnecessary because Movants have a right to intervene under Rule 24(a)(2), the Court also exercises its discretion to permit Movants to intervene under Rule 24(b)(2). *See Second Baptist Church v. City of San Antonio*, No. 5:20-CV-29-DAE, 2020 WL 6821324, at *6 (W.D. Tex. Apr. 17, 2020) ("Even if [Movants] had failed to demonstrate intervention as of right under Rule 24(a), the [c]ourt would still allow [Movants] to permissively intervene. . . . Accordingly, the Court in its broad discretion, grants the motion for permissive intervention.").

13

## III. CONCLUSION

Accordingly, **IT IS ORDERED** that Movants' Motion to Intervene, (Dkt. 24), is

**GRANTED**.

**SIGNED** on January 14, 2021.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE