Exhibit A

CONFIDENTIAL                         February 26, 2021

1                IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
2                        AUSTIN DIVISION

3   Students For Fair            )
    Admissions, INC,             )
4
                  Plaintiff,     )
5                                      CIVIL ACTION
    VS.                          )
6                                      NO.: 1:20 cv 00763 RP
    UNIVERSITY OF TEXAS AT       )
7   AUSTIN, ET AL.,              )

8                  Defendants.   )

9

10           ORAL AND VIDEOTAPED DEPOSITION OF

11                    ███████████████

12                   FEBRUARY 26, 2021

13                        VOLUME 1

14               *ATTORNEYS' EYES ONLY*

15

16       ORAL AND VIDEOTAPED DEPOSITION OF ███████████

17   produced as a witness at the instance of the DEFENDANT,

18   and duly sworn, was taken in the above styled and

19   numbered cause on February 26, 2021, from 7:36 a.m. to

20   2:23 p.m. via Zoom, before Miah Hoffman, CSR in and for

21   the State of Texas, reported by oral stenography,

22   pursuant to the Federal Rules of Civil Procedure and the

23   provisions stated on the record or attached hereto.

24

25

```
 1                  A P P E A R A N C E S

 2    FOR THE PLAINTIFF:

 3         THOMAS MCCARTHY
           CONSOVOY MCCARTHY PLLC
 4         1600 Wilson Boulevard, STE 700
           Arlington, Virginia, 22209
 5         Phone:(703)243 9423
           Tom@consovoymccarthy.com
 6

 7    FOR THE DEFENDANTS UNIVERSITY OF TEXAS AT AUSTIN:

 8         MATTHEW C. POWERS
           GRAVES DOUGHERTY, HEARON &
 9         MOODY, P.C.
           401 Congress Avenue, Suite 2700
10         Austin, Texas 78701
           Phone:(512)480 5725
11         Fax:(512)539 9938
           mpowers@gdhm.com
12

13    FOR THE DEFENDANTS UNIVERSITY OF TEXAS AT AUSTIN:

14         JOHN J. (MIKE) MCKETTA III
           GRAVES DOUGHERTY, HEARON &
15         MOODY, P.C.
           401 Congress Avenue, Suite 2700
16         Austin, Texas 78701
           Phone:(512)480 5725
17         Fax:(512)539 9938
           mmcketta@gdhm.com
18

19    FOR THE DEFENDANTS INTERVENORS:

20         DAVID HINOJOSA
           LAWYERS' COMMITTEE FOR CIVIL
21         RIGHTS UNDER LAW
           1500 K. Street, NW, Suite 900
22         Washington, D.C. 20005
           Phone:(202)662 8600
23         Fax:(202)783 0857
           dhinojosa@lawyerscommittee.org
24

25
```

```
 1                 A P P E A R A N C E S

 2   FOR THE DEFENDANTS INTERVENORS:

 3        CARTER C. SIMPSON
          HUNTON ANDREWS KURTH LLP
 4        2200 PENNSYLVANIA AVENUE, NW
          Washington, D.C. 20037
 5        Phone:(202) 955 1850
          csimpson@huntonak.com
 6

 7   ALSO PRESENT:

 8

 9        JOSEPH (JODY) HUGHES: Associate Vice President For

10   Legal Affairs (UT)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                      INDEX
```

```
 1                                                    Page

 2   Appearances........................................ 2

 3   ████████████
            Examination by Mr. Powers...................... 6
 4          Examination by Mr. Hinojosa................... 125

 5

 6   Signature and Changes............................. 183

 7   Reporter's Certificate.............................185

 8

 9                       EXHIBITS

10   NO.  DESCRIPTION                                    Page

11   1    Exhibit 1...........................          50
     2    Exhibit 2.......................              55
12   3    Exhibit 3...........................          60
     4    Exhibit 4...........................          60
13   5    Exhibit 27..........................          83
     6    Exhibit 28..........................          103
14   7    Exhibit 29..........................          129
     8    Exhibit 30..........................          131
15   9    Exhibit 31..........................          157

16

17                  CERTIFIED QUESTIONS
                       PAGE/LINE

18

19        148/17...159/7.....165/4....175/11.....
          150/15...159/16....165/15...176/4.......
20        151/7....160/3.....166/14...177/11......
          151/19...162/1.....167/20...177/23......
21        153/23...162/11....168/16...178/10......
          153/19...163/9.....168/24...178/20......
22        154/19...163/22....169/7................
          158/3....164/4.....173/15...............

23

24

25                P R O C E E D I N G S
```

```
 1              REPORTER:  We are on the record.  Today's
 2  date is February 26th, 2021.  The time is 7:36 a.m.
 3  This is the oral deposition of ███████ and it is
 4  being conducted remotely by agreement of the parties or
 5  in accordance with current emergency orders.
 6  The witness is attending from the law office of Consovoy
 7  and McCarthy located at 1600 Wilson, Arlington, Virginia
 8  22209.
 9              My name is Miah Hoffman.  CSR number
10  11773 with Kim Tindall and Associates.  I am
11  administering the oath and recording the deposition
12  remotely by oral stenographic means.  My business
13  address is 16414 San Pedro Avenue, Suite 900, San
14  Antonio, Texas 78232.
15              The witness has been identified to me
16  through his U.S. passport.  Would counsel please state
17  their appearances for the record?
18              MR. POWERS:  Matt Powers for the
19  defendants.
20              MR. MCKETTA:  Mike McKetta also for the
21  defendants.
22              MR. HINOJOSA:  David Hinojosa for the
23  student intervenors.
24              MS. SIMPSON:  Carter Simpson for the
25  student intervenors.
```

1          MR. MCCARTHY:  Thomas McCarthy from

2   Consovoy McCarthy for Student For Fair Admissions, Inc.

3               (Witness duly sworn.)

4                    ███████████████

5   having been first duly sworn, testified as follows:

6                       EXAMINATION

7   BY MR. POWERS:

8               MR. POWERS:  Mr. McCarthy, is it okay to

9   proceed?  Did you want to say anything on the record

10  before we get started?

11              MR. MCCARTHY:  Thanks, Mr. Powers.  I

12  would.  Consistent with, I think, our practice in the

13  other depositions in this case, I'd like to put a few

14  stipulations on the record and I'll -- I'll do so now.

15  Thanks.

16       During this deposition it's possible that the

17  University of Texas, or the intervenors, will ask

18  questions that SFFA believes infringe upon the First

19  Amendment and associational rights of SFFA and its

20  members.  SFFA may instruct the witness not to answer a

21  question on these grounds.  If a disagreement arises as

22  to whether this instruction is proper, the parties agree

23  to do their best to resolve the disagreement during the

24  deposition or, if necessary, before the Court.  SFFA

25  agrees that UT and the intervenors may have the right to

1   leave the deposition open to recall the witness.

2        In addition, the Court has entered a scheduling

3   order limiting the topics of this deposition.  The

4   Court's scheduling order states that right now none of

5   the discovery shall be permitted on any issue other than

6   the issues of jurisdiction or claim preclusion.  Last,

7   consistent with our practice in this case, SFFA is

8   designating the entire transcript as for counsel,

9   attorneys' eyes only.  Thanks very much, Mr. Powers.

10               MR. POWERS:  Thanks, Mr. McCarthy.

11       Q.   (BY MR. POWERS) ██████████  please state your

12   name.

13       A.   ██████████████

14       Q.   This is not your first deposition, correct?

15       A.   Yes.

16       Q.   Is it your first deposition over Zoom?

17       A.   Yes.

18       Q.   So one of the things I want to flag is that

19   during the course of the day, as with any deposition, if

20   I ask a question that's poorly worded or otherwise

21   unclear that you let me know and I'll clarify that.

