Exhibit C

Transcript of the Testimony of

██████████

**Date:**

February 01, 2021

**Case:**

Students for Fair Admissions vs University of Texas

1   IN THE UNITED STATES DISTRICT COURT
    FOR THE WESTERN DISTRICT OF TEXAS
2              AUSTIN DIVISION

3   STUDENTS FOR FAIR            )
    ADMISSIONS, INC,             )
4
               Plaintiff,        )
5                                     CIVIL ACTION
    VS.                          )
6                                     NO.: 1:20-cv-00763-RP
    UNIVERSITY OF TEXAS AT       )
7   AUSTIN, ET AL.,              )

8              Defendants.       )

9   -----------------------------------

10          ORAL AND VIDEOTAPED DEPOSITION OF

11          ███████████████

12              FEBRUARY 1, 2021

13                 VOLUME 1

14  -----------------------------------

15      ORAL AND VIDEOTAPED DEPOSITION OF ██████████,

16  produced as a witness at the instance of the DEFENDANT,

17  and duly sworn, was taken in the above-styled and

18  numbered cause on February 1, 2021, from 9:38 a.m. to

19  1:25 p.m. via Zoom, before Miah Hoffman, CVR in and for

20  the State of Texas, reported by oral stenography,

21  pursuant to the Federal Rules of Civil Procedure and the

22  provisions stated on the record or attached hereto.

23

24

25

```
 1                    A P P E A R A N C E S

 2   FOR THE PLAINTIFF:

 3        J. MICHAEL CONNOLLY
          CONSOVOY MCCARTHY PLLC
 4        1600 Wilson Boulevard, STE 700
          Arlington, Virginia, 22209
 5        Phone:(703)243-9423
          Mike@consovoymccarthy.com
 6

 7   FOR THE DEFENDANTS UNIVERSITY OF TEXAS AT AUSTIN:

 8        MATTHEW C. POWERS
          GRAVES DOUGHERTY, HEARON &
 9        MOODY, P.C.
          401 Congress Avenue, Suite 2700
10        Austin, Texas 78701
          Phone:(512)480-5725
11        Fax:(512)539-9938
          mpowers@gdhm.com
12

13   FOR THE DEFENDANTS UNIVERSITY OF TEXAS AT AUSTIN:

14        JOHN J. (MIKE) MCKETTA III
          GRAVES DOUGHERTY, HEARON &
15        MOODY, P.C.
          401 Congress Avenue, Suite 2700
16        Austin, Texas 78701
          Phone:(512)480-5725
17        Fax:(512)539-9938
          mmcketta@gdhm.com
18

19   FOR THE DEFENDANTS INTERVENORS:

20        DAVID HINOJOSA
          LAWYERS' COMMITTEE FOR CIVIL
21        RIGHTS UNDER LAW
          1500 K. Street, NW, Suite 900
22        Washington, D.C. 20005
          Phone:(202)662-8600
23        Fax:(202)783-0857
          dhinojosa@lawyerscommittee.org
24

25
```

```
 1              A P P E A R A N C E S

 2   FOR THE DEFENDANTS INTERVENORS:

 3        CARTER C. SIMPSON
          HUNTON ANDREWS KURTH LLP
 4        2200 PENNSYLVANIA AVENUE, NW
          Washington, D.C. 20037
 5        Phone:(202) 955-1850
          csimpson@huntonak.com
 6

 7   ALSO PRESENT:

 8        JOSEPH (JODY) HUGHES: Associate Vice President For

 9   Legal Affairs (UT)

10        KTA HOST: DEA BROWN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                              INDEX

 2                                                      PAGE

 3   Appearances......................................... 2

 4   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
          Examination by Mr. Powers...................... 5
 5        Examination by Mr. Hinojosa.................... 60
          Examination by Mr. Connolly...................105
 6

 7   Signature and Changes.............................. 109

 8   Reporter's Certificate.............................111

 9

10                             EXHIBITS

11   NO.  DESCRIPTION                                  PAGE

12   1    Decl.  Of Alexandra Trujillo.........      91
     2    Decl. Of Brianna McBride.............      101
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S
 2              REPORTER:  We are on the Record.  Today's
 3   date is February 1st, 2021.  The time is 9:38 a.m. This
 4   is the oral deposition of ▓▓▓▓▓▓▓▓, and it is being
 5   conducted remotely by agreement of the parties or in
 6   accordance with current Emergency Orders.  The witness
 7   is attending from ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
 8   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.
 9              My name is Miah Hoffman, my CVR # is 7859
10   with Kim Tindall & Associates.  I am administering the
11   oath and reporting the deposition remotely by oral
12   stenographic means.
13              My business address is 16414 San Pedro
14   Avenue, Suite 900, San Antonio, Texas 78232.  The
15   witness has been identified to me through his Texas
16   driver's license.
17              Would counsel go ahead and please state
18   their appearances for the record?
19              MR. POWERS:  Matt Powers for the
20   defendants.
21              MR. MCKETTA:  Also for defendants.
22              MR. CONNOLLY:  Michael Connolly for
23   plaintiff, Students For Fair Admissions.
24              MS. SIMPSON:  Carter Simpson for the
25   defendant, Intervenors.
```

```
 1                    MR. HINOJOSA:  David Hinojosa, defendant,

 2   Intervenors.

 3                    (Witness duly sworn.)

 4                    ██████████████████,

 5   having been first duly sworn, testified as follows:

 6                         EXAMINATION

 7   BY MR. POWERS:

 8        Q.   ████████████  would you please state your name

 9   for the record?

10        A.   ███████████████.

11        Q.   Your first name is ███████ and your last name

12   is ██████, correct?

13        A.   Yes.

14        Q.   Have you ever given a deposition before, ██████

15   ████████?

16        A.   No.

17        Q.   Okay.

18                    MR. CONNOLLY:  Matt, I'm sorry to

19   interrupt.  I should have said this before.  Can I put

20   the stipulations that we agreed to on the record?

21                    MR. POWERS:  Yes, very good.

22                    MR. CONNOLLY:  Okay.  So this is what the

23   parties agreed to before the deposition.  During this

24   deposition it is possible that UT or the Intervenors

25   will have questions that SFFA believes infringe upon the
```

