Exhibit D

Transcript of the Testimony of

███████████████

**Date:**

February 02, 2021

**Case:**

Students for Fair Admissions vs University of Texas

```
 1            IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
 2                      AUSTIN DIVISION

 3   STUDENTS FOR FAIR            )
     ADMISSIONS, INC.,            )
 4
                    Plaintiff,    )
 5                                      CIVIL ACTION
     VS.                          )
 6                                      NO.: 1:20-cv-00763-RP
     UNIVERSITY OF TEXAS AT       )
 7   AUSTIN,                      )
     ET AL.,                      )
 8
                    Defendants.
 9

10        ------------------------------------

11        ORAL AND VIDEOTAPED DEPOSITION OF

12        ███████████████████████████

13              FEBRUARY 2, 2021

14                 VOLUME #1

15        ------------------------------------

16      ORAL AND VIDEOTAPED DEPOSITION OF ████████████

17   ████████████, produced as a witness at the instance of

18   the DEFENDANT, and duly sworn, was taken in the

19   above-styled and numbered cause on February 2, 2021,

20   from 9:35 a.m. to 11:48 a.m. via Zoom before Miah

21   Hoffman, CVR in and for the State of Texas, reported by

22   oral stenography, pursuant to the Federal Rules of Civil

23   Procedure and the provisions stated on the record or

24   attached hereto.

25
```

```
 1                  A P P E A R A N C E S

 2  FOR THE PLAINTIFF STUDENTS FOR FAIR ADMISSIONS INC.:

 3       J. MICHAEL CONNOLLY
         CONSOVOY MCCARTHY PLLC
 4       1600 Wilson Boulevard, STE 700
         Arlington, Virginia, 22209
 5       Phone:(703)243-9423
         Mike@consovoymccarthy.com
 6

 7  FOR THE DEFENDANTS UNIVERSITY OF TEXAS AT AUSTIN:

 8       MATTHEW C. POWERS
         GRAVES DOUGHERTY, HEARON &
 9       MOODY, P.C.
         401 Congress Avenue, Suite 2700
10       Austin, Texas 78701
         Phone:(512)480-5725
11       Fax:(512)539-9938
         mpowers@gdhm.com
12

13  FOR THE DEFENDANTS UNIVERSITY OF TEXAS AT AUSTIN:

14       JOHN J. (MIKE) MCKETTA III
         GRAVES DOUGHERTY, HEARON &
15       MOODY, P.C.
         401 Congress Avenue, Suite 2700
16       Austin, Texas 78701
         Phone:(512)480-5725
17       Fax:(512)539-9938
         mmcketta@gdhm.com
18

19  FOR THE DEFENDANTS INTERVENORS:

20       DAVID HINOJOSA
         LAWYERS' COMMITTEE FOR CIVIL
21       RIGHTS UNDER LAW
         1500 K. Street, NW, Suite 900
22       Washington, D.C. 20005
         Phone:(202)662-8600
23       Fax:(202)783-0857
         dhinojosa@lawyerscommittee.org

24

25
```

```
 1              A P P E A R A N C E S

 2   FOR THE DEFENDANTS INTERVENORS:

 3        CARTER C. SIMPSON
          HUNTON ANDREWS KURTH LLP
 4        2200 PENNSYLVANIA AVENUE, NW
          Washington, D.C. 20037
 5        Phone:(202) 955-1850
          csimpson@huntonak.com
 6

 7   ALSO PRESENT:

 8        JOSEPH (JODY) HUGHES: Associate Vice President For

 9   Legal Affairs (UT)

10        KTA HOST: DEA BROWN

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                        INDEX

2                                                 PAGE

3    Appearances...................................... 2

4    ███████████████████████████████
         Examination by Mr. McKetta.................... 6
5        Examination by Ms. Simpson................... 44
         Examination by Mr. Connolly.................. 71
6

7    Signature and Changes............................ 74

8    Reporter's Certificate........................... 76

9

10                     EXHIBITS

11       * There were no exhibits to this deposition

12

13

14

15                 CERTIFIED QUESTIONS

16   NO.                                      PAGE/LINE

17   1    .......................................   56:5

18

19

20

21

22

23

24

25

