# The New York Times

U.S.  |  THE TEXAS TRIBUNE

# One Man Standing Against Race-Based Laws

By MORGAN SMITH   FEB. 23, 2012

Edward Blum has the kind of zeal for public policy that usually leads to a career in politics.

Mr. Blum does not like elections, though — he has lost two of them. And he has discovered what may be a more powerful instrument for advancing his beliefs: the court system.

A self-described autodidact who has no law degree or formal scholarly background, Mr. Blum is the driving force behind Fisher v. University of Texas, the affirmative action case headed to the United States Supreme Court that could halt the use of race in university admissions.

For Mr. Blum, the lawsuit crowns a two-decade-long devotion to disputing race-based laws, forged during an unsuccessful Congressional campaign in a Houston district that he later proved was unconstitutionally engineered along racial lines.

But it will not be his first time at the nation's high court.

Through his legal defense fund, the Project on Fair Representation, he shepherded the closely watched 2009 Voting Rights Act case Northwest Austin Municipal Utility District No. 1 v. Holder through the justice system.

The court's ruling was narrower than expected, limiting its decision to the Austin district rather than overturning, as Mr. Blum intended, the so-called



preclearance provision of the law requiring many state and local governments, mostly in the South, to seek federal permission before making even minor changes to voting procedures. The Austin ruling did, however, appear to invite future challenges.

Now, with Fisher, Mr. Blum is behind another hotly anticipated case. But for all his involvement in high-profile litigation that strikes along popularly held conservative ideological lines, he is a surprisingly solitary actor.

Despite the organizational heft its name may imply, Mr. Blum's Project on Fair Representation, based in Washington, is a one-man show. The contact number listed on the site is his cellphone. He takes no salary and has no staff. Its legal fees are paid through the support of DonorsTrust, a nonprofit organization that backs conservative causes.

Rather than have an in-house stable of lawyers and researchers, Mr. Blum said, he has opted to create a nationwide network of top legal talent who are often willing to offer their services at greatly reduced rates.

"You have someone who is highly ideologically motivated, with a lot of energy pushing a cause, and doing so in a savvy way," said Rick Hasen, an election law expert who follows Mr. Blum's opposition to the Voting Rights Act.

Mr. Blum, a former investment broker and now a visiting fellow at the conservative American Enterprise Institute, likened his role in the litigation to being "Yenta the matchmaker."

"I find the plaintiff, I find the lawyer, and I put them together, and then I worry about it for four years," he said.

It is a model that was pioneered by groups like the N.A.A.C.P. during the civil rights movement but that has been used more recently by conservatives who view the current Supreme Court as friendlier to their causes, Mr. Hasen said.

"If Blum didn't exist, someone would create him," he said. "He's just become the focal point. He's been able to put together the lawyers and the funds for this litigation to be tractable."

EXHIBIT I, PAGE 2

Mr. Blum has honed his legal instincts through a long résumé of court cases. In 1996, he was a plaintiff himself, one of six Texas voters who successfully convinced the United States Supreme Court that some of the state's Congressional districts had been gerrymandered along racial lines.

That foray into the courtroom was spurred by the political defeat that Mr. Blum said was the beginning of his understanding of "how race and public policy come together."

In 1992, he ran for Congress in Houston against a Democratic incumbent, Craig Washington. Lacking money for advertisements, he and his wife took to block walking. He estimated they knocked on 20,000 doors. While doing that, Mr. Blum said, he realized it "was impossible to follow the contours of the district," because they were drawn to segregate minority voters.

Along with the gerrymandering case, Mr. Blum assembled another lawsuit, against the Houston Independent School District in 1997, and stopped the district from using race as a factor in admitting children to gifted programs.

Mr. Blum again tried his hand at politics that year, this time with a highly publicized campaign to end the City of Houston's affirmative action hiring policies through a ballot initiative. That failed, but not before he spent $70,000 of his own money on the effort. A year later, in a move that attracted national headlines, Mr. Blum resigned from his job at PaineWebber, which he said at the time was because company managers pressured him to quiet his views on affirmative action fearing they would cost the firm business.

"He was perceived by a lot of people to be a pest, but he was a very bright guy and not at all a kook," said Dan McClung, who as a Democratic consultant skirmished with Mr. Blum during his time in Houston. "He was persistent, and he knew what he was doing and why."

That persistence appears to have paid off. After moving to Washington in 2000 to continue his activism, Mr. Blum founded the Project on Fair Representation in 2005. And in his latest face-off, he has reason to believe his luck with the justice system will hold. The court that delivered a 2003 decision approving the use of race

in admissions has shifted. Justice Samuel A. Alito Jr., who has indicated he opposes affirmative action policies, has replaced the swing vote of Sandra Day O'Connor. With Anthony Kennedy, that makes five friendly justices.

Mr. Blum has also been shrewd in his choice of target, said Richard Kahlenberg, a senior fellow at the Century Foundation who writes about affirmative action policies. Because race-based affirmative action was illegal in the state after a 1996 ruling by the United States Court of Appeals for the Fifth Circuit, the University of Texas was forced to search for racially neutral methods to promote diversity on campus until the 2003 decision.

The result was a rule that automatically admitted students in the top 10 percent of their classes. Because of the makeup of Texas school districts, the rule, combined with an affirmative action policy based on socioeconomic status, had the effect of bringing more minorities to the school.

Texas' experiment, Mr. Blum's lawyers will say, shows that it is possible to foster diversity without considering race in admissions — an argument that Mr. Kahlenberg said would be persuasive to the justices who believe race should be left out of admissions except as a last resort.

Meanwhile, Mr. Blum has another potentially pivotal case waiting in the wings. Out of Alabama, Shelby County v. Holder is again attacking the preclearance provision in the Voting Rights Act and is also likely to end up at the high court.

"People labor in various movements. The vehicle that I have chosen has been the courts," he said. "My track record in the courts is a lot better than my track record at the ballot box."

### *Correction: February 26, 2012*

An article on Friday about Edward Blum, the head of a legal defense fund, the Project on Fair Representation, that has contested race-based laws, misidentified the court that ruled in 1996 that the University of Texas' affirmative action policy was unconstitutional. It was the United States Court of Appeals for the Fifth Circuit, not the Texas Supreme Court.
msmith@texastribune.org

A version of this article appears in print on February 24, 2012, on Page A21A of the National edition with the headline: One Man Standing Against Race-Based Laws.

© 2018 The New York Times Company