Exhibit C

1          IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TEXAS
2                    AUSTIN DIVISION

3    Students For Fair              )
     Admissions, INC,               )
4
                    Plaintiff,      )
5                                       CIVIL ACTION
     VS.                            )
6                                       NO.: 1:20-cv-00763-RP
     UNIVERSITY OF TEXAS AT         )
7    AUSTIN, ET AL.,                )

8                    Defendants.    )

9          ----------------------------------

10          ORAL AND VIDEOTAPED DEPOSITION OF

11                    EDWARD BLUM

12                 FEBRUARY 26, 2021

13                    VOLUME 1

14            *ATTORNEYS' EYES ONLY*

15          ----------------------------------

16       ORAL AND VIDEOTAPED DEPOSITION OF EDWARD BLUM,

17    produced as a witness at the instance of the DEFENDANT,

18    and duly sworn, was taken in the above-styled and

19    numbered cause on February 26, 2021, from 7:36 a.m. to

20    2:23 p.m. via Zoom, before Miah Hoffman, CSR in and for

21    the State of Texas, reported by oral stenography,

22    pursuant to the Federal Rules of Civil Procedure and the

23    provisions stated on the record or attached hereto.

24

25

```
 1                   A P P E A R A N C E S

 2   FOR THE PLAINTIFF:

 3        THOMAS MCCARTHY
          CONSOVOY MCCARTHY PLLC
 4        1600 Wilson Boulevard, STE 700
          Arlington, Virginia, 22209
 5        Phone:(703)243-9423
          Tom@consovoymccarthy.com
 6

 7   FOR THE DEFENDANTS UNIVERSITY OF TEXAS AT AUSTIN:

 8        MATTHEW C. POWERS
          GRAVES DOUGHERTY, HEARON &
 9        MOODY, P.C.
          401 Congress Avenue, Suite 2700
10        Austin, Texas 78701
          Phone:(512)480-5725
11        Fax:(512)539-9938
          mpowers@gdhm.com
12

13   FOR THE DEFENDANTS UNIVERSITY OF TEXAS AT AUSTIN:

14        JOHN J. (MIKE) MCKETTA III
          GRAVES DOUGHERTY, HEARON &
15        MOODY, P.C.
          401 Congress Avenue, Suite 2700
16        Austin, Texas 78701
          Phone:(512)480-5725
17        Fax:(512)539-9938
          mmcketta@gdhm.com
18

19   FOR THE DEFENDANTS INTERVENORS:

20        DAVID HINOJOSA
          LAWYERS' COMMITTEE FOR CIVIL
21        RIGHTS UNDER LAW
          1500 K. Street, NW, Suite 900
22        Washington, D.C. 20005
          Phone:(202)662-8600
23        Fax:(202)783-0857
          dhinojosa@lawyerscommittee.org
24

25
```

```
 1               A P P E A R A N C E S

 2   FOR THE DEFENDANTS INTERVENORS:

 3        CARTER C. SIMPSON
          HUNTON ANDREWS KURTH LLP
 4        2200 PENNSYLVANIA AVENUE, NW
          Washington, D.C. 20037
 5        Phone:(202) 955-1850
          csimpson@huntonak.com
 6

 7   ALSO PRESENT:

 8

 9        JOSEPH (JODY) HUGHES: Associate Vice President For

10   Legal Affairs (UT)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                        INDEX
```

Edward Blum                    CONFIDENTIAL                February 26, 2021
                                                                    Page 4

```
 1                                                          Page

 2   Appearances........................................ 2

 3   ████████████████
         Examination by Mr. Powers....................... 6
 4       Examination by Mr. Hinojosa.................... 125

 5

 6   Signature and Changes............................. 183

 7   Reporter's Certificate............................185

 8

 9                          EXHIBITS

10   NO.  DESCRIPTION                                    Page

11   1    Exhibit 1..........................          50
     2    Exhibit 2........................            55
12   3    Exhibit 3..........................          60
     4    Exhibit 4..........................          60
13   5    Exhibit 27.........................          83
     6    Exhibit 28.........................          103
14   7    Exhibit 29.........................          129
     8    Exhibit 30.........................          131
15   9    Exhibit 31.........................          157

16

17                 CERTIFIED QUESTIONS
                        PAGE/LINE
18

19       148/17...159/7.....165/4....175/11.....
         150/15...159/16....165/15...176/4.......
20       151/7....160/3.....166/14...177/11......
         151/19...162/1.....167/20...177/23......
21       153/23...162/11....168/16...178/10......
         153/19...163/9.....168/24...178/20......
22       154/19...163/22....169/7................
         158/3....164/4.....173/15...............
23

24

25              P R O C E E D I N G S
```

