IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> UNIVERSITY OF TEXAS AT AUSTIN, et al., <br><br> *Defendants*. | Case No. 1:20-cv-763-RP |

**PLAINTIFF'S OPPOSITION TO DEFENDANT-INTERVENORS'
MOTION TO DISMISS FOR LACK OF STANDING**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................ 1

LEGAL STANDARD .................................................................................................................... 2

ARGUMENT .................................................................................................................................. 2

    I.     SFFA's members have standing to sue in their own right. ........................................ 2

    II.    SFFA can pursue the injunctive relief it has requested. ........................................... 7

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

**CASES**

*Albemarle Paper Co. v. Moody*,
  422 U.S. 405 (1975) ............................................................................................................... 8

*Bodnar v. Cty. of Riverside*,
  No. 17-cv-1463, 2019 WL 1877602 (C.D. Cal. Mar. 28, 2019) ............................................ 7

*Brown v. Plata*,
  563 U.S. 493 (2011) ............................................................................................................... 8

*Cain v. City of N.Y.*,
  No. 07-cv-1224, 2009 WL 2381351 (S.D.N.Y. July 28, 2009) ............................................. 7

*Fisher v. Univ. of Tex. at Austin* ("*Fisher I*"),
  570 U.S. 297 (2013) ............................................................................................................ 3, 4

*Fisher v. Univ. of Tex. at Austin* ("*Fisher II*"),
  136 S. Ct. 2198 (2016) ........................................................................................................ 3, 6

*Fisher v. Univ. of Tex. at Austin*,
  631 F.3d 213 (5th Cir. 2011) .................................................................................................. 3

*Fisher v. Univ. of Tex. at Austin*,
  758 F.3d 633 (5th Cir. 2014) .................................................................................................. 3

*Friends of Frederick Seig Grove #94 v. Sonoma Cnty. Water Agency*,
  124 F. Supp. 2d 1161 (N.D. Cal. 2000) ................................................................................. 7

*Gratz v. Bollinger*,
  539 U.S. 244 (2003) ....................................................................................................... *passim*

*Grutter v. Bollinger*,
  539 U.S. 306 (2003) ..................................................................................................... 2, 3, 6

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977) ............................................................................................................... 2

*La. Indep. Pharmacies Ass'n v. Express Scripts Inc.*,
  No. 20-cv-647, 2021 WL 837328 (W.D. La. Mar. 4, 2021) ............................................. 1, 7

*Miller v. Johnson*,
  515 U.S. 900 (1995) ............................................................................................................... 8

*OCA-Greater Houston v. Tex.*,
  867 F.3d 604 (5th Cir. 2017) .................................................................................................. 6

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*,
  551 U.S. 701 (2007) ............................................................................................................... 6

*Ruiz v. Scott*,
  No. 78-cv-987, 1996 WL 932104 (S.D. Tex. Sept. 25, 1996) .............................................. 8

*SEC v. Forex Asset Mgmt. LLC*,
  242 F.3d 325 (5th Cir. 2001) .................................................................................................. 8

*SFFA v. President & Fellows of Harvard Coll. (Harvard Corp.)*,
   261 F. Supp. 3d 99 (D. Mass. 2017) ................................................................................4

*SFFA v. President & Fellows of Harvard Coll.*,
   980 F.3d 157 (1st Cir. 2020) .............................................................................................4

*SFFA v. Univ. of N.C.*,
   No. 14-cv-954, 2018 WL 4688388 (M.D.N.C. Sept. 29, 2018) .......................................5

*Stratta v. Roe*,
   961 F.3d 340 (5th Cir. 2020) ............................................................................................2

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*,
   402 U.S. 1 (1971) ..............................................................................................................8

*United States v. Ellerbe Becket, Inc.*,
   976 F. Supp. 1262 (D. Minn. 1997) ..................................................................................7

*Williams v. Reeves*,
   954 F.3d 729 (5th Cir. 2020) ............................................................................................2

**INTRODUCTION**

Intervenors' argument that SFFA's *members* lack standing in their own right is foreclosed by Supreme Court precedent. SFFA alleges that the University of Texas at Austin ("UT") denied its members "the opportunity to compete for admission on an equal basis," and SFFA has "demonstrated that [its members are] 'able and ready' to apply as a transfer student should [UT] cease to use race in undergraduate admissions." *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003). SFFA "therefore has standing to seek prospective relief with respect to the University's continued use of race in undergraduate admissions." *Id.* The clarity of this precedent is why UT never disputes that SFFA's members have standing to sue in their own right. It is why Harvard and the University of North Carolina at Chapel Hill did not dispute SFFA's members' standing in similar lawsuits. And it is why the U.S. Court of Appeals for the First Circuit, the District of Massachusetts, and the Middle District of North Carolina all concluded that SFFA has standing.

