IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Cause No. 1:20-cv-763-RP |
| UNIVERSITY OF TEXAS AT AUSTIN, et al., | § § | |
| Defendants. | § § | |

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT OR DISMISSAL**
**BASED ON LACK OF STANDING, RES JUDICATA, AND COLLATERAL ESTOPPEL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

I.   Overview ........................................................................................................................ 1

II.  SFFA fails to demonstrate associational standing because SFFA
     is neither a traditional membership organization nor its functional equivalent ........... 2

     A.  SFFA is not a traditional membership organization .............................................. 2

         1.  *Friends of the Earth v. Chevron* and *PIRG* confirm that "no members"
             under state law means the indicia of membership test applies ....................... 3

         2.  The decisions in *Harvard* and *UNC* do not dictate a contrary ruling ............... 5

         3.  Virginia state law has a proper place in the federal standing inquiry ............... 7

         4.  There is nothing "new," "creativ[e]," or "strange" about applying
             the indicia of membership test to SFFA ........................................................ 7

     B.  SFFA cannot satisfy the indicia of membership test ............................................ 10

         1.  SFFA's activities—including the current litigation—are not
             financed by members ................................................................................... 11

         2.  SFFA's leadership is not member-elected ..................................................... 12

         3.  SFFA lacks genuine member service in the organization ............................... 14

III. SFFA's claims are barred by res judicata ..................................................................... 15

     A.  Fisher and SFFA are in privity .............................................................................. 15

     B.  Both cases present the same claim or cause of action .......................................... 18

IV.  SFFA's claims are barred by collateral estoppel ......................................................... 20

CERTIFICATE OF SERVICE ............................................................................................ 22

# TABLE OF AUTHORITIES

## CASES

*Am. Legal Found. v. F.C.C.*,
808 F.2d 84 (D.C. Cir. 1987) ................................................................................ 14 n.16

*Am. Postal Workers Union Columbus Area Local AFL-CIO v. U.S. Postal Serv.*,
736 F.2d 317 (6th Cir. 1984) ................................................................................ 18 n.19

*Citizens Coal Council v. Matt Canestrale Contracting, Inc.*,
40 F. Supp. 3d 632 (W.D. Pa. 2014) ............................................................................ 12

*City of Westworth Village v. Tex. Voices for Reason and Justice, Inc.*,
520 S.W.3d 652 (Tex. App.—Fort Worth 2017, pet. granted, judgm't vacated w.r.m.) ..................... 3

*Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*,
968 F.3d 357 (5th Cir. 2020) ............................................................................ 6

*Familias Unidas v. Briscoe*,
619 F.2d 391 (5th Cir. 1980) ................................................................................ 9 n.12

*Ferris v. Cuevas*,
118 F.3d 122 (2d Cir. 1997) ............................................................................ 18

*Fisher v. UT*,
Case No. 09-50822 (5th Cir. March 5, 2010) ................................................................ 1 n.1

*Flyers Rights Educ. Fund, Inc. v. U.S. Dep't of Transp.*,
957 F.3d 1359 (D.C. Cir. 2020) ............................................................................ 12

*Friends of the Earth, Inc. v. Chevron Chemical Co.*,
129 F.3d 826 (5th Cir. 1997) ................................................................ 3, 7, 4, 12

*Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*,
95 F.3d 358 (5th Cir. 1996) ............................................................................ 2

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
695 F.3d 330 (5th Cir. 2012) ........................................................ 8, 10 & n.13, 11

*Gay-Straight All. of Okeechobee High Sch. v. Sch. Bd. of Okeechobee Cty.*,
477 F. Supp. 2d 1246 (S.D. Fla. 2007) ........................................................ 9 n.12

*Gonzalez v. Banco Cent. Corp.*,
27 F.3d 751 (1st Cir. 1994) ............................................................................ 18 n.19

*Grp. Health Plan, Inc. v. Philip Morris, Inc.*,
86 F. Supp. 2d 912 (D. Minn. 2000) ........................................................ 10

*Health Research Grp. v. Kennedy,*
    82 F.R.D. 21 (D.D.C. 1979) ................................................................................. 15

*Hous. Prof'l Towing Ass'n v. City of Hous.,*
    812 F.3d 443 (5th Cir. 2016) ......................................................................... 18 n.20

*Hunt v. Wash. State Apple Advert. Comm'n,*
    432 U.S. 333 (1977) ........................................................................... 1, 8, 10, 11, 13

*In re Baudoin,*
    981 F.2d 736 (5th Cir. 1993) ............................................................................... 18

*In re Howe,*
    913 F.2d 1138 (5th Cir. 1990) ............................................................................. 18

*In re Southmark Corp.,*
    163 F.3d 925 (5th Cir. 1999) ............................................................................... 18

*Leon v. Martin,*
    79 Va. Cir. 434, at *3 (2009) ........................................................................ 3, 6 n.8

*Mayorga Santamaria ex rel. Doe Child. 1-3 v. Dallas Indep. Sch. Dist.,*
    2006 WL 3350194 (N.D. Tex. Nov. 16, 2006) ................................................. 9 n.12

*Mental Hygiene Legal Serv. v. Cuomo,*
    609 Fed. App'x 693 (2d Cir. 2015) ................................................................ 10 n.13

*Meza v. Gen. Battery Corp.,*
    908 F.2d 1262 (5th Cir. 1990) ............................................................................. 16

*N.M. ex rel. Richardson v. Bureau of Land Mgmt.,*
    565 F.3d 683 (10th Cir. 2009) ....................................................................... 13 n.15

*NAACP v. Alabama,*
    357 U.S. 449 (1958) ........................................................................................... 10

*Nestle Ice Cream Co. v. N.L.R.B.,*
    46 F.3d 578 (6th Cir. 1995) ......................................................................11 & n.13

*Or. Advoc. Ctr. v. Mink,*
    322 F.3d 1101 (9th Cir. 2003) ............................................................................. 12

*Package Shop, Inc. v. Anheuser-Busch, Inc.,*
    1984 WL 6618 (D.N.J. Sept. 25, 1984) ................................................................ 11

*Phelps v. Hamilton,*
    122 F.3d 1309 (10th Cir. 1997) ........................................................................... 17

*Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.,*
 123 F.3d 111 (3d Cir. 1997) ............................................................................... 3-7

*Regents of the Univ. of Cal. v. Doe,*
 519 U.S. 425 (1997) ...................................................................................... 7 n.10

*Shults v. Tex.,*
 762 F.2d 449 (5th Cir. 1985) .................................................................................19

*Sierra Forest Legacy v. Sherman,*
 646 F.3d 1161 (9th Cir. 2011) ...................................................................... 13 n.15

