**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**

STUDENTS FOR FAIR ADMISSIONS,

*Plaintiff,*

v.

UNIVERSITY OF TEXAS AT AUSTIN; JAMES B.
MILLIKEN, Chancellor of the University of Texas
System in his Official Capacity; STEVEN LESLIE,
Executive Vice Chancellor for Academic Affairs of the
University of Texas System in his Official Capacity;
DANIEL H. SHARPHORN, Vice Chancellor and
General Counsel of the University of Texas System in
his Official Capacity; JAY HARTZELL, Interim
President of the University of Texas at Austin in his
Official Capacity; BOARD OF REGENTS OF THE
TEXAS STATE UNIVERSITY SYSTEM; DAVID J.
BECK, CHRISTINA MELTON CRAIN, KEVIN P.
ELTIFE, R. STEVEN HICKS, JODIE LEE JILES,
JANIECE LONGORIA, NOLAN PEREZ, KELCY L.
WARREN, AND JAMES C. "RAD" WEAVER, as
Members of the Board of Regents in Their Official
Capacities; DANIEL JAFFE, Interim Executive Vice
President and Provost; RACHELLE HERNANDEZ,
Senior Vice Provost for Enrollment Management and
Student Success; and MIGUEL WASIELEWSKI,
Executive Director for Office of Admissions,

*Defendants,*

and

TEXAS NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
BLACK STUDENT ALLIANCE, TEXAS ORANGE
JACKETS, ADAYLIN ALVAREZ, MORGAN
BENNETT, BRIANNA MALLORIE MCBRIDE, LIZ
KUFOUR, DESIREE ORTEGA-SANTIAGO, NIMA
RAHMAN, ALEXANDRA TRUJILLO, and
ROSALEEN XIONG,

*Defendant-Intervenors.*

Case No. 1:20-cv-00763-RP

**DEFENDANT-INTERVENORS'
REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS FOR
LACK OF STANDING**

## I.     <u>INTRODUCTION</u>

SFFA's opposition to Defendant-Intervenors' motion to dismiss reflects its view that traditional standing principles do not apply to Edward Blum's crusade to eliminate race-conscious admissions programs. In SFFA's view, it does not matter that the Supreme Court has expressly held that holistic admissions programs that consider race as a mere "plus" factor do <u>not</u> deny applicants equal consideration, *see Grutter v. Bollinger*, 539 U.S. 306, 337 (2003), or that this *very admissions program* was constitutional less than five years ago, *see Fisher v. Univ. of Tex. at Austin*, 136 S. Ct. 2198, 2206 (2016) ("*Fisher II*"). No matter, SFFA believes that it has the legal right to litigate *ad infinitim* its generalized grievances against UT-Austin's and any other admissions program in the country, and to seek wide-ranging forms of relief untethered to the allegations in its pleading, simply by alleging that its recruited associational members are white, were denied admission, and are willing to transfer.

SFFA is wrong. The Supreme Court has never held that a bare allegation of the denial of the opportunity to compete is sufficient to confer standing to challenge a holistic admissions program, and neither the Supreme Court nor the Fifth Circuit has approved of the notion that a plaintiff may challenge a race-conscious admissions program irrespective of the program's impact on their admission. *Cf. Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1281-83 (11th Cir. 2001) (rejecting contention that "merely being exposed to an admissions process which considers race at some but not all stages necessarily creates standing"). And with good reason. Any such holding would invite endless litigation, like this one, which is based on nothing more than the fact that UT-Austin has a race-conscious admissions policy and that Mr. Blum dislikes that fact. Article III's requirements are not so ephemeral, and this Court should not hold otherwise. SFFA should instead be required to make the same allegations required in any other equal protection case: that its members were *actually* treated unequally, *i.e.*, that UT-

Austin's consideration of race actually caused an impact on the application of its members, and that its members' injuries would be cured by the relief sought in the case. Being unable or unwilling to do so, SFFA's case should be dismissed.

