# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> UNIVERSITY OF TEXAS AT AUSTIN, et al., <br><br> *Defendants*. | Case No. 1:20-cv-763-RP |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR EXTENSION OF DISCOVERY STAY

Nearly seven months have passed since SFFA filed its amended complaint. Yet SFFA has not received a single piece of discovery from UT. That is because—under UT's own proposed schedule—SFFA's discovery was stayed until July 1, 2021, so that UT and the Defendant-Intervenors could conduct their own discovery and file their own motions to dismiss. Now that this deadline has come and gone, UT seeks *another* stay of discovery. But granting this motion would prejudice SFFA. UT's use of race in the admissions process is constitutional only if it withstands the most rigorous scrutiny. SFFA must examine admissions data, application files, and more, take depositions of UT's fact and expert witnesses, and prepare its own expert witnesses for trial. This will take considerable time and the Court's discovery and trial deadlines are fast approaching. A further delay of discovery will make it impossible for SFFA to meet the Court's deadlines. UT—like Harvard and UNC—can and should respond to SFFA's discovery while the decision on the motions to dismiss is pending. UT's motion to further stay discovery should be denied.

**BACKGROUND**

On November 16, 2020, SFFA filed its amended complaint. Dkt. 13. The following month, SFFA and UT filed proposed scheduling orders. UT asked the Court to bifurcate discovery, "with the first phase directed to the issues of [SFFA's] standing and [UT's] res judicata defense, only after which discovery on other issues may occur." Dkt. 17 at 1. UT also asked that SFFA be barred from taking discovery "on any issue other than the issues of jurisdiction or claim preclusion *before July 1, 2021*, or if earlier, on the date of any ruling on any dispositive motions." Dkt. 17 at 1 (emphasis added). SFFA opposed UT's request to bifurcate discovery for two principal reasons. First, UT's forthcoming motions would fail because "[t]hree separate federal courts have held that SFFA possesses standing in nearly identical circumstances" and because UT's "res judicata arguments are meritless." Dkt. 18 at 3. Second, a stay of SFFA's discovery would prejudice SFFA because "[t]hese cases can take years" and prohibiting SFFA from conducting discovery would "only delay this case and harm SFFA's ability to protect the right of its members to be free from racial discrimination in the admissions process." Dkt. 18 at 4. SFFA asked for 15 months of fact and expert discovery. *See* Dkt. 16-1 at 1-2.

On January 5, 2021, the Court entered a scheduling order. Dkt. 33. The Court agreed with UT on bifurcation and adopted UT's proposed schedule. It ordered UT to file its dispositive motions by February 25, 2021 and prohibited SFFA from conducting discovery "before July 1, 2021, or if earlier, on the date of any ruling on [UT's] dispositive motions." Dkt. 33 at 3-4. The Court believed that this provided "sufficient time for the length of discovery" and so "bifurcated discovery will not create unreasonable delay . . . [or] prejudice SFFA." Dkt. 33 at 3. The Court set trial for September 12, 2022.

Pursuant to the Scheduling Order, SFFA and its Standing Members were deposed and SFFA produced documents and responded to interrogatories. After receiving an unopposed 11-day extension due to the winter weather emergency, UT and Defendant-Intervenors filed their motions to dismiss on March 8, 2021. Briefing concluded on April 26, 2021.

On July 1, 2021, pursuant to this Court's Scheduling Order, SFFA served UT with interrogatories and requests for production. On July 6, 2021, UT asked SFFA to consent to a further stay of discovery pending the Court's ruling on the motions to dismiss. SFFA told UT that it opposed the motion. In the interest of accommodation and preserving party and judicial resources, however, SFFA said that it would agree to a stay of the entire case—rather than a one-sided stay of SFFA's offensive discovery—pending the Supreme Court's decision in *SFFA v. Harvard*. UT never wrote back to SFFA's email and instead filed its motion for a further stay of SFFA's discovery.

## ARGUMENT

The Court should deny UT's motion. Contrary to UT's representation, UT Mot. at 4, staying SFFA's discovery further would severely prejudice SFFA. This is not a simple case. Because UT has admitted that it considers an applicant's race in its admissions process, UT's actions are subject to strict scrutiny, and "[s]trict scrutiny is a searching examination." *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 310 (2013). The Court cannot endorse UT's use of race without examining, among many other things, UT's admissions data, application files, policies and procedures, race-neutral alternative studies (if any), and communications concerning race and the admissions process. As in *Harvard* and *UNC*, then, SFFA must receive discovery into all these matters and it must depose UT admissions officers and senior UT leaders. And the parties must engage experts to prepare expert reports and depose their respective expert witnesses.[1] *See generally SFFA v. Harvard*, 397 F. Supp. 3d 126, 133-83 (D. Mass. 2019) (describing extensive facts, witnesses, and documents concerning Harvard's

---

[1] In the parties' prior state-court litigation, UT *itself* designated five expert witnesses, whose topics were, respectively, (1) "the educational benefits of student body diversity," (2) "the positive link that diversity experiences and informal interactions among students of different races have with various positive educational outcomes," (3) "the role that holistic review plays in the admissions processes of highly selective institutions of higher education," (4) "the benefits of student body diversity in higher education and the role that race conscious admissions policies play in the improvement of student body diversity," and (5) the testimony of UT's director of admissions. Defs.' Designation of Expert Witnesses, *SFFA v. Univ. of Tex. at Austin*, No. D-1-GN-17-2930.

