IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CAUSE NO.: 1:20-cv-763-RP |
| UNIVERSITY OF TEXAS AT AUSTIN, et al., | § § § | |
| Defendants. | § § | |

## DEFENDANTS' MOTION TO DISMISS FOR MOOTNESS

To the Honorable Judge Robert Pitman:

Pursuant to Fed. R. Civ. P. 12(b)(1), UT Austin and the officials sued in their official capacity (collectively, "Defendants") move to dismiss this cause as moot, based on UT Austin's changes to its undergraduate admissions process following the United States Supreme Court's decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 143 S. Ct. 2141 (2023).

"The doctrine of mootness arises from Article III of the Constitution, which provides federal courts with jurisdiction over a matter only if there is a live 'case' or 'controversy.'" *Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). "'There must be a case or controversy through all stages of a case'—not just when a suit comes *into* existence but *throughout* its existence." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (quoting *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013)). Accordingly, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *DeOtte v. Nevada*, 20 F.4th 1055, 1064 (5th Cir. 2021) (quoting *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)).

Because Plaintiff does not seek damages and instead seeks prospective declaratory and injunctive relief pertaining to prior admissions practices that UT Austin no longer uses, this case is now moot and should be dismissed for want of jurisdiction. In the wake of the United States Supreme Court's decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 143 S. Ct. 2141 (2023) ("*SFFA*"), UT Austin has eliminated race and ethnicity from the factors considered in undergraduate admissions decisions, effective with the fall 2023 admissions cycle currently underway. In accordance with state law, UT Austin will continue to fill 75 percent of the university's enrollment capacity through "automatic admissions" based on class rank. Tex. Educ. Code § 51.803(a), (a-1). And UT Austin will continue to use "holistic review" to fill the remaining seats in the freshman class, *id.* § 51.805(b), and also to determine to which specific academic programs the automatic-admission candidates are admitted. But UT Austin will no longer consider an applicant's race or ethnicity in the holistic review process.

As described in the attached declaration of UT Austin's Vice Provost of Admissions, UT Austin has made the following specific changes to its admissions process, which are in effect now for the fall 2023 admissions cycle: (1) race and ethnicity has been removed as a subfactor that file reviewers consider in the holistic review process; (2) applicants' self-supplied demographic "checkbox" information about their race and ethnicity has been removed from the application files provided to reviewers during the holistic review process; (3) reviewers have been instructed that an applicant's race and ethnicity cannot be considered in the holistic review process, and that only materials in the applicant's file may be considered; (4) based on guidance provided by the Supreme Court in the *SFFA* majority opinion, reviewers have been trained on how to appropriately handle an applicant's self-disclosure of race or ethnicity in essays or other file materials, including that the reviewer may not consider the applicant's race or ethnicity as a positive or negative factor; (5) during holistic review, the admissions office will supervise file reviewers and conduct quality checks to ensure compliance with

these procedures; and (6) after close of the admissions cycle, UT Austin will conduct a review to identify and address any challenges experienced in the implementation of these changes. Exhibit 1, ¶¶ 12-27.

"A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). Under the "voluntary cessation" exception, a defendant asserting mootness on the basis of policy or procedure changes that it voluntary undertook ordinarily bears a "'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again." *Id.* (quoting *Concentrated Phosphate Export Ass'n*, 393 U.S. at 203).

But the voluntary-cessation doctrine does not apply here for at least two reasons.

First, official policy changes made in response to changes in the law are not considered to be "voluntary cessation" for mootness purposes. *Cf. Lowery v. Tex. A&M Univ.*, No 4:22-cv-03091, 2023 WL 6445788, at *6 (S.D. Tex. Sept. 29, 2023) (recognizing that "change compelled by force of law isn't voluntary"). The Fifth Circuit's decision in *Daves v. Dall. County, Tex.*, 64 F.4th 616, 635 (5th Cir. 2023) (en banc), is instructive. There, a plaintiff class of indigent pretrial detainees challenged Dallas County's use of an offense-based bail schedule. *Id.* at 621. While the lawsuit was pending, the Texas Legislature enacted "substantial changes" to the statutory procedures for assessing bail. *Id.* at 633. The Fifth Circuit held that the case was mooted by the changes. *Id.* at 634. While the court recognized that, "[a]s a general rule, voluntary cessation of illegal practices does not render a case moot," it held that, because Dallas County's bail practices were changing in response to the change in Texas law, "[v]oluntary cessation is not involved here." *Id.* Here, UT Austin has changed its admissions policies and procedures in direct response to the substantial changes in law announced by the Supreme Court in *SFFA*. As in *Daves*, the voluntary cessation doctrine does not apply.

Second, intervening changes in law aside, "governmental entities bear a 'lighter burden' . . . in proving that the challenged conduct will not recur once the suit is dismissed as moot.'" *Freedom From Religion Found. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) (quoting *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014) and *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009)) (some internal quotation marks omitted)). In cases (like this one) involving government defendants, a court presumes that a defendant's change in policy is made in good faith: "Government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties. Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing." *Sossamon*, 560 F.3d at 325. *See also, e.g.*, *U.S. Navy SEALS 1-26 v. Biden*, 72 F.4th 666, 675 (5th Cir. 2023) ("[W]e cannot assume, without evidence to the contrary, that the upper echelons of the Navy, including the Secretary of the Navy, issued the post-rescission policies with an eye toward resuming the challenged conduct as soon as the courts were done. . . . The voluntary cessation exception does not apply here."); *Gegenheimer v. Stevenson*, No. 1:16-CV-1270-RP, 2017 WL 2880867, at *2 (W.D. Tex. 2017) ("[T]he Court is not prepared to assume . . . that the State Bar will enforce the new statute in a constitutionally impermissible way. . . . [F]ear of possible future injury is insufficient to constitute a reasonable expectation that the same alleged injury will recur.").

