**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| Students for Fair Admissions, Inc., <br> *Plaintiff*, <br><br> v. <br><br> University of Texas at Austin, et al., <br> *Defendants*, <br><br> and <br><br> The Black Student Alliance, the Texas Orange Jackets, the Texas National Association for the Advancement of Colored People, Adaylin Alvarez, Morgan Bennett, Liz Kufour, Brianna Mallorie McBride, Desiree Ortega-Santiago, Nima Rahman, Alexandra Trujillo, and Rosaleen Xiong, <br>       *Defendant-Intervenors*. | Case No. 1:20-cv-763-RP |

**DEFENDANT-INTERVENORS'
MOTION TO DISMISS FOR MOOTNESS**

**TABLE OF CONTENTS**

I. **INTRODUCTION** ............................................................................................................. 1

II. **BACKGROUND** ............................................................................................................... 2

    A. Procedural History ................................................................................................... 2

    B. The Supreme Court's Affirmative Action Decision ................................................. 3

    C. Changes to UT-Austin's Admissions Policy Following *Harvard* ............................ 4

III. **ARGUMENT** ..................................................................................................................... 5

    A. SFFA's Case is Moot Because the Court Cannot Grant Any Effectual Relief ........ 6

        1. The changes to the Old Policy fully resolve the conduct and claims in SFFA's complaint. ................................................................................ 6

        2. As a governmental entity, UT-Austin enjoys a presumption of good faith for the changes it voluntarily made that have mooted this case. ................. 7

    B. SFFA's Case is Moot Because SFFA Lacks Standing to Challenge the New Policy ......................................................................................................................... 9

IV. **CONCLUSION** ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013) ............................................................................................................. 7

*Arizonans for Off. Eng. v. Arizona*,
   520 U.S. 43 (1997) ............................................................................................................. 9

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016) ....................................................................................................... 5, 6

*Coker v. Select Energy Servs., LLC*,
   161 F. Supp. 3d 492 (S.D. Tex. 2015) ............................................................................... 6

*Ctr. for Individual Freedom v. Carmouche*,
   449 F.3d 655 (5th Cir. 2006) .............................................................................................. 5

*Deposit Guaranty Nat'l Bank v. Roper*,
   445 U.S. 326 (1980) ........................................................................................................... 6

*Diamond v. Pennsylvania State Educ. Ass'n*,
   399 F. Supp. 3d 361 (W.D. Pa. 2019) ................................................................................ 8

*Fisher v. Univ. of Texas at Austin*,
   631 F.3d 213 (5th Cir. 2011) ............................................................................................ 10

*Fisher v. University of Texas*,
   579 U.S. 365 (2016) ........................................................................................................... 2

*Freedom From Religion Found., Inc. v. Abbott*,
   955 F.3d 417 (5th Cir. 2020) .............................................................................................. 8

*Freedom From Religion Found., Inc. v. Abbott*,
   58 F.4th 824 (5th Cir. 2023) .............................................................................................. 7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ........................................................................................................... 9

*Gegenheimer v. Stevenson*,
   No. 1:16-CV-1270-RP, 2017 WL 2880867 (W.D. Tex. July 5, 2017) ............................... 7

*Genesis Healthcare Corp. v. Symczyk*,
   569 U.S. 66 (2013) .................................................................................................................. 6

*Gratz v. Bollinger*,
   539 U.S. 244 (2003) ................................................................................................................ 10

*Grutter v. Bollinger*,
   539 U.S. 306 (2003) ............................................................................................................ 3, 10

*Hotze v. Hudspeth*,
   16 F.4th 1121 (5th Cir. 2021) ................................................................................................. 10

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977) ................................................................................................................ 11

*Knox v. Serv. Employees*,
   567 U.S. 298 (2012) .................................................................................................................. 6

*La. Env't Action Network v. U.S. Environ. Protection Agency*,
   382 F.3d 575 (5th Cir. 2004) .................................................................................................... 6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................................ 11

*N. Y. State Rifle & Pistol Ass'n, Inc. v. City of N. Y., N. Y.*,
   140 S. Ct. 1525 (2020) .............................................................................................................. 7

*Princeton Univ. v. Schmid*,
   455 U.S. 100 (1982) .................................................................................................................. 7

