# Exhibit A

CAUSE NO. D-1-GN-17-002930

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS INC. | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | |
| UNIVERSITY OF TEXAS AT AUSTIN; WILLIAM MCRAVEN, in his official capacity as Chancellor of the University of Texas System; GREGORY L. FENVES, in his official capacity as the President of the University of Texas at Austin; and ERNEST ALISEDA, DAVID J. BECK, KEVIN P. ELTIFE, PAUL L. FOSTER, R. STEVEN HICKS, JEFFREY D. HILDEBRAND, JANIECE LONGORIA, SARA MARTINEZ TUCKER, and JAMES CONRAD WEAVER, in their official capacities as Members of the Board of Regents of the University of Texas System, | § § § § § § § § § § § § § § § § § | TRAVIS COUNTY, TEXAS |
| Defendants. | § | 53RD JUDICIAL DISTRICT |

## DEFENDANTS' OBJECTIONS AND ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

TO: Plaintiff, Students for Fair Admissions, Inc., by and through its counsel of record, Paul M. Terrill, III, and G. Alan Waldrop, TERRILL & WALDROP, 810 West 10th Street, Austin, Texas 78701, and William S. Consovoy, Thomas R. McCarthy, and J. Michael Connolly, CONSOVOY MCCARTHY PARK PLLC, 3033 Wilson Blvd., Suite 700, Arlington VA 22201.

NOW COME Defendants, University of Texas at Austin ("UT") and William McRaven, Gregory L. Fenves, Ernest Aliseda, David J. Beck, Kevin P. Eltife, Paul L. Foster, R. Steven Hicks, Jeffrey D. Hildebrand, Janiece Longoria, Sara Martinez Tucker, and James Conrad Weaver—each named in their official capacities, and serve these Objections and Responses to Plaintiff's First Set of Interrogatories.

Respectfully Submitted,

GRAVES DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2200
Austin, Texas 78701
(512) 480-5616
(512) 480-5816 (facsimile)

By: /s/ Matthew C. Powers
    John J. McKetta, III
    Texas State Bar No. 13711500
    mmcketta@gdhm.com
    Matthew C. Powers
    Texas State Bar No. 24046650
    mpowers@gdhm.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record for Plaintiff via electronic service as indicated below, on this the 22nd day of January, 2018, as follows:

| | |
|---|---|
| Paul M. Terrill, III | William S. Consovoy |
| G. Alan Waldrop | Thomas R. McCarthy |
| TERRILL & WALDROP | J. Michael Connolly |
| 810 West 10th Street | Patrick Strawbridge |
| Austin, TX 78701 | CONSOVOY MCCARTHY PARK PLLC |
| 512.474.9100 | 3033 Wilson Blvd., Suite 700 |
| 512.474.9888 – Fax | Arlington, VA 22201 |
| awaldrop@terrillwaldrop.com | 703.243.9423 |
| pterrill@terrillwaldrop.com | will@consovoymccarthy.com |
| | tom@consovoymccarthy.com |
| | mike@consovoymccarthy.com |
| | patrick@consovoymccarthy.com |

 /s/ Matthew C. Powers
    Matthew C. Powers

## **GENERAL OBJECTIONS**

1. Defendants object to Plaintiff's Interrogatories to the extent they are vague, overbroad, unduly burdensome, or seek information that is not reasonably calculated to lead to the discovery of admissible evidence relevant to the claims and defenses in this lawsuit.

2. Defendants object to Plaintiff's Interrogatories to the extent they purport to request information protected by the attorney–client privilege, prepared in anticipation of litigation or trial, or protected by the work product doctrine.

3. Defendants object to Plaintiff's Interrogatories to the extent they attempt to impose burdens greater than those imposed by the Texas Rules of Civil Procedure. Defendants will comply with the Texas Rules of Civil Procedure.

4. Defendants object to the production of any documents or information consisting of information within the coverage of the Family Educational Rights and Privacy Act ("FERPA") and related regulations, and they reserve the right to make redactions as necessary to preserve the confidentiality of any such information.

5. Defendants object to all discovery requests to the extent that they request materials or information equally or more available to Plaintiff.

6. Because discovery and other investigation in this lawsuit is ongoing, Defendants reserve the right to supplement or amend their responses and/or objections in light of further investigation, research, or analysis, to the extent required or permitted by law, and to introduce at trial any and all related evidence.

