# Exhibit F



Ten Post Office Square
8th Floor South PMB #706
Boston, MA  02109
617.227.0548
www.consovoymccarthy.com

August 17, 2023

**VIA ELECTRONIC MAIL**

Matthew C. Powers
Graves Dougherty Hearon & Moody
401 Congress Ave., Suite 2700'
Austin, TX 78701

>      RE: *Students for Fair Admissions v. University of Texas*

Dear Matt:

I write on behalf of SFFA in response to your letter dated August 14. We appreciate UT's willingness to provide information in response to our informal requests. We are troubled, however, by some of UT's responses.

In *SFFA v. Harvard*, the Supreme Court prohibited universities from using race in the admissions process. Our Constitution is "color-blind," and using race itself to make assumptions about applicants is nothing more than racial "stereotyping." 143 S.Ct. 2141, 2170, 2175 (2023). Racial data thus have no role in the admissions process. Each applicant "must be treated based on his or her experiences as an individual—not on the basis of race." *Id*. at 2176.

Yet UT will give admissions officers access to a host of racial data *during the admissions process*. According to your letter, "senior admissions officers" will have access to "aggregated data showing numbers of persons who have applied to, been admitted to, and enrolled at UT." This information includes "the aggregate percentages of race/ethnicity for each category: applied, admitted, and enrolled." This data is "updated daily and includes both current numbers and year-over-year changes." In addition, senior admissions officers have access to this "check-box information" for each individual because it is a "part of each applicant's complete application file."

Why UT would share this racial data—which can play *no lawful role* in admissions decisions—with any admissions officer while the admissions process is ongoing is beyond us. This racial data can obviously be misused, just as it was by Harvard. *See Harvard*, 143 S.Ct. at 2170 (noting that Harvard "uses race to track how each class is shaping up relative to previous years with an eye towards achieving a level of racial diversity"). This data can be removed from application files. *See* Rickard, *What to Expect from Common App after the Supreme Court Decision on Race-Conscious Admissions*, Common App (June 29, 2023), perma.cc/Q8UH-TDMH. And your peer institutions are completely blinding admissions officers to this data during the admissions process. *See, e.g.*, Pfeifer, UNC Trustees Talk

1

Case 1:20-cv-00763-RP   Document 87-7   Filed 11/27/23   Page 3 of 6
August 17, 2023
Page 2

Affirmative Action, Accessibility at Meeting of 2023-24, Chapelboro (Aug. 9, 2023), perma.cc/N4V9-3URN (UNC will "eliminate or redact applicant racial demographic checkbox data from the application materials"); Ryan & Baucom, *Update on UVA's Response to Admissions Decisions*, UVA (Aug. 1, 2023), perma.cc/7YTW-BU2X ("no one who assesses candidates for admission at UVA will have access to any self-disclosed 'checkbox' information regarding the race or ethnicity of the candidates they are considering").

To allow us to further evaluate our next steps, please answer the following additional questions.

1) How many "senior admissions officers" or other individuals in the Admissions Office will have access to the "check-box information"?
2) Do "senior admissions officers" participate in the holistic review process?
   a. If so, will they still be able to access "each applicant's complete application file"?
3) You state that racial data "will not be part of the holistic review file that is furnished in connection with holistic review scoring."
   a. Please describe how admissions decisions will be made after an applicant receives his or her "holistic score."
   b. Are admissions decisions based solely on the holistic scores?
   c. Can a "senior admissions officer" review a holistic determination and change the score or admissions outcome?
4) If you believe that UT can constitutionally use racial data during the admissions process, please explain why it is necessary for individuals in the Admissions Office—instead of UT officials unconnected with admissions decisions—to have access to this racial data.

In light of the upcoming admissions cycle, we hope you can clarify the above questions by August 24. Based on your answers so far, we fear that the parties need to litigate these questions before the district court and, if necessary, the Fifth Circuit—potentially on an expedited basis. We appreciate UT's willingness to take steps to allow SFFA to proceed with an ultimate resolution of this case.

Sincerely,

/s *Patrick Strawbridge*

1) How many "senior admissions officers" or other individuals in the Admissions Office will have access to the "check-box information"?

> There are about 85 full-time staff members in the admissions office, including senior admissions officers and other full-time employees. All of those employees have access to UT Austin's database of applicant file information. While the database contains applicants' self-reported "check-box information" regarding race/ethnicity, all staff members are trained and advised that it would be a violation of UT Austin's policies and training for any employee to access the "check-box" information when performing a holistic review or making admissions decisions.

> Each year, UT Austin also hires about 100 persons as seasonal employees specifically to review and score files as part of the holistic review process. These seasonal employees do not have access to UT Austin's database system, and thus do not have the ability to access the "check-box information." Holistic review happens in a separate module where an applicant's race or ethnicity is not presented, and reviewers are instructed and trained to consider only what is in the module.

2) Do "senior admissions officers" participate in the holistic review process?

> Yes, senior admissions officers do participate in the holistic review process. Principally, they serve as a third reviewer—when two reviewers independently provide very different scores for an applicant, a third reviewer will provide a final score.

> a. If so, will they still be able to access "each applicant's complete application file"?

> No, it would be a violation of UT Austin's policies and training to access that information when reviewing a file during holistic review.

3) You state that racial data "will not be part of the holistic review file that is furnished in connection with holistic review scoring."

> a. Please describe how admissions decisions will be made after an applicant receives his or her "holistic score."

4587111.v1

3

Admissions decisions are based on the holistic review score and the predicted first-year GPA for the applicant. Neither of these variables consider the race or ethnicity of the applicant. In making the final cuts to meet the required number of seats available in each major/school/college/program at UT Austin, admissions decisions may be based on other data elements, but again, not on race or ethnicity. As an example, if a particular major has 20 seats remaining, and there are 200 applicants for that program with similar holistic review scores and predicted first-year GPAs, the admissions office may give priority to students who are first-generation college students or students who attended a Title I school.

b. Are admissions decisions based solely on the holistic scores?

As explained above, admissions decisions are also based on an applicant's predicted first-year GPA. And for the final spots in individual programs, admissions decisions may be based on other factors, but not race or ethnicity.

c. Can a "senior admissions officer" review a holistic determination and change the score or admissions outcome?

Three admissions officers—the Director of Operations, the Associate Director of Processing, and the Manager of Holistic Review—have the authority to change a holistic review score. This would only be done if there was an error in an individual score identified during the ongoing quality control process of holistic review. Historically, such errors have happened only a handful of times during an admissions cycle. No holistic review score will be changed based on the race or ethnicity of the applicant.

4) If you believe that UT can constitutionally use racial data during the admissions process, please explain why it is necessary for individuals in the Admissions Office—instead of UT officials unconnected with admissions decisions—to have access to this racial data.

UT Austin will not use data concerning race or ethnicity for admissions decisions. Such data will be used for recruitment of applicants who have been offered admission, and aggregate data on race and ethnicity will be used for tracking and reporting on trends in the composition of the population of students who apply to, are admitted to, and enroll at UT Austin. Individuals in the admissions office participate in the recruitment of applicants who have been offered admission and the monitoring and reporting of trends on the

composition of the student population, and thus they will have access to the race and ethnicity data for those purposes.