# Exhibit H

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2008 AUG 22 PM 3: 43
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

ABIGAIL NOEL FISHER and §
RACHEL MULTER MICHALEWICZ, §
    *Plaintiffs*, §
    § CIVIL ACTION NO. 1:08-CV-00263-SS
v. §
    §
UNIVERSITY OF TEXAS AT AUSTIN, et al. §
    *Defendants.* §

ANSWER OF DEFENDANTS UNIVERSITY OF TEXAS AT AUSTIN,
KENNETH I. SHINE, DAVID B. PRIOR, WILLIAM POWERS, JR.,
BOARD OF REGENTS OF THE UNIVERSITY OF TEXAS SYSTEM,
JOHN W. BARNHILL, JR., H. SCOTT CAVEN, JR. JAMES R. HUFFINES,
JANIECE LONGORIA, COLLEEN McHUGH, ROBERT B. ROWLING, JAMES D.
DANNENBAUM, PAUL FOSTER, PRETICE L. GARY, AND BRUCE WALKER
TO PLAINTIFFS' SECOND AMENDED COMPLAINT

TO THE HONORABLE SAM SPARKS:

    Defendants University of Texas at Austin ("UT Austin"); Kenneth I. Shine;[1] David B. Prior; William Powers, Jr.; Board of Regents of the University of Texas System, John W. Barnhill, Jr., H. Scott Caven, Jr., James R. Huffines, Janiece Longoria, Colleen McHugh, Robert B. Rowling, James D. Dannenbaum, Paul Foster, Printice L. Gary; and Bruce Walker (all individuals are sued in their official capacities only) (collectively, "Defendants") file their Answer to Plaintiffs' Second Amended Complaint and respectfully show the Court as follows:

## ANSWER

    Pursuant to Federal Rule of Civil Procedure 8(b), the Defendants deny each and every allegation contained in Plaintiff's Second Amended Complaint except for those expressly admitted

---

[1] Dr. Shine was substituted for Dr. Yudof by the Court's order of August 13, 2008.
*Defendants' Answer to Plaintiffs' Second Amended Complaint*

herein. These numbered paragraphs correspond to the paragraphs within the body of Plaintiff's Original Petition:

## NATURE OF THE ACTION

1. Defendants state that there is no need to admit or deny the allegations of this paragraph, except to the extent that Defendants deny the undergraduate admissions program at UT Austin illegally discriminates against Plaintiffs and violates their constitutional rights or any federal civil rights statutes.

2. Defendants state that there is no need to admit or deny the allegations of this paragraph.

3. Defendants state that there is no need to admit or deny the allegations of this paragraph.

4. Defendants state that there is no need to admit or deny the allegations of this paragraph.

## JURISDICTION AND VENUE

5. Admit.

6. Admit.

## THE PARTIES

### *Plaintiffs*

7. Admit to the extent that Defendants have knowledge based on Ms. Fisher's application to UT Austin.

8. Admit to the extent that Defendants have knowledge based on Ms. Fisher's application to UT Austin.

9. Deny. Defendants aver that, based Ms. Fisher's high school records that are part of her admissions file, at the time of her application, Ms. Fisher maintained a 5.1020 grade point average on a weighted 6.0 scaled and/or a 3.5714 grade point average on a 4.0 scale at Stephen F. Austin High School.

10. Defendants deny the first sentence and, based on Ms. Fisher's high school records that are part of her UT Austin admissions file, aver that, at the time of her application, Ms. Fisher was ranked 81 out of 680 students in her graduating class. Defendants admit the second sentence.

11. Admit.

12. Admit.

13. Defendants deny and aver that Ms. Michalewicz's high school records that are part of her UT Austin admissions file show that Ms. Michalewicz is currently 18 years old.

14. Admit to the extent that Defendants have knowledge based on Ms. Michalewicz's application to UT Austin.

15. Admit.

16. Admit.

17. Admit.

### *Defendants*

18. Admit.

19. Admit.

20. Defendants deny that Mark Yudof is the current Chancellor of the University of Texas System (the "UT System"), aver that Kenneth I. Shine, M.D., is the Interim Chancellor of the UT System, and admit to the first, second and fourth sentences. Defendants admit the third sentence to the extent that the Chancellor is responsible for all aspects of UT System operations and that the then-current Chancellor reviewed and approved UT Austin's admissions policy; however, to the extent that the word "implement" means administer, supervise, or something similar, Defendants deny that the Chancellor had such duties.

21. Admit.

22. Defendants state that no response is required to this paragraph because Barry Burgdorf was dismissed from this action by the Court's order dated May 19, 2008.