22       A.   Okay.

23       Q.   And, in addition, we have the special

24   circumstance, because we're connected remotely, over

25   Zoom, if at any point there's a break in the connection

```
 1  there to speak it in my own opinion, but we'll go beyond
 2  that.  This deposition isn't about --
 3                  THE WITNESS:  On national TV though.  It
 4  was on -- it was on national TV as I recall, but yeah,
 5  all right. It's --  this is about me, this is not about
 6  you, but --
 7                  MR. HINOJOSA:  Sure.  And this is --
 8                  THE WITNESS:  You introduced yourself and
 9  I did remember you from that -- from that particular
10  show.
11      Q.   (BY MR. HINOJOSA) All right.  Well, I
12  appreciate that.  So my name is David Hinojosa again and
13  I'm gonna be asking you some questions and I just want
14  to make -- make sure certain things are clear and that
15  is that you're here testifying on behalf of SFFA; is
16  that correct?
17      A.   Yes.
18      Q.   And you're not here testifying in your own
19  individual capacity, correct?
20      A.   Yes.
21      Q.   And SSFA is the plaintiff in this case suing
22  UT, correct?
23      A.   Yes.
24      Q.   All right.  So did you say earlier that it was
25  the board that voted to bring this lawsuit?
```

1          MR. MCCARTHY:  Objection form.

2          THE WITNESS:  Yes, sorry.

3          MR. HINOJOSA:  Okay.

4          THE WITNESS:  Sorry, yes.

5      Q.   (BY MR. HINOJOSA) And you also mentioned I

6   think, previously that SFFA relies on its members who

7   have been impacted by the litigation to bring these

8   types of lawsuits; is that correct?

9          MR. MCCARTHY:  Objection form.

10          THE WITNESS:  SFFA has members who have

11   been rejected by these various universities and SFFA

12   then acts in our organizational capacity to challenge

13   those programs.

14      Q.   (BY MR. HINOJOSA) So such as, you know, when

15   you challenged Harvard you had certain individuals who

16   were rejected by Harvard's admissions plan and then on

17   behalf of those members as -- as an association you sued

18   Harvard, correct?

19          MR. MCCARTHY:  Objection form.

20          THE WITNESS:  Correct.

21      Q.   (BY MR. HINOJOSA) And the same thing applies

22   at UNC, Yale, and UT?

23          MR. MCCARTHY:  Objection form.

24          THE WITNESS:  Correct.

25      Q.   (BY MR.HINOJOSA) All right.  And you conduct

CONFIDENTIAL

1   outreach in the public for membership; is that right?

2       A.   Yes.

3       Q.   And you're also seeking to identify persons

4   who might help SFFA file a lawsuit, correct?

5                   MR. MCCARTHY:  Objection form.

6                   THE WITNESS:  Yes.

7       Q.   (BY MR. HINOJOSA) So I'm gonna bring up -- let

8   me -- I have a few exhibits here.  I'm gonna start with

9   -- hold on right quick, sorry.  All right.  Sorry about

10  that I was in the wrong folder.  Just make sure I get

11  this in the record.  This is Exhibit -- what we're gonna

12  mark as Exhibit 029 and it's UT deposition of the

13  corporate -- corporate representative of Students For

14  Fair Admissions and you have received this and you are

15  here pursuant to this deposition notice, correct?

16                   (Exhibit No. 029, marked.)

17      A.   I'm afraid I don't know what you're -- what

18  you're sharing --

19      Q.   Oh.

20      A.   -- I don't -- I don't

21      Q.   You know what, sorry about that let me redo

22  this.

23                   MR. MCCARTHY:  Counsel, are you referring

24  to the notice that Mr. Powers started off the deposition

25  with?

1          MR. HINOJOSA:  Yeah, but I don't think he

2   entered it as an exhibit.

3          MR. POWERS:  That's correct.  I did not.

4          MR. MCCARTHY:  Just want to make sure

5   we're talking about the same document.

6          MR. HINOJOSA:  Yes.  Okay.  I just sent

7   it to you.  Let me know when you've received it and

8   opened it and that's Exhibit 029.

9          THE WITNESS:  I received it; I know what

10  it is.

11     Q.   (BY MR. HINOJOSA) Okay.  And you're here to

12  testify in pursuant to this notice, correct?

13     A.   That's correct.

14     Q.   And attached to Exhibit 029 on Page 4, is

15  Exhibit A, the deposition topics and those are the

16  deposition topics that you agreed to testify here today,

17  correct?

18     A.   I am looking at Page 4 deposition topics, yes.

19     Q.   All right.  And among those includes "The

20  basis for any claim that any individual member of SFFA

21  has or would have standing to raise the challenge as

22  asserted by SSFA in the present lawsuit."  That's Number

23  11.

24     A.   I see that.

25     Q.   Is that correct?  You're here prepared to

1  testify about that today, correct?

2        A.   Yes.

3        Q.   Okay.  So I just wanted to make sure I took

4  care of that logistical thing.  I wanted to get back to

5  the discussion that we were offering about some of the

6  outreach that SFFA does and I'm uploading another

7  exhibit which we're gonna identify as Exhibit 030.  And

8  just so you know this is a document that was -- that was

9  sent to us in response to UT's request for production

10 and let me know once you've received that and opened

11 Exhibit 030.  And for the record the Bates stamp on this

12 is SFFA UT 00179.

13                    (Exhibit No. 030, marked.)

14              THE WITNESS:  I have -- let's see if I

15 can read this stamp.  Well, I can't -- I can't read the

16 stamp, but I see it is a website that is styled UT Not

17 Fair.

18       Q.   (BY MR. HINOJOSA) UT Not Fair is that funded

19 and operated by SFFA?

20              MR. MCCARTHY:  Objection form.

21              THE WITNESS:  No.  No.

22       Q.   (BY MR. HINOJOSA) Who operates the UT Not Fair

23 site?

24       A.   The UT Not Fair was originally launched by the

25 Project on Fair Representation.  I don't know that the

```
 1  UT Not Fair site is still active.

 2       Q.   Okay.  And so what forms of communication does

 3  SFFA use in trying to recruit persons to SFFA who have

 4  been denied admission at certain universities?

 5       A.   Basically there are two things that we do.

 6  One, is we maintain a website and the second, is that I

 7  -- I occasionally will give speeches and participate in

 8  media events in which I encourage people to visit our

 9  website and join our organization.

10       Q.   You do any social media outreach as SFFA?

11       A.   We -- we have a Facebook page that I know -- I

12  know is maintained by our -- our database vendor.  We

13  have a Twitter account that I'm not at all familiar

14  with, other than that I don't believe we have anything

15  else.

16       Q.   And do you recall what form of communication

17  resulted in ██████████ and ██████████ --

18  ██████████ to approach you?

19               MR. MCCARTHY:  Objection form.

20               THE WITNESS:  I'm --

21               MR. MCCARTHY:  Objection.  Just caution

22  the witness to allow counsel to rise objections.

23  Objection form.  Objection First Amendment and

24  associational privileges.  I just want to caution the

25  witness not to disclose any communications with SFFA's
```

1  members.  You can answer the question while abiding that

2  instruction then you may do so.

3              THE WITNESS:  Thank you, Mr. McCarthy.

4  Through our website.

5      Q.   (BY MR. HINOJOSA) Through your website, okay.

6  Were -- was ████████ and ████████ were they also the members

7  of SFFA who SFFA relied upon for standing in the prior

8  2019 state lawsuit?

9              MR. MCCARTHY:  Objection form.

10             THE WITNESS:  Yes.

11     Q.   (BY MR. HINOJOSA) Were there any other members

12 of SFFA at that time that you -- you were bringing the

13 29 -- '19 lawsuit that you were relying on for standing?