1  I'm referring to black students or African-American,

2  Hispanic, Latinx or brown students or Native American

3  students, do you understand?

4          THE WITNESS:  Okay.  Yes, Now I do.

5      Q. (BY MR. HINOJOSA) Okay.  All right.  My

6  apologies.  So with that clarification, do you recall

7  whether or not there were any black, brown, or Native

8  American students who ranked in the top seven percent of

9  your high school and were admitted into UT?

10     A.   I am not sure.

11     Q.   And I think you said you weren't sure about

12  your class rank, but do you have an idea whether you

13  were in the top 20 percent?

14     A.   I'm not sure.  It could have gone either way,

15  but I know it would've been around that mark.

16     Q.   And do you know of any persons of color who

17  attended your high school that did not rank in the top

18  seven percent, applied to UT and were denied admission?

19     A.   Yes.

20     Q.   And how many persons of color do you know that

21  were denied admission to UT that did not rank in the top

22  seven percent?

23     A.   Well, I -- not denied admission, but given the

24  CAP Program, I know one.

25     Q.   Okay.  And is it your understanding that that

1   prep classes at ▮▮▮▮ that you took?

2       A.   No.

3       Q.   What high school were you zoned for in

4   ▮▮▮▮▮▮?

5       A.   ▮▮▮▮▮▮▮▮▮▮.

6       Q.   And what was the reason why you didn't attend

7   ▮▮▮▮▮▮▮▮▮?

8                MR. CONNOLLY:  Objection.  Sorry.  No

9   objection.

10               THE WITNESS:  I went to ▮▮▮▮▮▮▮▮

11  from kindergarten and it was important to my mom that I

12  remained going to ▮▮▮▮▮▮▮.

13      Q.   (BY MR. HINOJOSA) And you were freely to be

14  able to go to ▮▮▮▮▮▮▮, correct?

15               MR. CONNOLLY:  Objection.  Objection to

16  the -- I apologize.  I didn't -- I didn't hear what you

17  said.  I didn't hear your question.

18      Q.   (BY MR. HINOJOSA) You could have went to ▮▮▮

19  ▮▮▮▮▮▮ if you and your mother wanted you to,

20  correct?  I mean, nothing was stopping you or

21  prohibiting you from attending that high school?

22               MR. CONNOLLY:  Objection to form.

23               THE WITNESS:  I went where my mom told me

24  to go.

25      Q.   (BY MR. HINOJOSA) Okay.  But are you aware of

1  anything that prohibited you from going to ████

2  ████.  That's just a question that -- I'm making sure.

3  I -- I just want to make sure that if you -- if your mom

4  wanted you to go to ████████  you could have and

5  some type of, you know, event didn't prohibit you from

6  being able to go there.

7              MR. CONNOLLY:  Objection to the form.

8              THE WITNESS:  I -- yeah, I suppose.

9       Q.   (BY MR. HINOJOSA) Okay.

10             MR. CONNOLLY:  David, can we -- can we

11  take a -- can we take a short bathroom -- short break.