```
 1                  P R O C E E D I N G S
 2                  REPORTER:  We are on the record.  Today's
 3  date is February 2nd, 2021.  The time is 9:35 a.m. This
 4  is the oral deposition of ███████████████████, and
 5  it is being conducted remotely by agreement of the
 6  parties or in accordance with current Emergency Orders.
 7  The witness is attending from ███████████████████
 8  ██████████████████████.
 9                  My name is Miah Hoffman, CVR #7859 with
10  Kim Tindall & Associates.  I am administering the oath
11  and reporting the deposition remotely by oral
12  stenographic means.
13                  My business address in 16414 San Pedro
14  Avenue, Suite 900, San Antonio, Texas 78232.  The
15  witness has been identified to me through attestation of
16  his counsel.
17                  Would counsel please state their
18  appearances for the record?
19                  MR. MCKETTA:  This is Mike McKetta for
20  defendants.
21                  MR. POWERS:  Matt Powers also for
22  defendants.
23                  MR. CONNOLLY:  Michael Connolly for the
24  plaintiff.
25                  MS. SIMPSON:  Carter Simpson for the
```

1  defendant, Intervenors.

2              MR. HINOJOSA:  David Hinojosa for the

3  Intervenors.

4                  (Witness duly sworn.)

5              ████████████████████████,

6  having been first duly sworn, testified as follows:

7                      EXAMINATION

8  BY MR. MCKETTA:

9              MR. MCKETTA:  Thank you.  Mike do you

10 want to just incorporate the stipulations that you

11 recited yesterday or do you want to repeat them?

12             MR. CONNOLLY:  Yeah.  Would you mind if I

13 repeated them?

14             MR. MCKETTA:  Fine.

15             MR. CONNOLLY:  So this -- these are the

16 stipulations that the parties agreed to before -- before

17 the deposition.  During this deposition it is possible

18 that UT or the Intervenors will ask questions that SFFA

19 believes infringe upon the First Amendment associational

20 rights of SFFA and its members.  SFFA may instruct the

21 witness not to answer a question on these grounds.  If a

22 disagreement arises as to whether this instruction is

23 improper, the parties agree to do their best to resolve

24 the disagreement during the deposition or if necessary,

25 before the Court.  SFFA agrees that UT and the

```
 1   connection just -- y'all bear with me.

 2                   REPORTER:  Did y'all want to stay on the

 3   record or go off the record?

 4                   MR. MCKETTA:  Off the record.  Thank you.

 5                   REPORTER:  The time is 9:40 a.m. and we

 6   are off the record.

 7                   REPORTER:  The time is 9:45 a.m. and we

 8   are back on the record.

 9        Q.    (BY MR. MCKETTA) Thank you.

10   does the percentile of 82 or 83 percent for your class

11   ranking, that is the top 17 or 18 percent of your

12   graduating class sound approximately correct?

13                   MR. CONNOLLY:  Objection to the form.

14                   THE WITNESS:  Yes, roughly.

15        Q.    (BY MR. MCKETTA) I'm gonna cover primarily

16   four topics as we talk today.  One I'm gonna ask you

17   about:  Questions about your relationship with SFFA.