Kim Tindall and Associates, LLC 16414 San Pedro, Suite 900   San Antonio, Texas 78232
210-697-3400                                                        210-697-3408

```
 1                    REPORTER:  We are on the record.  Today's
 2   date is February 26th, 2021.  The time is 7:36 a.m.
 3   This is the oral deposition of Edward Blum and it is
 4   being conducted remotely by agreement of the parties or
 5   in accordance with current emergency orders.
 6   The witness is attending from the law office of Consovoy
 7   and McCarthy located at 1600 Wilson, Arlington, Virginia
 8   22209.
 9                    My name is Miah Hoffman.  CSR number
10   11773 with Kim Tindall and Associates.  I am
11   administering the oath and recording the deposition
12   remotely by oral stenographic means.  My business
13   address is 16414 San Pedro Avenue, Suite 900, San
14   Antonio, Texas 78232.
15                    The witness has been identified to me
16   through his U.S. passport.  Would counsel please state
17   their appearances for the record?
18                    MR. POWERS:  Matt Powers for the
19   defendants.
20                    MR. MCKETTA:  Mike McKetta also for the
21   defendants.
22                    MR. HINOJOSA:  David Hinojosa for the
23   student intervenors.
24                    MS. SIMPSON:  Carter Simpson for the
25   student intervenors.
```

1              MR. MCCARTHY:  Thomas McCarthy from

2  Consovoy McCarthy for Student For Fair Admissions, Inc.

3              (Witness duly sworn.)

4                    EDWARD BLUM,

5  having been first duly sworn, testified as follows:

6                    EXAMINATION

7  BY MR. POWERS:

8              MR. POWERS:  Mr. McCarthy, is it okay to

9  proceed?  Did you want to say anything on the record

10 before we get started?

11             MR. MCCARTHY:  Thanks, Mr. Powers.  I

12 would.  Consistent with, I think, our practice in the

13 other depositions in this case, I'd like to put a few

14 stipulations on the record and I'll -- I'll do so now.

15 Thanks.

16      During this deposition it's possible that the

17 University of Texas, or the intervenors, will ask

18 questions that SFFA believes infringe upon the First

19 Amendment and associational rights of SFFA and its

20 members.  SFFA may instruct the witness not to answer a

21 question on these grounds.  If a disagreement arises as

22 to whether this instruction is proper, the parties agree

23 to do their best to resolve the disagreement during the

24 deposition or, if necessary, before the Court.  SFFA

25 agrees that UT and the intervenors may have the right to

1     Q.   (BY MR. POWERS)  Can you describe for me how

2  the missions of the Project on FairRepresentation and

3  SFFA are the same or different?

4                MR. MCCARTHY:  Objection form.

5                THE WITNESS:  The -- the mission of both

6  is to eliminate racial considerations in our public

7  policies.  Students For Fair Admissions has thus far

8  focused on educational -- higher educational admissions

9  policies and I think once or twice had activities in K

10  through 12 arena.  The Project on Fair Representation no

11  longer concentrates on anything in the education policy

12  arena and instead focuses on voting issues, contracting

13  issues, employment issues and general legislation that

14  falls outside of what we believe are traditional civil

15  rights principles.

16     Q.   (BY MR. POWERS)  Did the Project on Fair

17  Representation end its focus on (audio indiscernible)

18  because you now (audio indiscernible) those issues

19  through, SS, sorry SFFA?

20                REPORTER:  Mr. Powers, can you repeat

21  that?  You went out.