Intervenors' alternative argument—that the Court should hold that SFFA, if it prevails, is not entitled to one particular form of relief—is both premature and meritless. It is premature because the Court "need not resort to parsing elements of the complaint at this stage" because portions of the prayer can, at the remedy stage, "be stricken or simply denied." *La. Indep. Pharmacies Ass'n v. Express Scripts Inc.*, No. 20-cv-647, 2021 WL 837328, at *2 (W.D. La. Mar. 4, 2021). And it is meritless because this Court has broad powers at the remedy stage to issue injunctions that will prevent future racial discrimination by UT, including granting the relief that SFFA requests. Intervenors' motion to dismiss should be denied.

**FACTUAL BACKGROUND**

SFFA incorporates the factual background from its opposition to UT's motion for summary judgment or dismissal.

**LEGAL STANDARD**

When reviewing a 12(b)(1) motion to dismiss, the Court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *Stratta v. Roe*, 961 F.3d 340, 349 (5th Cir. 2020). Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is proper only if "it appears certain that the plaintiff cannot prove any set of facts in support of [its] claim that would entitle [it] to relief." *Williams v. Reeves*, 954 F.3d 729, 734 (5th Cir. 2020) (citation omitted).

**ARGUMENT**

**I.     SFFA's members have standing to sue in their own right.**

A membership association has Article III standing if it satisfies three requirements: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Intervenors challenge only the first prong, arguing that SFFA's standing members lack standing to sue in their own right because SFFA has "failed to allege facts demonstrating that its associational members have been harmed by the challenged actions of UT under each claim, or how those injuries would be redressed by a favorable decision on each of SFFA's claims." Intervenors Mot. 1. The Supreme Court's decisions in *Grutter*, *Gratz*, and *Fisher* all foreclose this argument.

In *Grutter v. Bollinger*, Barbara Grutter alleged that Michigan Law School "discriminated against her on the basis of race in violation of the Fourteenth Amendment; Title VI of the Civil Rights Act of 1964, . . . [and] 42 U.S.C. §1981." 539 U.S. 306, 317 (2003). Ms. Grutter "further alleged that her application was rejected because the Law School uses race as a 'predominant' factor, giving applicants who belong to certain minority groups 'a significantly greater chance of admission

2

than students with similar credentials from disfavored racial groups.'" *Id.* Ms. Grutter "also alleged that [the Law School] 'had no compelling interest to justify [its] use of race in the admissions process.'" *Id.* Ms. Grutter "requested compensatory and punitive damages, an order requiring the Law School to offer her admission, and an injunction prohibiting the Law School from continuing to discriminate on the basis of race." *Id.* The Supreme Court found that Ms. Grutter "clearly has standing to bring this lawsuit." *Id.*

In *Gratz v. Bollinger*, Patrick Hamacher "alleged that the University [of Michigan] had denied him the opportunity to compete for admission on an equal basis." 539 U.S. at 262. After being denied admission, "Hamacher demonstrated that he was 'able and ready' to apply as a transfer student should the University cease to use race in undergraduate admissions." *Id.* The Supreme Court found that Mr. Hamacher, like Ms. Grutter, had "standing to seek prospective relief with respect to the University's continued use of race in undergraduate admissions." *Id.*