*So. U.S. Trade Ass'n v. Unidentified Parties,*
 2011 WL 2457859 (E.D. La. June 16, 2011)................................................. 7 n.10

*Southmark Props. v. Charles House Corp.,*
 742 F.2d 862 (5th Cir. 1984) ................................................................................16

*State of Tex. v. Ysleta del Sur Pueblo,*
 2019 WL 639971 (W.D. Tex. Feb. 14, 2019), *aff'd,* 955 F.3d 408 (5th Cir. 2020).................... 10 n.13

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,*
 980 F.3d 157 (1st Cir. 2020)........................................................................... 5 n.4

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,*
 261 F. Supp. 3d 99 (D. Mass. 2017)............................................................... 5 n.4

*Students for Fair Admissions, Inc. v. Univ. of N. Carolina,*
 2018 WL 4688388 (M.D.N.C. Sept. 29, 2018) .......................................... 5 nn.4-5, 6 & n.8, 9

*Taylor v. Sturgell,*
 553 U.S. 880 (2008) ..................................................................................... 17 n.17

*Tex. LULAC v. Abbott,*
 493 F. Supp. 3d 548 (W.D. Tex. 2020)...................................................................8

*Tex. LULAC v. Hughs,*
 20-50867, 2021 WL 1446828 (5th Cir. Feb. 22, 2021) ........................................8

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP),*
 412 U.S. 669 (1973) ..............................................................................................13

*Washington Legal Foundation v. Leavitt,*
 477 F. Supp. 2d 202 (D.D.C. 2007) ....................................................... 5 n.6, 11 n.13

*Williamson v. Tucker,*
 645 F.2d 404 (5th Cir. 1981) ..................................................................................2

*Wilson v. Lynaugh*,
  878 F.2d 846 (5th Cir. 1989) ........................................................................... 18 n.20

## RULES AND STATUTES

Tex. Educ. Code § 51.803(k) ........................................................................... 1 n.1

Tex. R. Civ. P. § 52 ..................................................................................................... 2

18A Fed. Prac. & Proc. Juris. § 4451 (3d ed.), Wright & Miller ........................... 16

Va. Code § 13.1-823(B) ...........................................................................3 n.2, 6 n.8

## I.     Overview.

To show associational standing, SFFA bears the burden to show it is *either* (i) a "traditional membership organization" *or* (ii) the functional equivalent of a traditional membership organization under *Hunt*'s "indicia of membership" test.  SFFA cannot make either showing.  SFFA instead misconstrues controlling law and ignores key facts.  The Court should dismiss for lack of standing.[1]

The Court should also grant summary judgment on the basis of res judicata and collateral estoppel.  SFFA is in privity with Fisher and with Blum—both through Fisher's own status with SFFA and her prior admissions lawsuit against UT-Austin, as well as the common participation of Edward Blum in both cases.  Because the two cases involve a common nucleus of operative facts, this case arises under the "same legal conditions" as Fisher's prior suit.

---

[1] In its Response, SFFA highlights the recent amicus brief filed by Texas's Attorney General in support of SFFA's petition for certiorari in its case against Harvard.  In the amicus brief, the Attorney General urges that *Grutter* should be overturned and that the same programs the Attorney General once defended in *Fisher* are unconstitutional.  (Resp. [ECF 49] at 15).  The Attorney General's amicus brief deserves no consideration from this Court.  The brief is inaccurate and contrary to the evidence and the legal positions briefed to the federal courts when the Attorney General successfully defended UT-Austin's admissions policy in *Fisher*.  For example, the Attorney General's new characterization of UT-Austin's admissions policies as racial preferences that give "an advantage to one applicant based on skin color" is belied by the office's prior briefing, where the Attorney General accurately wrote: "UT's policy . . . is based on holistic, individualized consideration of applicants, and not quotas" and "allows applicants of any race—including whites and Asian-Americans—to benefit."  (Brief for UT at 26-27 *Fisher v. UT*, Case No. 09-50822 (5th Cir. March 5, 2010)).

Of note, since 2009 the policy of the State of Texas as expressed in the Texas Education Code has authorized higher education institutions to consider race in the admissions decisions process unless a final court order prohibits it or the institution's governing board adopts a contrary policy.  TEX. EDUC. CODE § 51.803(k); Act of June 19, 2009, 81st Leg., R.S., ch. 1342, § 1, 2009 Tex. Gen. Laws 4246, 4248.

SFFA elsewhere mistakenly contends that UT-Austin agrees with the substance of SFFA's opposition to Intervenor's motion to dismiss.  (*See, e.g.*, Resp. to Intervenors' Motion to Dismiss [ECF50] at 5).  That is not accurate.  UT-Austin has chosen to place its focus on the grounds for dismissal discussed here.  But SFFA is wrong to suggest this approach reflects disagreement with Intervenors' grounds for dismissal.  UT-Austin supports dismissal on any of the grounds the Court believes warrant it.

II.     **SFFA fails to demonstrate associational standing because SFFA is neither a traditional membership organization nor its functional equivalent.**

SFFA lacks associational standing.  It is neither a traditional membership organization nor the functional equivalent of one under the indicia of membership test.  The Court may dismiss this case for lack of standing by summary judgment under Rule 56.  *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 361-62 (5th Cir. 1996).  If the Court concludes there are genuine issues of material fact germane to SFFA's standing, the Court should set this matter for an evidentiary hearing and resolve the disputed issues with findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure.  *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

A.     **SFFA is not a traditional membership organization.**

SFFA has no members pursuant to the state law under which it was formed.  Its articles of incorporation are plain and unambiguous on this point:

> 1.     The name of the corporation is Students for Fair Admissions, Inc. (the "Corporation").
>
> 2.     The Corporation shall have no members.

(Exhibit J).

SFFA falsely claims otherwise, asserting (1) that the articles of incorporation and the bylaws "*both* … make clear that SFFA has 'one class of members, referred to as General Members," and (2) that "Under SFFA's bylaws *and articles of incorporation*, SFFA members are required to pay a fee upon joining of $10.00."  (Resp. at 27 n.7; Resp. Ex. S [ECF 49-20] at 7 (emphases added)).

The articles of incorporation say no such thing.  They do not establish any classes of members, nor do they establish any fee that members must pay upon joining.  To the contrary, the articles of incorporation say exactly one thing on the topic of members: "The Corporation shall have ***no members***." (Exhibit J (emphasis added)).  The statement is not qualified in any way, notwithstanding

SFFA's misleading suggestion that the provision's prohibition on members was limited to "members" within the meaning of the Virginia Nonstock Corporation Act. (Resp. at 27 n.7).