SFFA is also incorrect that a conclusory allegation of the denial of equal consideration is sufficient to establish standing for any and all remedies, and for all of the claims it alleges. To the contrary, it is well established that SFFA must establish its standing "for each claim [it] seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). SFFA has not done so. For example, SFFA has not explained how it can pursue a claim for failure to use race-neutral alternatives (Count II), when the use of those purportedly "neutral" alternatives would not benefit its standing members—and indeed, based on their deposition testimony, would lower their chances of admission. Likewise, SFFA has not alleged facts sufficient to support standing for its claim that UT-Austin engages in racial balancing toward African Americans (Count III)—an already implausible claim in light of the fact that African Americans are woefully *underrepresented* at UT-Austin, as SFFA's own pleading confirms. And SFFA has not even attempted to articulate a theory of standing with respect to Count IV, which alleges injury based on the mere fact that UT-Austin "uses race as a factor in admissions." Nor can it, because the mere use of race is not a cognizable injury under the bald assertions alleged in SFFA's Complaint. *Cf. Moore v. Bryant*, 853 F.3d 245, 250 (5th Cir. 2017) ("[W]e do not find[] any authority supporting the proposition that racial classification alone amounts to a showing of individualized harm" for purposes of the injury-in-fact standard). The Court should evaluate each of SFFA's claims against the Article III requirements and in doing so, should dismiss its entire pleading for lack of standing.

Finally, SFFA fails to defend its extraordinary and unprecedented request to white-out any mention of an applicant's race going forward, thereby preventing admissions officers from

learning or becoming aware of the applicant's race. Contrary to SFFA's arguments, SFFA must establish standing to pursue this relief, just as it must establish standing for all other claims and forms of relief sought. *Town of Chester*, 137 S. Ct. at 1650. SFFA has not, and cannot, do so. SFFA's request to censor applicants from revealing their race is wholly untethered to the allegations in SFFA's pleading, *opposed by its own standing members*, and goes far beyond anything that could reasonably be required to redress SFFA's injury, even if its substantive claims were proven. Accordingly, SFFA fails to satisfy Article III's standing requirements, in particular the requirements of traceability and redressability, the latter of which considers whether "the requested relief reaches 'well beyond the violation of law alleged.'" *Hall v. Dixon*, No. 09-2611, 2010 WL 3909515, at *11 (S.D. Tex. Sept. 30, 2010) (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)).

For these reasons, Defendant-Intervenors' motion should be granted.

## II.   <u>ARGUMENT</u>

### a.   The Traditional Requirements of Article III Standing Apply and Have Not Been Satisfied by SFFA.

As set forth in Defendant-Intervenors' opening brief, the requirements of constitutional standing are well established, both for individuals and for associations purporting to act on their members' behalf. *See* Br. 3-4. SFFA has not met these requirements, and bears the burden of doing so. *See McMahon v. Fenves*, 323 F. Supp. 3d 874, 878 (W.D. Tex. 2018) ("At the motion-to-dismiss stage 'the plaintiff must clearly allege facts demonstrating each element [of standing].") (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)). In asserting otherwise, SFFA relies entirely on its allegation that its members were denied the opportunity to compete on an equal basis for admission to UT-Austin, together with the allegations that those members were denied admission to UT-Austin in the first instance and are ready and able to re-

apply. But such allegations are simply not enough, and none of the cases relied upon by SFFA hold otherwise. Indeed, this case—filed less than five years after the Supreme Court upheld this very admissions program—represents exactly why SFFA must allege, and establish, more.

i.      **The allegation that an applicant was denied the opportunity to compete is insufficient, on its own, to establish standing to challenge a holistic admissions program.**

As explained in Defendant-Intervenors' opening brief, the injury-in-fact required in any equal protection claim, including those in the affirmative action context, is the denial of equal treatment. When a particular admissions program involves a "set aside" track for admission, "automatic bonus points" for minority applicants, or a racial quota, a plaintiff's showing on this issue is straightforward—allegations that such a barrier exists and was encountered by a plaintiff are generally sufficient, based on the recognition that such systems, by their nature, do not allow applicants to compete on equal footing. *See Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 317 (1978). In short, because such admissions policies *on their face* treat applicants unequally based on their race, merely being subject to such policies will give rise to a cognizable injury under the Equal Protection Clause.