3

admissions process). This will take considerable time. Discovery in *Harvard* lasted 15 months, *see SFFA v. Harvard*, No. 14-cv-14176 (Dkt. 35), and discovery in *UNC* lasted more than two and a half years, *see SFFA v. UNC*, No. 14-cv-954 (M.D.N.C.) (Dkts. 34, 65, 72, 104, 129, 149). The scheduling order here, by contrast, allocates less than nine months for fact and expert discovery, Dkt. 33—a comparatively short discovery period that is shrinking as UT resists fulfilling its discovery obligations.

Far from being "overbroad," UT Mot. at 2, the discovery SFFA seeks overlaps significantly with what it sought (and was ultimately produced) in *Harvard* and *UNC*. In *Harvard*, the college produced "admissions data on more than 200,000 applicants over six admissions cycles, 480 application files selected by the parties, and tens of thousands of pages of documents." Brief of Harvard at 21, *SFFA v. Harvard*, No. 19-2005 (1st Cir.). SFFA also "took depositions of 19 fact witnesses currently or formerly employed by Harvard, four third parties, and Harvard's two experts." *Id.* In *UNC*, the university produced electronic data on more than 200,000 applicants over a six-year period, the complete application files for 2,500 applicants, and more than 370,000 pages of emails and documents governing UNC's admissions process. *SFFA v. UNC*, No. 14-cv-954 (M.D.N.C.) (Dkts. 92, 225). SFFA also took 19 depositions of UNC employees and five depositions of UNC's and the Intervenors' expert witnesses. *Id.* The same discovery will be needed here. *Accord* Order on Motions to Compel, *SFFA v. UNC*, No. 14-cv-954 (Dkt. 101) ("Civil rights cases particularly entitle Plaintiffs to broad discovery so that suits may be resolved by truth."); *Floyd v. City of New York*, 739 F. Supp. 2d 376, 381-82 & n.21 (S.D.N.Y. 2010) ("'[T]he great weight of the policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery.'").

UT speculates that SFFA's offer to stay this case pending *Harvard* was made for the "[im]proper purpose" of "avoid[ing] any risk of an adverse ruling on [UT's] motions while [SFFA's] cert petition against Harvard remains pending, given that its standing is at issue in both cases." Mot. at 4. That suggestion is absurd. SFFA is confident that the Court will deny UT's and Defendant-

4

Intervenors' motions, just like the multiple federal courts that have concluded that SFFA has associational standing in similar actions. *SFFA v. Harvard*, 980 F.3d 157, 182-84 (1st Cir. 2020); *SFFA v. Harvard*, 261 F. Supp. 3d 99, 103-11 (D. Mass. 2017); *SFFA v. Univ. of N.C.*, No. 14-cv-954, 2018 WL 4688388, at *3-6 (M.D.N.C. Sept. 29, 2018); *see* SFFA Opp. at 13-31 (Dkt. 49). Nor do the "circuit court precedents" here, UT Mot. at 5, warrant a different result. No precedent supports UT's theory of standing. *See* SFFA Opp. 13-31 (Dkt. 49). And UT's res judicata motion likewise is meritless. *See id.* at 31-38. In any event, SFFA's standing isn't even a serious issue in *Harvard*. At the Supreme Court, Harvard devoted less than two pages to the subject at the end of its opposition to certiorari. *See* Brief in Opposition at 36-38, *SFFA v. Harvard*, No. 20-1199 (S. Ct.). Given that three federal courts have already held that "SFFA has standing to bring this suit," *Harvard*, 980 F.3d at 182-84, nothing in SFFA's case against UT puts SFFA's case against Harvard at "risk." Mot. at 4.[2]

SFFA's stay proposal to UT was instead an offer of compromise and an attempt to preserve party and judicial resources. SFFA recently made a similar accommodation in its litigation with Yale. *See* SFFA Response to Yale Mot. to Stay at 3, No. 21-cv-241 (D. Conn.) (Dkt. 27); *see also SFFA v. Harvard*, No. 14-cv-14176 (Dkt. 110) (staying proceedings pending the Supreme Court's decision in *Fisher II*); *SFFA v. UNC*, No. 14-cv-954 (Dkt. 65) (same). Although SFFA does not object to a similar stay here, UT (apparently) has no interest in a compromise that is fair to *both* sides.

UT may want a one-sided stay, but it would be patently unfair to SFFA and its members to maintain the current schedule while prohibiting SFFA from conducting any discovery into the merits of its claims (especially after UT was already afforded a one-sided opportunity for discovery to support

---

[2] On June 14, 2021, the Supreme Court issued an order in the *Harvard* case, inviting the Solicitor General to file a brief expressing the views of the United States. According to one study, cases in which the Court requests the views of the Solicitor General are "47 times more likely to be granted" than other similar cases. David C. Thompson & Melanie F. Wachtell, *An Empirical Analysis of Supreme Court Certiorari Petition Procedures: The Call for Response and the Call for the Views of the Solicitor General*, 16 Geo. Mason L. Rev. 237, 245 (2009).

its motion to dismiss). SFFA has lots of work to do and a limited amount of time to do it. It is imperative that UT begins responding to SFFA's discovery so that this important civil-rights case can be decided without delay. This case should move forward promptly.

## CONCLUSION

For the foregoing reasons, UT's motion should be denied.

                                                  Respectfully submitted,

                                                  */s/ J. Michael Connolly*

William S. Consovoy (*pro hac vice*)
Thomas R. McCarthy (*pro hac vice*)
J. Michael Connolly
Cameron T. Norris
Steven C. Begakis (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
will@consovoymccarthy.com
tom@consovoymccarthy.com
mike@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com

Dated: July 12, 2021                              *Counsel for Plaintiff Students for Fair Admissions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record for Defendants and Defendant-Intervenors via the Court's electronic filing and service on July 12, 2021.

/s/ J. Michael Connolly

J. Michael Connolly