UT Austin is entitled to this presumption of good faith. UT Austin's changes in policy is not "mere litigation posturing," but a good-faith response to the U.S. Supreme Court's recent decision in *SFFA*, in which the Supreme Court held that the consideration of race by the defendant universities violated the Equal Protection Clause and Title VI.

Indeed, UT Austin's past consideration of race and ethnicity as a factor in undergraduate admissions policies was held lawful under Supreme Court precedent that predated *SFFA*. *See Fisher v. Univ. of Tex. at Austin*, 136 S. Ct. 2198 (2016). The Supreme Court's *SFFA* decision announced a

4

change in the law. UT Austin has formally responded to that change by eliminating its consideration of race and ethnicity in undergraduate admissions decisions. UT Austin has at all times sought to comply with the law as articulated by the United States Supreme Court, and thus, this Court can be confident that "the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth*, 528 U.S. at 189.

In light of UT Austin's changes to its admissions policies, there is no longer a live case or controversy for this Court to adjudicate. Because UT Austin has taken numerous discrete steps to implement those changes—including removing race and ethnicity as a subfactor in its admissions process, screening applicants' self-supplied demographic "checkbox" information about race and ethnicity from file reviewers, and training file reviewers not to consider an applicant's race or ethnicity as a positive or negative factor when the applicant chooses to disclose such information in a personal essay or elsewhere in their application file—Plaintiff's complaint about "UT Austin's use of racial preferences in admissions" under its former admissions process is now moot.

Plaintiff's first amended complaint, filed in 2020, alleged that UT Austin's use of race and ethnicity as a factor in undergraduate admissions *at that time* violated Section 1983 and Title VI:

> UT Austin's use of racial preferences in admissions violates the Fourteenth Amendment and federal civil rights laws for multiple reasons.
>
> **First,** UT Austin's use of racial preferences is not narrowly tailored because UT Austin is not pursuing the critical-mass interest found permissible in *Grutter* by failing to use race merely as a "plus" factor and by failing to continually justify the need for using race at all.
>
> **Second,** UT Austin is not fully utilizing a number of race-neutral alternatives that can achieve student body diversity.
>
> **Third,** UT Austin is engaging in impermissible racial balancing.
>
> **Fourth,** whether or not UT Austin is acting permissibly under Supreme Court precedent, the Supreme Court should overrule any decision holding that the Fourteenth Amendment or federal civil rights law ever permit the use of racial preferences to achieve "diversity."

Docket No. 13 at 40. As discussed above, however, UT Austin recently changed its admissions practices in response to the *SFFA* decision, ensuring that race and ethnicity are no longer considered

5

as a factor in admissions decisions. Moreover, Plaintiff seeks prospective declaratory and injunctive relief, *id.* at 49; it does not seek monetary damages, which can prevent a case from becoming moot. *See, e.g*, *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 286 (5th Cir. 2012). And while Plaintiff's live pleading seeks attorney's fees, Docket No. 13 at 49, it is well established that a request for (or dispute over) attorney's fees will not prevent mootness. *See, e.g.*, *Staley v. Harris Cty., Tex.*, 485 F.3d 305, 314 (5th Cir. 2007) (en banc).

Nor can Plaintiff show that it satisfies the exception for cases that are "capable of repetition, yet evading review." *See, e.g.*, *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990). That exception applies only when (1) the challenged action is too short in its duration to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again. *Id.* Far from being too short for full litigation, UT Austin has been in litigation—across *multiple* cases—with SFFA and its leadership for over 15 years, one of which reached a final conclusion at the United States Supreme Court. *See Fisher v. Univ. of Tex. at Austin*, 136 S. Ct. 2198 (2016). As to the potential for repetition, UT Austin's announced formal policy change in response to the Supreme Court's *SFFA* decision is entitled to a presumption of good faith. *Sossamon*, 560 F.3d at 325. Because Plaintiff cannot satisfy either of the two requirements, the exception is inapplicable.

In sum, because UT Austin no longer considers race and ethnicity as a factor in undergraduate admissions, and because Plaintiff does not seek damages or any other relief sufficient to maintain a live controversy between the parties, the dispute is moot.

**Prayer**

Plaintiff filed this lawsuit seeking to end UT Austin's consideration of race in its undergraduate admissions process. Because UT Austin has already eliminated such consideration of race in response to the Supreme Court's recent decision in *SFFA*, there is no longer a live controversy between the parties. Accordingly, the Court should dismiss this cause for want of subject matter jurisdiction. Defendants pray for such other and further relief to which they may show themselves to be justly entitled.

        Respectfully Submitted,

        GRAVES DOUGHERTY, HEARON & MOODY, P.C.
        401 Congress Avenue, Suite 2700
        Austin, Texas 78701
        (512) 480-5725 (phone)
        (512) 539-9938 (fax)

        By:    */s/ Matthew C. Powers*
                Matthew C. Powers
                Texas State Bar No. 24046650
                mpowers@gdhm.com
                William Christian
                State Bar No. 00793505
                wchristian@gdhm.com
                Marianne W. Nitsch
                Texas State Bar No. 24098182
                mnitsch@gdhm.com

**Attorneys for Defendants**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record for Plaintiff via the Court's electronic filing and service system and also via email service as indicated below, on this the 27th day of October, 2023:

J. Michael Connolly
Cameron T. Norris
Steven C. Begakis
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
mike@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com
**Attorneys for Plaintiff**

David Hinojosa
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW, Suite 900
Washington, DC 20005
dhinojosa@lawyerscommittee.org
**Attorneys for Intervenors**

                                                */s/Matthew C. Powers*