*Sossamon v. Lone Star State of Tex.*,
   560 F.3d 316 (5th Cir. 2009) ................................................................................................ 7, 8

*Spell v. Edwards*,
   962 F.3d 175 (5th Cir. 2020) .................................................................................................... 7

*Students for Fair Admissions v. President and Fellows of Harvard College*,
   600 U.S. 181 (2023) ......................................................................................................... 1, 3, 4

*Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*,
   37 F.4th 1078 (5th Cir. 2022) ....................................................................................... 2, 10, 11

*U.S. Parole Com'n v. Geraghty*,
    445 U.S. 388 (1980) ........................................................................................................... 5

*Waters v. Ricketts*,
    798 F.3d 682 (8th Cir. 2015) .............................................................................................. 9

**Other Authorities**

Scott Jaschik, *The Demands of Students for Fair Admissions*,
    INSIDE HIGHER ED, July 13, 2023, *available at*
    https://www.insidehighered.com/news/admissions/2023/07/13/demands-students-fair-
    admissions..………………………………………………………………………………..5

## I.  INTRODUCTION

This case is moot. In the operative Amended Complaint ("Compl."), ECF No. 13, Plaintiff Students for Fair Admissions, Inc. ("SFFA") alleges that two of its white members were unlawfully denied admission under a University of Texas at Austin ("UT-Austin") undergraduate admissions program that considered race as a factor in admissions. However, UT-Austin eliminated race as a factor in admissions following the Supreme Court's decision in *Students for Fair Admissions v. President and Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"). Consequently, there is no longer a live case or controversy for the Court to address. And under binding Fifth Circuit precedent, UT-Austin is entitled to deference as a state actor. SFFA nevertheless seeks to use this litigation to monitor and control how UT-Austin administers its race-neutral admissions policy—a policy under which no member of SFFA is alleged to have applied and been denied admission.

As Defendant-Intervenors[1] discuss below, this case is moot because the relief that SFFA seeks, *i.e.*, an admissions program that does not consider race as a factor in admission decisions, has already been implemented. In addition, the case merits dismissal because SFFA cannot show that any of its associational members have standing to challenge the new admissions policy. Because SFFA's claims and requests for relief are now moot and none of its members have standing to sue, Defendant-Intervenors respectfully request that this Court dismiss SFFA's lawsuit.

---

[1] Defendant-Intervenors in this case are eight University of Texas students and alumni of color, Adaylin Alvarez, Morgan Bennett, Liz Kufour, Brianna Mallorie McBride, Desiree Ortega-Santiago, Nima Rahman, Alexandra Trujillo, and Rosaleen Xiong, and three organizations, the Texas National Association for the Advancement of Colored People, the Black Student Alliance, and the Texas Orange Jackets.

## II.    BACKGROUND

### A. Procedural History

In July 2020, SFFA filed its complaint alleging that UT-Austin's undergraduate race-conscious admissions policy in effect at the time (the "Old Policy") violated the rights of its members under the Equal Protection Clause of the Fourteenth Amendment and Title VI of the Civil Rights Act of 1964. Compl. at 2. The Old Policy considered race "as a factor of a factor of a factor," *Fisher v. University of Texas*, 579 U.S. 365, 375 (2016) (internal quotation omitted), for applicants who were not admitted under the state's Top Ten Percent law. *See* Compl. ¶¶ 42–44.[2] SFFA alleged that under this admissions program, UT-Austin (1) failed to use race merely as a plus factor in admissions decisions and failed to continually reevaluate the basis for relying on race; (2) failed to use race-neutral alternatives that could achieve the student body diversity sought by UT-Austin; and (3) engaged in impermissible racial balancing. *Id.* ¶¶ 200–29. SFFA also brought a claim stating that the Supreme Court should prohibit "the use of race as a factor in admissions" entirely. *Id.* ¶¶ 231–44.