7. Each of Defendants' responses below is made subject to and incorporates each of these General Objections as if fully set out therein and is made without waiver of any of these General Objections.

**OBJECTIONS AND ANSWERS TO INTERROGATORIES**

1.      Describe how UT uses a student's race at any point in the university's admissions process.

RESPONSE:

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 1 as overbroad and that as worded it includes information which is not reasonably calculated to lead to the discovery of admissible evidence, contrary to TEX. R. CIV. P. 192.3(a).  For example, Plaintiff brings this suit on behalf of members who were denied undergraduate admission to UT's 2017 entering class because of allegedly unlawful current admissions policies.  As written, however, this request calls for information about admission to any program at UT, including graduate programs.  *See In re Allstate County Mut. Ins. Co.*, 227 S.W.3d 667, 669 (Tex. 2007) (orig. proceeding) (emphasizing that discovery "from an unreasonably long time period" is "impermissibly overbroad"); *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding) ("A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information.").  Defendants also object that Plaintiff's interrogatory is vague in that Plaintiff fails to clarify the intended scope for the phrase "admissions process." Defendants construe this interrogatory as limited to the work of the UT Office of Admissions for the admission of incoming undergraduate students for the school year beginning 2017. Defendants expressly do not address in their response any aspect of the work of the Graduate and International Admissions Center or any individual college or academic department, and they treat any such inquiry as outside the scope of matters relevant to this lawsuit as framed by the pleadings.

Subject to and without waiving the foregoing objections, Defendants respond as follows:

When completing their application for admission using the common ApplyTexas form (discussed at p. 9 below), students were provided the following prompt for information concerning "Ethnicity and Race."

> 14. Ethnicity and Race:
> Are you Hispanic or Latino? (a person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin, regardless of race)
> 
>     ○ Yes   ● No
> 
> Please select the racial category or categories with which you most closely identify. Check as many as apply.
> 
> | 20 | **American Indian or Alaska Native** |
> | | (A person having origins in any of the original peoples of North and South America (including Central America), and who maintains tribal affiliation or community attachment.) |
> | 30 | **Asian** |
> | | (A person having origins in any of the original peoples of the Far East, Southeast Asia or the Indian subcontinent including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine islands, Thailand, and Vietnam.) |
> | 40 | **Black or African American** |
> | | (A person having origins in any of the black racial groups of Africa.) |
> | 50 | **Native Hawaiian or Other Pacific Islander** |
> | | (A person having origins in any of the original peoples of Hawaii, Guam, Samoa, or other Pacific islands.) |
> | 60 | **White** |
> | | (A person having origins in any of the original peoples of Europe, the Middle East, or North Africa.) |

Case 1:20-cv-00763-RP   Document 87-2   Filed 11/27/23   Page 6 of 18

Students are also provided open-ended essay prompts, which allow them the opportunity to write about themselves and their life experiences. Some students mention their race or ethnicity in their essays. Reviewers of applicant files always consider essay responses in connection with their review of a file. Reviewers perform a holistic review of student application files. Reviewers make a complete review of a student's file, which typically contains information about the student's race or ethnicity. Holistic review encompasses a large array of factors including, but not limited to, the student's high school transcript and:

- Class rank
- Strength of academic background
- SAT Reasoning Test or ACT scores
- Record of achievements, honors, and awards
- Special accomplishments, work, and service both in and out of school
- Essays
- Special circumstances that put the applicant's academic achievements into context, including his or her socioeconomic status, experience in a single parent home, family responsibilities, experience overcoming adversity, cultural background, race and ethnicity, the language spoken in the applicant's home, and other information in the applicant's file
- Recommendations (although not required)
- Competitiveness of the major to which the student applies

The UT Office of Admissions makes use of a rubric that serves to guide file readers in their review of student applications and the various kinds of information available to them as they assign PAI scores.

Aside from collecting information about race at the point of application, and making such information available to application reviewers for consideration during the holistic review process, race plays no role in the undergraduate application or admission process.