23. Admit.

24. Defendants admit the first sentence, except aver that Bruce Walker is Vice Provost and Director of Admissions at UT Austin. Defendants admit the second, third and fourth sentences.

**UT AUSTIN'S UNDERGRADUATE ADMISSIONS PROCESS**

25. Admit.

26. Defendants admit in part; deny in part. Defendants aver that UT Austin has modified its undergraduate admissions policies over time in response to judicial decisions in the federal courts regarding the use of race as a factor in admissions decisions. Defendants further aver that admission policies, however, have also been impacted by legislation, such as House Bill 588, Section 51.803 of the Texas Education Code (with the accompanying administrative regulations promulgated by the

Texas Higher Education Coordinating Board, the "Top 10 Percent Law"), the desire to recruit and retain students, and the need to manage the size of student enrollment.

### *UT Austin's Pre-Hopwood Admissions Policies*

27. Defendants admit in part; deny in part. Defendants aver that UT Austin did not employ solely race-based criteria; rather, race, along with other factors such as class rank, test scores, and curriculum, were used in making admission decisions.

28. Admit.

29. Admit.

30. Defendants admit that the quotation in the sentence is correct and to the extent that *exclusive* reliance on predicted freshman grade point average for admissions decisions "would have produced classes with unacceptably low diversity levels."

31. Admit.

32. Defendants admit the first sentence, except for Plaintiffs' characterization of UT Austin's Pre-*Hopwood* admissions policies as "Race-Based Plan." Defendants admit the second sentence.

33. Defendants admit the first sentence, except for Plaintiffs' characterization of UT Austin's Pre-*Hopwood* admissions policies as "Race-Based Plan." Defendants admit the second sentence.

34. Defendants admit the first sentence, except for Plaintiffs' characterization of UT Austin's Pre-*Hopwood* admissions policies as "Race-Based Plan." Defendants admit the second sentence.

## The Hopwood Case

35. Defendants state that there is no need to admit or deny the allegations of this paragraph.

36. Defendants state that there is no need to admit or deny the allegations of this paragraph.

37. Admit.

38. Defendants admit the allegations of this paragraph, except for Plaintiffs' characterization of UT Austin's admissions policies as "Race-Based Plan."

## UT Austin's Post- Hopwood Admissions Policies

39. Admit.

40. Defendants admit to the extent that evaluation of undergraduate applicants included test scores and essays, as well as academic performance and personal achievement.

41. Admit.

42. Defendants admit, except aver that an applicant's AI takes into account whether the applicant exceeded UT Austin-required high school curriculum.

43. Admit.

44. Admit.

45. Admit.

46. Admit.

47. Admit.

48. Admit.

## *The Top 10% Law*

49. Admit.

50. Deny. Defendants aver that the Top 10 Percent Law, which must be read in conjunction with administrative regulations promulgated by the Texas Higher Education Coordinating Board and other applicable policies, provides additional admission requirements for students ranked in the top ten percent of their high school class.

51. Admit.

52. Admit.

53. Admit.

54. Defendants admit, except aver that the second sentence fails to take into account certain variances due to scholarship programs, admissions processes for academically extraordinary students, and certain portfolio or audition requirements that may exist for certain programs.

55. Defendants admit, except aver that the allegation fails to take into account certain variances due to scholarship programs, admissions processes for academically extraordinary students, and certain portfolio or audition requirements that may exist for certain programs.

56. Admit.

57. Deny.

58. Admit that former UT Austin President Larry Faulkner is quoted correctly, though not in context, and aver that the demographics have changed since 1996.

59. Admit that former UT Austin President Larry Faulkner is quoted correctly, and aver that the statistics quoted include the program's individualized and nuanced consideration of applicants' academic and personal achievements.

60. Defendants deny and aver that the sentence from which the quote is taken states "The University of Texas at Austin has effectively compensated for the loss of affirmative action, partly by increasing recruiting and financial aid for minority students."

61. Admit.

62. Defendants admit in part, deny in part. Defendants aver that Plaintiffs' quotations are accurate as far as they go; however, they are misleading in that four sentences are edited and incomplete, leading to a misunderstanding of the article. The entire paragraphs selectively quoted read:

> Diversity efforts at The University of Texas at Austin have brought a higher number of freshman minority students—African Americans, Hispanics and Asian Americans—to the campus than were enrolled in 1996, the year a court ruling ended the use of affirmative action in the university's enrollment process.
>
> A report by the university's Office of Institutional Research for the 2002 fall/summer enrollment shows there were 266 African Americans, 932 Hispanics and 942 Asian Americans enrolled as first-time freshmen at the university in 1996. The numbers of African Americans and Hispanics dropped after the Hopwood ruling, although the figures for Asian Americans increased. In 1997, the numbers for first-time freshmen were down to 190 African Americans, 892 Hispanics and 1,130 Asian Americans.
>
> More recent enrollment figures show a more encouraging trend. The summer/fall 2002 semester report shows that first-time freshmen enrollment for all three ethnic groups has increased to a level above the 1996 pre-Hopwood figures. Minority enrollment last fall included 272 African Americans, 1,137 Hispanics and 1,452 Asian Americans.