14             MR. MCCARTHY:  Objection form.

15             THE WITNESS:  No.

16     Q.   (BY MR. HINOJOSA) And currently SFFA has no

17 other members who have applied to UT and been rejected

18 for which it is asserting that it has standing in this

19 case --

20             MR. MCCARTHY:  Objection.

21      Q.  (BY MR. HINOJOSA) -- is that correct?

22             MR. MCCARTHY:  I'm sorry, counsel.

23 Objection form.

24             THE WITNESS:  Yes.

25     Q.   (BY MR. HINOJOSA) And SFFA doesn't presently

1   have any members who are Asian American who were denied

2   admission to UT Austin for whom SFFA claims

3   associational standing in this case, correct?

4                   MR. MCCARTHY:  Objection form.

5                   THE WITNESS:  Correct.

6        Q.   (BY MR. HINOJOSA) And I believe this is your

7   -- one of four current lawsuits that you have

8   challenging race-conscious admissions and when I say

9   you, I mean, SF -- SFFA.

10       A.   Yes.

11       Q.   And this is the third lawsuit against UT since

12  2016, correct?

13       A.   Yes.

14       Q.   And before the lawsuit was filed in this case

15  you had an opportunity to review the lawsuit, correct?

16       A.   Yes.

17       Q.   And ███████████  ended -- ended up approving

18  that -- the filing of the lawsuit against UT, correct?

19                  MR. MCCARTHY:  Objection form.

20                  THE WITNESS:  Yes.

21       Q.   (BY MR. HINOJOSA) And it approved the amended

22  filing of the lawsuit of the current fed -- federal

23  lawsuit?

24                  MR. MCCARTHY:  Objection form.

25                  THE WITNESS:  I just -- I thought I just

—

1    answered that question, Mr. Hinojosa.  Yes, so ███████

2    approved the filing of the new federal lawsuit.

3         Q.   (BY MR. HINOJOSA) Sure.  And I was just making

4    sure because there is an amended lawsuit.  You might

5    recall that some state claims SFFA ended up dropping in

6    response to some objections made by UT so I just wanted

7    to make sure that the board had authorized that.

8              MR. MCCARTHY:  Counsel, are you referring

9    to an amended claim?

10             MR. HINOJOSA:  The amended -- amended

11   complaint, yes.

12             MR. MCCARTHY:  So not a new lawsuit, but

13   an amended complaint in the current proceeding?

14             MR. HINOJOSA:  Yes.

15             MR. MCCARTHY:  Okay.  Just want to make

16   sure, might help the witness understand and answer the

17   question.  Objection form.

18             THE WITNESS:  So ███████ did not

19   approve the amended complaint.

20        Q.   (BY MR. HINOJOSA) Okay.  Have you had an

21   opportunity to review the amended complaint?

22             MR.  MCCARTHY:  Objection form.

23             THE WITNESS:  I've read it once, yes.

24        Q.   (BY MR. HINOJOSA) And you're familiar with the

25   claims in the case.

CONFIDENTIAL

1    A.    Yes.

2    Q.    And you're also familiar with the -- UT's

3  admissions process generally the form of the -- the

4  75 percent that are -- well, let me ask -- let me ask

5  you more simple question first.  Are you familiar --

6  generally familiar with UT's admissions process that

7  your challenging?

8                  MR. MCCARTHY:  Objection form.

9                  THE WITNESS:  Generally, yes.

10   Q.    (BY MR. HINOJOSA) Sure.  And you understand

11  that 75 percent of the admissions into UT are made

12  through the top ten percent plan; is that correct?

13                 MR. MCCARTHY: Objection form.

14                 THE WITNESS:  Yes, the top ten percent

15  plan, but it's my understanding now, it's no longer the

16  top two percent that's actually automatically admitted,

17  it's six percent.

18   Q.    (BY MR. HINOJOSA) Yes, because of the

19  75 percent cap on admissions, is that your

20  understanding?

21                 MR. MCCARTHY:  Objection form.

22                 THE WITNESS:  That's my under -- that's

23  my understanding.

24   Q.    (BY MR. HINOJOSA) And you identified the top

25  ten percent plan as a race-neutral admissions plan; is

██████████

```
 1  that correct?
 2              MR. MCCARTHY:  Objection form.
 3              THE WITNESS:  Yes --
 4              MR. MCCARTHY:  Objection.  Calls for
 5  legal conclusion.
 6      Q.   (BY MR. HINOJOSA) And you're not contesting --
 7              THE WITNESS:  Tom -- excuse me one
 8  minute.  Tom, you're -- you're coming in a little late
 9  maybe you can speak up a little bit louder because I'm
10  -- I'm -- I'm -- I appear to be cutting you off before
11  you've lodged your -- your, yeah.
12              MR. MCCARTHY:  Please -- please make sure
13  you leave me time to lodge an objection.
14              THE WITNESS:  Yeah.  Okay.
15      Q.   (BY MR. HINOJOSA) All right.  And you're not
16  contesting the lawfulness of the top ten percent plan,
17  correct?
18      A.   Correct.
19      Q.   For the non-top ten percent factors or for the
20  non-top percent plan, you understand that the University
21  looks at both an academic index and a personal
22  achievement index?
23              MR. MCCARTHY:  Objection form.
24      Q.   (BY MR. HINOJOSA) Let me -- let me restate
25  that 'cause it was, you know, wrongly formed question
```

```
 1                MR.  MCCARTHY:  Let's continue.

 2                MR. HINOJOSA:  Sure.

 3        Q.   (BY MR. HINOJOSA) So you understand for the

 4   non -- for -- for the students who are admitted outside

 5   of the top ten percent through this academic index and

 6   personal achievement index that UT uses a holistic

 7   admissions process;  is that correct?

 8                MR. MCCARTHY:  Objection form and

 9   objection to the extent it calls for a legal conclusion.

10                THE WITNESS:  I -- I suppose that's

11   correct.

12        Q.   (BY MR. HINOJOSA) Okay.  And in Paragraph 25

13   -- I can pull this up if you want, but in Paragraph 25

14   when you -- in the complaint you identify a series of

15   factors that are part of the achievement score -- let me

16   go ahead and pull that up just to make things clearer.

17   Let me know when you pull that up and when you do if you

18   can go to Paragraph 25?

19                MR. MCCARTHY:  It's opening a little

20   slowly for me.  Counsel did -- I'm sorry.  Did you say

21   paragraph or Page 25?

22                MR. HINOJOSA:  Paragraph 25 it's on

23   Page 5.

24                MR. MCCARTHY:  Okay.  I'm -- I'm at the

25   right place.
```

1           MR. MCCARTHY:  I'll stand on my objection

2    and I'm gonna instruct the witness not to answer if

3    you're gonna keep asking questions about the merits.

4           Q.   (BY MR. HINOJOSA) So are you refusing to

5    answer any questions on your level of competence on the

6    different legal claims you've brought against this

7    different -- against UT Austin?

8           A.   On -- on the advice of my counsel.  I am not

9    going to be answering those questions.

10          Q.   All right.  Now, you've brought certain claims

11   against certain universities based on the facts that you

12   have on hand, correct?

13                MR. MCCARTHY:  Objection form.

14                THE WITNESS:  Yes.

15          Q.   (BY MR. HINOJOSA) So you brought for example,

16   an intentional discrimination claim against Harvard and

17   now Yale on behalf of Asian-American students, but you

18   did not bring that same claim against UNC or UT Austin,

19   correct?

20                MR. MCCARTHY:  Objection form.

21                THE WITNESS:  That's correct.

22          Q.   (BY MR. HINOJOSA) And those claims are tied to

23   the injuries that your members who have applied, have

24   been rejected -- those claims are based on -- on their

25   perceived injuries, correct?

1            MR. MCCARTHY:  Objection to the extent it

2   calls for legal conclusion and objection form.

3            THE WITNESS:  Correct.

4       Q.  (BY MR. HINOJOSA) So in this case you brought

5   a claim challenging UT's consideration of race is more

6   than a plus factor, correct?  It's Count one in your

7   lawsuit?

8            MR. MCCARTHY:  Objection form.  If you'd

9   like to show -- allow him to review the complaint and

10  answer that's fine.