12  We -- we were only -- the past one was about five

13  minutes and --

14             MR. HINOJOSA:  That's fine.

15             MR. CONNOLLY:  I think it will probably

16  be the last one before -- my guess is, given what you

17  said.

18             MR. HINOJOSA:  Yes.

19             REPORTER:  All right.  The time is 12:22

20  p.m. and we are off the record.

21             (Break.)

22             REPORTER:  All right.  The time is 12:32

23  p.m. and we are back on the record.

24       Q.   (BY MR. HINOJOSA) All right, ████.  I

25  wanted to ask some questions related to your parents

```
 1   now.  What education -- what's the highest degree that
 2   both of your parents have earned?  Degree in education,
 3   sorry.
 4        A.   Okay.  My father has a high school degree and
 5   my mother has a masters.
 6        Q.   Okay.  And what is the family income?
 7                  MR. CONNOLLY:  Objection.
 8                  THE WITNESS: I -- I mean, both my mom and
 9   step-dad are █████████ and that's who I live with, so I
10   don't know.
11        Q.   (BY MR. HINOJOSA) Are you -- are you
12   considered the dependent of your mom and your father?
13        A.   I believe they alternate who claims me.
14        Q.   And how about your father?  What income does
15   he have?
16        A.   I am not sure.
17        Q.   Is it more than a 100,000 annually?
18        A.   Probably.
19        Q.   More than a 150,000?
20        A.   I'm not sure.
21        Q.   And where -- what is your father's -- what
22   does he do for a living?
23        A.   He's in the ████████████.
24        Q.   And what does he do there?
25        A.   He works on ██████████████████████.
```

 1      Q.   So does he work for a company?

 2      A.   Yes.

 3      Q.   And your mother, you said that she's a

 4   ██████?

 5      A.   She's a -- well, I -- she used to be a

 6   ██████.  Now, she's a ████████████.  She ████████████

 7   ████████████████, that sort of thing.

 8      Q.   A ████████████ for what was that?

 9              MR. CONNOLLY:  Objection to the form.

10      Q.   (BY MR. HINOJOSA)  I mean, what do you mean by

11   ████████████?

12      A.   That's her job.

13      Q.   In what field?

14      A.   ████████████████.

15      Q.   Okay.  And do you know if she makes more than

16   60,000 a year?

17      A.   I don't.

18              MR. HINOJOSA:  All right  And I'm sorry,

19   but my -- Carter is in the waiting room, apparently she

20   was accidentally kicked out.  Okay.  Sorry about that.

21              MS. CARTER:  Hi. Thank you.  Sorry, I

22   think I was kicked out.

23      Q.   (BY MR. HINOJOSA) And do your parents have any

24   other sources of income from businesses or anything that

25   you know of?

1      A.   No.

2      Q.   And the tuition that was paid at ▇▇▇▇

3   ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇   annually, was that about 18,000 a

4   year?

5      A.   It was less.

6      Q.   Less, maybe 16,000?

7      A.   Less.

8      Q.   Well, how much more less?

9      A.   It was about 12,000 per year.

10      Q.   Okay.  I think tuition's gone up since then

11   because I was --

12      A.   I'm sure.

13      Q.   --  going off some figures on the website.

14   Did you get any Need Based?  Scholarship to attend

15   ▇▇▇?

16      A.   Unfortunately, no.

17      Q.   All right.

18           MR. CONNOLLY:  Hang on one sec, I'm

19   freezing over here.  Can you guys hear me?  Okay.  We're

20   back.  Sorry, my -- my computer froze for a second.

21           MR. HINOJOSA:  That's fine.

22      Q.   (BY MR. HINOJOSA)  The -- in applying for

23   college were eligible for any Pell Grants?

24      A.   Can you explain what that is?

25      Q.   Oh, a Pell Grant is basically a grant from the

1  government that you can qualify for based on your

2  family's income.

3       A.   I'm not sure.

4            MR. CONNOLLY:  Objection.

5       Q.   (BY MR. HINOJOSA) Did you -- do you get any

6  Need Based financial aid at █████████?

7       A.   No.

8       Q.   And what is the source of -- who pays for your

9  college?

10      A.   My father pays my tuition.

11           MR. CONNOLLY:  I -- I apologize is anyone

12 else having problems with the video and audio?

13           MR. POWERS:  Not presently.

14           MR. MCKETTA:  I'm not, Mike.

15           MR. CONNOLLY:  Okay.  I don't know if

16 there's a way to improve the connection, but it's he's

17 on my end he said -- I -- I -- I see him talking and

18 then the video doesn't come for like -- or the sound

19 doesn't come for like four seconds later.  I don't know

20 there's -- I guess --

21           MR. MCKETTA:  You want to try logging out

22 and back in?  We'll ask no questions while you're out.