18   One I'm gonna ask you about:  Your current academic

19   performance at          .  One, I'm gonna ask you about

20   the admissions process and then I'm gonna ask some

21   questions about this lawsuit.  So that's generally where

22   we're headed and I may be disorganized enough to digress

23   from time to time, but that's generally the way.  You're

24   currently a member of SFFA and the records that we were

25   given indicated that you joined on January 28, 2019.
```

```
 1              MR. CONNOLLY:  Objection to the form.
 2              THE WITNESS:  I'm not sure about the
 3   timeframe, but yes, I did apply for appeal.
 4        Q.   (BY MR. MCKETTA) Okay.  And that appeal was
 5   then denied shortly afterwards?
 6        A.   Yes.
 7        Q.   Did you have any communication with anybody at
 8   University of Texas about that appeal other than your
 9   written submission and then the electronic communication
10   you received back?
11              MR. CONNOLLY:  Object to the form.
12              THE WITNESS:  I think my family had a few
13   angry phone calls, but I don't believe there's anything
14   other than that.
15        Q.   (BY MR. MCKETTA) Do you know -- know with
16   whom?
17        A.   No, probably -- whatever number's on the
18   website.
19        Q.   Okay.  Both of your parents were college
20   graduates.  I think your father has a professional
21   degree.  Was either at the University of Texas?
22        A.   My father's undergraduate degree was at the
23   University of Texas and he was a ███████████.
24        Q.   Do you know whether or not your father is
25   familiar with Ed Blum?
```

```
 1   he's a member of                    .

 2               MR. CONNOLLY:  Yes, I'm instructing the

 3   witness not to answer that question.

 4               MR. HINOJOSA:  Well, we'll certify the

 5   question -- oh, well -- can you verify -- sorry, Carter.

 6   Can you verify with the witness whether or not he's

 7   gonna follow his attorneys' instructions on that?

 8               MS. SIMPSON:  Will you follow your

 9   attorneys' instruction to not answer the question as to

10   whether you participated in                        ?

11               THE WITNESS:  That's generally what we're

12   supposed to do here so, yes.

13        Q.   (BY MS. SIMPSON) All right, thanks.  And now,

14   we'll move on.  I'd like to talk a bit more about your

15   background before UT and about, kind of your self

16   identification.  What race do you identify with?

17        A.   White.

18        Q.   Is that white non-Hispanic?

19        A.   Yes.

20        Q.   Are you a native English speaker?

21        A.   Yes, ma'am.

22        Q.   What about your parents?  What race -- your bi

23   biological parents.  What race do they identify with?

24        A.   White.

25        Q.   And are they both native English speakers?
```

```
 1        A.    Yes, ma'am.

 2        Q.    And is that white non-Hispanic for them as

 3   well?

 4        A.    Yes, ma'am.  Sorry for the nodding.

 5        Q.    And were you raised by both parents?

 6        A.    Yes, ma'am.

 7        Q.    Are they still married?

 8        A     Yes, ma'am.

 9        Q.    Could you -- what was your SAT score in high

10   school?

11        A.    My SAT score I didn't actually submit to UT

12   ever.

13        Q.    Okay.  Did you submit your ACT score?

14        A.    Yes, ma'am.

15        Q.    What --

16        A.    I think -- I think it was a 1500 though.  I --

17   I'm not positive.

18        Q.    What about your ACT score?

19        A.    My ACT was a 36.

20        Q.    36?

21        A.    Yes, ma'am.

22        Q.    Good job.  And did you participate in any SAT

23   prep?