22                MR. POWERS:  I will.

23     Q.   (BY MR. POWERS)  Did the Project on Fair

24  Representation end its focus on educational issues

25  because those issues are now being handled for you

```
 1   through SFFA?
 2              MR. MCCARTHY:  Objection form.
 3              THE WITNESS:  I would say that that's
 4   correct.
 5       Q.   (BY MR. POWERS)  Am I right that the Project
 6   on Fair Representation did handle those issues
 7   throughout dependency of the Fisher litigation?
 8              MR. MCCARTHY:  Objection form.
 9              THE WITNESS:  Correct.
10       Q.   (BY MR. POWERS)  And, in fact, the Project on
11   Fair Representation was a vehicle for all of the funding
12   for the Fisher litigation?
13              REPORTER:  Can you repeat that?
14              MR. MCCARTHY:  Counsel, I lost you there.
15   I'm sorry.
16              MR. POWERS:  I'm sorry.
17       Q.   (BY MR. POWERS)  The Project on Fair
18   Representation had responsibility for coordinating all
19   of the funding for the Fisher litigation?
20       A.   Correct.
21       Q.   And the Project on Fair Representation in the
22   hand-off of the education focus of its race-conscious
23   policy challenges, it actually provided seed money to
24   Students For Fair Admissions as it got off the ground;
25   is that right?
```

Edward Blum                    CONFIDENTIAL                February 26, 2021
                                                                  Page 30

```
 1                THE WITNESS:  Yes.
 2        Q.   (BY MR. POWERS) That's also true with respect
 3   to the Project on Fair Representation?
 4                MR. MCCARTHY:  Objection form.
 5                THE WITNESS:  Yes.
 6        Q.   (BY MR. POWERS) Did you have any role in
 7   approving the form of organization that SFFA would
 8   become?
 9        A.   Yes.
10        Q.   And you -- you understood that when it was
11   being formed it was to be a Virginia nonprofit
12   corporation that would have no members; is that right?
13                MR. MCCARTHY:  Objection.
14   Attorney/client privilege.  I just want to caution the
15   witness not to disclose the communications that he's
16   ever had with counsel, but to the extent you can
17   navigate that instruction, you may answer the question.
18                THE WITNESS:  Students For Fair
19   Admissions was conceived as a membership organization.
20   It is been to my attention, multiple times, that
21   Virginia nonprofit membership question pertains to a
22   statutory question rather than the actual individual
23   members who join Students For Fair Admissions.
24        Q.   (BY MR. POWERS)  From the outset of its
25   formation it was your understanding that you and Abigail
```

```
 1   Fisher and Richard Fisher would have permanent seats on
 2   SFFA's board, correct?
 3             MR. MCCARTHY:  Objection form.
 4             THE WITNESS:  As I described at the
 5   beginning of the deposition the word permanent was
 6   misspoken by me during the first deposition.  That the
 7   Articles of Incorporation and the amended bylaws, which
 8   were brought to my attention, provide for the election
 9   of the three of us plus now our fourth board member to
10   be elected by our fellow board members.
11        Q.   (BY MR. POWERS) Well, and my -- my focus is on
12   not what the documents may say and -- and what you
13   learned through the passage of time, but on your
14   original understanding of the plan for SFFA and do you
15   hear the distinction that I'm drawing?
16             MR. MCCARTHY:  Objection form.
17             THE WITNESS:  I do hear the distinction
18   (audio indiscernible).
19        Q.   (BY MR. POWERS)  With that distinction in mind
20   my question is:  Your understanding and plan, from the
21   outset, was that you and Richard Fisher and Abigail
22   Fisher would start out and remain in a position of
23   control with respect to SFFA?
24             MR. MCCARTHY:  Objection form.
25             THE WITNESS:  It was my understanding
```

1   right to go back and revisit that just to make sure my

2   memory is clear.

3       Q.   Sitting here right now, your -- you memory --

4   we'll look at the bylaws later as well, but your -- your

5   memory and understanding is that though the bylaws had

6   been amended, the Articles of Incorporation have not

7   been amended?

8       A.   I believe that's right.

9       Q.   And you'll have a chance to review your

10  testimony later if you find any inaccuracies that need

11  clarification.  Mr. Blum the -- it was your

12  understanding that when formed SFFA would be a Virginia

13  Nonstock Corporation, correct?

14      A.   Yes.

15           MR. MCCARTHY:  Objection form.

16      Q.   (BY MR. POWERS) And that as -- according to

17  its Articles of Incorporation, it would have no members?