In the *Fisher* cases, Abigail Fisher "applied for admission to [UT's] 2008 freshman class." *Fisher v. Univ. of Tex. at Austin* ("*Fisher II*"), 136 S. Ct. 2198, 2207 (2016). "She was not in the top 10 percent of her high school class, so she was evaluated for admission through holistic, full-file review." *Id.* Ms. Fisher's application was rejected and she then "filed suit alleging that the University's consideration of race as part of its holistic-review process disadvantaged her and other Caucasian applicants." *Id.* The Supreme Court twice found that Ms. Fisher had standing to bring her claims. *Fisher v. Univ. of Tex. at Austin* ("*Fisher I*"), 570 U.S. 297, 307-15 (2013); *Fisher II*, 136 S. Ct. at 2208-15; *see also Fisher v. Univ. of Tex. at Austin*, 758 F.3d 633, 640 (5th Cir. 2014) (plaintiff had "standing . . . to challeng[e] the injury she alleges she suffered—the use of race in UT Austin's admissions program for the entering freshman class of Fall 2008"); *Fisher v. Univ. of Tex. at Austin*, 631 F.3d 213, 217 (5th Cir. 2011) (plaintiff had "standing to challenge their rejection and to seek money damages for their injury").

3

These opinions squarely apply here. "In bringing [its] equal protection challenge against [UT's] use of race in undergraduate admissions," SFFA alleges that UT denied its members "the opportunity to compete for admission on an equal basis." *Gratz*, 539 U.S. at 262; *see* Dkt. 13 at ¶¶6, 203, 214, 225, 240 ("Am. Compl."); Ex. P[1] at ¶¶4, 5, 9 (Blum Dec.); Ex. Q at ¶¶3, 6-7 (Standing Member 1 Dec.); Ex. R at ¶¶3, 6-7 (Standing Member 2 Dec.); Connolly Dec. ¶¶ 20-21; Ex. D at 106:1-3 (Standing Member 1 Depo.); Ex. E at 71:16-17 (Standing Member 2 Depo.). After being denied admission, the Standing Members have "demonstrated that [they are] 'able and ready' to apply as a transfer student should [UT] cease to use race in undergraduate admissions." *Gratz*, 539 U.S. at 262; *see* Ex. P at ¶¶7, 11; Ex. Q at ¶5 (Standing Member 1 Dec.); Ex. D at 106:9-12 (Standing Member 1 Depo.); Ex. R at ¶5 (Standing Member 2 Dec.); Ex. E at 72:2-5 (Standing Member 2 Depo.). SFFA "therefore has standing to seek prospective relief with respect to the University's continued use of race in undergraduate admissions." *Gratz*, 539 U.S. at 262. And "strict scrutiny," with all its requirements, "must be applied to any admissions program using racial categories or classifications," including UT's. *Fisher I*, 570 U.S. at 310.

Given this binding precedent, neither Harvard nor UNC disputed that SFFA's members had standing in nearly identical cases, and the U.S. Court of Appeals for the First Circuit, the District of Massachusetts, and the Middle District of North Carolina all easily found standing. *See SFFA v. President & Fellows of Harvard Coll.*, 980 F.3d 157, 183 (1st Cir. 2020) ("Harvard does not dispute that SFFA satisfies [the *Hunt*] requirements, and, for the reasons stated in the district court's opinion, we agree that it does."); *SFFA v. President & Fellows of Harvard Coll. (Harvard Corp.)*, 261 F. Supp. 3d 99, 109 (D. Mass. 2017) ("Harvard does not dispute that the three *Hunt* prerequisites are met here."); *id.* at 109-10 (first *Hunt* requirement is met because "SFFA has provided the affidavits of a subset of its

---

[1] All Exhibit citations refer to the Exhibits referenced in and attached to the Connolly declaration in SFFA's opposition to UT's motion for summary judgment or dismissal.

members, referred to as Standing Members, which demonstrate that at least some of these individuals, the rejected applicants, would have standing to sue on their own" (citing *Gratz*, 539 U.S. at 262-63)); *SFFA v. Univ. of N.C.*, No. 14-cv-954, 2018 WL 4688388, at *5 (M.D.N.C. Sept. 29, 2018) (noting that UNC "present[s] no arguments asserting that SFFA has failed to meet [*Hunt*'s] requirements"); *id.* ("Here, SFFA has provided declarations from four Standing Members, each of whom are high school graduates who applied for admission to UNC-CH, and was denied in 2012, 2014, 2015 and 2016. Each Standing Member further states that, while eligible, they have been 'able and ready' to apply to transfer to UNC-CH if it were to end its 'use of race or ethnicity as an admissions preference.' SFFA has therefore demonstrated that it has satisfied the requirement that at least one of its Standing Members would have standing to sue on their own." (citing *Gratz*, 539 U.S. at 262)). For good reason, UT likewise does not challenge SFFA's members' standing here.