The articles of incorporation are thus clear and unambiguous: SFFA shall have no members. *This matters.* The prohibition on membership nullifies any inconsistent provisions in SFFA's bylaws: "[W]hen a bylaw conflicts with the articles of incorporation, the articles will trump the bylaw and *the bylaw will be considered void.*"  *Leon v. Martin*, 79 Va. Cir. 434, at *2 (2009) (emphasis added).[2]  Thus, regardless of what SFFA's bylaws may say about membership, the "no members" provision in its articles of incorporation control.  *See, e.g.*, *City of Westworth Village v. Tex. Voices for Reason and Justice, Inc.*, 520 S.W.3d 652, 657-59 (Tex. App.—Fort Worth 2017, pet. granted, judgm't vacated w.r.m.) (holding that a similar "no members" provision in a plaintiff's certificate of formation precluded it from being a traditional membership organization, despite the fact that the bylaws provided for members).  SFFA purposefully chose *not* to be a traditional membership organization because Blum wished (i) to prevent any "members" from enjoying rights under the Virginia statute, including the right to access of membership records, and (ii) to perpetuate total control in himself and Abigail Fisher and her father.

1.   ***Friends of the Earth v. Chevron*** **and** ***PIRG*** **confirm that "no members" under state law means the indicia of membership test applies.**

SFFA's choice to establish itself as a nonprofit corporation with no members means that SFFA cannot be a "traditional membership organization" for purposes of associational standing.  The two cases of *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826 (5th Cir. 1997) and *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111 (3d Cir. 1997) ("*PIRG*") dictate this result.  In *Friends of the Earth*, Chevron challenged the associational standing of the plaintiff Friends

---

[2] SFFA acknowledges that the articles of incorporation restrict what an organization can do in its bylaws.  (Resp. at 26 (citing VA. CODE § 13.1-823(B) ("The bylaws of a corporation may contain any provision that is *not inconsistent with law or the articles of incorporation*.") (emphasis added))).

of the Earth ("FOTE") on the ground that FOTE "had no legal members under the corporate laws of the District of Columbia." *Id.* at 827. Even though FOTE regarded itself as a membership organization, its "board had never taken any formal affirmative action to comply with its responsibility and authority to determine membership requirements." *Id.* The Fifth Circuit ultimately found FOTE had standing under the indicia of membership test; but by requiring FOTE to make that showing, the court confirmed that FOTE was not a traditional membership organization. *Id.* at 829. If FOTE had been a traditional membership organization, the Fifth Circuit would not have had to examine standing under the indicia of membership test.

In analyzing associational standing, the Fifth Circuit in *Friends of the Earth* followed the Third Circuit's decision in *PIRG*. In *PIRG*, the Third Circuit held that a nonprofit corporation's decision to charter itself as an entity without members required that its standing be evaluated under the indicia of membership test. *PIRG*, 123 F.3d at 119.[3]

SFFA claims that UT-Austin's position would require every plaintiff asserting associational standing to prove it has "statutory members." (Resp. at 27-28). SFFA is wrong. The point is not that SFFA must prove its "members" fall within a specialized category. Rather, the point is that an entity that has chosen to have "no members" pursuant to the law governing its formation cannot be characterized as a traditional membership organization (even if its bylaws suggest otherwise). Here, SFFA chose to organize itself as a non-membership, nonstock corporation under Virginia law. For that reason alone, SFFA must satisfy the indicia of membership test.

---

[3] SFFA encourages this Court to follow the Eastern District of California's interpretation of *PIRG*, which incorrectly suggests that the Third Circuit rejected the "indicia of membership" test. (*See* Resp. at 25). Regardless of how one California district court ruled, the controlling law of the Fifth Circuit interprets *PIRG* to mean "that the 'indicia of membership' test is the correct one to apply" when a plaintiff nonprofit corporation has failed to meet state law requirements for establishing legal members under the law of its formation. *Friends of the Earth*, 129 F.3d at 829.

2.    The decisions in *Harvard* and *UNC* do not dictate a contrary ruling.

This Court should not follow *Harvard* and *UNC* in holding SFFA is a "traditional membership organization" and can therefore bypass the indicia of membership test.  Neither case arose in the Fifth Circuit or Third Circuit, where *Friends of the Earth* and *PIRG* control.  Moreover, neither the district court nor the First Circuit in *Harvard*, nor the district court in *UNC*, ever mentioned (i) SFFA's articles of incorporation, (ii) Virginia state law on resolving conflicts between an entity's articles of incorporation and its bylaws, or (iii) the controlling Virginia laws protecting members.[4]  Thus, those courts were likely not aware of the dispositive impact under Virginia law of the "no members" provision in SFFA's articles of incorporation (if they studied it at all).

SFFA stretches the facts by claiming that "Both Harvard and UNC submitted *and discussed* SFFA's articles of incorporation."  (Resp. at 29 (emphasis added)).  In fact, although UNC's briefs attached the articles of incorporation, they provided zero discussion of their substance, citing them only once for the proposition that SFFA's board members were self-appointed.[5]

Harvard likewise did not discuss (nor even cite) the articles of incorporation in its motion to dismiss.  Harvard did briefly discuss the "no members" provision in its reply brief, but the discussion was limited to a footnote about the "irony" in SFFA's discussion of a case.[6]  It gave no explanation

---

[4] *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 980 F.3d 157 (1st Cir. 2020) ("*Harvard 2*"); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.* ("*Harvard 1*"), 261 F. Supp. 3d 99 (D. Mass. 2017); *Students for Fair Admissions, Inc. v. Univ. of N. Carolina*, 1:14CV954, 2018 WL 4688388 (M.D.N.C. Sept. 29, 2018) ("*UNC*").

[5] *UNC*, Mot. to Dismiss at 13, Dkt. 107 (Oct. 25, 2017) ("SFFA's three original directors—the current president, secretary, and treasurer—were self-appointed.  Ex. 9, SFFA's Articles of Incorporation, at ¶ 3.").

[6] In its response to Harvard's motion to dismiss, SFFA wrote: "The cases Harvard points to all involved plaintiffs that were *not* traditional membership organizations.  In *Washington Legal Foundation* ("*WLF*") *v. Leavitt*, the plaintiff was a 'public interest law firm' that tried to sue on behalf of three individuals who were subscribers to its mailing list and '[we]re not members as defined by [the law firm's] Articles of Incorporation.' 477 F. Supp. 2d 202, 208-210 (D.D.C. 2007)."  *Harvard 1*, SFFA's

of the provision's significance under Virginia law, nor under *PIRG* and *Friends of the Earth*.[7]  Thus, these courts were not asked to decide the issue that UT-Austin presents here: the controlling effect of the "no members" provision in the articles of incorporation.  *Cf. Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 362 (5th Cir. 2020) (when a standing issue was never mentioned in prior panel's opinion and was only referenced in a briefing footnote, it was treated as not decided by prior panel).