However, as SFFA's pleading makes clear, no such program is at issue in this case. *Per SFFA's own allegations*, 25% of each freshmen class at UT-Austin is filled based on a holistic review that considers race as but one of the many factors in determining an individual's overall PAI (personal achievement index) score, which itself is then combined with each applicant's "academic index" score to evaluate each candidate for admission. *See* Am. Compl. ¶¶ 20, 24, 43-44. As the Supreme Court has repeatedly explained, such a program differs starkly from racial quotas and similar systems, and, crucially, does <u>not</u> facially deny applicants equal consideration. *See Bakke*, 438 U.S. at 317-18 ("No such facial infirmity exists in an admissions program where race or ethnic background is simply one element—to be weighed fairly against other elements—

in the selection process. . . . an admissions program operated in this way is flexible enough to consider all pertinent elements of diversity in light of the particular qualifications of each applicant, *and to place them on the same footing for consideration*") (emphasis added). In addition to SFFA's own pleading, we also know that UT-Austin has such a program, because the Supreme Court said so, less than five years ago. *See Fisher II*, 136 S. Ct. at 2206 ("[T]here can be no dispute that race is but a 'factor of a factor of a factor' in [UT's] holistic-review calculus."). Indeed, the need to apply traditional Article III principles to this case are further bolstered by the fact that the Supreme Court has recently found that, under UT-Austin's admission's policy, (1) "race is contextual and does not operate as a mechanical plus factor for underrepresented minorities" and (2) in the full context of the application, the consideration of race may benefit any UT applicant—including white applicants. *See id.* at 2207.

Under these circumstances, neither the Supreme Court nor the Fifth Circuit has ever indicated that the bare assertion that an applicant has been denied equal consideration is sufficient on its own to confer standing on any and all claims challenging a holistic race-conscious admission program, or that applicants wholly unaffected by the race-conscious characteristics of an admissions policy can nevertheless come to federal court seeking to invalidate that policy. To the contrary, and as other courts have recognized, allowing such suits would turn long-established standing jurisprudence on its head. As the Eleventh Circuit recognized in *Wooden*, embracing such a standard

> would virtually abolish the injury-in-fact requirement in this context, conferring a cognizable injury on every unsuccessful applicant for a government contract or admission to a public university where the process at some stage or for some purposes disfavors the applicant's racial group in favor of another, *regardless* of whether the plaintiff herself was actually treated unequally.

247 F.3d at 1282. The Eleventh Circuit succinctly and correctly continued: "The law does not go that far." *Id.*; *see also Farmer v. Ramsay*, 159 F. Supp. 2d 873, 888 (D. Md. 2001) ("Such a

reading would presumably permit even applicants lacking the requisite formal qualifications to challenge a medical schools' [sic] admissions processes merely by stating an intent to apply."), *aff'd*, 43 F. App'x 547 (4th Cir. 2002).

In sum, SFFA cannot evade the traditional, threshold requirements of Article III by simply alleging that its members were denied the opportunity to compete on an equal basis with minority applicants to UT-Austin. Instead, SFFA should be required to establish the same injury-in-fact that any other equal protection plaintiff is required to show, namely, that it or its members have *actually been treated unequally* by the challenged actions it complains of in this case. Having failed to allege facts sufficient to do so, SFFA's pleading should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

   **ii.      SFFA's contrary arguments misconstrue the precedent on which it relies.**

SFFA contends that the "Supreme Court's decisions in *Grutter*, *Gratz*, and *Fisher* all foreclose" the argument set forth above—that SFFA must satisfy the traditional requirements of standing that any other litigant must satisfy. Not so. The Supreme Court has never settled arguments like those made by Defendant-Intervenors here, much less held that an applicant denied admission under a holistic, race-conscious admissions policy can challenge that policy merely by asserting that he or she was denied the opportunity to compete on an equal basis. In asserting otherwise, SFFA misstates the scope of previous precedent.