On July 26, 2021, the Court dismissed with prejudice SFFA's claims as barred by *res judicata*. *See generally* ECF No. 56. SFFA appealed, and on June 20, 2022, the U.S. Court of Appeals for the Fifth Circuit reversed and remanded the case. *See Students for Fair Admissions, Inc. v. Univ. of Texas at Austin*, 37 F.4th 1078, 1087–90 (5th Cir. 2022) ("*UT-Austin*"). On remand, the parties stipulated that the case be stayed pending a Supreme Court decision in two cases also brought by SFFA concerning other universities' race-conscious admissions programs: *Students for*

---

[2] Since 2009, the Texas Legislature has allowed UT-Austin to cap the number of students it admitted through the Top Ten Percent Plan to 75% of the entering class. Compl. ¶ 93. As a result, in practice this means that students need to rank higher than 10% to be admitted. *Id.* For example, in 2020, the top 6% of Texas high school students were admitted automatically under the Top Ten Percent Plan. *Id.* ¶ 94. Remaining applicants compete for the slots allowed for by the other 25% of admissions.

*Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 20-1199, and *Students for Fair Admissions, Inc. v. University of North Carolina at Chapel Hill et al.*, No. 21-707.

### B. The Supreme Court's Affirmative Action Decision

The Supreme Court decided both the Harvard and UNC cases in a joint decision issued on June 29, 2023. In *Harvard*, the Supreme Court held that Harvard's and UNC's race-conscious admissions programs violated the Equal Protection Clause and Title VI. 600 U.S. at 213. In so ruling, the Supreme Court *did not* hold that all race-conscious admissions programs in higher education are unconstitutional. Rather, the Court reaffirmed the strict scrutiny analysis previously articulated in *Grutter v. Bollinger*, 539 U.S. 306 (2003), under which a university may consider race in admissions if it has a compelling interest to do so and its consideration of race is narrowly tailored to achieve that interest. *See Harvard*, 600 U.S. at 206–07. The Court clarified and tightened that framework, however, indicating that a race-conscious admissions program is narrowly tailored if four criteria are met: (1) there exists a meaningful connection between the means the university employs and the goals they pursue; (2) the program does not use race as a negative; (3) the program's use of race does not reinforce racial stereotypes; and (4) the program has a logical end point. *See id.* at 213–26. Ultimately, the Court concluded that Harvard's and UNC's respective programs could not survive strict scrutiny.

*Harvard* is also notable for what it does not foreclose.[3] The decision explicitly does not impact universities' ability to consider racial experiences as part of their admissions programs, such as "an applicant's discussion of how race affected his or her life, be it through discrimination,

---

[3] Though not relevant here, the decision also stated that its holding did not apply to military institutions because of "the potentially distinct interest that military academies may present." *Harvard*, 600 U.S. at 213 n.4. The decision also affirms that "remediating specific, identified instances of past discrimination that violated the Constitution or a statute" is a compelling interest that can "permit resort to race-based government action." *Id.* at 207.

- 3 -

inspiration, or otherwise." *Id.* at 230. Universities also can continue to assess an applicant's mention of race in essay questions and other parts of an application so long as the applicant is "treated based on his or her experiences as an individual—not on the basis of race." *See id.* at 231. And the decision does not foreclose universities from continuing to pursue and support diversity through other means, such as adopting race-neutral admissions programs that consider factors like high school class rank, socioeconomic status and wealth, overcoming adversity, and first-generation college student status. *See, e.g.*, *id.* at 284 (Thomas, J., concurring); *id.* at 317 (Kavanaugh, J., concurring).

### C. Changes to UT-Austin's Admissions Policy Following *Harvard*

Following the *Harvard* decision, this Court lifted the stay. Consequently, the parties have engaged in extensive communications concerning UT-Austin's modifications to its admissions procedures in response to the Supreme Court's decision. At a hearing on July 27, 2023, UT-Austin confirmed to this Court and all parties that it has amended its admission policy (the "New Policy") to no longer consider race as a factor in admissions in response to the decision. At best, this is all *Harvard* requires. In addition to this change, UT-Austin decided to ensure that application reviewers will not be able to access race and ethnicity data while an admissions decision is pending (known colloquially as "checkbox" data), which is not required by *Harvard*.[4] Finally, UT-Austin provided guidance and training to its admissions file reviewers before applicant reviews began in September. In an attempt to resolve this matter, UT-Austin responded to several follow-up questions from SFFA and provided a written copy of its updated guidance for file reviewers. UT-

---

[4] As made clear in *Harvard*, applicants are welcome to self-disclose their race as part of their applications. *See* 600 U.S. at 230–31. UT-Austin has provided and will continue to provide guidance to its application reviewers to ensure that they do not use race as a factor in making their admissions decisions if race is self-disclosed, while also ensuring that an applicant is not punished or censored for disclosing this information.