2.     Describe any change made to UT's use of race in the admissions process since January 1, 2012.

RESPONSE:

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 2 as overbroad and that as worded it includes information which is not reasonably calculated to lead to the discovery of admissible evidence, contrary to TEX. R. CIV. P. 192.3(a). For example, Plaintiff brings this suit on behalf of members who were denied undergraduate admission to UT's 2017 entering class because of allegedly unlawful current admissions policies. As written, however, this request calls for information about admission to any program at UT, including graduate programs. *See In re Allstate County Mut. Ins. Co.*, 227 S.W.3d 667, 669 (Tex. 2007) (orig. proceeding) (emphasizing that discovery "from an unreasonably long time period" is "impermissibly overbroad"); *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding) ("A central consideration in determining overbreadth is whether the request could

5

3154302.v1

have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information."). Defendants also object that Plaintiff's interrogatory is vague in that Plaintiff fails to clarify the intended scope for the phrase "admissions process." Defendants construe this interrogatory as limited to the work of the UT Office of Admissions for the admission of incoming undergraduate students for the school year beginning 2017. Defendants expressly do not address in their response any aspect of the work of the Graduate and International Admissions Center or any individual college or academic department, and they treat any such inquiry as outside the scope of matters relevant to this lawsuit as framed by the pleadings.

Subject to and without waiving the foregoing objections, Defendants respond as follows:

With the caveat that there are and have been particular circumstances during the period referenced in this interrogatory in which it has not performed a holistic review at all,[1] UT's Office of Admissions has made no changes to the limited use it makes of race in its admissions decisions during the period referenced.

3.      Identify the persons employed by UT who, as participants in the admissions process, use race in the admissions process.

RESPONSE:

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 3 as overbroad and that as worded it includes information which is not reasonably calculated to lead to the discovery of admissible evidence, contrary to TEX. R. CIV. P. 192.3(a). For example, Plaintiff brings this suit on behalf of members who were denied undergraduate admission to UT's 2017 entering class because of allegedly unlawful current admissions policies. As written, however, this request calls for information about admission to any program at UT, including graduate programs. *See In re Allstate County Mut. Ins. Co.*, 227 S.W.3d 667, 669 (Tex. 2007) (orig. proceeding) (emphasizing that discovery "from an unreasonably long time period" is "impermissibly overbroad"); *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding) ("A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information."). Defendants also object that Plaintiff's interrogatory is vague in that Plaintiff fails to clarify the intended scope for the phrase "admissions process." Defendants construe this interrogatory as limited to the work of the UT Office of Admissions for the admission of incoming undergraduate students for the school year beginning 2017. Defendants expressly do not address in their response any aspect of the work of the Graduate and International Admissions Center or any individual college or academic department, and

---

[1] For example, for certain categories of students (e.g., students seeking admission to the School of Architecture and the College of Fine Arts in 2017), the UT Office of Admissions made the decision not to perform a holistic review and generate a PAI score. In those instances, because the Office of Admissions did not perform a holistic review, it would have had no occasion to consider the race of an applicant other than to collect and report the information.

they treat any such inquiry as outside the scope of matters relevant to this lawsuit as framed by the pleadings.

Subject to and without waiving the foregoing objections, Defendants respond as follows:

The only time an applicant's race may be considered is during the holistic review described in response to Interrogatory No. 1 above.

For the 2017 entering undergraduate class, the following individuals served as file reviewers:

Miguel V Wasielewski
Robert A Watkins
Gary M Lavergne
Laura C Lavergne
Lydia C Vrska
Sarah Hearn Wehner
Sean W Bargmann
Clint P Schneider
Martin J Olivares
Mary L Grigsby
Alexandra Flora Billick
Joshua R Shandera
Kriston Burroughs
Maryssa Adams
Myra Y Fuentes
Trevor Partney
Alexandria Alley Mitchell
David Sanchez
James E Beeks III
Jane Vo
Talrah J Pantallion
Adriana C Garza-Romance
David E Garcia
Rodolfo R Moya
Julissa Cardenas
Monique Rochelle McGregor
Perri A Watts
Veronica C Pena
Adrianne D Schroeder
Angela A Villescaz
Avianne Robyn Washington
Carrie S Rogers
Cindy Bargmann
Dana S Harada
Eboni S Lunsford
Eric J Zavala