63. Admit.

64. Admit.

65. Admit.

66. Admit.

67. Admit.

## *The* Grutter *Decision*

68. Defendants state that there is no need to admit or deny the allegations of this paragraph.

69. Defendants state that there is no need to admit or deny the allegations of this paragraph.

70. Defendants state that there is no need to admit or deny the allegations of this paragraph.

71. Defendants state that there is no need to admit or deny the allegations of this paragraph.

72. Defendants state that there is no need to admit or deny the allegations of this paragraph.

73. Defendants state that there is no need to admit or deny the allegations of this paragraph.

74. Defendants state that there is no need to admit or deny the allegations of this paragraph.

75. Defendants state that there is no need to admit or deny the allegations of this paragraph.

## *UT Austin's Post-*Grutter *Admissions Policies*

76. Deny.

77. Defendants are unable to admit or deny as they are not in possession of a copy of the article referenced in this paragraph.

78. Defendants admit that the quote is accurate, but aver that it is edited and, thus, incomplete.

79. Defendants admit that the quote is accurate and aver that it is consistent with the Supreme Court's mandate in *Grutter*.

80. Defendants admit that the quote is accurate and aver that it is consistent with the Supreme Court's mandate in *Grutter*.

81. Defendants admit that the quote is accurate and aver that it is consistent with the Supreme Court's mandate in *Grutter*.

82. Defendants admit in part, deny in part. Defendants aver that the Board of Regents passed a resolution on August 6, 2003, that, among other things, authorized each UT System institution to "develop and propose plans regarding whether to consider an applicant's race and ethnicity as part of the component's admissions or financial assistance policies in accordance with the standards enunciated in the recent Supreme Court cases of *Grutter v. Bollinger* and *Gratz v. Bollinger*." http://www.utsystem.edu/BORMinutes/2000-current/8-03meeting969.pdf, at pp. 4-5.

83. Defendants admit except as to the use of the term "race-based criteria."

84. Defendants admit except as to the use of the term "race-adjusted AI/PAI criteria."

85. Defendants admit except as to the use of the term "Top 10-Race-Based Plan."

86. Deny. Defendants aver that race may or may not play a role in the applications of candidates of all races as endorsed by the Supreme Court in *Grutter*.

87. Defendants deny the first sentence and admit the second.

88. Defendants admit except as to the use of the term "Top 10-Race-Based Plan."

89. Defendants admit except as to the use of the term "Top 10-Race-Based Plan."

90. Defendants admit except as to the use of the term "Top 10-Race-Based Plan."

91. Defendants admit except as to the use of the term "Top 10-Race-Based Plan."

92. Defendants admit except as to the use of the term "Top 10-Race-Based Plan" and "race-adjusted AI/PAI criteria."

93. Defendants admit except as to the use of the term "Top 10-Race-Based Plan."

94. Defendants admit except as to the use of the term "Top 10-Race-Based Plan."

95. Defendants admit except as to the use of the term "Top 10-Race-Based Plan."

96. Defendants admit except as to the use of the term "Top 10-Race-Based Plan" and "race-adjusted AI/PAI criteria."

97. Defendants admit except as to the use of the term "Top 10-Race-Based Plan" and "race-adjusted AI/PAI criteria."

98. Deny.

99. Defendants state that there is no need to admit or deny the allegations of this paragraph.

100. Defendants deny the first sentence, admit the second sentence to the extent that some minorities who were admitted did not enroll, and admit the third sentence.

101. Deny.

102. Deny.

103. Deny.

## PLAINTIFFS' APPLICATIONS TO UT AUSTIN

### *Abigail Noelle Fisher*

104. Admit.

105. Defendants deny and aver that, based on her high school records that are part of her admissions file, at the time of her application, Ms. Fisher maintained a 5.1020 grade point average on a weighted 6.0 scaled and/or a 3.5714 grade point average on a 4.0 scale at Stephen F. Austin High School.

106. Defendants deny the first sentence and aver that, based on her high school records that are part of her admissions file, at the time of her application, Ms. Fisher was ranked 81 out of 680 students in her graduating class. Defendants admit the second sentence.