11      Q.  (BY MR. HINOJOSA) Let's -- let's go to

12  Page 40.

13           MR. MCCARTHY: Standing quickly or we're

14  gonna have difficulty here.

15           MR. HINOJOSA:  You have a lot of

16  difficulty, Tom

17           MR. MCCARTY:  I don't with anybody else.

18           MR. HINOJOSA:  Surprise, surprise.

19           MR. MCCARTHY:  Please keep your questions

20  within the scope of Court's discovery order.

21           MR. HINOJOSA:  Sure.

22           THE WITNESS:  So on Page 40 I'm going to

23  read the first count.  UT's Austin's use of racial

24  preferences is not narrowly tailored because UT Austin

25  is not pursuing the critical-mass interest found

February 26, 2021

1      Q.    Okay.  If you can also go to paragraph 221

2   there it says, "A university that uses its admission

3   system to pursue quotas or proportional representation

4   of racial or ethnic groups either in the entering class

5   or in the overall student body violates the Fourteenth

6   Amendment and therefore violates Title VI."  Did I read

7   that correctly?

8      A.    Yes.

9      Q.    And then in paragraph 22 -- 222 if you can

10   read that for -- for the record, please.

11      A.    So reading for the record as oral, "Remarkable

12   stability of UT Austin's admissions figures for African-

13   American students demonstrates that UT Austin is seeking

14   proportional representation of African-Americans and is

15   engaged in racial balancing."

16      Q.    So am I correct to understand -- I -- I don't

17   see anything else there and you can finish reading these

18   other paragraphs here, but am I correct to understand

19   that SFFA's racial balancing claim is targeting its

20   treatment of African-American students and not any other

21   group of students including Hispanic students?

22             MR. MCCARTHY:   Objection form.  Objection

23   to the extent it calls for a legal conclusion and

24   objection on the grounds that the question is outside

25   the scope of the Court's discovery order.  I instruct

```
 1   the witness not to answer the question.

 2                    MR. HINOJOSA:  This is entirely not.  I'm

 3   trying to figure out whether or not he has a particular

 4   claim of racial balancing against Hispanics.  How can I

 5   argue whether or not he has standing -- his members have

 6   had standing in that particular claim without clarifying

 7   that the racial balancing claim pertains to only

 8   African-American students.

 9                    MR. MCCARTHY, David, this has nothing to

10   do with standing.  I can't help you if you don't

11   understand the standing analysis, but I'm gonna instruct

12   the witness not to answer the question because it is not

13   within the scope of the Court's discovery order.

14        Q.   (BY MR. HINOJOSA) Are you gonna take your

15   counsel's advice?

16        A.   On advice of counsel, I am unable to answer

17   your question.

18                    MR. HINOJOSA:  All right.  And I'll

19   certify this question and the other questions that the

20   witness is refusing to testify rather than calling up

21   the judge right now and getting on the phone because

22   this -- we're -- we're gonna just, you know, just go

23   ahead and proceed with this deposition, but I am gonna

24   reserve the right to ask████████ each of these

25   questions and to recall them into the deposition at
```

1    another time.

2              MR. MCCARTHY:  We understand that David,

3    I said that at the outset of the top.  We have an

4    agreement here that the parties all agreed to do.  That

5    if we instruct the witness not to answer and the witness

6    abides by that instruction and you'd like to take up

7    with the Court -- or afterwards you can take it up with

8    the Court if you need to then and we recognize that that

9    means that you may have the right to recall the witness.

10   Pursuant to that agreement let's go ahead and if I

11   instruct the witness not to answer and the witness

12   sticks with that instruction you can deal with it after

13   the fact.

14        Q.   (BY MR. HINOJOSA) In that particular

15   Paragraph 222 of Exhibit 031, the amended complaint.

16   Can you tell me what the basis is that you believe that

17   UT Austin is seeking proportional representation of

18   African-Americans and is engaged in racial balancing?

19             MR. MCCARTHY:  Objection form.  Objection

20   to the extent it calls for communications between

21   communications of counsel and again, objection on the

22   grounds that the question's outside the scope of the

23   Court's discovery order.  I instruct the witness not to

24   answer the question.

25        Q.   (BY MR. HINOJOSA)              are you not going

1  to answer the question?

2      A.   Mr. Hinojosa on advice of counsel I am not

3  going to answer the question.

4              MR. HINOJOSA:  We'll certify that

5  question too.

6      Q.   (BY MR. HINOJOSA) Are there any facts that

7  you're aware of right now, outside of the allegations,

8  the complaint that support that you're aware of that

9  support your claim of racial balancing against UT

10 Austin?

11             MR. MCCARTHY:  Objection.  Outside the

12 scope of the Court's discovery order.  I instruct the

13 witness not to answer the question.

14             THE WITNESS:  On advice of counsel I'm

15 not going to answer the question.

16             MR. HINOJOSA:  All right.  Certify that

17 question too.

18     Q.   (BY MR. HINOJOSA) Are you suggesting that UT

19 Austin should be admitting fewer African-Americans into

20 UT Austin?

21             MR. MCCARTHY:  Objection form.  Objection

22 outside the scope of the Court's discovery order and I

23 instruct the witness not to answer the question.

24             THE WITNESS:  On advice of counsel, Mr.

25 Hinojosa, I'm not going to answer that question.

```
 1                    MR. HINOJOSA:  All right.  Certify that
 2    question too.
 3                    MR. MCCARTHY:  David, none of this has
 4    anything to do with standing or red judicata.
 5                    MR. HINOJOSA:  Well, I'm sorry you
 6    understand it, but --
 7                    MR. MCCARTHY:  David, you're basically
 8    harassing the witness now.
 9                    MR. HINOJOSA:  I'm not harassing the
10    witness and as a matter of fact, what's -- what's
11    happening here, Mr. McCarthy, is that you're harassing
12    me as cocounsel and I would appreciate it if you could,
13    you know, afford me the proper decorum as we're trying
14    to investigate these stark allegations that in the end
15    are aimed at suppressing admission into UT for a highly
16    talented black and Latin X students.
17                    MR. MCCARTHY:  Mr. -- counsel, if you
18    want to investigate these allegations the proper time to
19    do that is in discovery of the merits.  It's not right
20    now during the deposition --
21                    MR. HINOJOSA:  And this is -- this wholly
22    touches upon whether or not your client, SFFA has been
23    harmed by the racial balancing, whether or not that harm
24    is causally related to the actions of UT and whether or
25    not they would -- their entries would actually be
```

1   redressed.  And the difficulty that you've placed here

2   is us being able to just venture to guess, you know,

3   some of these -- what we think are fairly obvious, but

4   not clear questions and try to clarify those things up

5   as we submit our brief to the Court and, you know, it's

6   apparent that you're gonna be obtrusive, you know, to

7   that and should we need to take this to the Court, we'll

8   take this to the Court.

9              MR. MCCARTHY:  I'm not going to try to

10  tell you how to litigate your case, if you'd like to

11  take these things up with the Court you should feel free

12  to take them there.

13  Q.   (BY MR. HINOJOSA) So -- so what facts do you

14  have available that demonstrate that █████████████

15  and ██████████  SFFA members, would have been admitted

16  if UT had not racially balanced?

17             MR. MCCARTHY:  Objection form.  Objection

18  outside the scope of the Court's discovery order.  I

19  instruct the witness not to answer the question.

20             THE WITNESS:  On advice of counsel, I'm

21  not going to answer the question.

22  Q.   (BY MR. HINOJOSA) So can you tell me how

23  SFFA's members for which it's seeking relief in this

24  case for ███████████ and ████████████████  how they've

25  been harmed by UT's racial balancing of black students?