23 If you want to try that.

24           MR. POWERS:  And we'll go off the record.

25           REPORTER:  We'll go off the record.  The

```
 1   time is 12:39 p.m. and we're off the record.
 2                   REPORTER:  The time is 12:41 p.m. and we
 3   are back on the record.
 4        Q.   (BY MR. HINOJOSA) Do you know how much your
 5   tuition, room and board is ████?
 6        A.   My rent and tuition is separate, but my
 7   tuition is around six grand per semester.
 8        Q.   All right.  And what school did your mother
 9   attend?  What -- I'm sorry.  What colleges did she
10   attend?
11        A.   She attended ████████ for her bachelors
12   and ██████████ for her masters.
13        Q.   Okay. And you said your mother is remarried
14   because I thought you mentioned a stepfather so I just
15   wanted to make sure I'm correct on that?
16        A.   She's just married.
17        Q.   She is remarried?
18        A.   No, she's just married to my step-dad.
19        Q.   Okay.  Did she never marry your father?
20        A.   No.
21        Q.   Okay.  And just to -- so the records clear
22   you're white non-Hispanic, correct?
23        A.   That's correct.
24        Q.   And both your parents are white non-Hispanic?
25        A.   Yes.
```

1     Q.   And was English their first language?

2     A.   Yes.

3     Q.   Earlier we were talking about how -- when you

4  applied to UT you didn't feel that you were restricted

5  in any way of conveying your qualifications, correct?

6               MR. CONNOLLY:  Objection to the form.

7               THE WITNESS:  Not -- not really.  Kind

8  of.

9     Q.   (BY MR. HINOJOSA) And I'm going to show you --

10  here's where we might end up getting a delay.  My

11  technology skills aren't always the best.  Let's see

12  chat -- wait, now I know what I'm doing.  Hold on I got

13  to go through this whole thing.

14     I think you agree with me earlier that, you know,

15  other students shouldn't be so -- shouldn't be

16  restricted either and that you were only concerned that

17  if certain groups were being given an unfair advantage;

18  is that correct?

19               MR. CONNOLLY:  Objection to the form.

20               THE WITNESS:  Yeah, I think it should be

21  as fair as possible for each individual.

22     Q.   (BY MR. HINOJOSA) Okay.  So I dropped in -- in

23  the chat box an exhibit, it's 24 - H, this is Exhibit H,

24  the Declaration of Alexandra Trujillo, who is a

25  Intervenor in this case.  Are you able to pull that up?

1               THE WITNESS:  I think that all students
2   should have equal opportunity to state their experiences
3   and talents.
4        Q.  (BY MR. HINOJOSA) And that includes --
5        A.  Correct.
6        Q.  -- and that includes being able to lift up how
7   those experiences intertwine with their race and
8   ethnicity, correct?
9               MR. CONNOLLY:  Objection to the form of
10  the question.  Objection asked and answered.
11              THE WITNESS:  I don't -- I mean, I think
12  that people of various skin colors could have this
13  experience so I'm not sure that that's what's most
14  important, that the experiences probably import -- is
15  important to her especially.
16       Q.  Yeah.
17       A.  And she's probably --
18       Q.  Go ahead.
19       A.  But I think that people of different skin tone
20  could have experienced the same thing if they were from
21  Venezuela.
22       Q.  Yeah, absolutely I -- I agree with you.
23  Now -- and you're not trying, through this lawsuit,
24  you're not trying to censor Ms. Trujillo or other
25  students from being able to freely describe their own

```
 1   talents and experiences as it relates to their race and

 2   ethnicity, correct?

 3                   MR. CONNOLLY:  Objection to the form of

 4   the question.

 5                   THE WITNESS:  No.

 6       Q.   (BY MR. HINOJOSA) Now, I want to switch it a

 7   little bit to -- to your college -- I think you said

 8   that you started out as a ███████ major and then you

 9   chose ████████; is that correct?

10       A.   That's correct.

11       Q.   And it was your choice to pursue that degree,

12   correct?

13       A.   Yes.

14       Q.   And you get to select the courses that you

15   take, correct?

16       A.   That's correct.

17       Q.   And I think you mentioned that you also try to

18   take advantage of the college experience beyond the

19   course work.  And do you feel that these experiences

20   will help, you know, build your resume as you look to

21   possibly apply to get your MBA degree after you graduate

22   with your bachelors?

23                   MR. CONNOLLY:  Objection to the form of

24   the question.

25                   THE WITNESS:  As far as extracurricular
```