24        A.    No ma'am.

25        Q.    Did you participate in any ACT prep?
```

```
 1   on that.
 2        Q.   Okay.  You said you attended ███████████
 3   ██████ for high school, is that correct?
 4        A.   Yes, ma'am.
 5        Q.   Do you know the cost of tuition at ██████
 6   ███████?
 7        A.   $19,000 when I went before -- before
 8   scholarships.
 9        Q.   Did you receive any need-based financial aid?
10        A.   No, ma'am.
11        Q.   And who paid for your tuition in high school?
12        A.   My family did.
13        Q.   You mentioned that you had a job for part of
14   high school.  Did you contribute to your tuition?
15        A.   Aside for paying for myself more, no.
16        Q.   What public school for -- were you zoned for?
17        A.   █████████████████.
18        Q.   I'm sorry.  Did you say ██████████████████?
19        A.   Yes, ma'am.  It was in the ████████████.
20        Q.   Could you walk me through how you chose to
21   attend the private high school that you attended instead
22   of ███████████████████?
23                  MR. CONNOLLY:  Objection to the form.
24                  THE WITNESS:  Yes, ma'am.  I -- let me
25   think.  I went to public school for a few years and my
```

1    family thought that I was getting dumber as they said

2    it.  They sent me to a private middle school -- ███████

3    school and then they wanted -- they were go -- deciding

4    between ██████████████████████ and they liked the

5    ████████████ -- the -- well, the ██████████ -- really

6    their morals and they thought they had a good background

7    education so they sent me there instead.

8         Q.  (BY MS. SIMPSON) Okay. Thanks.  When applying

9    for college, do you know if you were eligible for a Pell

10   grant?

11        A.  I don't think I was.

12        Q.  Did --

13        A.  I would hope I wasn't.

14        Q.  Did you apply for need-based financial aid,

15   when applying for college?

16        A.  No ma'am.

17        Q.  And -- are -- do you know what the tuition --

18   your -- your tuition is at ██████████?

19        A.  Free.

20        Q.  Oh, so did you receive a merit's financial aid

21   to attend ██████████?

22        A.  Yes, ma'am.

23        Q.  And could you tell me about that award?

24                MR. CONNOLLY:  Objection to the form.

25                THE WITNESS:  Yes, it's -- as a ██████████

1    ██████████, ███ offers scholarships that make tuition

2    -- pay for tuition, but I still pay for housing and

3    food.

4         Q.   (BY MS. SIMPSON) Okay.  And who pays for

5    housing and food -- who -- where does the funds come to

6    pay for housing and food?

7         A.   My parents and grandparents.

8         Q.   Do  -- do you have a -- maintain a job during

9    the school year?

10        A.   Last semester I was a TA; this semester there

11   were no opportunities for that, so this semester I don't

12   have a job, no.

13        Q.   Okay.  All right.  Thank you for that.  I did

14   have one final topic to cover.  Does anybody need a

15   break before we -- okay.  Earlier we discussed some of

16   the essays in your college application.  Other than the

17   guidance in the prompt, did you feel restricted in any

18   way regarding what you could write in your essays?

19                  MR. CONNOLLY:  Objection to the form.

20                  THE WITNESS:  I don't really understand

21   what you mean by that.

22        Q.   (BY MS. SIMPSON) Do you recall seeing any

23   restriction about what information you could provide in

24   your essays?

25        A.   Restriction by who?

February 02, 2021
Page 63

1      Q.   By the -- did the application mention any

2   restriction about the subject matter you could write

3   about other than the prompt?

4      A.   I think it mentioned something about sexual

5   assault and being legally obligated to report it.  I

6   don't think there were any other restrictions.

7      Q.   Okay.  Thank you.  In listing your

8   accomplishments elsewhere in your application, do you

9   recall seeing any restrictions about the type of

10  accomplishments you could mention?

11     A.   I don't think so.  I don't recall.

12     Q.   In the essay portion of the college

13  application, do you think it's important for students to

14  be able to communicate their experiences fully?

15               MR. CONNOLLY:  Objection to the form.

16               THE WITNESS:  No, I don't think so

17  because no one can ever communicate their full

18  experience.  It's an impossibility.

19     Q.   (BY MS. SIMPSON) Other than -- than self

20  inability to fully communicate yourself, do you believe

21  that the applications should not restrict student's

22  ability to express themselves fully --

23               MR. CONNOLLY:  Objection.

24               MS. SIMPSON:  -- in college --

25               MR. CONNOLLY:  Objection.

```
 1                    MS. SIMPSON:  -- essays?

 2                    MR. CONNOLLY:  Sorry.  Objection to the

 3    form.

 4                    THE WITNESS:  I haven't really thought

 5    about it, but yeah I don't think the college should

 6    restrict your ability to say whatever you want in your

 7    application.

 8        Q.   (BY MS. SIMPSON) If an applicant would like to

 9    describe an experience that somehow reveals his or her

10    race in the essay portion, is it your position the

11    applicant should be barred from doing so?

12                    MR. CONNOLLY:  Objection to the form.

13                    THE WITNESS:  I would say no, they

14    shouldn't be barred from that.

15        Q.   (BY MS. SIMPSON) Is it your position that if

16    an applicant does choose to write about race in the

17    essay portion, should that portion of the admissions

18    department before its review?

19                    MR. CONNOLLY:  Objection.  And counsel

20    are you -- you're asking his own personal belief you're

21    not asking him to speak on behalf of SFFA, correct?