18  That's -- that's what the articles provide for, correct?

19           MR. MCCARTHY:  Objection form.

20           THE WITNESS:  So it clearly states the

21  Corporation shall have no members; however, Students For

22  Fair Admissions has always been conceived and then

23  (audio indiscernible) as a membership organization.

24  This sentence, the corporation shall have no members

25  that's -- with the statutory requirements under the

1  Virginia Nonstock Corporation Act, but Student For Fair

2  Admissions has always had members.  It was conceived

3  that way.  And it was executed that way.

4       Q.   Mr. Blum the articles themselves though, make

5  very plain that the Corporation shall have no members.

6            MR. MCCARTHY:  Objection form.

7            THE WITNESS:  It has always been my

8  understanding and it was what the entire energy and

9  conception of Students For Fair Admissions was all

10 about.  Was to be a membership organization.  This --

11 that sentence applies, as it has been explained to me,

12 to the Virginia Nonstock Corporation Act not the actual

13 501C3 organization.

14      Q.   And am I right that the sense that you had of

15 SFFA as a membership organization counted you and the

16 Fishers and law professors, fellows, and think-tank

17 members as the -- as founding members?

18           MR. MCCARTHY:  Objection form.

19           THE WITNESS:  That's correct.

20      Q.   (BY MR. POWERS) Now, the -- I think, I heard

21 you say that you understood a -- distinctions that could

22 be drawn between mem -- people who could be described as

23 members for one purpose, but not members for another

24 purpose, is that a distinction I was hearing in your

25 earlier answer?

 1  who meet the requirements of 3.03 are entitled to vote
 2  for a director in the member elected seat?
 3              MR. MCCARTHY:  Objection form.
 4              THE WITNESS:  Mr. Powers you -- you
 5  referenced just then Section 3.03, if I'm not mistaken.
 6              MR. POWERS:  I'm sorry.  I'll -- I'll
 7  rephrase.
 8      Q.   (BY MR. POWERS) Am I right that only those who
 9  meet the requirements of the 3.02 are eligible to vote
10  for the member elected director position?
11      A.   I will -- I will make one small addendum to
12  that and that is there have been a handful of young
13  students who had wanted to join, but have been unable to
14  join because they didn't have a credit card and they
15  contacted me directly and asked if they could join
16  without paying the $10.00.  That question went before
17  the board and we admitted them.  So there are some
18  members now who can vote that actually haven't paid the
19  membership dues, but they were -- they were admitted as
20  members through that procedure.
21      Q.   So you're saying that there was a formal board
22  action on particular members who sought eligibility to
23  become a member and vote without having paid the dues?
24      A.   I think -- I think that's right.  There were
25  only three kids that I remember from New York that --

Edward Blum                         CONFIDENTIAL                    February 26, 2021
                                                                        Page 73

```
 1                    THE WITNESS:  Yes.
 2       Q.   (BY MR. POWERS) Would it be fair to say that
 3  SFFA has not engaged in an effort to poll its members to
 4  determine which policy issues or which types of actions
 5  SFFA should be pursuing?
 6                    MR. MCCARTHY:  Objection form.
 7                    THE WITNESS:  We have not formatively
 8  polled our members (audio indiscernible) what you have
 9  just described.
10                    MR. POWERS:  Can you say that one more
11  time 'cause you broke up a little.
12                    THE WITNESS:  Yeah, I'm sorry.  Yes,
13  Students For Fair Admissions has never polled in a
14  informal way our members on various endeavors that they
15  believe we should undertake.  I will state that I am in
16  constant communication with the membership through phone
17  and email and receive dozens of -- of suggestions and
18  ideas in any given month on a one-to-one basis.
19       Q.   (BY MR. POWERS) There's been no effort to
20  survey the -- to survey the 20,000 plus individuals that
21  you count as members to get feedback is that right?
22                    MR. MCCARTHY:  And again, I want to make
23  the same objection on the First Amendment and
24  associational privilege grounds and caution the witness
25  not to disclose the contents of any communications with
```

```
 1   answer the question without making any such disclosure
 2   you may answer the question.
 3                  THE WITNESS:  I have never received a
 4   petition from a group of members encouraging the
 5   organization to (audio indiscernible) any kind of
 6   direction.
 7        Q.   (BY MR. POWERS) And it's --
 8                  REPORTER:  I'm sorry.  I -- I didn't get
 9   that last part, Mr. Blum.
10                  THE WITNESS:  Yes.  I -- I have never
11   received a petition from a group of members encouraging
12   us to move the organization in a specific direction.
13        Q.   (BY MR. POWERS) And in fact, is there any
14   practical way that the members of SFFA could assemble a
15   petition to distribute to SFFA?
16                  MR. MCCARTHY:  Objection form.
17                  THE WITNESS:  As individuals they can and
18   often do petition or encourage SFFA to undertake certain
19   endeavors.
20        Q.   (BY MR. POWERS) Your -- am I right that there
21   is no practical way for a substantial number of members
22   to assemble together and coordinate on a request to SFFA
23   for any particular action or initiative?
24                  MR. MCCARTHY:  Objection form.
25                  THE WITNESS:  Because our membership is
```