Intervenors argue that the Supreme Court's precedent does not apply here because "UT uses a holistic admissions program of which race is only a 'factor of a factor of a factor,' and students are permitted to compete for all non-TPP seats." Intervenors Mot. 5-7. As an initial matter, Intervenors' assertions contradict SFFA's allegations in the complaint. *See* Am. Compl. ¶¶86-175; *e.g., id.* ¶202 ("Statistical and other evidence shows that each applicant is not evaluated as an individual. Instead, race or ethnicity is the defining feature of the application. Only using race or ethnicity as a dominate factor in admissions decisions could account for the decision to admit certain African-American and Hispanic applicants and deny admission to certain white and Asian-American applicants."). The Court cannot accept Intervenors' contrary assertions at this early stage of the case. *See* Dkt. 33 at 2-4.[2] Moreover, Intervenors' "circular argument misses the mark" because it "conflates the merits of

---

[2] Intervenors repeatedly attempt to litigate the merits of SFFA's claims. Intervenors also argue, among other things, that UT's use of race "does not 'operate as a mechanical plus factor for underrepresented minorities,'" Intervenors Mot. 6; that UT is not operating "an illegal quota system

the suit with the plaintiff's standing to bring it." *OCA-Greater Houston v. Tex.*, 867 F.3d 604, 613 (5th Cir. 2017).

Regardless, Intervenors' arguments fail even accepting their assertions. The Supreme Court has never held (or even suggested) that a student has standing only if he or she was denied admission under a "holistic admissions process that involves no automatic points, set-asides, or other separate tracks for minority applicants." Intervenors Mot. 6-7. To the contrary, the Supreme Court found that both Ms. Grutter and Ms. Fisher had standing even though neither was denied admission under a system that involved "automatic points, set-asides, or other separate tracks for minority applicants." *Id.*; *see Grutter*, 539 U.S. at 312-16; *Fisher II*, 136 S. Ct. at 2204-07. "[O]ne form of injury under the Equal Protection Clause is being forced to compete in a race-based system that may prejudice the plaintiff." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (listing cases). Points, set-asides, and quotas are one way that race-based admissions can violate strict scrutiny; but they are not the only way. *See Grutter*, 539 U.S. at 336 ("That a race-conscious admissions program does not operate as a quota does not, by itself, satisfy the requirement of individualized consideration.").

Intervenors' contention that SFFA lacks standing to pursue its four claims is equally foreclosed. Intervenors Mot. 7-14. SFFA alleges that UT's use of race violates federal law because UT is (1) failing to use race merely as a "plus" factor in admissions decisions, *see* Am. Compl. ¶¶198-207; (2) using race where there are available and workable race-neutral alternatives, *see id.* at ¶¶198, 208-18; (3) engaging in racial balancing, *see id.* at ¶¶198, 219-29; and (4) using race as a factor in admissions, *see id.* at ¶¶198, 230-44. The Supreme Court has found standing for rejected students to

---

for African American students," *id.* at 12-13; and that the Standing Members would not benefit under a race-neutral system, *id.* at 10-11. A Rule 12(b)(1) motion is not the proper vehicle to resolve the merits of SFFA's claims, especially when SFFA has had no opportunity to engage in discovery.

raise all of these claims. *See, e.g.*, *Grutter*, 539 U.S. at 327-40. If SFFA prevails on its claims, then UT's use of race fails strict scrutiny and it must remedy the problem, meaning SFFA's members could "compete for admission on an equal basis." *Gratz*, 539 U.S. at 262. SFFA's standing members have standing to sue in their own right.

**II.     SFFA can pursue the injunctive relief it has requested.**

In its amended complaint, SFFA asks the Court to provide two forms of injunctive relief: (1) "a permanent injunction barring Defendants from using race as a factor in future undergraduate admissions decisions at UT-Austin"; and (2) "a permanent injunction requiring Defendants to conduct all admissions in a manner that does not permit those engaged in the decisional process to be aware of or learn the race or ethnicity of any applicant for admission." Am. Compl. 49, Prayer for Relief. Intervenors argue that SFFA "does not have standing to pursue" the second request for injunctive relief, and so it asks the Court to dismiss that request under Rule 12(b)(1). Intervenors Mot. 14-17. This argument is both premature and meritless.