Furthermore, the actual discussion of standing in each of the opinions in *UNC* and *Harvard* casts further doubt on whether those courts considered the articles of incorporation's "no members" provision.  Although those courts never cited or discussed the articles of incorporation, they did rely extensively on SFFA's bylaws.  The opinions reflected no awareness of the inconsistency between SFFA's bylaws and its articles of incorporation.[8]

---

Mem. in Opp'n to Mot. to Dismiss at 14-15, Dkt. 204 (Oct. 21, 2016).  Harvard's reply observed the irony in SFFA's attempt to distinguish *WLF* on the basis of a common characteristic the two plaintiffs actually shared: their articles of incorporation did not allow members.  *Harvard 1*, Reply Mem. in Support of Defs.' Mot. to Dismiss at 8 n.2, Dkt. 220 (Nov. 8, 2016).

[7] Harvard's argument mistakenly asserted that *Friends of the Earth* was a case applying the indicia of membership test to a traditional membership organization.  *Harvard 1*, Reply Mem. in Support of Defs.' Mot. to Dismiss at 7, 10, Dkt. 220 (Nov. 8, 2016).  Thus, the district court did not have the benefit of the argument presented here: that SFFA failed the "traditional membership organization" test for essentially the same reason that Friends of the Earth had: it lacked any formal members under the law that created it.  As for *PIRG*, the parties did not brief the case at all.

[8] For example, the district court in *Harvard* distinguished *Washington Legal Foundation* on the grounds that: "Here, in contrast, SFFA seeks to represent individuals who are clearly members as defined by its Bylaws."  *Harvard 1*, 261 F. Supp. 3d at 108.  The district court thus failed to appreciate that under Virginia law, the bylaws' membership provisions had no effect because of their conflict with the no-members provision of the articles of incorporation.  *See Leon v. Martin*, 79 Va. Cir. 434, at *3 (2009) (holding a "bylaw provision for voting members was [not merely voidable but] void as it was in direct conflict with the articles of incorporation").  None of the briefs or opinions in *Harvard* or *UNC* cited the controlling Virginia statute (Va. Code § 13.1-823(B)) or the *Leon* decision interpreting it.

Finally, both the *Harvard* and *UNC* courts signaled their approval and agreement with the outcomes in *PIRG* and *Friends of the Earth v. Chevron*.[9]  Thus, the disconnect between the outcomes in *Harvard* and *UNC*, on the one hand, and *PIRG* and *Friends of the Earth*, reflects that the *Harvard* and *UNC* courts simply did not appreciate that they were facing the identical issue that the Third and Fifth Circuits had already resolved.

### 3.     Virginia state law has a proper place in the federal standing inquiry.

SFFA contends that because standing presents a federal question, the state law governing entity formation must be irrelevant.  (Resp. at 26).  But federal courts routinely look to an entity's underlying status under state law to decide issues presenting federal questions, including questions of subject matter jurisdiction.[10]  The fact that state law presents a subsidiary question informing the jurisdictional inquiry is routine, not aberrational as SFFA incorrectly suggests.

### 4.     There is nothing "new," "creativ[e]," or "strange" about applying the indicia of membership test to SFFA.

SFFA repeatedly claims that UT-Austin's analysis is novel, creative, or even "strange."  (*See, e.g.*, Resp. at 8, 12, 21, 22).[11]  Far from novel, the indicia of membership test has been cited and

---

[9] *See UNC*, 2018 WL 4688388 at *4 (explaining *PIRG*'s holding as follows: "organizations with charters prohibiting them from having formal members need only *prove that their members possess the 'indicia of membership'* in order to assert associational standing.") (emphasis added); *Harvard 1*, 261 F. Supp. 3d at 108-09 (agreeing with the Fifth Circuit's holding in *Friends of the Earth*, and mistakenly assuming SFFA had met all "state law requirements" for establishing members).

[10] *See, e.g.*, *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430 & n.5 (1997) (explaining that the federal question of Eleventh Amendment immunity for an alleged state instrumentality "can be answered only after considering the provisions of state law that define the agency's character"); *So. U.S. Trade Ass'n v. Unidentified Parties*, No. CIV.A. 10-1669, 2011 WL 2457859, at *2 (E.D. La. June 16, 2011) ("Although the Fifth Circuit does not appear to have spoken on this precise question, the circuits that have considered the issue have held that the determination of whether an entity is a corporation within the meaning of the diversity statute is made by reference to the state law under which the entity is organized.").

[11] If any party is advancing novel theories of standing, it is SFFA, not UT-Austin.  SFFA asks the Court to adopt numerous policy-laden arguments for giving little or no weight to the three primary

discussed by countless cases since the Supreme Court first articulated it in 1977, including decisions of the Fifth Circuit. *Hunt*, 432 U.S. at 344-45; *Funeral Consumers All., Inc. v. Service Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012); *Friends of the Earth*, 129 F.3d at 829.  UT-Austin simply asks the Court to apply these doctrines as they have been articulated in the caselaw, not to blaze a new doctrinal path.

SFFA's arguments about the supposed novelty of UT-Austin's position are premised in part on a mischaracterization of what that position actually is.  SFFA engages in misdirection when it argues the indicia of membership test should not apply to traditional membership organizations.  (*See, e.g.*, Resp. at 21).  UT-Austin has not argued, and does not contend, that the indicia of membership test applies to *all* plaintiffs who assert associational standing (nor indeed to *any* plaintiff properly considered a traditional membership organization).  Instead, consistent with *Hunt* and the Fifth Circuit caselaw, it is *because* SFFA is not a traditional membership organization that it must prove its indicia of membership.  (Motion [ECF 45] at 24-26).  If SFFA were a traditional membership organization, giving traditional statutory rights and powers to its members, the indicia of membership test would have no application. *Tex. LULAC v. Abbott*, 493 F. Supp. 3d 548, at *11 (W.D. Tex. 2020), *vacated on other grounds sub nom. Tex. LULAC v. Hughs*, 20-50867, 2021 WL 1446828 (5th Cir. Feb. 22, 2021).

But SFFA is not a traditional membership organization.  It therefore bears the burden to establish standing under the indicia of membership factors.