SFFA first relies on *Grutter*, a decision that did not address any of the standing arguments offered by Defendant-Intervenors here. In *Grutter*, there is no discussion of the defendants challenging the standing of the plaintiff to bring any claim on any grounds, much less the grounds alleged by Defendant-Intervenors here. Indeed, *Grutter* upheld the use of race at Michigan Law School, by contrasting "set aside" programs, which necessarily involve unequal consideration of applications, with holistic admissions programs that consider race merely as a

"plus" factor for a particular applicant. 539 U.S. at 334-37. In doing so, the Court in *Grutter* reaffirmed its prior guidance in *Bakke* that holistic admissions programs do place applicants "on the same footing for consideration." *Id.* at 337. Moreover, while SFFA is correct that the Supreme Court held that the plaintiff in *Grutter* "clearly" had standing, SFFA omits that the Court reached that decision only after identifying that the plaintiff had alleged that she was rejected ***because of*** the Law School's use of race. *See id.* at 317 ("Petitioner further alleged that her application was rejected because the Law School uses race as a 'predominant' factor"). Here, however, SFFA fails to allege any facts regarding whether and how its members have been rejected *because* of any asserted action by UT-Austin. That is the showing that is missing in this case, and what SFFA should be required to demonstrate through the allegations in their pleading. Accordingly, *Grutter* undercuts SFFA's arguments rather than supports them.

*Gratz v. Bollinger*, 539 U.S. 244, 260 (2003), likewise does not support SFFA's analysis, even setting aside the distinguishable circumstances in which its standing discussion arose.[1] *Gratz*, like *Grutter*, does not hold that a party challenging the use of race in admissions need only allege the denial of equal consideration coupled with the ability to re-apply, as SFFA argues. *See* Opp. at 3. To be sure, *Gratz* reaffirms *Grutter*'s analysis that "***in the context of a challenge to a set-aside program***, the 'injury in fact' is the inability to compete on an equal footing." 539 U.S. at 262 (emphasis added)*.* However, in finding that Mr. Hamacher had standing to sue, the Court conspicuously did not do so based merely on the alleged denial of

---

[1] The analysis in *Gratz* bears few similarities to the issues presented here. First, neither party raised the issue of standing in its briefing to the Court. *See* 539 U.S. at 260. Moreover, although the Court raised the issue on its own, it did not address the standing arguments that Defendant-Intervenors make here. To the contrary, the Court in *Gratz* considered only (1) whether the petitioners satisfied Article III requirements without showing that they had actually applied for a transfer, *id.* at 261; and (2) whether the plaintiff had standing as a class representative for all classes of applicants, *id.* at 262.

equal consideration—despite the fact that the program at issue in *Gratz* awarded automatic bonus points to an applicant's file on the basis of the race. *Id.* at 261-62. Instead, just as in *Grutter*, the Court found standing in *Gratz* only after observing the plaintiff's allegation that "he was denied admission ***even though an underrepresented minority applicant with his qualifications would have been admitted.***" *Id.* at 262 (emphasis added). Again, this is what SFFA should be required to show in this case for each claim it asserts—and has not. SFFA's complaint contains no allegation of automatic bonus points, much less sufficient factual allegations to plausibly establish that its members were denied admission when underrepresented minority applicants with the same qualifications would have been admitted.

Finally, SFFA's assertion that the "Supreme Court twice found that Ms. Fisher had standing to bring her claims" in *Fisher I* and *Fisher II* is, at best, a self-serving overstatement. Although the standing issue was raised in party and amicus briefing, the Supreme Court <u>did not</u> address the question of Fisher's standing. Indeed, standing is not mentioned in either opinion. The Supreme Court has long held that a court's failure to directly address an issue should not imply that the court's silence acts as precedent, including on jurisdictional issues. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *accord United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 38 (1952) ("[T]his Court . . . is not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed *sub silentio*.").[2] SFFA's reliance on the *Fisher* decisions is inaccurate, misleading and misplaced.

---

[2] For similar reasons, SFFA's appeal to the *Harvard* and *UNC* cases is unpersuasive. As SFFA itself notes, "neither Harvard nor UNC disputed that SFFA's members had standing." Opp. at 4. Instead, the challenges raised in *Harvard* and *UNC* focused on SFFA's associational standing to sue on behalf of its members and the indicia of membership test. *See Students for Fair*