Austin's application season has started and application reviewers are actively reviewing applications under the New Policy. No applicant is being considered under the Old Policy in the 2023-24 admissions cycle.

### III. ARGUMENT

Unsatisfied by the admissions changes made by UT-Austin, SFFA is threatening to use the instant litigation as a vehicle to continually monitor and challenge the sufficiency of any policy UT-Austin implements in the wake of *Harvard*.[5] However, SFFA's litigation does not grant it this supervisory capability. SFFA claimed that two of its members were harmed by UT-Austin's prior admissions policy that used race as a factor in admissions. UT-Austin has eliminated the consideration of race. SFFA's case is now moot and should be dismissed.

Article III of the U.S. Constitution requires that a court have before it an actual case or controversy at all stages of the judicial proceedings. *U.S. Parole Com'n v. Geraghty*, 445 U.S. 388, 395 (1980). A case is considered moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* at 396 (internal quotation omitted); *see also Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006) ("Generally, any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot."). Events that can render a case moot mid-stream include when it becomes "impossible for a court to grant any effectual relief" or when those changes "deprive[] the plaintiff of 'a personal stake in the outcome of the lawsuit.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153,

---

[5] SFFA's efforts are not solely focused on UT-Austin. Immediately following the *Harvard* decision, SFFA purportedly sent letters to 150 universities providing an overly broad and inaccurate interpretation of the Supreme Court's holding and urging schools to eliminate the use and awareness of race in admissions altogether—along with access to any racial data. *See* Scott Jaschik, *The Demands of Students for Fair Admissions*, Inside Higher Ed, July 13, 2023, *available at* https://www.insidehighered.com/news/admissions/2023/07/13/demands-students-fair-admissions.

160–61 (2016) (quoting *Knox v. Serv. Employees*, 567 U.S. 298, 307 (2012); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)).

It is well settled in the Fifth Circuit and elsewhere that "mootness is a threshold jurisdictional inquiry." *La. Env't Action Network v. U.S. Environ. Protection Agency*, 382 F.3d 575, 580 (5th Cir. 2004); *see also Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 335 (1980) ("The definitive mootness of a case or controversy . . . ousts the jurisdiction of the federal courts and requires dismissal of the case."). For that reason, courts in the Fifth Circuit regularly find that jurisdictional questions like mootness—even when they arise in the middle of a case—should be addressed immediately and before further expenditure of time and resources on the merits. *See, e.g.*, *Coker v. Select Energy Servs., LLC*, 161 F. Supp. 3d 492, 495 (S.D. Tex. 2015) ("The interest of judicial economy favors a stay because discovery and substantial expenses, which may be needlessly incurred if the Fifth Circuit and/or Supreme Court rules that a rejected offer of complete relief moots Coker's claims.").

### A. SFFA's Case is Moot Because the Court Cannot Grant Any Effectual Relief

This case is moot because the changes made by UT-Austin to its admissions policy, which are entitled to deference given its public-serving status, provide full relief as to the conduct alleged and claims raised by SFFA.

#### 1. The changes to the Old Policy fully resolve the conduct and claims in SFFA's complaint.

A case is mooted when a court can no longer give plaintiffs the relief they seek and are entitled to under the law. *See Campbell-Ewald Co.*, 577 U.S. at 160–61 (stating that a case becomes moot when "it is impossible for a court to grant any effectual relief whatever to the prevailing party"). "The mootness issue often arises where, as here, a statute or regulation is amended or repealed after plaintiffs bring a lawsuit challenging the legality of that statute or regulation. In that

case, mootness is the default." *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023). This is the case here: UT Austin has changed its admissions policies so that it no longer considers an applicant's race as a factor in its admissions process. This is the issue around which SFFA's entire case revolves. *See* Compl. ¶¶ 113–46 (supporting and contrasting race neutral alternatives that achieve diversity "Without Using Race as a Factor in Admissions Decisions"); *id.* ¶ 198 (alleging injury from "UT-Austin's use of racial preferences in admissions"). This moots the case. *See N. Y. State Rifle & Pistol Ass'n, Inc. v. City of N. Y., N. Y.*, 140 S. Ct. 1525, 1526 (2020) (holding that case is moot when state made a change to the law that was the "precise relief that petitioners requested"); *see also Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (holding that a case was moot when the university amended the relevant regulations so that the "the regulation at issue is no longer in force"); *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) ("[A] case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed."); *Gegenheimer v. Stevenson*, No. 1:16-CV-1270-RP, 2017 WL 2880867, at *1 (W.D. Tex. July 5, 2017) ("Suits regarding the constitutionality of statutes become moot once the statute is repealed.") (Pitman, J.).