Hannah I Hendricks
Jacqueline Childress
Jerricia Hannah
Juanita Juarez
Katherine E Barbadoro
Kristi L Stillwell
Marisela S Maddox-Smookle
Melissa Diane Saenz
Melissa E Knight
Michaela Machicote
Natalie L Jones
Roman H Smith
Samantha R Bielawski
Sandra Gaston Martinez
Sarah Soeldner Bruchmille
Staci Rose-Hagler
Susan A Hemberger
Theresa Patino Grayson
Veronica Castillo
Veronica Pecero
Elizabeth R Castano
Keith A Baird
Lisa A Lockhart
Michael K Washington
Anna E Morris
David A Roberts
James H Tolleson
Jessica Serna
Melissa A Baxter
Patrick C Olson
Zandra A Cook
Allan Altamirano
Augustine Garza
Caroline M Enriquez
Ka'rin K Thornburg
Michael K Orr
Susan L Kearns
Suzanne H Deem

4.   With respect to the ethnicity and race categories on the UT application for admission, describe what it means for a person to "have origins" in any of the racial groups identified in the application for admission.

RESPONSE:

8

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 4 as overbroad and that as worded it includes information which is not reasonably calculated to lead to the discovery of admissible evidence, contrary to TEX. R. CIV. P. 192.3(a). For example, Plaintiff brings this suit on behalf of members who were denied undergraduate admission to UT's 2017 entering class because of allegedly unlawful current admissions policies. As written, however, this request calls for information about admission to any program at UT, including graduate programs. *See In re Allstate County Mut. Ins. Co.*, 227 S.W.3d 667, 669 (Tex. 2007) (orig. proceeding) (emphasizing that discovery "from an unreasonably long time period" is "impermissibly overbroad"); *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding) ("A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information."). Defendants also object that Plaintiff's interrogatory is vague in that Plaintiff fails to clarify the intended scope for the phrase "application for admission." Defendants construe this interrogatory as limited to the ApplyTexas application for the admission of incoming undergraduate students for the school year beginning 2017. Defendants expressly do not address in their response any aspect of the work of the Graduate and International Admissions Center or any individual college or academic department, and they treat any such inquiry as outside the scope of matters relevant to this lawsuit as framed by the pleadings.

Subject to and without waiving the foregoing objections, Defendants respond as follows:

UT does not have its own independent application for admission. Consistent with sections 51.762 and 51.763 of the Texas Education Code, students seeking general admission to UT's undergraduate program are directed to use a common admission application form, known as the "ApplyTexas" application. ApplyTexas was created through a collaborative effort between the Texas Higher Education Coordinating Board and the colleges and universities represented on the site. The goal of the project is to offer a centralized means for both Texas and non-Texas students to apply to the many outstanding postsecondary institutions in Texas.

Certain questions in the ApplyTexas application concern race and ethnicity and provide instructions that use the phrase, "having origins." The instructions regarding various categories in those questions is the same as the language adopted by the United States Census Bureau. *See* https://www.census.gov/topics/population/race/about.html.

Both the ApplyTexas application and the United States Census Bureau direct respondents to self-identify in their responses to the inquiries concerning race and ethnicity. UT does not have any independent, particularized definition of the phrase "having origins."


5.   If you contend that UT has a compelling interest in using race in the undergraduate admissions process, state the basis for the contention and identify with particularity all facts supporting your contention.

RESPONSE:

9

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 5 as overbroad and that as worded it includes information which is not reasonably calculated to lead to the discovery of admissible evidence, contrary to TEX. R. CIV. P. 192.3(a). For example, Plaintiff brings this suit on behalf of members who were denied undergraduate admission to UT's 2017 entering class because of allegedly unlawful current admissions policies. As written, however, this request calls for information about admission to any program at UT, including graduate programs. *See In re Allstate County Mut. Ins. Co.*, 227 S.W.3d 667, 669 (Tex. 2007) (orig. proceeding) (emphasizing that discovery "from an unreasonably long time period" is "impermissibly overbroad"); *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding) ("A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information."). Defendants also object that Plaintiff's interrogatory is vague in that Plaintiff fails to clarify the intended scope for the phrase "admissions process." Defendants construe this interrogatory as limited to the work of the UT Office of Admissions for the admission of incoming undergraduate students for the school year beginning 2017. Defendants expressly do not address in their response any aspect of the work of the Graduate and International Admissions Center or any individual college or academic department, and they treat any such inquiry as outside the scope of matters relevant to this lawsuit as framed by the pleadings. Finally, Defendants object to this interrogatory to the extent it calls for them to "marshal all of [their] available proof or the proof [they] intend[ ] to offer at trial." TEX. R. CIV. P. 197.1.