107. Defendants admit to the extent that Defendants have knowledge based on Ms. Fisher's application to UT Austin.

108. Admit.

109. Defendants are unable to admit or deny as they are not in possession of a copy of the article referenced in this paragraph and the web address provided does not publicly provide the information.

110. Defendants admit to the extent that Defendants have knowledge based on Ms. Fisher's application to UT Austin.

111. Defendants admit to the extent that Ms. Fisher's application reflects that she applied to the College of Business.

112. Defendants admit that Ms. Fisher's class rank fell outside the top 10 percent of her high school class and that her application for admission was holistically reviewed consistent with the UT Austin's admissions policy.

113. Admit.

114. Admit.

115. Admit.

116. Admit.

117. Defendants are without knowledge that would allow them to admit or deny the allegations contained in this paragraph.

118. Defendants are without knowledge that would allow them to admit or deny the allegations contained in this paragraph.

119. Deny.

120. Deny.

121. Deny.

122. Deny.

123. Deny.

124. Deny.

### *Rachel Multer Michalewicz*

125. Admit.

126. Admit.

127. Admit.

128. Defendants admit to the extent that Defendants have knowledge based on Ms. Michalewicz's application to UT Austin.

129. Admit.

130. Defendants admit to the extent that Defendants have knowledge based on Ms. Michalewicz's application to UT Austin.

131. Admit.

132. Defendants admit that Ms. Michalewicz's class rank fell outside the top 10 percent of her high school class and that her application for admission was holistically reviewed consistent with the UT Austin's admissions policy.

133. Admit.

134. Admit.

135. Defendants are without knowledge that would allow them to admit or deny the allegations contained in this paragraph.

136. Deny.

137. Deny.

138. Deny.

139. Deny.

140. Deny.

141. Deny.

## PLAINTIFFS' CLAIMS

### *Count I-Violation of the Fourteenth Amendment to the United States Constitution*

142. Defendants incorporate their responses to paragraphs 1 through 141 of the Amended Complaint as if fully set forth herein.

143. Defendants state that this paragraph contains conclusions of law to which no response is required.

144. Defendants state that this paragraph contains conclusions of law to which no response is required.

145. Defendants state that this paragraph contains conclusions of law to which no response is required.

146. Defendants state that this paragraph contains conclusions of law to which no response is required.

147. Deny.

148. Deny.

149. Deny.

150. Deny.

151. Deny.

152. Deny.

153. Deny.

154. Deny.

155. Deny.

156. Deny.

157. Deny.

### Count II-Violation of 42 U.S.C. §§ 1981 and 1983

158. Defendants incorporate their responses to paragraphs 1 through 157 of the Amended Complaint as if fully set forth herein.

159. Defendants state that this paragraph contains conclusions of law to which no response is required.

160. Deny.

161. Deny.

### Count II-Violation of 42 U.S.C. §§ 1981 and 1983

162. Defendants incorporate their responses to paragraphs 1 through 162 of the Amended Complaint as if fully set forth herein.

163. Deny.

164. Deny.

### RELIEF SOUGHT

165. Defendants state that this paragraph contains conclusions of law to which no response is required.

### AFFIRMATIVE DEFENSES

1. UT Austin asserts that it is entitled to "Eleventh Amendment immunity" from claims brought under 42 U.S.C. §§ 1981 and 1983.

2. At all times relevant to this cause, Defendants' actions were reasonable and proper under the laws of the State of Texas and the United States.

## PRAYER

Defendants pray that Plaintiffs take nothing by their suit.

                                  Respectfully submitted,

                                  GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Litigation

JAMES C. HO
Solicitor General

ROBERT B. O'KEEFE
Chief, General Litigation Division

RYAN CLINTON
Assistant Solicitor General

*/s/ Mishell B. Kneeland*
MISHELL B. KNEELAND
Texas Bar No. 24038256
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
mishell.kneeland@oag.state.tx.us
512-463-2120
512-320-0667 *fax*
ATTORNEYS FOR DEFENDANTS

*Defendants' Answer to Plaintiffs' Second Amended Complaint*                         17

## CERTIFICATE OF SERVICE

I certify that a copy of foregoing document has been sent by First Class U.S. Mail on this the **22nd day of August, 2008,** to the following individuals at the listed addresses:

**Bert W. Rein**
**Thomas R. McCarthy**
**Suzette Rodriguez Hurley**
**David C. Rybicki**
Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006

**Paul M. Terrill**
The Terrill Firm, PC
810 West 10th Street
Austin, TX 78701

*Mishell B. Kneeland* (signature)
**Mishell B. Kneeland**
Assistant Attorney General