1          MR. MCCARTHY:  Objection form.  Objection
2    to the extent it calls for legal conclusion.
3          THE WITNESS:  I think Mr. McCarthy has
4    also perhaps forgot to remind me that I'm not to answer
5    this question; is that correct, Mr. McCarthy?
6          MR. MCCARTHY:  I don't know if you can
7    answer without, you know, drawing a legal conclusion.
8    It's an objective form.  I stand by those objections.
9          THE WITNESS:  Mr. Hinojosa, I'm unable to
10   answer that question.
11   Q.   (BY MR. HINOJOSA) Why is that?
12   A.   On advice of Mr. McCarthy.
13   Q.   Mr. McCarthy's only advising you if you can't
14   state that without a legal conclusion.
15   A.   I -- I should have been more fulsome.  I am
16   unable to answer that question without stating a legal
17   conclusion.
18   Q.   (BY MR. HINOJOSA) What are the facts known to
19   you that demonstrate that ██████████ and
20   ████████████████  have been harmed by the racial
21   balancing of African-American students at UT as you
22   allege in your complaint?
23          MR. MCCARTHY:  Objection form.  Objection
24   outside the scope of the Court's discovery order.  I
25   instruct the witness not to answer the question.

1             THE WITNESS:  On advice of counsel, I'm
2   -- I'm not going to answer that question.
3             MR. HINOJOSA:  So -- so I just want to
4   make this clear Mr. McCarthy.  In a case where we have
5   to demonstrate that your clients -- with our briefing at
6   least -- you'll -- you ultimately have the standing.
7   That -- that your gonna instruct your client not to
8   witness, I mean, not to answer a question where we're
9   merely seeking the facts that they rely upon in
10  asserting that they've been harmed by the actions that
11  you complain of?  This is your claims.
12            MR. MCCARTHY:  Counsel, you're asking
13  questions about the facts -- factual basis underlining
14  allegations about racial balancing.  That doesn't have
15  anything to do with that.
16            MR. HINOJOSA:  It has to do with the
17  harm.  I asked specifically about the harm that has been
18  caused.  What facts do they have because I can't find
19  any in the complaint so I'm trying to figure out how ████
20  ████ and ██████████████ have been harmed and you're
21  not even letting him answer any facts.  It might be
22  because you don't have any facts.
23            MR. MCCARTHY:  Saying the word --
24            MR. HINOJOSA:  We have the right to
25  discover this.

```
 1                    (Break.)

 2                    REPORTER:  The time is 1:33 p.m. and we

 3  are on the record.

 4       Q.   (BY MR. HINOJOSA)  All right.  ████████  I'd

 5  like for you to go to Page 21 of Exhibit 031 which is

 6  the amended complaint.

 7                    (Exhibit No. 031, marked.)

 8                    THE WITNESS:  Hold on Mr. Hinojosa, I

 9  think I'm gonna have to load that again, just a second.

10                    MR. HINOJOSA:  Sure.

11                    THE WITNESS:  Something's not right.

12  Okay.  I think I'm at it now.  Would you repeat the page

13  or paragraph again, please.

14       Q.   (BY MR. HINOJOSA) Sure.  Page 21,

15  Paragraph 111.

16       A.   Okay.  I'm at that paragraph.

17       Q.   And I wanted to shift gears for the racial

18  balancing claim now to the race-neutral alternative

19  claim that you have and in Paragraph 11, it seems that

20  SFFA's contention here is that you UT can increase the

21  use of the top ten percent plan and admit the remaining

22  25 percent through race-neutral means, is that -- is

23  that consistent with your contentions in this case?

24                    MR. MCCARTHY:  Objection form.

25                    THE WITNESS:  The paragraph says what it
```

February 26, 2021
Page 158

1    says.  I stand by the wording in the paragraph.

2        Q.   (BY MR. HINOJOSA) Yeah, and what I'm trying to

3    make sure that I understand is that you're essentially

4    saying that 75 percent cap could be listed -- could be

5    lifted and you could just submit all through to the top

6    ten percent; is that correct?

7                   MR. MCCARTHY:  Objection on the grounds

8    of this is outside the Court's discovery order.  I

9    instruct the witness not to the answer the question.

10                  THE WITNESS:  Based upon advice of

11   counsel, I'm not going to answer the question Mr.

12   Hinojosa.

13                  MR. HINOJOSA:  All right.  Here we go

14   again.

15       Q.   (BY MR. HINOJOSA) In the next section going

16   over to Page 22 this is titled UT Austin Has Additional

17   Race-neutral Alternatives Available That Can Achieve

18   Racial Diversity.

19       A.   I'm -- I'm at that spot.

20       Q.   All right.  And in paragraph 114, it says "UT

21   Austin could achieve racial diversity by employing

22   race-neutral alternatives in addition to the top ten

23   percent plan."  Did I read that correctly?

24       A.   You've read it correctly.

25       Q.   And in the next paragraph it says, "UT Austin

1   could -- also could achieve racial diversity by

2   eliminating the top ten percent plan and adopting

3   race-neutral admissions policies."  Did I read that

4   correctly?

5        A.   You left out the word new.

6        Q.   New.  Okay.  New race-neutral admissions

7   policies.  Sorry about that.  So I'm wondering what

8   these new race-neutral admissions policies you're

9   referring to?

10                  MR. MCCARTHY:  Objection.  Outside the

11  Court's discovery order.  I instruct the witness not to

12  answer the question.

13                  THE WITNESS:  On advice of counsel, I'm

14  not going to answer the question.

15       Q.   (BY MR. HINOJOSA) Can you tell me how the

16  adoption of new race-neutral admissions policies as you

17  contend here in 115, can you tell me how that would help

18  address the injury of SFFA's associational members as

19  alleged in its race-neutral claim?

20                  MR. MCCARTHY:  Objection form.  Objection

21  to the extent it calls for a legal conclusion.

22  Objection outside of the scope of the Court's discovery

23  order and I instruct the witness not to answer the

24  question.

25                  THE WITNESS:  Based on advice of counsel,

████████

```
 1   I am not going to answer the question.
 2        Q.    (BY MR. HINOJOSA) Can you tell me the facts
 3   underlying your content -- or -- answer me this first.
 4   Do you contend that if UT Austin engages in race-neutral
 5   alternatives as you have requested in your own complaint
 6   that the associational members mainly being ████████
 7   and ████████████, would then be admitted?
 8                   MR. MCCARTHY:  Objection form.  Objection
 9   calls for a legal conclusion.  Objection it is outside
10   the Court's discovery order.  I instruct the witness not
11   to answer the question.
12                   THE WITNESS:  Based on advice of counsel,
13   I'm not going to answer the question.
14                   MR. MCCARTHY:  Counsel, the 30 B6 notice
15   did not advise SFFA that anybody intended to read
16   throughout the entirety of the complaint.
17                   MR. HINOJOSA:  Oh, of course it doesn't,
18   but it does talk about the claims.
19                   MR. MCCARTHY:  Right.
20                   MR. HINOJOSA:  And we -- and we mentioned
21   that early on just so I -- just so we all had a clear
22   understanding.  Standing is about satisfying the three
23   bullets for each of the claims that you're seeking
24   including the relief.  How you expect us to be able to,
25   you know, discuss with the Court how they're not harmed
```

1  by this, how they're not injured by these claims that

2  SFFA itself has raised without even giving us an

3  opportunity to discover any underlying facts of these

4  claims is -- again, you know, that's your position and

5  you can defend that with the Court.  I'm happy with

6  pursuing that with the Court, but these are all relevant

7  and I'm gonna keep asking you know these questions as

8  they are entirely relevant to us being able to establish

9  that SFFA does not have standing.

10          MR. MCCARTHY:  As I said before, your

11  questions go to the merits.  We'll continue to object

12  and instruct (audio indiscernible) basically dredge up

13  different paragraphs and the merits, allegations and ask

14  for factual basis underlying them and that kind of

15  thing.  Now, the paragraphs in the complaint that really

16  are about standing are the paragraphs from three to

17  eight at the front end.

18          MR. HINOJOSA:  Well, I appreciate that.

19  Thanks very much Mr. McCarthy, I'm sorry that I see it

20  differently thank you because that -- there are no

21  claims there.  Imagine that.