 1              MR. HINOJOSA:  She's an Intervenor in the
 2   case and she is a UT Austin student.
 3              MR. CONNOLLY:  Okay.  I assume the
 4   witness doesn't know so I just  -- I wanted to give him
 5   some context.
 6              THE WITNESS:  Can you repeat the
 7   question?
 8        Q.   (BY MR. HINOJOSA) Sure.  You would agree with
 9   me that if Ms. McBride is applying to UT that -- and --
10   and for graduate school and/or maybe law school, that
11   you're not trying to censor her ability to be able to
12   define herself as a black woman and her related
13   experiences with black organizations on UT, correct?
14              MR. CONNOLLY:  Objection to the form.
15              THE WITNESS:  I would not say that I'm
16   trying to censor her.
17        Q.   (BY MR. HINOJOSA) Okay.  And to be clear,
18   you're not asking a federal court to step in, in this
19   case and start censoring applications of students like
20   Ms. Trujillo and Ms. McBride from even discussing their
21   race or ethnicity in their applications, correct?
22              MR. CONNOLLY:  Objection to the form.
23              THE WITNESS:  That's correct.
24        Q.   (BY MR. HINOJOSA) And you do understand that
25   the Supreme Court has authorized UT and other

```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TEXAS
 2                       AUSTIN DIVISION

 3   STUDENTS FOR FAIR           )
     ADMISSIONS, INC.,           )
 4                               )
                                 )
 5          Plaintiff,           )
                                 ) CIVIL ACTION
 6   VS.                         )
                                 ) NO:  1:20-cv-00763-RP
 7   UNIVERSITY OF TEXAS AT      )
     AUSTIN, ET AL.,             )
 8                               )
            Defendants.          )
 9

10

11                    REPORTER'S CERTIFICATE
                        OF ████████████

12

13        I, Miah Hoffman, CVR, do hereby certify that the

14   foregoing deposition is a full, true and correct

15   transcript;

16        That the foregoing deposition of Witness, ██████

17   ██████, the Witness, hereinbefore named was at the time

18   named, taken by me in oral stenograph on February 1,

19   2021, the said Witness having been by me first duly

20   cautioned and sworn to tell the truth, the whole truth,

21   and nothing but the truth, and the same were thereafter

22   reduced to typewriting by me or under my direction.  The

23   charge for the completed deposition is $ _____ due from

24   Defendant;

25              ( ) That pursuant to the Federal Rules of
```

```
 1   Civil procedure, the Witness shall have 30 days after
 2   being notified by certified mail, return receipt
 3   requested, by the deposition officer that the original
 4   deposition transcript is available in her office for
 5   review and signature by the Witness and if any
 6   corrections made are attached hereto;
 7            ( ) That by agreement of counsel, a reading
 8   condensed copy of the deposition transcript along with
 9   the full-sized original Changes and Signature Sheet has
10   been sent to _____ on _____ for review
11   and signature within 30 days and if any corrections
12   returned are attached hereto;
13            ( ) That by agreement of counsel, the
14   deposition officer is instructed to release the original
15   deposition transcript to
16   _____ on _____ for review and
17   signature, and the deposition officer is thereafter
18   released of any further responsibility with regard to
19   the original;
20            ( ) That the witness shall have thirty (30)
21   days for review and signature of the original transcript
22   and if any corrections returned are attached hereto;
23            ( ) That the signed transcript ( ) was ( ) was
24   not received from the Witness within 30 days;
25            ( ) That the examination and signature of the
```

1    Witness is waived by the Witness and the parties;

2              That the amount of time used by each party at

3    the deposition is as follows:

4        Mr. Powers:     01 HOURS:38 MINUTE(S)
         Mr. Hinojosa:   01 HOURS:25 MINUTE(S)
5        Mr. Connolly:   00 HOURS:01 MINUTE(S)

6        I further certify that I am neither counsel for,

7    related to, nor employed by any of the parties or

8    attorneys in this action in which this proceeding was

9    taken, and further that I am not financially or

10   otherwise interested in the outcome of the action.

11             Certified to by me this 3rd day of February,

12   2021.

13

14                              *Miah Hoffman*

15                    _____
                      MIAH HOFFMAN, CVR 7859
16                    Expiration Date:  9/1/2021
                      Firm Registration No. # 631
17                    Kim Tindall & Associates, LLC
                      16414 San Pedro, Suite 900
18                    San Antonio, Texas 78232
                      Phone 210-697-3400
19                    Fax 210-697-3408

20

21

22

23

24

25