22                    MS. SIMPSON:  That's correct.

23                    MR. CONNOLLY:  Okay.  Can--- can you

24    please restate the question?

25                    MS. SIMPSON:  No, I think it was stated
```

```
 1   the way I wanted to state it --
 2                   Mr. CONNOLLY:  I didn't mean to say
 3   restate, I meant --
 4                   THE WITNESS:  Say it again.
 5        Q.   (BY MS. SIMPSON) Sure.  Is it your position
 6   that if an applicant does choose to write about an
 7   experience that reveals his or her race in the essay,
 8   that that portion should then be redacted by the
 9   admissions department before its review of the
10   application?
11                   MR. CONNOLLY:  Objection to the form.
12                   THE WITNESS:  That's a difficult
13   question.  I think -- well, I'm generally against
14   censoring anything at all -- that fears a little too
15   close to the French model of just absolutely blind for
16   me.  So I would say no, they shouldn't censor it post --
17   postmortem.  That would be worse than saying you
18   shouldn't write about race at all for sure.
19        Q.   (BY MS. SIMPSON) That's a good point.  If an
20   applicant needs to disclose his or her race when listing
21   student organizations, leadership positions, or awards
22   earned in high school, is it your position that the
23   applicant should be barred from doing so?
24                   MR. CONNOLLY:  Objection to the form.
25                   THE WITNESS:  I don't think so, no.
```

1    Q.   (BY MS. SIMPSON) Is it your position that if

2   an applicant reveals his or her race in the list of

3   awards, student organizations, or leadership positions,

4   those awards and achievements should be redacted by the

5   admissions department before its review of the

6   application?

7                    MR. CONNOLLY:  Objection to the form.

8                    THE WITNESS:   I don't think so, no.

9    Q.   (BY MS. SIMPSON) So -- and just so I kind of

10   understand your position.  So long as race is not a

11   factor in UT admissions decision, you don't have a

12   problem with students being able to disclose their race

13   in their applications?

14                    MR. CONNOLLY:  Objection to the form.

15                    THE WITNESS:  Yeah, because I think it's

16   a lot like an interview.  You can't hide your race in an

17   interview.  So as long as it's not a factor in the

18   decision, I think that's fine, yeah.

19                    MS. SIMPSON:  Okay.  And that's all I

20   have for you.  Thank you very much, ███.

21                    MR. CONNOLLY:  Thanks.  I will have a few

22   follow-up questions and we can take a quick break and

23   Carter, just -- you know, in the interest of making sure

24   I'm not making a mistake, can you -- question I promised

25   to think about during the break, what was that again?

```
 1   What was the two you want -- there was:  Are you a
 2   member of ███████████; the other one was --
 3                  MS. SIMPSON:  Have you ever participated
 4   in any ████████████████.
 5                  MR. CONNOLLY:  No, sorry.  The -- this
 6   is the one we got in a -- an argument about -- about the
 7   -- about his friends -- just so I know -- just so I
 8   --              MS. SIMPSON:  Oh.  Which friends at -- at
 9   -- █████████ has he told that he's considering
10   transferring to UT.
11                  MR. CONNOLLY:  Okay.
12                  REPORTER:  All right.  The time is 11:23
13   a.m. and we are off the record.
14                  (Break.)
15                  REPORTER:  All right.  The time is 11:41
16   a.m. and we are back on the record.
17   BY MS. SIMPSON:
18       Q.   ██████, I'm -- I -- this is Carter Simpson
19   again.  I just have two more questions and thank you for
20   -- to you and your counsel for indulging me quickly.
21   You mentioned you did not think you -- your family or
22   you were eligible for a Pell grant; is that correct?
23       A.   Yes, ma'am.
24       Q.   Do you know or can you approximate your
25   family's income?
```