Edward Blum                    CONFIDENTIAL              February 26, 2021
                                                                  Page 90

```
 1   optimal conditions for the zoom deposition here.
 2              MR. POWERS:  No worries.
 3        Q.   (BY MR. POWERS) Mr. Blum what role -- well,
 4   first, do you know the identities of the individuals
 5   that SFFA has put forward as standing members in this
 6   lawsuit?
 7        A.   Yes.
 8        Q.   And what are their names?
 9        A.   ████████████████████████████████████████
10   ███████████████████████████████████
11        Q.   ████████████████████
12        A.   ██████████████████████████████████████████
13   ██████████████████████████████████████████████████
14   ███████████████████████████████
15        Q.   On -- have you met with either of them in
16   person before?
17        A.   Yes.
18        Q.   About how many occasions?
19        A.   Once.
20        Q.   Did you meet them both at the same time?
21        A.   No.
22        Q.   The -- when is the earliest time you met them?
23   The only time you met them?
24              MR. MCCARTHY:  I'm sorry, counsel.  Are
25   you just -- cause this might help the witness answer.
```

1    Are -- are you still referencing meeting in person?

2              MR. POWERS:  Right.

3              MR. MCCARTHY:  Okay.  Thanks.

4              THE WITNESS:  I -- Mr. Powers I -- I

5    could look at my calendar, but I -- I believe it was

6    2019 or 2018 that I met with ▓▓▓▓▓▓▓▓▓▓and ▓▓▓▓▓

7    family.  I -- I could come up with greater specificity

8    after lunch if you'll -- if you'll you forgive me.

9         Q.   (BY MR. POWERS) How -- how did you come to be

10   connected with ▓▓▓▓▓▓▓?

11        A.   ▓▓▓▓ mother contacted me.

12        Q.   And as to ▓▓▓▓▓▓▓▓▓, when did you meet

13   ▓▓▓?

14        A.   I had never met ▓▓▓ face to face, but I met

15   ▓▓▓ I believe in 2019.  I -- I spoke to ▓▓▓ in 2019 and

16   I had extensive conversations with ▓▓▓ father, I believe

17   in 2019.

18        Q.   And how did you come to be connected with ▓▓▓

19   ▓▓▓▓▓▓▓?

20        A.   ▓▓▓▓▓▓▓▓▓▓ contacted me.

21        Q.   And what role do ▓▓▓▓▓▓ or ▓▓▓▓

22   ▓▓▓▓▓▓ have in financially supporting this

23   lawsuit?

24        A.   None whatsoever.

25        Q.   Do you know whether either has cast votes when

```
 1  sentence is -- stands on its own.  I understand it for

 2  exactly how it is raised and -- and written.  Other than

 3  that I'm not really -- I'm not prepared to give you a

 4  legal opinion on -- on the aspects of your question.

 5       Q.   (BY MR. POWERS) SFFA elected to organize

 6  itself in a way such that it would not have members

 7  within the meaning of Virginia state law, correct?

 8            MR. MCCARTHY:  Objection form.

 9            THE WITNESS:  Correct.

10       Q.   (BY MR. POWERS) And that choice was a

11  considered one and was based on reasons supported by the

12  fact that SFFA intended to conduct itself with the

13  litigation it anticipated, true?

14            MR. MCCARTHY:  I'm sorry, counsel.

15  Objection form.

16            THE WITNESS:  So Mr. -- Mr. Powers I'm

17  gonna repeat myself, but I think it's -- it's the best

18  way for me to answer that question.  And -- and that is:

19  SFFA was conceived as a membership organization.  It was

20  our goal to have dozens, hundreds, then thousands of

21  members. The statutory requirements of the Virginia

22  Nonstock Corporation Act is a totally different kind of

23  entity from what has been explained to me by counsel.

24  So I think that's -- I think that's a sufficient answer.

25       Q.   (BY MR. POWERS) I do have this question.  What
```