"Injunctive relief is a remedy, and not an independent claim in itself." *Bodnar v. Cty. of Riverside*, No. 17-cv-1463, 2019 WL 1877602, at *7 (C.D. Cal. Mar. 28, 2019). For this reason, "'it is premature to dispose of a plaintiff's request for injunctive relief at the motion-to-dismiss stage.'" *Id.*; *see, e.g.*, *Friends of Frederick Seig Grove #94 v. Sonoma Cnty. Water Agency*, 124 F. Supp. 2d 1161, 1172 (N.D. Cal. 2000) ("The defendants present no authority that would permit the Court to dismiss the plaintiff's request for injunctive relief at this stage. . . . Accordingly, the defendants' motion to dismiss the plaintiff's request for injunctive relief is DENIED as premature."). The Court "need not resort to parsing elements of the complaint at this stage" because, later at the remedy stage, portions of the prayer can "be stricken or simply denied." *La. Indep. Pharmacies*, 2021 WL 837328, at *2; *see Cain v. City of N.Y.*, No. 07-cv-1224, 2009 WL 2381351, at *1 (S.D.N.Y. July 28, 2009) ("There will be time enough to determine whether plaintiff has proved an entitlement for injunctive relief after

trial."); *United States v. Ellerbe Becket, Inc.*, 976 F. Supp. 1262, 1264 (D. Minn. 1997) ("It would be premature at this juncture [on a motion to dismiss] to determine whether injunctive relief would serve a hypothetical remedial purpose."). Intervenors' motion should be denied. They can renew their objections if and when UT is found liable.

In any event, Intervenors' argument is meritless. "A court's traditional equitable authority is not limited to ordering the cessation of unconstitutional conduct," *Ruiz v. Scott*, No. 78-cv-987, 1996 WL 932104, at *8 (S.D. Tex. Sept. 25, 1996). "Once invoked, the scope of a district court's equitable powers is broad, for breadth and flexibility are inherent in equitable remedies." *Brown v. Plata*, 563 U.S. 493, 538 (2011) (cleaned up). In particular, "[w]here racial discrimination is concerned, the district court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.'" *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975).

If SFFA prevails, this Court will have "'broad discretionary power,'" *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 331 (5th Cir. 2001), to ensure that UT no longer discriminates on the basis of race and that SFFA's standing members will be able "to compete for admission on an equal basis," *Gratz*, 539 U.S. at 262. Prohibiting UT's admissions officers from learning each applicant's race would undoubtedly further this goal, as it would prevent UT from relying on "'stereotypes that treat individuals as the product of their race, evaluating their thoughts and efforts—their very worth as citizens—according to a criterion barred to the Government by history and the Constitution.'" *Miller v. Johnson*, 515 U.S. 900, 912 (1995). And it may be necessary, depending on how badly and repeatedly UT has violated the law. *See Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 (1971) ("As with any equity case, the nature of the violation determines the scope of the remedy."). It may also be necessary if SFFA prevails on Count IV, and the Supreme Court holds that any use of

race in admissions is unconstitutional. At least at this stage, then, SFFA can seek this relief.[3]

## CONCLUSION

For the foregoing reasons, Intervenors' motion to dismiss should be denied.

Respectfully submitted,

*/s/ J. Michael Connolly*

William S. Consovoy (*pro hac vice*)
Thomas R. McCarthy (*pro hac vice*)
J. Michael Connolly
Cameron T. Norris
Steven C. Begakis (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
tom@consovoymccarthy.com
mike@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com

Dated: April 5, 2021

*Counsel for Plaintiff Students for Fair Admissions, Inc.*

---

[3] The Standing Members did not "expressly disavow[]" SFFA's request for this relief by expressing general opposition to government censorship of student applications. Intervenors Mot. 16-17. The Standing Members want UT to stop discriminating on the basis of race, and blinding admissions officers to the race of applicants would further that goal.

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record for Defendants and Defendant-Intervenors via the Court's electronic filing and service on April 5, 2021.

                                                             */s/ J. Michael Connolly*

                                                             J. Michael Connolly