SFFA would have the Court believe no plaintiff could ever be regarded as a traditional membership organization if UT-Austin's arguments carry the day.  But it is SFFA's own unique and intentional choice to charter itself as a nonprofit corporation with "no members" that sets it apart

---

indicia of membership factors, notwithstanding the precedent set by *Hunt* and the appellate decisions that have followed it.  (*See* Resp. at 32-33 (resisting the requirement of showing the members finance the organization's activities on the basis that the requirement could "shut out many organizations that serve the poor and underprivileged"); *id.* at 34 (arguing that limiting the rights of members to elect leadership and participate in the organization is necessary to prevent hostile takeovers)).

from the litany of plaintiffs who appeared in other cases cited by SFFA.[12]  Thus, SFFA's parade of horribles is premised on a fictitious narrative.  In reality, few plaintiffs seeking associational standing have ever made the same choices that SFFA made—namely, to prohibit members in its formation document, to prevent purported "members" from learning other members' identities and contact information, and to perpetuate control in the founder and his chosen associates.  And even those choices do not *preclude* standing.  They simply require the entity to satisfy the indicia of membership test.  *Friends of the Earth*, 129 F.3d at 829; *PIRG*, 123 F.3d at 119.

Moreover, SFFA could avoid the indicia of membership test in future cases simply by amending its articles of incorporation to permit members.  SFFA's refusal to do so is puzzling until one considers the strategic reasons for its choice.  First, as SFFA's own brief emphasizes, SFFA wishes to avoid the necessary consequences that status as a true membership organization would bring, including the opportunity for SFFA's members to learn each other's identities and to exercise meaningful control and guidance over the organization's leadership and activities.  (Resp. at 34).  Second, SFFA is likely also concerned that admitting to this deficiency in its articles of incorporation *now*—at this late stage of its years-long litigation campaign against several different universities—could imperil its more advanced cases against Harvard and UNC, which—like all federal litigation—remain vulnerable to subject matter jurisdiction challenges at all stages.

---

[12] *See, e.g.*, *Familias Unidas v. Briscoe*, 619 F.2d 391, 395, 398 n.7 (5th Cir. 1980) (describing Familias Unidas as a "loosely structured organization" without indicating that its formational documents prohibited members under state law); *Gay-Straight All. of Okeechobee High Sch. v. Sch. Bd. of Okeechobee Cty.*, 477 F. Supp. 2d 1246, 1248 (S.D. Fla. 2007) (addressing whether unincorporated association was a "person" under § 1983 without indicating that its formational documents prohibited members under state law); *Mayorga Santamaria ex rel. Doe Child. 1-3 v. Dallas Indep. Sch. Dist.*, No. CIV.A.3:06CV692-L, 2006 WL 3350194, at *6, *29-30 (N.D. Tex. Nov. 16, 2006) (describing group as an "unincorporated, non-profit organization" without indicating that its formational documents prohibited members under state law).

**B.      SFFA cannot satisfy the indicia of membership test.**

The "indicia of membership" test ensures "that the organization and its members are, in essence, identical." *Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 86 F. Supp. 2d 912, 918 (D. Minn. 2000) (citing *Hunt,* 432 U.S. at 344; *NAACP v. Alabama,* 357 U.S. 449, 459 (1958)).  There is no sense in which SFFA and its members can be regarded as one and the same.

SFFA fails to analyze the correct factors for applying the indicia of membership test.  In *Hunt*, the Supreme Court identified the following facts about the plaintiff's constituents as the basis for finding the plaintiff had associational standing:

> They alone **elect** the members of the Commission; they alone may **serve** on the Commission; they alone **finance** its activities, including the costs of this lawsuit, through assessments levied upon them.  In a very real sense, therefore, the Commission represents the State's growers and dealers and provides the means by which they express their collective views and protect their collective interests.

*Id.* at 344-345 (emphases added).  In *Funeral Consumers Alliance*, the Fifth Circuit confirmed that these three elements are the salient factors for the indicia of membership test:

> If the association seeking standing does not have traditional members, as here, the association establishes its standing by proving that it has "indicia of membership": its members elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs. . . .

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012) (citing *Hunt*, 432 U.S. at 344-45).  At bottom, the indicia of membership factors test whether the organization in fact represents its constituents and provides "the means by which [they] express their collective views and protect their collective interests." *Id.*[13]

---

[13] SFFA argues the opinion in *Funeral Consumers Alliance* is mere dicta, but it mirrors *Hunt*'s articulation precisely.  And whether dicta or not, the articulation of the test in *Funeral Consumers Alliance* should be accorded "great weight," absent a contrary holding from another panel of the Fifth Circuit.  *State of Tex. v. Ysleta del Sur Pueblo*, EP-17-CV-179-PRM, 2019 WL 639971, at *8 (W.D. Tex. Feb. 14, 2019), *aff'd*, 955 F.3d 408 (5th Cir. 2020).  Indeed, many other courts have adopted and applied the very same formulation of the *Hunt* test.  *See Mental Hygiene Legal Serv. v. Cuomo*, 609 Fed. App'x 693, 695 (2d Cir. 2015) ("[W]e conclude that the District Court properly dismissed MHLS's complaint for lack of

1.     **SFFA's activities—including the current litigation—are not financed by members.**

SFFA claims that its members "finance [SFFA's] activities," because "SFFA has received *thousands of dollars* in membership fees and donations from its members." (Resp. at 32 (emphasis added)). But SFFA concedes that it has generated multiple *millions* of dollars from other sources,[14] meaning that member contributions represent only a tiny fraction of its funding. If contributions comprising less than 1% of an organization's operating budget could be regarded as "financing" the organization's activities, the factor ceases to play any substantive role in the analysis, contrary to *Hunt* and binding Fifth Circuit precedent. Courts giving due consideration to this factor instead require a more meaningful role for the members in "financ[ing] the organization's activities, including the case's litigation costs." *Funeral Consumers All.*, 695 F.3d at 344 n.9; *see, e.g.*, *Nestle Ice Cream Co.*, 46 F.3d at 586; *Package Shop, Inc. v. Anheuser-Busch, Inc.*, No. CIV.A. 83-513, 1984 WL 6618, at *40 (D.N.J. Sept. 25, 1984). SFFA cannot show its members have any meaningful involvement in the financing of its activities.

---

associational standing. MHLS concedes that its constituents do not 'elect' its members, do not 'serve' on the association, and do not 'finance its activities.'"); *see also Nestle Ice Cream Co. v. N.L.R.B.*, 46 F.3d 578, 586 (6th Cir. 1995); *Wash. Legal Found. v. Leavitt*, 477 F. Supp. 2d 202, 208 (D.D.C. 2007) (holding that an organization seeking associational standing "must represent individuals that have all the 'indicia of membership' including (i) electing the entity's leadership, (ii) serving in the entity, and (iii) financing the entity's activities"). In *Friends of the Earth*, the Court indicated it was following *Hunt* in "look[ing] to who elected the governing body of the organization and who financed its activities." 129 F.3d at 829. Though that case did not expressly mention "serving in the entity," the court gave no indication of a deliberate choice to exclude the factor.