In sum, none of the cases relied upon by SFFA support its attempt to circumvent the limitations of Article III. And this case is a paradigmatic example of why traditional standing principles should, and do, apply. The Supreme Court indicated its approval of holistic, race-conscious admissions programs nearly fifty years ago in *Bakke*, and has reiterated that support on multiple occasions. Less than five years ago, the Supreme Court affirmed that UT-Austin has such a policy, and that its admissions program does ***not*** prevent applicants from competing on an equal basis. *See Fisher II*, 136 S. Ct. at 2206. Indeed, the objective facts affirmatively pled by SFFA confirm this—with white applicants making up a larger majority of admitted students under the holistic admissions plan than under the race-blind top-ten-percent plan that SFFA seeks to expand. And yet, SFFA's position is that none of this matters. SFFA believes that it has the legal right to challenge any race-conscious admissions program in the country, an infinite number of times, merely by recruiting applicants who were denied admission and making the bare, unsupported assertion that those applicants were denied the ability to compete on an equal basis. In other words, SFFA invites this Court to eliminate the requirements of Article III. The Court should decline that invitation, and instead require SFFA to allege that UT-Austin's consideration of race actually impacted their application under each claim asserted.

b.     **SFFA Has Not Established Standing for Each Claim and Form of Relief Sought.**

The Court also should dismiss specific SFFA claims and relief requests under Rule 12(b)(1) because, in addition to the across-the-board deficiencies set forth above, the Amended

---

*Admissions, Inc. v. President & Fellows of Harvard Coll. (Harvard Corp.)*, 261 F. Supp. 3d 99, 106-09 (D. Mass. 2017), *aff'd sub nom.*, 980 F.3d 157 (1st Cir. 2020); *Students for Fair Admissions, Inc. v. Univ. of N. Carolina*, No. 1:14CV954, 2018 WL 4688388, at *3-4 (M.D.N.C. Sept. 29, 2018).  As a result, the brief, summary analysis of standing in those cases was not the result of adversarial briefing on the same defenses raised here. Here, SFFA's members' standing is disputed. And for the reasons explained in Defendant-Intervenors' opening motion and here, SFFA has not met its burden on these issues.

Complaint (and now, SFFA's opposition brief) fails to grapple with the well-settled requirement that a plaintiff establish standing for *each claim* and *each form of relief* sought. Instead, SFFA seeks remedies untethered to its allegations, and claims based on activity that has had no impact on its standing members.

Because SFFA's opposition brief does not address Defendant-Intervenors' arguments specific to Counts II-IV, Defendant-Intervenors refer the Court to pp. 9-13 of their opening brief. In response to Count I (more than a plus factor), SFFA restates its bald, conclusory allegation in its Amended Complaint that "[s]tatistical and other evidence shows that each applicant is not evaluated as [an] individual . . . ." Opp. at 5. SFFA further asserts that Defendant-Intervenors conflate the merits with standing. However, that is not true. SFFA carries the burden of satisfying Article III for at least one member by alleging sufficient facts for each claim. *See Town of Chester,* 137 S. Ct. at 1650; *In re Gee*, 941 F.3d 153, 164 (5th Cir. 2019) ("'[U]nadorned speculation will not suffice to invoke the federal judicial power.'"). Plainly absent from SFFA's Complaint are specific facts alleging (not proving) how its *members* were injured by UT-Austin's failure to consider race merely as a plus factor. *See* Br. at 9-10.

SFFA also offers no rebuttal to Defendant-Intervenors' argument that Paragraph (d) of the prayer for relief—asking to censor students' disclosure of their race in their UT-Austin applications—bears no nexus to the conduct, injury, or claims raised in the Amended Complaint, and in fact is not supported by a ***single allegation*** about UT-Austin's knowledge of applicants' race. *See* Br. at 14-17. Instead, SFFA responds only that "parsing elements" of its claims at this stage of the case is premature, and that its standing to pursue this relief is somehow inherent in the Court's "broad powers at the remedy stage to issue injunctions that will prevent future racial discrimination by UT." Opp. at 1, 7-8.