Because UT Austin has enacted the change to their admissions policy that was central to SFFA's claims, this case is moot.

### 2. As a governmental entity, UT-Austin enjoys a presumption of good faith for the changes it voluntarily made that have mooted this case.

Though a defendant asserting mootness bears the burden of showing that its "allegedly wrongful behavior could not reasonably be expected to recur," *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013), "government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties," *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009),

*aff'd sub nom. Sossamon v. Tex.*, 563 U.S. 277 (2011). "Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing." *Id.*[6]

Here, UT-Austin, a public university, has made official changes to its admissions policy in response to the *Harvard* decision. Under the facts of this case, as a government actor, it is entitled to a presumption that these changes were made in good faith and will not be reversed when this case is dismissed. "That is so because we presume that state actors, as public representatives, act in good faith." *Abbott*, 58 F.4th at 833. Therefore, "without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing." *Id.* (internal alterations omitted). Nor is there evidence of posturing here. In fact, UT-Austin has been remarkably cooperative and transparent with SFFA over the past few months, including by providing to SFFA copies of its updated guidance to application file reviewers. *Cf. Freedom From Religion Found., Inc. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020) (holding a case is not moot when the defendants "have only presented arguments through counsel that their behavior will change"). Moreover, the presumption of good faith is particularly valid here, given that the New Policy is currently being used for the 2023-24 admissions cycle, meaning that it would be extraordinary difficult for UT-Austin to change its admissions policy mid-stream if this action was

---

[6] Moreover, courts in other circuits have suggested that changes made in response to a Supreme Court decision are, in fact, not truly voluntarily. *See Diamond v. Penn. State Educ. Ass'n*, 399 F. Supp. 3d 361, 390 (W.D. Pa. 2019), *aff'd*, 972 F.3d 262 (3d Cir. 2020) ("By complying with this change in the law, Defendants were not acting 'voluntarily' for purposes of the voluntary-cessation exception to mootness—they were compelled to change their conduct based on a decision of our nation's highest court.").

dismissed on mootness grounds.[7] Therefore, the changes made by UT-Austin are sufficient to moot this case, and SFFA's action should be dismissed.

### B. SFFA's Case is Moot Because SFFA Lacks Standing to Challenge the New Policy

Notably, SFFA has no allegations in its complaint regarding a race-neutral admissions policy, and it has not moved to amend its complaint to include allegations about UT-Austin's New Policy. Thus, SFFA has failed to demonstrate continuing standing and its case must be dismissed.

A case is mooted when the circumstances that created a plaintiff's injury change so that the plaintiff no longer has an injury that the court can redress. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 192 (2000) (stating that a court does not "retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest"); *see also Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (internal quotations omitted). Such is the case here.

This Court previously determined that SFFA had standing because its members were "denied admission to UT Austin's 2018 and 2019 entering classes," were "denied the opportunity to compete for admission to UT Austin on equal footing with other applicants on the basis of race or ethnicity because of UT Austin's discriminatory admissions policies," and were "ready and able

---

[7] At the September 12, 2023 hearing, SFFA suggested that its action was not moot by relying on *Waters v. Ricketts*, 798 F.3d 682 (8th Cir. 2015), which found that the Supreme Court's decision in *Obergefell* did not moot an action challenging Nebraska's constitutional provision on same sex marriage. In *Waters*, the Eighth Circuit noted that though Nebraska provided "assurances of compliance with *Obergefell*" it had "not repealed or amended the challenged constitutional provision." 798 F.3d at 686. Here, UT-Austin has already made and implemented definitive changes to its admissions policy in response to the *Harvard* decision. Accordingly, *Waters* is inapposite.

to apply to transfer to UT Austin" when it stops discriminating against applicants on the basis of race and ethnicity. ECF No. 56 at 3, 13. That holding was affirmed by the Fifth Circuit. *Students for Fair Admissions, Inc.*, 37 F.4th at 1086.