Subject to and without waiving the foregoing objections, Defendants respond as follows:

UT has a compelling interest in maintaining an admissions program that allows for the consideration of race and ethnicity—namely, the educational benefits that flow from student body diversity. That conclusion—reached by UT following a rigorous analysis in its 2004 Proposal to Consider Race and Ethnicity in Admissions—has been repeatedly endorsed and expressly approved by the United States Supreme Court. *See Fisher v. University of Texas at Austin*, 579 U.S. \_\_\_, \_\_\_ (2016) ("*Fisher II*") (slip op., at 11) (identifying "the educational benefits that flow from student body diversity" as "the compelling interest that justifies consideration of race in college admissions"), *Fisher v. University of Texas at Austin*, 570 U.S. \_\_\_\_, \_\_\_ (2013) ("*Fisher I*") (slip op., at 7) ("[O]btaining the educational benefits of 'student body diversity is a compelling state interest that can justify the use of race in university admissions.'"); *see also Grutter v. Bollinger*, 539 U.S. 306, 325 (2003); *Regents of Univ. of Cal. v. Bakke*, 438 U. S. 265, 311-15 (1978) (Powell, J.).

Further supporting UT's compelling interest in diversity in its student body generally is that a diverse student body (i) results in diversity in the classroom, which helps to break down stereotypes and allows classroom discussion to reflect a variety of views, (ii) promotes cross-racial understanding, (iii) creates an environment in which students do not feel like spokespersons for their race, and (iv) better prepares students to participate in—and to serve as leaders within—an increasingly diverse workforce and society.

6.      If you contend that UT must use race in its admissions process in order to achieve racial diversity in the UT student body, state the basis for the contention and identify with particularity all facts supporting your contention.

RESPONSE:

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 6 as overbroad and that as worded it includes information which is not reasonably calculated to lead to the discovery of admissible evidence, contrary to TEX. R. CIV. P. 192.3(a).  For example, Plaintiff brings this suit on behalf of members who were denied undergraduate admission to UT's 2017 entering class because of allegedly unlawful current admissions policies.  As written, however, this request calls for information about admission to any program at UT, including graduate programs.  *See In re Allstate County Mut. Ins. Co.*, 227 S.W.3d 667, 669 (Tex. 2007) (orig. proceeding) (emphasizing that discovery "from an unreasonably long time period" is "impermissibly overbroad"); *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding) ("A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information.").  Defendants also object that Plaintiff's interrogatory is vague in that Plaintiff fails to clarify the intended scope for the phrase "admissions process." Defendants construe this interrogatory as limited to the work of the UT Office of Admissions for the admission of incoming undergraduate students for the school year beginning 2017. Defendants expressly do not address in their response any aspect of the work of the Graduate and International Admissions Center or any individual college or academic department, and they treat any such inquiry as outside the scope of matters relevant to this lawsuit as framed by the pleadings.  Finally, Defendants object to this interrogatory to the extent it calls for them to "marshal all of [their] available proof or the proof [they] intend[ ] to offer at trial." TEX. R. CIV. P. 197.1.

Subject to and without waiving the foregoing objections, Defendants respond as follows:

UT's undergraduate admissions policy is designed to admit a meritorious and diverse student body.  Diversity is a major priority for UT's students, faculty, and staff, and it is UT's aim to set a high standard for diversity in education.  The University's broad vision of diversity encompasses various aspects of the human experience, including an applicant's culture; language; family, educational, geographic, and socioeconomic background; work, volunteer, or internship experiences; and leadership experience, among other elements.  This broad vision of diversity includes race.

The policy is intended to enhance the educational experience of students on campus.  It is also intended to identify and develop the next generation of leadership, with the understanding and expectation that many of the graduates will become future leaders of Texas.