22          MR. MCCARTHY:  I'm sorry.  I'm trying to

23  help you out David.

24          MR. HINOJOSA:  Of course you are.

25      Q.   (BY MR. HINOJOSA) In paragraph 116, SFFA

 1  contends that "Available race-neutral alternatives

 2  including, but are not limited to increased use of non-

 3  racial preferences."  Can you identify more specifically

 4  what those use of non-racial preferences are?

 5                    MR. MCCARTHY:  Objection.  Outside the

 6  scope of the Court's discovery order and I instruct the

 7  witness not to answer the question.

 8                    THE WITNESS:  On advice of counsel, I'm

 9  not going to answer the question.

10      Q.   (BY MR. HINOJOSA) All right.  Can you tell me

11  how SFFA and its associational members have been harmed

12  by the failure of UT to increase the use of nonracial

13  preferences as its alleged in its complaint?

14                    MR. MCCARTHY:  Objection.  Outside the

15  scope of the Court's discovery order and I instruct the

16  witness not to answer the question.

17                    THE WITNESS:  Once again, on advice of

18  counsel, I'm not going to answer the question.

19      Q.   (BY MR. HINOJOSA) In the second clause of

20  paragraph 116 of Exhibit 031 it states there that, "As

21  an available race-neutral alternative the increased use

22  of financial aid, scholarships, and recruitment to

23  attract and enroll minority applicants."  Can you tell

24  me the underlying facts of how SFFA's associational

25  members have been harmed by the failure of UT to

CONFIDENTIAL

1   increase the use of financial aid and those other items

2   that I just mentioned?

3                    MR. MCCARTHY:  Objection.  Outside the

4   scope of the Court's discovery order.  I instruct the

5   witness not to answer the question.

6                    THE WITNESS:  On advice of counsel, I'm

7   not going to answer the question.

8       Q.   (BY MR. HINOJOSA) The third clause it says,

9   "Available race-neutral alternatives under included the

10  elimination of admissions policies and practices that

11  operate to the disadvantage of minority applicants."

12  Can you tell me what those admissions policies and

13  practices are that operate to the disadvantage of

14  minority applicants?

15                   MR. MCCARTHY:  Objection form.

16  Objection.  Outside the scope of the Court's discovery

17  order.  I instruct the witness not to answer the

18  question.

19                   THE WITNESS:  On advice of counsel, I'm

20  not going to answer the question.

21      Q.   (BY MR. HINOJOSA) Do you contend that SFFA's

22  associational members have been harmed by UTs failure to

23  engage in the elimination of admissions policies and

24  practices that operate to the disadvantage of minority

25  applicants?

CONFIDENTIAL

```
 1              MR. MCCARTHY:  Objection form.
 2   Objection.  Outside the Court's discovery order and I
 3   instruct the witness not to answer the question.
 4              THE WITNESS:  On advice of counsel, I'm
 5   not going to answer the question.
 6        Q.   (BY MR. HINOJOSA) Is it your contention that
 7   UT Austin's failure to engage in race-neutral
 8   alternatives as you've alleged in your amended complaint
 9   has caused injury to the plaintiff's associational
10   members?
11              MR. MCCARTHY:  Objection form.  Objection
12   to the extent it calls for legal conclusion.  Objection
13   outside the scope of the Court's discovery order.  I
14   instruct the witness not to answer the question.
15              MR. HINOJOSA:  And -- and just for
16   clarity --
17              THE WITNESS:  On the advice of counsel --
18              MR. HINOJOSA:  Go ahead.
19              THE WITNESS:  On advice of counsel, I'm
20   not going to answer the question.
21              MR. HINOJOSA:  And just for clarity, I'm
22   not asking you for a legal conclusion.  I'm asking you
23   simply whether or not it's your contention.  Do you
24   still refuse to answer the question.
25              MR. MCCARTHY:  His instruction --
```

```
1            THE WITNESS:  On advice on counsel, I'm
2   not going to be answering the question.
3       Q.   (BY MR. HINOJOSA) Can you tell us here any
4   facts that support how the consideration of any
5   race-neutral alternatives that you proposed in your
6   complaint would help make the -- SFFA's associational
7   members whole if they adopted those race-neutral
8   alternatives?
9            MR. MCCARTHY:  Objection form.  Objection
10  outside the scope of the Court's discovery order and I
11  instruct the witness not to answer the question.
12           THE WITNESS:  On advice of counsel I
13  won't be answering the question.
14      Q.   (BY MR. HINOJOSA) Do you agree with me that if
15  SSFA -- excuse me.  Let me restate that.  That if UT
16  Austin lifted the cap the 75 percent cap that your
17  associational members being ████████████  and ███
18  ██████  would still not get into UT because they didn't
19  rank in the top ten percent?
20           MR. MCCARTHY:  Objection form.  Objection
21  to the extent it calls for a legal conclusion and
22  objection.  Outside the scope of the Court's discovery
23  order and I instruct the witness not to answer the
24  question.
25           THE WITNESS: On advice of counsel I won't
```

```
 1  be answering the question.

 2      Q.   (BY MR. HINOJOSA) I'm gonna go to Page 43,

 3  Paragraph 198 and this is Count 1.

 4              MR. MCCARTHY:  I'm sorry.  What

 5  paragraph?

 6              MR. HINOJOSA:  198.  Hold on right quick.

 7  It's paragraph 199 on Page 40.

 8      A.   Okay.

 9      Q.   (BY MR. HINOJOSA) Just go ahead and read those

10  first two paragraphs to yourself, paragraphs 199 and

11  200.

12      A.   I've read them.

13      Q.   In paragraph 201 it states, "That statistical

14  and other evidence shows that UT Austin can no longer

15  justify using race at all or at least must justify it

16  differently, which it has failed to do so."  Can you

17  tell me what that statistical and other evidence is that

18  you're referring to in paragraph 201?

19              MR. MCCARTHY:  Objection outside the

20  scope of the Court's discovery order and I instruct the

21  witness not to answer the question.  I also want to add

22  --

23              THE WITNESS:  On advice of counsel, I

24  won't be -- I won't be answering.

25              MR. MCCARTHY:  And I'd like to add as I
```

1   did before that the 30 B6 notice does not suggest --

2   does not indicate that the witness needs to be prepared

3   to respond to questions about factual basis underlying

4   all of the various allegations in the complaint.

5                 MR. HINOJOSA:  It talks about the claims

6   and I tried to talk about the claims.  Those -- those

7   are -- those underlying allegations do support the

8   particular claims at issue in this case, especially as

9   I've narrowed those -- those questions to items relevant

10  to harmed causation and redressability that pertain to

11  standing in this case.

12                MR. MCCARTHY:  I guess we'll disagree on

13  that.

14                MR. HINOJOSA:  Sure.

15                MR. MCCARTHY:  I'll maintain the

16  objection and I maintain the objection on the scope of

17  the discovery order and I maintain the instruction that

18  the witness not answer the question.

19       Q.   (BY MR. HINOJOSA) In Paragraph 201, as I just

20  mentioned, are there any facts that you alleged in your

21  complaint that refer to that statistical and other --

22  other evidence showing that UT could no longer justify

23  using race at all?  Or at least must justify it

24  differently which it has failed to do so.  Can you

25  refer me to any of the allegations in your complaint

CONFIDENTIAL

1  that support that?

2              MR. MCCARTHY:  Objection.  Outside the

3  scope of the Court's discovery order.  I instruct the

4  witness not to answer the question.

5              THE WITNESS:  On advice of counsel I

6  won't be answering that question.

7      Q.   (BY MR. HINOJOSA) In the next paragraph I'll

8  let you go ahead and read that to yourself, but it also

9  talks about statistical and other evidence shows that

10 each applicant is not evaluated as an individual instead

11 race or ethnicity is the defining feature of the

12 application and I'll go ahead and let you finish reading

13 that to yourself.