```
 1         A.    I'm not sure.  Let me think.  I -- I really
 2   have no ideal to be perfectly honest.
 3         Q.    Do you know if it's above $200,000 a year?
 4         A.    I'm not sure.  Prob --
 5         Q.    Do you know if it's above -- oh, sorry.
 6         A.    It's above a $100,000 a year, but I'm not sure
 7   if it's above $200,000 a year.
 8         Q.    Okay.  Thank you.  And my final question, have
 9   you met with your counsel during any of the breaks today
10   during the deposition?
11         A.    Yes.
12         Q.    Have you met in person with your counsel?
13         A.    Uh-huh.
14         Q.    And did you discuss the subject -- the
15   substance of your testimony today with your counsel?
16         A.    No.  Outside of the two questions that I will
17   -- that Mr. Connolly's gonna talk about, no.
18         Q.    So you did discuss what Mr. Connolly will be
19   asking you?
20         A.    No.  Outside of the two -- Mr. Connolly and
21   you had an -- a little argument about, outside of those
22   two, no.
23               MS. SIMPSON:  Okay.  All right.  Thank
24   you very much, ███████.
25               THE WITNESS:  Yes, ma'am.
```

```
1              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
2                        AUSTIN DIVISION

3    STUDENTS FOR FAIR              )
     ADMISSIONS, INC.,              )
4

5              Plaintiff,           )
                                        CIVIL ACTION
6    VS.                            )
                                        NO:  1:20-cv-00763-RP
7    UNIVERSITY OF TEXAS AT         )
     AUSTIN,                        )
8    ET AL.,                        )
                                    )
9              Defendants.

10

11                    REPORTER'S CERTIFICATE
                  OF ███████████████████████████

12

13

14        I, Miah Hoffman, CVR, do hereby certify that the

15   foregoing deposition is a full, true and correct

16   transcript;

17        That the foregoing deposition of Witness,

18   ████████████████████████, the Witness, hereinbefore

19   named was at the time named, taken by me in oral

20   stenograph on February 2, 2021, the said Witness having

21   been by me first duly cautioned and sworn to tell the

22   truth, the whole truth, and nothing but the truth, and

23   the same were thereafter reduced to typewriting by me or

24   under my direction.  The charge for the completed

25   deposition is $ _____ due from Defendant;
```

1        ( ) That pursuant to the Federal Rules of

2  Civil procedure, the Witness shall have 30 days after

3  being notified by certified mail, return receipt

4  requested, by the deposition officer that the original

5  deposition transcript is available in her office for

6  review and signature by the Witness and if any

7  corrections made are attached hereto;

8        ( ) That by agreement of counsel, a reading

9  condensed copy of the deposition transcript along with

10 the full-sized original Changes and Signature Sheet has

11 been sent to _____ on _____ for review

12 and signature within 30 days and if any corrections

13 returned are attached hereto;

14       ( ) That by agreement of counsel, the

15 deposition officer is instructed to release the original

16 deposition transcript to

17 _____ on _____ for review and

18 signature, and the deposition officer is thereafter

19 released of any further responsibility with regard to

20 the original;

21       ( ) That the witness shall have thirty (30)

22 days for review and signature of the original transcript

23 and if any corrections returned are attached hereto;

24       ( ) That the signed transcript ( ) was ( ) was

25 not received from the Witness within 30 days;

1          ( ) That the examination and signature of the

2   Witness is waived by the Witness and the parties;

3          That the amount of time used by each party at

4   the deposition is as follows:

5        Mr. McKetta:    00 HOURS:52 MINUTE(S)
         Ms. Simpson:    01 HOURS:30 MINUTE(S)
6        Mr. Connolly:   00 HOURS:01 MINUTE(S)

7        I further certify that I am neither counsel for,

8   related to, nor employed by any of the parties or

9   attorneys in this action in which this proceeding was

10  taken, and further that I am not financially or

11  otherwise interested in the outcome of the action.

12         Certified to by me this 5th day of February,

13  2021.

14                          *Miah Hoffman*

15

16  _____

17  MIAH HOFFMAN, CVR 7859
    Expiration Date:  9/1/2021
18  Firm Registration No. # 631
    Kim Tindall & Associates, LLC
19  16414 San Pedro, Suite 900
    San Antonio, Texas 78232
20  Phone 210-697-3400
    Fax 210-697-3408

21

22

23

24

25