1  in your mind are the obvious reasons that SFFA had for

2  choosing to organize itself in a way so as to not have

3  members within the meaning of Virginia state law?

4              MR. MCCARTHY:  Objection form and

5  objection attorney-client privilege.  I caution the

6  witness not to disclose communications with counsel.

7              THE WITNESS:  The answer is, I don't

8  know.

9     Q.   (BY MR. POWERS) I want to turn now to another

10  topic.  Am I correct that it was you who identified the

11  Wiley Rein firm as counsel or as the set of lawyers that

12  should serve as counsel for the Fisher lawsuit?

13              MR. MCCARTHY:  Objection form.

14              THE WITNESS:  I recommended Wiley Rein to

15  Abby and her father.

16     Q.   (BY MR. POWERS) Now, to be clear you actually

17  identified Wiley Rein as -- as your expected or

18  preferred counsel before you had even identified Ms.

19  Fisher as the plaintiff, correct?

20              MR. MCCARTHY:  Objection form.

21              THE WITNESS:  I spoke to a number of

22  lawyers and number of different law firms about this

23  case -- about the idea of bringing a lawsuit against the

24  University of Texas.  My roots at Wiley Rein -- were

25  deep and they expressed the most, you know, interest in

```
 1   talked with a number of different counsel about the

 2   possibilities for her going forward with this suit and

 3   before you had identified the plaintiff?

 4                 MR. MCCARTHY:  Objection form.  And

 5   again, I just caution the witness not to disclose

 6   communications with counsel.

 7                 THE WITNESS:  The answer to your

 8   question, Mr. Powers, is yes.

 9       Q.   (BY MR. POWERS) And it was you who identified

10   the University of Texas as the target defendant for that

11   lawsuit, correct?

12                 MR. MCCARTHY:  Objection form.

13                 THE WITNESS:  Yes.

14       Q.   (BY MR. POWERS) And you ultimately were the

15   one, both to find and approve that she was the right

16   person with respect to Abby Fisher?

17                 MR. MCCARTHY:  Objection form and I'm

18   gonna object again on attorney-client privilege and just

19   caution the witness not to disclose any communications

20   with counsel.

21                 THE WITNESS:  The -- the ultimate

22   decision to move forward with the litigation was made by

23   Abby and her family.  But the counsel that Abby selected

24   was based upon my recommendation and my experience with

25   Wiley Rein.
```

1      Q.   (BY MR. POWERS) And -- and in fact, you
2   actually regarded yourself and were regarded by Ms.
3   Fisher as her representative in connection with that
4   litigation?
5              MR. MCCARTHY:  Objection form.
6              THE WITNESS:  Well, I think the -- I'm
7   close to the Fisher family.  I'm a family friend so
8   representative may not be the -- the term that I would
9   agree with it or they would agree with, but I was a
10  family friend and consequently they could call me night
11  or day.  So I was a -- I was a conduit, if you will, on
12  -- a source -- a source of information -- limited
13  information that Abby and her mother and father could --
14  could call and -- and discuss.
15     Q.   (BY MR. POWERS) There were calls with counsel
16  that you participated in throughout the lawsuit?
17             MR. MCCARTHY:  Objection.
18             THE WITNESS:  Yes.
19     Q.   (BY MR. POWERS) And in fact, you had outlined
20  the lawsuit before Ms. Fisher had ever been identified
21  as the plaintiff for the lawsuit?
22             MR. MCCARTHY:  I'm sorry, counsel.  You
23  broke up a little bit.
24             THE WITNESS:  You -- you were breaking up
25  a little bit.