[14] *See* Exhibit B, Blum 2021 Tr. at 46:7-10 (agreeing that "the vast majority of members of SFFA have not paid [membership] dues"); Exhibit O (showing over 96% of SFFA's funding through November 1, 2017—the last date for which SFFA has disclosed the breakdown of its funding sources—came from nine "institutional donors" for a total of $3,073,441.28); Exhibit N (showing membership dues made up $2,600 out of $1,539,694—*i.e.*, 0.17%—of SFFA's annual revenue in 2019)).

2.      **SFFA's leadership is not member-elected.**

SFFA asserts that "SFFA's members directly 'elect[] the governing body of the organization' through a member-elected board of director." (Resp. at 9) (quoting *Friends of the Earth*, 129 F.3d at 829). But members have no voice whatsoever in the selection of four out of five of the directors on SFFA's board, including Blum and the Fishers. Thus, it is false to assert that members elect the governing body of the organization. The opportunity to elect one person, with a non-controlling vote, is a far cry from power to "directly 'elect[] the governing body of the organization'" (Resp. at 9).

*Friends of the Earth* lends no support for SFFA's position that election of a single director on a five-member board is sufficient. (*Cf.* Resp. at 9). Nothing in the court's opinion suggests that a portion (much less a majority) of FOTE's board was self-perpetuating and selected without member input, as is true of SFFA. 129 F.3d at 829.

SFFA also relies on decisions from other jurisdictions that have departed from the election of leadership requirement in particular cases. (*See* Resp. at 34). Those cases do not support SFFA's position either. In each case, other circumstances demonstrated meaningful member involvement in steering the organization's leadership, such as service by members on committees or advisory councils. *See, e.g.*, *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1111 (9th Cir. 2003) (noting service on the plaintiff's board was limited to "individuals who have received or are receiving mental health services and family members of such individuals," and that 60% of the plaintiff's advisory council was comprised of individuals meeting the same criteria); *Citizens Coal Council v. Matt Canestrale Contracting, Inc.*, 40 F. Supp. 3d 632, 638, 641 (W.D. Pa. 2014) (noting members' service on an advisory committee and noting "CCCs Coordinating Committee and officers are not self-appointed or self-perpetuating"). In *Flyers Rights Educ. Fund, Inc. v. U.S. Dep't of Transp.*, 957 F.3d 1359 (D.C. Cir. 2020), the court noted the fact the plaintiff "frequently poll[ed] its airline passenger members in order to determine which policy issues and types of actions [to pursue]" and that the plaintiff's "leadership also consider[ed] petitions

members have signed when determining issues and policies to pursue on their behalf." 957 F.3d at 1362.  In contrast, SFFA's members have no comparable opportunities to steer the course of the organization.  Without the opportunity to learn the identities of other purported members, members have no ability to petition the organization like the members of Flyers Rights.[15]

SFFA also suggests that there is adequate member control over the organization because its purported standing members could resign and thereby deprive SFFA of its derivative standing.  (Resp. at 36).  But that is true of every organization that wishes to seek associational standing.  If a standing member's right to resign were itself sufficient to satisfy the indicia of membership test, the test would become a nullity, contrary to the decisions that accord the test a substantive role.

Nor is it enough that SFFA's directors believe in the organization's mission or have children that have applied, or may apply, to colleges that use race as a factor in a way that the directors object to.  (Resp. at 37-38).  Without any meaningful participation by membership in selecting those directors, the organization risks becoming "no more than a vehicle for the vindication of the value interests of concerned bystanders." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 687 (1973).  To ensure the organization provides the means by which its members "express their collective views and protect their collective interests," *Hunt*, 432 U.S. at 345, the indicia-of-membership requirement tests the degree to which leaders of the organization answer to membership through regular elections.  *See, e.g.*, *id.* at 344 (apple growers and dealers "alone elect the members of the Commission").  A small handful of controlling directors, unelected by membership, is not enough to confer standing on an organization to proceed with a claim that none

---

[15] SFFA's citations (Resp. at 35) concerning The Wilderness Society—apparently a traditional membership organization—are inapposite because they do not concern the indicia of membership test, nor the election of leadership factor.  *See Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1171, 1179-80 (9th Cir. 2011); *N.M. ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 696 n.13 (10th Cir. 2009).

of the directors would otherwise have standing to pursue individually.[16]

### 3.   SFFA lacks genuine member service in the organization.

SFFA fails to show that its purported members meaningfully serve in the organization.  SFFA admits there are no committees on which to serve, and that its members are not polled for their opinions on policy matters or actions to be taken.  (Exhibit B, Blum 2021 Tr. at 75:20-76:6).  Nor has any group of members ever petitioned SFFA to encourage the organization to move in a specific direction.  (Exhibit B, Blum 2021 Tr. at 75:10-75:12).  And while SFFA asserts Blum solicits views from the so-called membership from time to time (Resp. at 35), SFFA admits that any such input flows exclusively from an individual to Blum and that there is no opportunity for collective participation by members. (*Id.* at 75:20-76:6 ("The only way that an individual can make suggestions about the direction or activities of SFFA is to contact or go to me directly.")).  Thus, there is no sense in which SFFA furnishes the "means by which [its purported members] express their collective views and protect their collective interests."  *Friends of the Earth*, 129 F.3d at 828 (quoting *Hunt*, 432 U.S. at 344-45).

---

[16] SFFA argues that "no case supports UT's argument that SFFA must serve a 'specialized segment' of society," (Resp. at 36), but even one of the cases cited in SFFA's own response relies on that limitation.  *See Or. Advocacy Ctr.*, 322 F.3d at 1111 (emphasizing that "OAC serves a specialized segment of Oregon's community: the disabled in general, including the mentally ill and, more specifically, incapacitated criminal defendants").  And the "specialized segment" requirement, though not always expressly stated, is inherent in the Supreme Court's choice to limit associational standing to those whose constituents meet the indicia of membership test.  *See Hunt*, 432 U.S. at 344 (pointing to the growers and dealers whose interests the plaintiff was formed to serve as the "members" who satisfied the indicia of membership test).  Were it otherwise—*i.e.*, if any supporter could be relied on to meet the indicia of membership test—then the test would lose all meaning.  Anyone providing financing or leadership support to the organization would simply call themselves members and defeat the inquiry's purpose: to ensure that control over litigation "be placed in the hands of those who have a direct stake in the outcome, not in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests."  *Am. Legal Found. v. F.C.C.*, 808 F.2d 84, 91 (D.C. Cir. 1987) (cleaned up).