- 10 -

Neither of SFFA's arguments holds sway. It is blackletter law that "standing is not dispensed in gross; plaintiffs must demonstrate standing 'for each claim [t]he[y] seek[] to press' and 'for each form of relief that is sought.'" *Tex. Assoc. of Mfrs. v. Consumer. Prod. Safety Comm'n*, 989 F.3d 368, 376 (5th Cir. 2021) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)) (alterations in original); *see also Latitude Solutions v. DeJoria*, 922 F.3d 690, 695 (5th Cir. 2019) (same); *Reitz v. City of Abilene*, No. 16-cv-181, 2017 WL 3046881, at *7 (N.D. Tex. May 25, 2017) ("Article III standing effectively mandates that the plaintiff's injury be redressable by the specific form of requested relief. . . . The plaintiff must have a personal stake for each requested form of relief and the absence of a personal stake for a particular form of relief results in a lack of constitutional standing over that form of relief for that case."). Thus, SFFA's requested relief is subject to the same three-pronged standing analysis as are its substantive causes of action.[3] Conducting this analysis is not "premature"; it is ***required*** to establish this Court's subject matter jurisdiction.

Both the traceability and redressability requirements preclude relief that is untethered to the harm allegedly suffered by the plaintiff. *See Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984), *abrogated in part on other grounds by Lexmark Int'l v. Static Control Components*, 572 U.S. 118

---

[3] *See, e.g.*, *Reitz*, 2017 WL 3046881, at *7-8; *Estate of Macias v. Tex. Dep't of Pub. Safety*, No. 20-cv-460, 2021 WL 495877, at *7-8 (W.D. Tex. Feb. 9, 2021) (after analyzing standing to pursue certain claims, conducting separate standing analysis for defendants' request for a permanent injunction); *Riley v. Houston Nw. Operating Co.*, No. 19-cv-2496, 2020 WL 3103899, at *4-5 (S.D. Tex. June 11, 2020) (categorizing declaratory and injunctive relief based on which aspects of the claims they related to, and finding redressability prong was not met with respect to certain requested relief). *Hall v. Dixon*, No. 09-2611, 2010 WL 3909515, at *11-13, *12 n.3 (S.D. Tex. Sept. 30, 2010) (conducting separate analyses for various counts and requested damages and injunctive relief). None of these cases, nor the cases cited by SFFA on page 8 of its brief, support the notion that the Court's broad discretion when granting equitable relief bears on the standing analysis. *See* Opp. at 7-8.

- 11 -

(2014) (redressability prong focuses on requested relief in "[c]ases such as this, in which the relief requested goes well beyond the violation of law alleged") (recently cited for this notion in *Hall*, 2010 WL 3909515, at \*11); *In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019) (remarking that plaintiffs cannot "identify one injury and then bootstrap it to complain about other[]" practices that are not traceable to that injury); *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839-41 (5th Cir. 2012) (finding "traceability wanting where 'the broad relief requested [] does not address the particular injury suffered by these [] Plaintiffs'")). These cases stand for the notion that the mere availability of relief that may have a "substantial effect" on the injury does not, by itself, indicate that such relief is "traceable to" or appropriate to redress "[the] violations of law" at issue in the case. *See Allen*, 468 U.S. at 753 n.19.

Here, the only conduct and claims that SFFA has put at issue—"discriminatory admissions policies" that include "racial preferences," "racial balancing," and the "use of race as a factor in admissions"—are no more the result of UT-Austin's knowledge of a candidate's race than they are of the fact that UT-Austin uses a holistic admissions policy for a portion of its freshman class in the first place (as opposed to, for example, a pure top-ten-percent policy). SFFA has not pled that UT-Austin's knowledge of candidates' race violates any law or has any impact on admissions decisions, and as such has not met its burden of establishing standing to pursue its prohibition.

Finally, SFFA relegates to a footnote its retort to its Standing Members' unequivocal disavowal in their depositions of the relief requested in Paragraph (d).[4] SFFA downplays their