Starting with the 2023-24 admissions cycle, UT-Austin is using a new admissions process. SFFA's two associational standing members, who were denied admission in 2018 and 2019 under the Old Policy, have not been denied admission, much less denied the opportunity to compete for admission to UT-Austin on equal footing under the New Policy.[8] *See Hotze v. Hudspeth*, 16 F.4th 1121, 1125 (5th Cir. 2021) (holding a case moot because plaintiff's claims about the validity of drive-thru voting in the 2020 election, in which they were congressional candidates, did not apply to future elections in which plaintiffs did not assert they were intending to run).

Moreover, the allegations supporting SFFA members' standing to challenge the Old Policy are those that bear on standing in cases involving *race-conscious* admissions. *See UT-Austin*, 37 F.4th at 1086; *Grutter*, 539 U.S. at 317 (noting that plaintiff had standing to challenge admissions policy that used race as a "predominant factor"); *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003) (finding that standing existed for plaintiff challenging admissions program that used racial quotas). But because UT-Austin no longer considers race as a factor in admissions, it is not enough that SFFA asserts that its members are white, applied, were denied, and seek to reapply to UT-Austin.

---

[8] Moreover, it is Defendant-Intervenors' understanding that these two standing members have now graduated from other colleges and therefore would almost certainly not be seeking admission via transfer or otherwise to UT-Austin's undergraduate program. Without an intent to reapply, SFFA would only have standing to seek money damages for the standing member's rejection, relief that SFFA is not seeking. *See Fisher v. Univ. of Texas at Austin*, 631 F.3d 213, 217 (5th Cir. 2011), *vacated and remanded on other grounds*, 570 U.S. 297 (2013) (finding that since "both [plaintiff] students deny intention to reapply to UT[, i]t follows that [they] lack standing to seek injunctive or forward-looking declaratory relief. This principle is rote. To obtain forward-looking equitable remedies, a plaintiff must show she faces imminent threat of future injury. Without that threat, these two applicants only have standing to challenge their rejection and to seek money damages for their injury.").

Rather, under Article III, SFFA must allege that its members, on whom its claim of associational standing rests,[9] (1) have suffered an injury in fact; (2) that this injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal alterations and quotations omitted). SFFA has not alleged such facts pertaining to UT-Austin's New Policy, much less an injury related to the lack of an "opportunity to compete for admission on an equal basis" stemming from the New Policy. *UT-Austin*, 37 F.4th at 1086 (quoting *Gratz*, 539 U.S. at 262).

Accordingly, because SFFA lacks the "continuing interest" required to pursue its case and has not and cannot allege that its members have been harmed by UT-Austin's revised admissions policy, this case should be dismissed altogether.

## IV.     CONCLUSION

For the foregoing reasons, Defendant-Intervenors respectfully request that the Court dismiss SFFA's complaint in its entirety as moot.

Dated: October 27, 2023                                  Respectfully submitted,

                                                         */s/ David Hinojosa*
                                                         Brian C. Pidcock
                                                         State Bar No. 24074895
                                                         HUNTON ANDREWS KURTH LLP
                                                         600 Travis St.
                                                         Houston, TX 77002
                                                         Tel. (713) 220-4200
                                                         brianpidcock@HuntonAK.com

---

[9] A plaintiff seeking to establish associational standing to bring suit on behalf of its members is required to demonstrate, among other things, that "its members would otherwise have standing to sue in their own right." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

- 12 -

David Hinojosa
Maya Brodziak*
State Bar No. 24010689
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street, NW, Suite 900
Washington, DC 20005
Tel. (202) 662-8600
Fax. (202) 783-0857
dhinojosa@lawyerscommittee.org

Alan R. Kabat (pro hac vice)
Bernabei & Kabat, PLLC
1400 - 16th Street, N.W., Suite 500
Washington, D.C. 20036-2223
Tel. (202) 745-1942 (ext. 242)
Kabat@BernabeiPLLC.com

*Attorneys for Intervenor-Defendants*

*admitted pro hac vice*

## CERTIFICATE OF SERVICE

On this the 27th day of October, 2023, I e-filed this document using the Court's CM/ECF system, which emailed a copy to all counsel on record requiring service.

                                                                       /s/ David Hinojosa