UT students experience concrete benefits from maintaining a diverse student body.  In UT's judgment, these include, but are not limited to, cross-racial understanding; cross-ethnic understanding; and the breaking down of racial, ethnic, and geographic stereotypes. Students—regardless of race—should not feel like spokespersons for their race.  UT has kept

abreast of the education and admissions literature, which have identified numerous other benefits to be achieved from diversity, including specific learning outcomes; preparedness for an increasingly diverse work force and society; and preparedness for entry into the professions, where they will need to interact with people of different races, cultures, languages, and backgrounds. UT knows that its graduates will go on to become future leaders of this state in various categories, including government, industry, and public service.

The majority of UT's undergraduate admissions are covered by "the Top Ten Percent Law." Since 1998, UT has been required under that law to offer admission to any student from any public high school in Texas and qualifying private high schools in Texas who graduate from high school with a qualifying class rank. The Top Ten Percent Law derives its name from the fact that the original qualifying class rank was a rank falling within the top 10% of a student's high school graduating class. Under a 2009 legislative modification, only 75% of UT's enrollment capacity for first-year resident undergraduates must be offered admission under the Top Ten Percent Law. That change, combined with population increases, means that a higher class rank is now needed to gain admission to UT under the Top Ten Percent Law.[2]

As to the remaining 25% of its undergraduate resident enrollment capacity, the Office of Admissions uses an individualized, holistic review process to consider each completed freshman application. The holistic review process considers an array of factors including, but not limited to, the student's high school transcript and:

- Class rank
- Strength of academic background
- SAT Reasoning Test or ACT scores
- Record of achievements, honors, and awards
- Special accomplishments, work, and service both in and out of school
- Essays
- Special circumstances that put the applicant's academic achievements into context, including his or her socioeconomic status, experience in a single parent home, family responsibilities, experience overcoming adversity, cultural background, race and ethnicity, the language spoken in the applicant's home, and other information in the applicant's file
- Recommendations (although not required)
- Competitiveness of the major to which the student applies

No specific class rank, test score, or other qualification by itself—other than automatic admission based on section 51.803 of the Texas Education Code—ensures admission.

---

[2]. Each fall, UT notifies Texas school officials of the class rank that current high school juniors need to attain by the end of their junior year in order to be automatically admitted:

- Summer/Fall 2017 and Spring 2018 applicants: Top 7%
- Summer/Fall 2018 and Spring 2019 applicants: Top 7%
- Summer/Fall 2019 and Spring 2020 applicants: Top 6%

Admissions decisions are made on the basis of the information submitted as part of the student's application. Applicants who believe that supplemental items will help convey information about their qualifications are encouraged to submit such items with their applications. Supplemental items often included with applications are expanded resumes of accomplishments and extracurricular activities, letters of recommendation, and letters addressing an applicant's special circumstances.

UT's prior experience with administering an admissions policy that gave no consideration to race in undergraduate admissions saw significant declines in diversity. The Top Ten Percent Law was not sufficient alone to overcome those losses, so following extensive study and analysis, and with the approval of the UT System Board of Regents, UT adopted a policy of considering race as a factor of a factor in its holistic review of non-Top Ten Percent Law applicants for undergraduate admissions in 2004. That policy was first implemented in 2005 and has continued ever since. During this period, UT has given ongoing attention to whether its existing admissions policy is serving the goals it is intended to serve, as well as whether other alternative approaches to its existing admissions policy would better serve those goals. UT has also given continuing consideration to its admissions policy by keeping abreast of the state of research in admissions and education generally, as well as its own institutional data.

The available research that UT has considered assesses and evaluates varying approaches to admissions, including those that encompass the consideration of race and ethnicity, as well as those that do not. UT's admissions policy already incorporates many race-neutral strategies, including its Top Ten Percent Law and its consideration of non-race factors in its holistic review process, such as family socioeconomic status, high school attended, whether the student is first in his or her family to go to college, and language spoken at home. UT has also incorporated a number of strategies that do not directly implicate admissions policy, such as recruitment efforts in geographic markets with historically few UT students, as well as scholarship programs aimed at recruiting highly qualified students of all races from lower socioeconomic backgrounds and at students who would be the first in their family to attend college. Having considered the available research and data, as well as available alternatives, UT has exercised judgment to conclude that its consideration of race in admissions should continue.