14     A.   I've completed it.

15     Q.   Can you tell me what statistical and other

16 evidence shows that each applicant is not evaluated as

17 an individual?

18              MR. MCCARTHY:  Objection.  Outside the

19 scope of the Court's discovery order and I instruct the

20 witness not to answer the question.

21              THE WITNESS:  On advice of counsel I

22 won't be answering that question.

23     Q.   (BY MR. HINOJOSA) Can you tell me any

24 underlying facts that support your claim as described in

25 Paragraph 202?

```
 1                  MR. MCCARTHY:  Objection.  Outside the
 2   scope of the Court's discovery order and I instruct the
 3   witness not to answer the question.
 4                  THE WITNESS:  On advice of counsel, I
 5   won't be answering that question.
 6        Q.   (BY MR. HINOJOSA) Paragraph 203 states
 7   "Plaintiff's members have been and will continue to be
 8   injured because UT Austin's intentionally discriminatory
 9   admissions policies and procedures continued to deny
10   them the opportunity to compete for admission to UT
11   Austin and equal footing with other applicants on the
12   basis of race or etnicity."  Can you tell me how -- what
13   facts support your contention that plaintiff's members
14   have been injured?
15                  MR. MCCARTHY:  Objection form.  Objection
16   to the extent it calls for legal conclusion.  You may
17   otherwise answer his allegation as his allegation is
18   about standing.
19                  THE WITNESS:  Let me read it again.  So
20   we're on number 203.  Mr. Hinojosa would you restate
21   your question for me, please?
22        Q.   (BY MR. HINOJOSA) Sure.  How has plaintiff's
23   members been injured because UT Austin's intentional
24   discriminatory admissions and policies continue to deny
25   them the opportunity to compete for admission as you
```

1  allege here in Paragraph 203?

2       A.    Their race and ethnicity -- I'm sorry.  Go

3  ahead Mr. McCarthy.

4              MR. MCCARTHY:  Objection form.  Objection

5  to the extent it calls for legal conclusion.  I'm sorry

6  you can go ahead and answer to the extent you can abide

7  those instructions.

8              THE WITNESS:  Mr. McCarthy would you

9  state your objection once more so that I can -- I can

10 frame my answer or not frame my answer around your

11 objection.

12             MR. MCCARTHY:  Sure.  Objection form.

13 Objection to the extent it calls for a legal conclusion.

14             THE WITNESS:  Mr. Hinojosa my answer

15 would entail a legal conclusion, so therefore based upon

16 this -- the advice of counsel just now I'm going to be

17 unable to answer that question.

18      Q.    (BY MR. HINOJOSA) And I am not asking you here

19 or in any other questions that I've asked you about you

20 forming a legal conclusion.  So if you can put that

21 aside which you should be able to because your counsel

22 cannot instruct you to not answer a question based on a

23 legal conclusion.  I want to know what the facts are

24 that you can tell me about how plaintiff's members have

25 been or will continue to be injured as you allege in

```
 1  testify to as the plaintiff in this case, but sure we
 2  can --
 3              MR. MCCARTHY:  And the 30 B 6 notice did
 4  not indicate that every paragraph of the complaint was
 5  going to be the subject of this deposition nor would it
 6  be given ordnance in the Court's discovery (audio
 7  indiscernible) and the witness is able to answer the
 8  question without learning a (audio indiscernible)
 9  Court's discovery order or other relevant privileges
10  then witness can answer.
11              MR. HINOJOSA:  I'm just trying to follow
12  up with some questions here.
13      Q.   (BY MR. HINOJOSA) So Page 18 of the complaint
14  has some charts.
15      A.   I  see that.
16      Q.   Okay. And actually lets -- let's go to
17  Page 21.  Sorry about that.  It's Paragraph 109.  And do
18  you see that chart there that's titled or the table
19  that's titled --
20      A.   I do.
21      Q.    -- 2019 admitted students from Texas by race
22  and automatic admissions status?
23      A.   I do.
24      Q.   And it says that students admitted via the top
25  ten percent plan are 29 percent white.  Students
```

1  admitted outside the top ten percent plan are 42 percent

2  white.  Do you see that?

3      A.   I do.

4      Q.   So you would agree with me that students

5  admitted outside the top ten percent plan are whiter on

6  average than students under the top ten percent plan,

7  correct?

8              MR. MCCARTY:  Objection form.

9              THE WITNESS:  Correct, I'm sorry.

10     Q.   (BY MR. HINOJOSA) And yet your allegation is

11 that these associational members are injured because of

12 UT's consideration of race for those students admitted

13 outside the top two percent plan; is that correct?

14             MR. MCCARTHY:  Objection form.  Objection

15 on the grounds the question is outside the scope of the

16 Court's discovery order and I instruct the witness not

17 to answer the question.

18             THE WITNESS:  On advice of counsel I

19 won't be answering this question.

20     Q.   (BY MR. HINOJOSA) Going to Page 49 of the

21 complaint are you there?

22     A.   Yes, I am now.

23     Q.   Do you understand that this paragraphs --

24 following paragraph or this section following

25 paragraph 244 is the relief that you have asked the

CONFIDENTIAL                          February 26, 2021
                                              Page 176

1  Court to issue in this case?

2       A.   I understand that to be the case.

3       Q.   And under standing rules I'll just say this is

4  a preface so that your counsel can understand that you

5  know there's Supreme Court case law that says we're

6  allowed to discover standing as it pertains to each

7  claim and claim for relief in this case so that's why

8  I'm gonna ask you, you know, these few questions here.

9       Do you understand that other universities that

10  don't use a race-conscious policy still allow students

11  to lift up their racial identity and their racial

12  experiences in an application. Do you just understand

13  that generally?

14            MR. MCCARTHY:  Objection form.  Objection

15  outside the scope of the Court's discovery order.  I

16  instruct the witness not to answer the question.

17            THE WITNESS:  On advice of counsel I

18  won't be answering the question.

19       Q.   (BY MR. HINOJOSA) And you're asking here under

20  letter C a permanent injunction barring defendants from

21  using race as a factor in future undergraduate

22  admissions decisions; is that correct?

23       A.   The paragraph reads that way -- let me read it

24  so I -- I won't misrepresent it.  "A  permanent

25  injunction barring dependents from using race as a

1   factor in future undergraduate admissions decisions at

2   UT Austin."

3       Q.   Under D, you asked for "A permanent injunction

4   requiring defendants to conduct all admissions in a

5   manner that does not permit those engaged in the

6   decisional process to be aware of or learn the race or

7   ethnicity of any applicant for admission."  Did I read

8   that correctly?

9       A.   You read it correctly.

10      Q.   So can you tell me about this more specific

11  relief why you think that censoring applications of

12  students from even -- from as you alleged here, you

13  know, officials who are engaged in the decisional

14  process to be aware of or learn the race or ethnicity of

15  any applicant for admission, how that would make the

16  plaintiffs whole in this case?

17          MR. MCCARTHY:  Objection form.  Objection

18  outside the scope of the Court's discovery order.  I

19  instruct the witness not to answer the question.

20          THE WITNESS: On advice of counsel, I'm

21  not going to answer the question.

22      Q.   (BY MR. HINOJOSA) So can you tell me any facts

23  -- again, I'm not asking for a legal conclusion.  Just

24  any facts that you are aware of that would demonstrate

25  -- hold on.  Let me rephrase that. Can you tell me any

1   facts -- let me ask you another question.  Are you

2   requesting that the Court censor applications in this

3   case?

4                    MR. MCCARTHY:  Objection form.  Objection

5   outside the scope of the Court's discovery order.  I

6   instruct the witness not to answer the question.

7                    THE WITNESS:  On advice of counsel I

8   won't answer the question.

9        Q.   (BY MR. HINOJOSA) Are you asking under your

10  claim of relief here under D are you asking the Court

11  that it should not allow students to discuss their

12  racial identity and their racial experiences in their

13  application for admissions?