Ultimately, SFFA has far more in common with the 1970s-era incarnation of Public Citizen at issue in *Health Research Group v. Kennedy*, 82 F.R.D. 21, 24 (D.D.C. 1979), than it does with any of the organizations SFFA cites in its response. Like SFFA today, Public Citizen was an organization run by its founder (Ralph Nader) and a self-appointed, self-perpetuating board of directors. *Id.* at 24, 27. As SFFA does here, Public Citizen argued that limiting the right of members to meaningfully participate in steering the organization was a practical necessity, but nonetheless relied on the meager involvement of its tens of thousands of "supporters" to satisfy the requisite indicia of membership. *Id.* at 24, 27-28. The court held that the facts Public Citizen relied on—that "individual supporters and contributors 'influence Public Citizen's activities through their financial support and their letter writing'"—were not enough to overcome the fact that Public Citizen was intentionally structured as a non-member, nonprofit corporation run by Mr. Nader. *Id.* at 24-28. Likewise, SFFA has chosen to organize itself to be a nonprofit subject to the control of its founder and his hand-picked controlling directors. As such, it is neither a genuine membership organization nor its functional equivalent.

## III. SFFA's claims are barred by res judicata.

With respect to res judicata, SFFA disputes two issues: (1) whether Abigail Fisher and SFFA are in privity; and (2) whether *Fisher v. University of Texas* and this case are based on the same nucleus of operative facts. Both factors are present here and support applying res judicata and collateral estoppel to dismiss SFFA's claims in this case.

### A. Fisher and SFFA are in privity.

SFFA and Fisher are in privity both through Fisher herself, as an officer, director, and founder of SFFA; and also through Edward Blum, as the person chiefly responsible for the initiation and pursuit of both lawsuits. Fisher and Blum should not be allowed to pursue a claim against UT-Austin all the way to final judgment in the U.S. Supreme Court, then re-file the same claim against UT-Austin through an organization they control.

"Privity is merely another way of saying that there is sufficient identity between parties to prior and subsequent suits for res judicata to apply." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990). "The general rule is '. . . that for purposes of the conventional statement that a judgment binds the "parties" to the action, the word "parties" does not refer to formal or paper parties, but to parties in interest, that is, that persons whose interests are properly placed before the court by someone with standing to represent them are bound by the matters determined in the proceeding.'" *Southmark Props. v. Charles House Corp.*, 742 F.2d 862, 869 (5th Cir. 1984).

As to Fisher's role, SFFA does not dispute that the relationship between a corporation and its officers and directors is one of the several discrete formal relationships that courts have identified as giving rise to privity. (Resp. at 39-40). Instead, SFFA suggests that the timing of SFFA's formation precludes a finding of privity. But SFFA admits it was founded during the pendency of the *Fisher* litigation and it was chosen as the vehicle for bringing this lawsuit in direct reaction to Fisher's loss of her challenge to UT-Austin's admission policy before the United States Supreme Court. On the day that *Fisher* was decided by the U.S. Supreme Court, Blum began plans to sue UT-Austin again over its admissions policy. This is now the third suit filed by SFFA, in addition to the earlier unsuccessful suit conceived by Blum and brought in Fisher's name. (Exhibit A, Blum 2018 Tr. at 137:14-23); (Exhibit B, Blum 2021 Tr. at 21:6-20).

Fisher's role in the two cases is sufficiently substantial to support application of the officer/director privity exception. Not only is she one of only three officers and one of only five directors, she co-founded SFFA with her father and with Blum, her co-venturer in her prior suit. Fisher and Blum together have shared in the opportunity to direct both lawsuits. Under federal common law, that opportunity is enough to conclude privity exists. *See* Wright & Miller, 18A Fed. Prac. & Proc. Juris. § 4451 (3d ed.) ("[I]t should be enough that the nonparty has the actual measure

of control or opportunity to control that might reasonably be expected between two formal coparties.") (citing *Phelps v. Hamilton*, 122 F.3d 1309, 1319 (10th Cir. 1997)).

Moreover, Blum's role in each of the lawsuits furnishes distinct and separate factual support for a finding of privity.  Privity applies to a person who attempts repetitious litigation by proxy.[17]

Blum admits he was "'designated' by Ms. Fisher to act as her representative in making and helping with decisions and communicating with counsel" in the *Fisher* litigation. (Exhibit A, Blum 2018 Tr. at 182:10-12).  In both the *Fisher* litigation and this case, Blum selected the issue for litigation; coordinated the funding of the lawsuit; identified the plaintiff or "standing members"; and identified the lawyers to represent them. (MSJ Ex. B at 15:12-18:15).[18]  SFFA dismisses this evidence because Fisher herself was the actual party, rather than Blum.  But for purposes of privity, "control" does not imply that the nonparty is the only person involved. Rather, courts recognize that control is present where a nonparty exercises the degree of participation and control one might "reasonably expect[ ]

---

[17] *See Taylor v. Sturgell*, 553 U.S. 880, 895 (2008) (a nonparty is bound by a judgment if she 'assume[d] control' over the litigation in which that judgment was rendered . . . [b]ecause such a person has had 'the opportunity to present proofs and argument,' he has already 'had his day in court' even though he was not a formal party to the litigation.").  "The nonparty's participation may be overt or covert, and the evidence of it may be direct or circumstantial—so long as the evidence as a whole shows that the nonparty possessed effective control over a party's conduct of the earlier litigation as measured from a practical, as opposed to a purely theoretical, standpoint." *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 759 (1st Cir. 1994).

[18] SFFA criticizes Defendants for describing Blum's role as "Yenta the matchmaker," (Resp. at 41 n.15), but that is Blum's own description of himself:

> For those who are familiar with the old Broadway play, Fiddler on the Roof, Yenta was a character in a small Russian village whose job it was to match prospective brides and grooms, and my role as Yenta the matchmaker is to match—in the capacity that story was written—individuals who feel that they have been unfairly and unconstitutionally discriminated against because of their race and match them with lawyers willing to represent them.

(Exhibit A, Blum 2018 Tr. at 8:1-8:9); *see also* Exhibit I at 2 ("Mr. Blum . . . likened his role in the litigation to being 'Yenta the matchmaker.'")).

from a co-party."[19]  Blum's participation and control over both *Fisher* and this case are sufficient to establish privity between the two plaintiffs for purposes of claim preclusion.  *See Ferris v. Cuevas*, 118 F.3d 122, 128 (2d Cir. 1997) (privity applies to prevent "one controlling person or entity from bringing multiple suits in the names of different plaintiffs, and controlling the litigation from the shadows").

> ### B.  Both cases present the same claim or cause of action.

The other disputed element of res judicata—the same claim or cause of action in both suits— is satisfied as well.  The test is "whether the two actions under consideration are based on 'the *same nucleus of operative facts*.'"  *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999) (quoting *In re Baudoin*, 981 F.2d 736, 743 (5th Cir. 1993) and *In re Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990)) (emphasis in *Southmark*).