---

[4] *See generally* ECF No. 44, Exhibit C (Standing Member 1 Deposition), at 96:22-97:5 ("[Q:] Through this lawsuit, you're not to trying to censor [Defendant-Intervenor] Ms. Trujillo or other students from being able to freely describe their own talents and experiences as it relates to their race and ethnicity, correct? . . . [A:] No."), 103:17-23 ("[Q:] And to be clear, you're not asking a federal court to step in, in this case and start censoring applications of students like [Defendant-Intervenors] Ms. Trujillo and Ms. McBride from even discussing their race or ethnicity in their

testimony as "general opposition to government censorship of student applications," and claims that because its Standing Members share SFFA's professed **ends** of stopping UT-Austin from allegedly "discriminating on the basis of race," they implicitly must also agree to its requested **means**—"blinding admissions officers to the race of applicants." Opp. at 9 n.3. In other words, the Standing Members do not know what is good for them. Not so; and even making this argument begs the threshold associational-standing question of "whether [SFFA] is the appropriate party to be representing these individuals' interest in this litigation." *See Tex. Indigenous Council v. Simpkins*, No. 11-cv-315, 2014 WL 252024, at *4 (Jan. 22, 2014) (citing *Concerned Citizens Around Murphy v. Murphy Oil USA*, 686 F.Supp.2d 663, 669 (E.D .La. 2010)). As set forth in Defendant-Intervenors' opening brief, even if SFFA had tied Paragraph (d) to **any** allegations in the Amended Complaint, the testimony of the students on whom SFFA wholly relies for its standing further forecloses pursuit of a censorship remedy.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant-Intervenors respectfully request that the Court grant their motion and dismiss SFFA's claims in their entirety, or as appropriate, individual claims and claims for relief, for lack of standing under Federal Rule of Civil Procedure 12(b)(1).

---

applications, correct? . . . [A:] That's correct."); ECF No. 44, Exhibit D (Standing Member 2 Deposition), at 64:8-65:18 ("[Q:] If an applicant would like to describe an experience that somehow reveals his or her race in the essay portion, is it your position the applicant should be barred from doing so? . . . [A:] I would say no, they shouldn't be barred from that. . . . [Q:] . . . that portion of the admissions department should then be redacted by the admissions department before its review of the application? . . . [A:] . . . that fears a little ***too close to the French model of just absolutely blind for me***. I would say no, they shouldn't censor it post – postmortem. That would be worse than saying you shouldn't write about race at all for sure."), 65:19-66:8 (same answers when an applicant reveals his or her race in lists of awards, student organizations, or leadership positions), 66:9-18 ("[Q:] [J]ust so I kind of understand your position. So long as race is not a factor in UT admissions decisions, you don't have a problem with students being able to disclose their race in their applications? . . . [A:] . . . ***So long as it's not a factor in the decision***, I think that's fine, yeah.").

Dated this 26th day of April, 2021.

*/s/ Brian C. Pidcock*

Brian C. Pidcock
State Bar No. 24074895
**HUNTON ANDREWS KURTH LLP**
600 Travis St.
Houston, TX 77002
Tel. (713) 220-4200
brianpidcock@HuntonAK.com

David Hinojosa*
State Bar No. 24010689
Genevieve Bonadies Torres (*pro hac vice*)
**LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW**
1500 K Street, NW, Suite 900
Washington, DC 20005
Tel. (202) 662-8600
dhinojosa@lawyerscommittee.org
gbonadies@lawyerscommittee.org
*W.D. Texas Application Pending

Ryan P. Phair (*pro hac vice*)
Carter C. Simpson (*pro hac vice*)
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037
Tel. (202) 955-1500
rphair@huntonak.com
csimpson@huntonak.com

Alan R. Kabat (*pro hac vice*)
Bernabei & Kabat, PLLC
1400 - 16th Street, N.W., Suite 500
Washington, D.C. 20036-2223
Tel. (202) 745-1942 (ext. 242)
Kabat@BernabeiPLLC.com

*Attorneys for Defendant-Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on the below counsel of record via the Court's electronic case filing and service system on this 26th day of April, 2021.

William S. Consovoy
J. Michael Connolly
Cameron T. Norris
Steven C. Begakis
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
will@consovoymccarthy.com
mike@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com

*Attorneys for Plaintiff*

John J. McKetta, III
Matthew C. Powers
William Christian
Marianne W. Nitsch
GRAVES DOUGHERTY HEARON & MOODY PC
401 Congress Avenue, Suite 2700
Austin, Texas 78701
mmcketta@gdhm.com
mpowers@gdhm.com
wchristian@gdhm.com
mnitsch@gdhm.com

*Attorneys for Defendants*

*/s/ Brian C. Pidcock*
Brian C. Pidcock