7.      Identify by date, author, and title any studies, reports, audits or other data sets, from any time that UT commissioned or performed to evaluate the effect of UT's admissions process on the racial composition or diversity of the student body.

RESPONSE:

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 7 as overbroad and that as worded it includes information which is not reasonably calculated to lead to the discovery of admissible evidence, contrary to TEX. R. CIV. P. 192.3(a). For example, Plaintiff brings this suit on behalf of members who were denied undergraduate admission to UT's 2017 entering class because of allegedly unlawful current admissions policies. As written, however, this request calls for information about admission to any program at UT, including

13

graduate programs. *See In re Allstate County Mut. Ins. Co.*, 227 S.W.3d 667, 669 (Tex. 2007) (orig. proceeding) (emphasizing that discovery "from an unreasonably long time period" is "impermissibly overbroad"); *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding) ("A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information."). Defendants also object that Plaintiff's interrogatory is vague in that Plaintiff fails to clarify the intended scope for the phrase "admissions process." Defendants construe this interrogatory as limited to the work of the UT Office of Admissions for the admission of incoming undergraduate students for the school year beginning 2017. Defendants expressly do not address in their response any aspect of the work of the Graduate and International Admissions Center or any individual college or academic department, and they treat any such inquiry as outside the scope of matters relevant to this lawsuit as framed by the pleadings.

Subject to and without waiving the foregoing objections, Defendants respond as follows:

Each year, UT collects and disseminates data and analysis concerning the racial and ethnic makeup of its student body for various purposes including, but not limited to, its need to report to the Texas Legislature, the Texas Higher Education Coordinating Board, the College Board, Peterson's, U.S. News & World Report, among others.

In addition to the foregoing, UT's Office of Institutional Reporting, Research and Information Systems ("IRRIS") collects and facilitates access to a variety of types and presentations of university data, descriptive statistics, predictive analytics, and dynamic information systems. The information collected and made available by IRRIS is wide-ranging and extensive and not susceptible to an exhaustive summary.

In addition, Sara Martinez Tucker's 2010 and 2011 Reports on "Preparing the Next Generation of Texas' Leaders to Ensure the State's Economic Vitality," as well as the UT Office of Admissions' November 20, 2003 report entitled "Diversity Levels of Undergraduate Classes at The University of Texas at Austin 1996-2002" (which was updated annually through 2009) address one or more of the topics inquired about here.

Finally, UT has commissioned the consulting firm EducationCounsel to assist with a review of its undergraduate admissions program. EducationCounsel's work is underway and ongoing but not yet complete.


8.      Identify each effort by UT to investigate race-neutral alternatives to UT's admissions process since January 1, 2007.

RESPONSE:

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 8 as overbroad and that as worded it includes information which is not reasonably calculated to lead to the discovery of admissible evidence, contrary to Tex. R. Civ. P. 192.3(a). For example,

Plaintiff brings this suit on behalf of members who were denied undergraduate admission to UT's 2017 entering class because of allegedly unlawful current admissions policies. As written, however, this request calls for information about admission to any program at UT, including graduate programs. *See In re Allstate County Mut. Ins. Co.*, 227 S.W.3d 667, 669 (Tex. 2007) (orig. proceeding) (emphasizing that discovery "from an unreasonably long time period" is "impermissibly overbroad"); *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding) ("A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information."). Defendants also object that Plaintiff's interrogatory is vague in that Plaintiff fails to clarify the intended scope for the phrase "admissions process." Defendants construe this interrogatory as limited to the work of the UT Office of Admissions for the admission of incoming undergraduate students for the school year beginning 2017. Defendants expressly do not address in their response any aspect of the work of the Graduate and International Admissions Center or any individual college or academic department, and they treat any such inquiry as outside the scope of matters relevant to this lawsuit as framed by the pleadings.

Subject to and without waiving the foregoing objections, Defendants respond as follows:

Defendants incorporate the foregoing responses to Interrogatories Nos. 5-7 by reference.

9.  If you contend that UT's use of race in connection with its undergraduate admissions process is narrowly tailored to achieve a compelling interest, state the basis for the contention and identify with particularity all facts supporting your contention.