14                   MR. MCCARTHY:  Objection form.  Objection

15  outside the scope of the Court's discovery order.  I

16  instruct the witness not to answer the question.

17                   THE WITNESS:  On advice of counsel I

18  won't answer the question.

19       Q.   (BY MR. HINOJOSA) Putting aside the use of

20  race as a factor in admissions -- put that aside.  Can

21  you tell me how the student associational members of

22  SFFA are harmed by those engaged in the decisional

23  process being aware of or learning the race or ethnicity

24  of any applicant for admission?

25                   MR. MCCARTHY:  Objection form.  Objection

```
 1  to the extent it calls for a legal conclusion.
 2      Q. (BY MR. HINOJOSA) And I'm not asking for a legal
 3  conclusion.
 4                  MR. MCCARTHY:  I stand by my objection.
 5                  THE WITNESS:  Mr. McCarthy are you -- are
 6  you objecting to my answering this question?
 7                  MR. MCCARTHY:  I'm not instructing you
 8  not to answer the question.  I'm objecting to the form
 9  and I'm objecting to the extent it calls for a legal
10  conclusion.  You may answer consistent with that
11  guidance.
12                  THE WITNESS:  Mr. Hinojosa would you ask
13  your question once again?
14                  MR. HINOJOSA:  Ms. Hoffman, would you do
15  me the favor.
16                  REPORTER:  Yes.  Give me one second.
17                  MR. HINOJOSA:  Should begin with putting
18  aside the consideration of race.
19                  (Read back last question.)
20                  MR. MCCARTHY:  Objection form.  And
21  actually I'll object on the grounds it's outside the
22  scope of the Court's discovery order.  I instruct the
23  witness not to answer.
24                  THE WITNESS:  On advice of counsel, I --I
25  won't be answering the question.
```

1          MR. HINOJOSA:  Just give me a second.  We

2   can go off the record for a minute.

3          MR. MCCARTHY:  Okay.

4          REPORTER:  The time is 2:11 p.m. and we

5   are off the record.

6          (Break.)

7          REPORTER:  The time is 2:14 p.m. and we

8   are back on the record.

9     Q.   (BY MR. HINOJOSA) Yeah, I just want to make it

10  clear for the record that the student intervenors do

11  intend to, you know, pursue each of the questions that

12  was not answered here under the advice of counsel and

13  that in no -- in none of those questions were asking for

14  a legal conclusion and we understand the rules of court

15  you do not permit a witness to refuse to answer solely

16  because a question is objective to -- on those grounds

17  and on any other grounds outside of, you know, the

18  specific instructions of counsel and to the extent that

19  we need to certify you know those questions we would

20  certify each and every one of those questions as

21  presented here on the record.  No further questions.

22          MR. MCCARTHY:  We understand your

23  position and the parties can proceed accordingly.  Let

24  me take a short break to see if there'll be any redirect

25  and, you know, give me maybe five minutes if we have

```
1   much it won't be long, but give me five minutes to think
2   through it and then we'll get back on the record, is
3   that okay for everybody?
4                   MR. POWERS:  That's fine.
5                   REPORTER:  The time is 2:16 p.m. and we
6   are off the record.
7                   (Break.)
8                   REPORTER:  The time is 2:22 p.m. and we
9   are back on the record.
10                   MR. MCCARTHY:  SFFA has no questions for
11   the witness.  There'll be no redirect.
12                   MR. POWERS:  Nothing further.  Thanks
13   everyone.
14                   MR. MCCARTHY:  Thank you.
15                   REPORTER:  All right.  Before we go off
16   the record, can I get any transcript orders?
17                   MR. MCCARTHY:  Sure.
18                   MR. POWERS:  We'll repeat our order from
19   last time.
20                   MR. MCCARTHY:  Yeah, we'll do the same.
21                   THE WITNESS:  Tom, hold on.  I just want
22   to go to your office and clarify one thing.
23                   VIDEOGRAPHER:  Counsel, do we have video
24   orders?
25                   MR. HINOJOSA:  Carter?
```

CONFIDENTIAL

```
 1                    MS. SIMPSON:  Yep.  We will -- we'll be
 2    emailing about getting a transcript as soon as a
 3    non-rush becomes available.
 4                    VIDEOGRAPHER:  And did anybody have video
 5    orders?
 6                    MR. POWERS:  I'm sure we do.
 7                    THE WITNESS:  Sorry everyone just the
 8    worry wart in me.
 9                    MR. MCCARTHY:  Same order as normal for
10    us.  I don't even know what it was.  Somebody else is in
11    charge of making the orders so whatever we did last time
12    is fine.
13                    REPORTER:  All right.  And the time is
14    2:23 p.m. and we are off the record.
15                        (Off the record at 2:23 p.m.)
16
17
18
19
20
21
22
23
24
25    WITNESS NAME:  ███████████████
```

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
 2                      AUSTIN DIVISION

 3  Students For Fair              )
    Admissions, INC.,              )
 4                                 )
                                   )
 5          Plaintiff,             )
                                   ) CIVIL ACTION
 6  VS.                            )
                                   ) NO:  1:20 cv 00763 RP
 7  UNIVERSITY OF TEXAS AT         )
    AUSTIN, ET AL.,                )
 8                                 )
            Defendants.            )
 9

10

11                  REPORTER'S CERTIFICATE
                    OF  ████████████████

12

13       I, Miah Hoffman, CSR, do hereby certify that the

14  foregoing deposition is a full, true and correct

15  transcript;

16       That the foregoing deposition of Witness,  ████████

17  ██████, the Witness, hereinbefore named was at the time

18  named, taken by me in oral stenograph on February 26,

19  2021, the said Witness having been by me first duly

20  cautioned and sworn to tell the truth, the whole truth,

21  and nothing but the truth, and the same were thereafter

22  reduced to typewriting by me or under my direction.  The

23  charge for the completed deposition is $ _____ due from

24  Defendant;

25              ( ) That pursuant to the Federal Rules of
```

February 26, 2021
Page 186

1   Civil procedure, the Witness shall have 30 days after

2   being notified by certified mail, return receipt

3   requested, by the deposition officer that the original

4   deposition transcript is available in her office for

5   review and signature by the Witness and if any

6   corrections made are attached hereto;

7           ( ) That by agreement of counsel, a reading

8   condensed copy of the deposition transcript along with

9   the full-sized original Changes and Signature Sheet has

10  been sent to _____ on _____ for review

11  and signature within 30 days and if any corrections

12  returned are attached hereto;

13          ( ) That by agreement of counsel, the

14  deposition officer is instructed to release the original

15  deposition transcript to

16  _____ on _____ for review and

17  signature, and the deposition officer is thereafter

18  released of any further responsibility with regard to

19  the original;

20          ( ) That the witness shall have thirty (30)

21  days for review and signature of the original transcript

22  and if any corrections returned are attached hereto;

23          ( ) That the signed transcript ( ) was ( ) was

24  not received from the Witness within 30 days;

25              ( ) That the examination and signature of the

1  Witness is waived by the Witness and the parties;

2          That the amount of time used by each party at

3  the deposition is as follows:

4      Mr. Powers:    03 HOURS:31 MINUTE(S)
       Mr. Hinojosa:  01 HOURS:24 MINUTE(S)
5      Mr. McCarthy:  00 HOURS:00 MINUTE(S)

6      I further certify that I am neither counsel for,

7  related to, nor employed by any of the parties or

8  attorneys in this action in which this proceeding was

9  taken, and further that I am not financially or

10 otherwise interested in the outcome of the action.

11         Certified to by me this 2nd day of March, 2021.

12

13

14         _____
15         MIAH HOFFMAN, CSR 11773
           Expiration Date:  2/28/2023
16         Firm Registration No. # 631
           Kim Tindall & Associates, LLC
17         16414 San Pedro, Suite 900
           San Antonio, Texas 78232
18         Phone 210 697 3400
           Fax 210 697 3408

19

20

21

22

23

24

25