SFFA argues the two cases do not share the same "operative facts" because Fisher applied for admission ten years before any of the members that SFFA claims standing to sue on behalf of did. (Resp. at 42).  But this difference alone is not sufficient to avoid claim preclusion.  "In order for new facts to constitute a new cause of action and thus allow a claim to be relitigated, those facts must be both 'significant' and create 'new legal conditions.'"[20]

---

[19] *Am. Postal Workers Union Columbus Area Local AFL-CIO v. U.S. Postal Serv.*, 736 F.2d 317, 319 (6th Cir. 1984); *compare Gonzalez*, 27 F.3d at 758-59 (privity exists "where availability of a significant degree of effective control in the prosecution or defense of the case—what one might term, in the vernacular, the power—whether exercised or not—to call the shots"; "If a nonparty either participated vicariously in the original litigation by exercising control over a named party or had the opportunity to exert such control, then the nonparty effectively enjoyed his day in court, and it is appropriate to impute to him the legal attributes of party status for purposes of claim preclusion.").

[20] *Wilson v. Lynaugh*, 878 F.2d 846, 851 (5th Cir. 1989) (quoting *Hernandez v. City of Lafayette*, 699 F.2d 734, 737 (5th Cir. 1983)); *see Hous. Prof'l Towing Ass'n v. City of Hous.*, 812 F.3d 443, 449 (5th Cir. 2016) ("[T]he critical question is not whether any facts or law have changed between *SafeClear II* and this suit, but whether there have been any significant changes—whether the factual and legal basis undergirding HPTA's claim of preemption has changed.").

Here, there have been no "significant" factual developments regarding UT-Austin's use of race in admissions that create "new legal conditions."  SFFA's complaint acknowledges the continuity between the admissions policy in place when *Fisher* was decided and today.

- "Since *Fisher II* was decided, UT-Austin has repeatedly acknowledged that it continues to use race in the admissions process." (Am. Compl. [ECF 13] ¶ 86).

- "In March 2017, UT-Austin released its 'University Diversity and Inclusion Action Plan' ('UDIAP'), in which it outlined its plan to continue using race in its admissions decisions as a result of 'the university's successful defense of its admissions policy in the Fisher case.' The UDIAP's discussion of the need for race-based admissions was less than one page." (*Id.* ¶ 88).

- "For recent admissions cycles, UT-Austin has continued to ask students to classify themselves from among a select group of broad racial categories on the application, *see Fisher I*, 570 U.S. at 306, and it still discriminates on the basis of race in admitting the portion of the freshman class enrolled outside the operation of the Top Ten Percent Plan." (*Id.* ¶ 91).

The only change SFFA alleges regarding the use of race and ethnicity is that in 2017, UT-Austin referred to race and ethnicity, as well as all other factors in its admissions decisions, as a "very important" factor in the admissions process, whereas before UT-Austin had marked race and ethnicity as "considered."  (*Id.* ¶¶ 97-98).  This change does not rise to the level of the significant change of facts necessary to avoid the bar of claim preclusion.  UT-Austin's policy regarding the use of race and ethnicity in admissions challenged by Abigail Fisher is the same one SFFA challenges today.  The two cases thus share the same nucleus of operative facts, despite the passage of time.  *See Shults v. Tex.*, 762 F.2d 449, 452 (5th Cir. 1985) ("[T]he primary right asserted . . . and the primary wrong complained of . . . are the same in both actions. That the pertinent provisions of the 1983 amendments at issue here are not identical in other respects to the pertinent provisions of the 1981 amendments at issue in [the prior case] is irrelevant.").

Finally, SFFA is wrong that the United States Supreme Court's statements in *Fisher* concerning the possible need for further judicial review of UT-Austin's admissions policy should make any difference to the analysis here.  Nothing in the Court's opinion indicates that the normal rules of claim

preclusion would not apply to the judgment in this case—*i.e.*, that Fisher and Blum were free to repeatedly challenge the same admissions policy on the hope that they might obtain a different result. Because they had a full and fair opportunity to litigate their claims in *Fisher*, they may not do so again in this case through SFFA.

If SFFA were permitted to proceed, and if it loses once again on the merits, its arguments give fair warning that Blum and Fisher will feel entitled to file subsequent lawsuits, one after the other, in the name of new entities (SFFB, SFFC, and so on) all controlled by the same persons—Blum, Fisher and Fisher's father—for even more bites at the apple.

## IV.    SFFA's claims are barred by collateral estoppel.

SFFA's response raises essentially the same arguments against collateral estoppel as it does against res judicata: (1) SFFA is not in privity with Fisher; and (2) the issues in this case are not the same because of the passage of time.  For the same reasons explained above, SFFA is wrong on both counts.  For the central issues of whether UT-Austin has a clear and compelling interest in student-body diversity and whether UT-Austin is justified in including race as a factor in its holistic admissions policy, SFFA is in privity with Fisher; the issues SFFA presents here were actually litigated in *Fisher*; those issues were decided against Fisher; and taken individually and in the aggregate, those issues were necessary to the judgment rendered in favor of Defendants. This Court should therefore hold collateral estoppel bars the relitigation of these dispositive issues in this case.

Respectfully Submitted,

GRAVES DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2700
Austin, Texas  78701
(512) 480-5725 (phone)
(512) 539-9938 (fax)

By:    */s/ Matthew C. Powers*
       John J. McKetta, III
       Texas State Bar No. 13711500
       mmcketta@gdhm.com
       Matthew C. Powers
       Texas State Bar No. 24046650
       mpowers@gdhm.com
       William Christian
       State Bar No. 00793505
       wchristian@gdhm.com
       Marianne W. Nitsch
       Texas State Bar No. 24098182
       mnitsch@gdhm.com

       **ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record for Plaintiff via the Court's electronic filing and service system and also via email service as indicated below, on this the 26th day of April, 2021:

William S. Consovoy
J. Michael Connolly
Cameron T. Norris
Steven C. Begakis
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
will@consovoymccarthy.com
mike@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com

Brian C. Pidcock
HUNTON ANDREWS KURTH LLP
600 Travis St.
Houston, TX 77002
brianpidcock@HuntonAK.com

David Hinojosa
Genevieve Bonadies Torres
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW, Suite 900 Washington, DC 20005
dhinojosa@lawyerscommittee.org
gbonadies@lawyerscommittee.org

Ryan P. Phair
Carter C. Simpson
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW Washington, D.C. 20037
rphair@huntonak.com
csimpson@huntonak.com

Alan R. Kabat
BERNABEI & KABAT, PLLC
1400 - 16th Street, N.W., Suite 500
Washington, D.C. 20036-2223
Kabat@BernabeiPLLC.com

　　　　　　　　　　　　　　　　　　　　 /s/ Matthew C. Powers　　　　　　
　　　　　　　　　　　　　　　　　　　　 Matthew C. Powers

3714380.v1