RESPONSE:

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 9 as overbroad and that as worded it includes information which is not reasonably calculated to lead to the discovery of admissible evidence, contrary to TEX. R. CIV. P. 192.3(a). For example, Plaintiff brings this suit on behalf of members who were denied undergraduate admission to UT's 2017 entering class because of allegedly unlawful current admissions policies. As written, however, this request calls for information about admission to any program at UT, including graduate programs. *See In re Allstate County Mut. Ins. Co.*, 227 S.W.3d 667, 669 (Tex. 2007) (orig. proceeding) (emphasizing that discovery "from an unreasonably long time period" is "impermissibly overbroad"); *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding) ("A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information."). Defendants also object that Plaintiff's interrogatory is vague in that Plaintiff fails to clarify the intended scope for the phrase "admissions process." Defendants construe this interrogatory as limited to the work of the UT Office of Admissions for the admission of incoming undergraduate students for the school year beginning 2017. Defendants expressly do not address in their response any aspect of the work of the Graduate and International Admissions Center or any individual college or academic department, and they treat any such inquiry as outside the scope of matters relevant to this lawsuit as framed by the pleadings. Defendants object to this interrogatory to the extent it calls for them to "marshal

all of [their] available proof or the proof [they] intend[ ] to offer at trial." TEX. R. CIV. P. 197.1. Finally, Defendants object to this interrogatory as seeking information that can have no possible relevance to this lawsuit in light of its pleading and Rule 11 agreement that it "does not, by this lawsuit, challenge whether UT's use or consideration of race in its admissions process satisfies the 'narrow tailoring' prong of the strict scrutiny test with respect to the constitutional and statutory claims it has asserted."

Subject to and without waiving the foregoing objections, Defendants respond as follows:

To the extent any response is required, Defendants incorporate the foregoing responses to Interrogatories Nos. 5-7 by reference.


10.     If you contend that UT has given serious, good-faith consideration of workable race-neutral alternatives that will achieve its alleged compelling interest, state the basis for the contention and the race-neutral alternatives that were considered.

RESPONSE:

In addition to the foregoing General Objections, Defendants object to Interrogatory No. 10 as overbroad and that as worded it includes information which is not reasonably calculated to lead to the discovery of admissible evidence, contrary to TEX. R. CIV. P. 192.3(a).  For example, Plaintiff brings this suit on behalf of members who were denied undergraduate admission to UT's 2017 entering class because of allegedly unlawful current admissions policies.  As written, however, this request calls for information about admission to any program at UT, including graduate programs.  *See In re Allstate County Mut. Ins. Co.*, 227 S.W.3d 667, 669 (Tex. 2007) (orig. proceeding) (emphasizing that discovery "from an unreasonably long time period" is "impermissibly overbroad"); *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003) (orig. proceeding) ("A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information.").  Defendants also object that Plaintiff's interrogatory is vague in that Plaintiff fails to clarify the intended scope for the phrase "admissions process." Defendants construe this interrogatory as limited to the work of the UT Office of Admissions for the admission of incoming undergraduate students for the school year beginning 2017. Defendants expressly do not address in their response any aspect of the work of the Graduate and International Admissions Center or any individual college or academic department, and they treat any such inquiry as outside the scope of matters relevant to this lawsuit as framed by the pleadings.

Subject to and without waiving the foregoing objections, Defendants respond as follows:

UT has given consideration to the extensive research that has been developed over the past decades on diversity, education, and admissions policy in reaching the conclusion that the consideration given to race in its existing admissions policies should continue.  The available research assesses and evaluates varying approaches to admissions, including those that encompass the consideration of race and ethnicity, as well as those that do not.  UT's

admissions policy already incorporates many race-neutral strategies, including its Top Ten Percent Law and its consideration of non-race factors in its holistic review process, such as family socioeconomic status, high school attended, whether the student is first in his or her family to go to college, and language spoken at home.  UT has also incorporated a number of strategies that do not directly implicate admissions policy, such as recruitment efforts in geographic markets with historically few UT students, as well as scholarship programs aimed at recruiting highly qualified students of all races from lower socioeconomic backgrounds and at students who would be the first in their family to attend college.

UT reviews its undergraduate admissions process at least every year, and in connection with that review, monitors the sufficiency of its existing policies to meet its educational goals, including those related to racial and ethnic diversity.

In addition, Defendants incorporate the foregoing responses to Interrogatories Nos. 5-7 by reference.