IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> UNIVERSITY OF TEXAS AT AUSTIN, et al., <br><br> *Defendants*. | Case No. 1:20-cv-763-RP |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' AND INTERVENORS'
MOTIONS TO DISMISS**

Thomas R. McCarthy (*pro hac vice*)
J. Michael Connolly
Cameron T. Norris
Steven C. Begakis (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
mike@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com

*Counsel for Plaintiff Students for Fair Admissions, Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................. iii

INTRODUCTION ..................................................................................................................................... 1

BACKGROUND ........................................................................................................................................ 2

ARGUMENT .............................................................................................................................................. 2

    I.    This case is not moot. ................................................................................................................. 2

        A.    UT's policies remain unconstitutional. .................................................................... 2

        B.    UT has not carried its heavy burden to prove that it won't discriminate based on race again. ............................................................................................................................. 3

        C.    SFFA has not received all the relief to which it is entitled. ................................. 6

    II.    SFFA continues to have associational standing. ................................................................. 6

CONCLUSION ........................................................................................................................................... 8

CERTIFICATE OF SERVICE ................................................................................................................. 9

# TABLE OF AUTHORITIES

**CASES**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ............................................................................................................... 3

*Bell v. City of Boise*,
  709 F.3d 890 (9th Cir. 2013) ............................................................................................... 4

*Bolling v. Sharpe*,
  347 U.S. 497 (1954) ............................................................................................................ 1

*Brown v. Bd. of Educ.*,
  347 U.S. 483 (1954) ............................................................................................................ 1

*CAIR—Minn. v. Atlas*,
  497 F. Supp. 3d 371 (D. Minn. 2020) .............................................................................. 4, 5

*Clarke v. CFTC*,
  74 F.4th 627 (5th Cir. 2023) ................................................................................................ 6

*Cole v. Gen. Motors Corp.*,
  484 F.3d 717 (5th Cir. 2007) ............................................................................................... 7

*Cooper v. McBeath*,
  11 F.3d 547 (5th Cir. 1994) ................................................................................................. 2

*Freedom from Religion Found. v. Abbott*,
  955 F.3d 417 (5th Cir. 2020) ............................................................................................ 3, 5

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ............................................................................................................ 3

*Hartnett v. Pa. State Educ. Ass'n*,
  963 F.3d 301 (3d Cir. 2020) ................................................................................................ 5

*Hernandez v. Cremer*,
  913 F.2d 230 (5th Cir. 1990) ............................................................................................... 4

*Knox v. SEIU, Loc. 1000*,
  567 U.S. 298 (2012) ......................................................................................................... 2, 6

*Ne. Fla. Chap. of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*,
  508 U.S. 656 (1993) .................................................................................................... 2, 3, 7

*Netflix, Inc. v. Babin*,
  641 F. Supp. 3d 319 (E.D. Tex. 2022) ................................................................................. 5

*Reynolds v. Preston*,
  No. 22-cv-8408, 2023 WL 2825932 (N.D. Cal. Mar. 15, 2023) .......................................... 4

*Rice v. Cayetano*,
  528 U.S. 495 (2000) ............................................................................................................ 1

*Sefick v. Gardner*,
  164 F.3d 370 (7th Cir. 1998) ............................................................................................... 4

*SFFA v. Harvard*,
    600 U.S. 181 (2023) ................................................................................................. 1, 6, 7

*SFFA v. Univ. of Tex. at Austin*,
    37 F.4th 1078 (5th Cir. 2022) ............................................................................................6, 7

*SFFA v. Univ. of Tex. at Austin*,
    No. 20-cv-763, 2021 WL 3145667 (W.D. Tex. July 26, 2021) ............................................6

*Speech First, Inc. v. Fenves*,
    979 F.3d 319 (5th Cir. 2020) ............................................................................................3, 5

*Texas v. Biden*,
    20 F.4th 928 (5th Cir. 2021) .................................................................................................2

*Tucker v. Gaddis*,
    40 F.4th 289 (5th Cir. 2022) .............................................................................................1, 3

*United States v. Atkins*,
    323 F.2d 733 (5th Cir. 1963) ................................................................................................4

*United States v. Bob Lawrence Realty, Inc.*,
    474 F.2d 115 (5th Cir. 1973) ................................................................................................6

*United States v. Jarrah*,
    No. 16-cv-2906, 2017 WL 1048123 (S.D. Tex. Mar. 20, 2017) ...........................................6

*Universal Life Church Monastery Storehouse v. Nabors*,
    35 F.4th 1021 (6th Cir. 2022) ...............................................................................................7

*West Virginia v. EPA*,
    142 S.Ct. 2587 (2022) ...........................................................................................................5

**RULES**

Fed. R. Civ. P. 15 .................................................................................................................8

**INTRODUCTION**

Racial classifications are wrong. They are "'by their very nature odious to a free people,'" *Rice v. Cayetano*, 528 U.S. 495, 517 (2000), and "contrary to our traditions," *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). Yet UT has long used race to make its admissions decisions. For years, SFFA and its members have labored in this Court and elsewhere to try to stop this unconstitutional practice.

Now, with the end of the case in sight, UT tries to escape unscathed. The case is moot, UT insists, because it has told its admissions officers not to use race anymore. But this Court's jurisdiction is not so easily avoided. To begin, UT's new admissions policy remains unlawful, as explained in SFFA's motion for summary judgment. UT's continued use of race in admissions violates the Constitution's "'color-blind'" command. *SFFA v. Harvard*, 600 U.S. 181, 230 (2023). Yet even if UT's new policy were lawful, the case still isn't moot. Voluntary cessation is a heavy and formidable burden. It must be "'*absolutely clear*'" that the wrongful behavior will not recur. *Tucker v. Gaddis*, 40 F.4th 289, 293 (5th Cir. 2022). UT cannot meet this high standard. UT never promises not to bring back its race-based policies. UT's admissions policies are controlled merely by internal procedure; no statute or regulation prevents UT from bringing it back. UT has never admitted that its policies (at any time) were unlawful. And UT has failed to take simple procedural steps to ensure that its admissions officers do not continue to unlawfully use race again. At a minimum, the case is not moot because SFFA seeks permanent injunctive relief and this Court's power to grant injunctive relief survives any discontinuance of illegal conduct.

The motions to dismiss should be denied. The Court should instead grant SFFA summary judgment and issue a permanent injunction to ensure that the right to public education is "made available to all on equal terms." *Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954).

**BACKGROUND**

To avoid repetition, SFFA incorporates by reference the background to its motion for summary judgment.

**ARGUMENT**

UT and Intervenors both argue mootness based on changes that UT made after *Harvard*. Intervenors separately try—in yet another vain effort—to argue that SFFA lacks standing. Neither argument is a reason to dismiss the case. UT's implicit concession that it should lose under *Harvard* is correct. But that is a reason to *grant judgment for SFFA*, not to dismiss the case with no remedy for UT's unlawful racial discrimination.

**I.   This case is not moot.**

This case is not moot for three independent reasons. First, UT's new admissions policy still violates the constitution and harms SFFA's members. Second, even if its new policies were lawful, UT has not carried its heavy burden of showing that its voluntary cessation is permanent. Third, the Court can still grant SFFA effective injunctive relief that will prevent UT from discriminating based on race.

**A.   UT's policies remain unconstitutional.**

A defendant cannot prove mootness merely by eliminating "the possibility that the *selfsame* [policy] will be enacted." *Ne. Fla. Chap. of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993); *see Cooper v. McBeath*, 11 F.3d 547, 550-51 (5th Cir. 1994). "[I]f that were the rule, a defendant could moot a case by repealing the challenged [policy] and replacing it with one that differs only in some insignificant respect." *City of Jacksonville*, 508 U.S. at 662. When a government's actions do not eliminate the plaintiff's injury, the case is not moot because the court can still "'grant . . . effectual relief . . . to the prevailing party.'" *Texas v. Biden*, 20 F.4th 928, 958 (5th Cir. 2021), *rev'd on other grounds*, 142 S.Ct. 2528 (2022) (quoting *Knox v. SEIU, Loc. 1000*, 567 U.S. 298, 307 (2012)).

This case is not moot because UT's new policy is unlawful and injuring SFFA's members. As explained in SFFA's motion for summary judgment, UT's revised admissions policy still uses race and

continues to violate the Fourteenth Amendment and Title VI. *See* Mot. S.J. 7-8, 12-13. Because "[t]he gravamen of [SFFA's] complaint is that its members are disadvantaged in their efforts" to obtain admission to UT, SFFA's case is still live, even if UT's new policy "may disadvantage [SFFA's members] to a lesser degree than the old one." *City of Jacksonville*, 508 U.S. at 662.

      **B.**    **UT has not carried its heavy burden to prove that it won't discriminate based on race again.**

Even if UT's new policy were lawful, the parties' controversy over the policy in place when SFFA sued is still live. Unlike defendants that comply with new statutes or regulations, *see* UT-Mot. 3, UT is seeking to moot this case through "'voluntary compliance'" with the Supreme Court's *Harvard* decision. *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020) ("'voluntary compliance'" with intervening Supreme Court decision did not moot the case). But "[i]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). "If it did, the courts would be compelled to leave the defendant free to return to his old ways." *Id.* (cleaned up). Thus, the standard "for determining whether a case has been mooted by the defendant's voluntary conduct is stringent." *Id.* "'A defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Freedom from Religion Found*, 955 F.3d at 425 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)); *see Tucker*, 40 F.4th at 293. This "'heavy burden'" lies with the party asserting mootness. *Friends of the Earth*, 528 U.S. at 189.

UT cannot carry its formidable burden because it isn't "'absolutely clear'" that UT's wrongful racial discrimination cannot "'be expected to recur.'" *Id.* To begin, UT *never promises* to not bring back its old policies again. *See generally* Wasielewski Decl., Dkt.85-1. This refusal to commit to its new path weighs heavily against mootness. *See, e.g., Tucker*, 40 F.4th at 293 ("[T]he government has not even bothered to give Tucker any assurance that it will permanently cease engaging in the very conduct that

3

he challenges."); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328-29 (5th Cir. 2020) (no mootness where "the University has not issued a controlling statement of future intention.").

But "[e]ven assuming [UT has] no intention to alter or abandon" its new procedures, "the ease with which [it] could do so counsels against a finding of mootness, as 'a case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the provision.'" *Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir. 2013). UT's race-based admissions policy was not "'implemented by statute or regulation,'" but is merely an "internal policy." *Id.* at 900-01. Indeed, "the authority to establish policy" governing admissions appears to be "vested entirely" in the Office of Admissions, "such that the new policy . . . could be easily abandoned or altered in the future." *Id.*; *see* Wasielewski Decl. at 4 ¶12, Dkt.85-1. As such, no statute or regulation stops UT from again considering race in admissions after this lawsuit ends. A plaintiff's lawsuit is not mooted when the new policy can be easily withdrawn. *See Speech First*, 939 F.3d at 769 (claims not mooted by new policy issued by officials who have no "control over whether the University will reimplement" the former policy); *Hernandez v. Cremer*, 913 F.2d 230, 235 (5th Cir. 1990) (claims not mooted by new policy that was "subject to withdrawal at the discretion of the Service's District Director"); *United States v. Atkins*, 323 F.2d 733, 738-39 (5th Cir. 1963) (claim for injunction against racial discrimination in voter registration was not mooted where "[t]he only assurance . . . [was] the word of the present Registrars, not binding on [future appointees]"); *see also Reynolds v. Preston*, No. 22-cv-8408, 2023 WL 2825932, at *6 (N.D. Cal. Mar. 15, 2023) ("[A] 'policy change' announced in a declaration submitted with a motion . . . is 'not governed by any clear or codified procedures' and so cannot moot a claim."); *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998) (policy change did not moot a case because it was "not implemented by statute or regulation and could be changed again").

UT points to *Harvard* as the reason for its new admissions policy, but UT never concedes that the admissions policies and procedures it has purportedly abandoned are unlawful. The general rule is

4

that "courts are skeptical of claims of mootness where the defendant 'yields in the face of a court order' . . . but does not admit that the complained-of conduct was unlawful." *CAIR-Minn. v. Atlas*, 497 F. Supp. 3d 371, 377 (D. Minn. 2020) (quoting *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020)); *see Freedom from Religion Found.*, 955 F.3d at 422-23, 425 (no mootness where the government defendants argued only "that their behavior will change post-*Matal*"); *Speech First*, 939 F.3d at 770 (no mootness where the University argued that "'[e]ven before'" it abandoned its policy, the policy "'easily met constitutional standards'").

Even if the Court believes that UT will never officially and openly return to race-based admissions, this case is still not moot. That is because UT has failed to "implemen[t] . . . procedural safeguards" to ensure that its admissions officers do not violate its new policy and continue to consider race. *Fikre v. FBI*, 904 F.3d 1033, 1040 (9th Cir. 2018). Because admissions officers who make admissions decisions continue to have free access to racial check-box data and aggregate reports, they could easily—and discretely—continue to employ racial preferences. *See* Mot. S.J. 7-8. UT's failure to guard against such violations weighs strongly against mootness.

UT argues that it enjoys a "presumption of good faith" and a "lighter burden" in proving that racial discrimination in admissions will not recur. UT-Br.4 (citing *Freedom from Religion Found.*, 58 F.4th at 833). To begin, any deference to government officials is "irreconcilable with" *West Virginia v. EPA*, which held that the government, just like other parties, bears a "'heavy'" burden of establishing that the wrongful behavior will not recur. *Netflix, Inc. v. Babin*, 641 F. Supp. 3d 319, 330-31 (E.D. Tex. 2022) (quoting *West Virginia v. EPA*, 142 S.Ct. 2587, 2607 (2022)). Yet even if some government actors could receive a presumption of good faith, "this relaxed standard has not been applied to voluntary cessation by a public university," and there is no good reason to do so here. *Speech First*, 979 F.3d at 328. And even under a relaxed standard, UT cannot satisfy its burden of making it "'absolutely clear'" that it won't again discriminate on the basis of race. *Id.*

5

### C. SFFA has not received all the relief to which it is entitled.

"A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox*, 567 U.S. at 307 (cleaned up). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* at 307-08 (cleaned up); *see, e.g.*, *Clarke v. CFTC*, 74 F.4th 627, 636 (5th Cir. 2023) (case not moot because "[t]he parties continue to spar over" whether a preliminary injunction is warranted).

Here, even if the Court believes that SFFA's request for declaratory relief is moot, its requests for injunctive relief are not. SFFA seeks an injunction prohibiting UT from reinstituting its prior admissions policy or considering race in admissions decisions. That request isn't moot. "'[T]he court's power to grant injunctive relief survives discontinuance of the illegal conduct.'" *United States v. Jarrah*, No. 16-cv-2906, 2017 WL 1048123, at *3 (S.D. Tex. Mar. 20, 2017) (quoting *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 126 (5th Cir. 1973)). Thus, "[e]ven if [UT has] ended" its "discriminatory practices and policies, the Court [can] still issue an injunction to prevent a return to such unlawful activity." *Id.* SFFA also seeks a permanent injunction prohibiting any individuals in UT's admissions office from receiving or having access to racial check-box data or aggregate reports on race during the admissions process. That request for injunctive relief likewise isn't moot because UT admits that it is continuing these practices, which have no lawful purpose. Mot. S.J. 7-8, 12-16.

## II. SFFA continues to have associational standing.

An organization has standing if "'(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Harvard*, 600 U.S. at 199. Every court to apply this test to SFFA—this Court, the Fifth Circuit in this case, and the Supreme Court in *Harvard*—has held that "SFFA complies with the[se] standing requirements." *Id.*; *SFFA v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1086 (5th Cir. 2022); *SFFA v. Univ. of Tex. at Austin*, No. 20-cv-763, 2021 WL 3145667, at *6-7 (W.D. Tex. July 26, 2021). "SFFA

6

has adequately alleged"—and now shown, Mot. S.J. 8-13—that UT's race-conscious policy puts its white and Asian members on "unequal footing with other applicants based on race." *SFFA*, 37 F.4th at 1086.

SFFA currently has at least one member who has applied to UT, has been denied admission, and is able and ready to apply as a transfer student were a court to order UT to stop knowing or considering race or ethnicity when making admissions decisions. Connolly Decl., Ex. O ¶¶4-6; *id.* Ex. P ¶¶3, 5-6. Nothing more is needed to show "an applicant is injured by being denied the 'opportunity to compete for admission on an equal basis.'" *SFFA*, 37 F.4th at 1086 (quoting *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003)); *see also Harvard*, 600 U.S. at 199-201.

The Intervenors (and only the Intervenors) argue that the case is moot because SFFA's initial standing members have graduated. Intervenors-Mot. 10 n.8. This argument is foreclosed by *Harvard*. SFFA's initial members had all graduated by the time the *Harvard* and *UNC* cases were decided too—nearly nine years after those cases were initially filed. Those cases weren't moot because an association has standing so long as it has *one* member with a live claim. That member can change as the case proceeds. *Harvard*, 600 U.S. at 199-201; *see also Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1037 (6th Cir. 2022).

Finally, the Intervenors argue that SFFA lacks standing to challenge UT's current admissions policy because this policy doesn't deprive SFFA's members of the "'opportunity to compete for admission on an equal basis.'" Intervenors-Mot. 10-11. But that argument deals with the merits, not standing. This Court must presume that SFFA will prevail on the merits for standing purposes. *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007). Nor does it matter that SFFA did not explicitly reference UT's new policy in its original complaint. SFFA challenges UT's "admissions policies and procedures." Dkt. 13 at 49; *see also City of Jacksonville*, 508 U.S. at 662. In any event, SFFA

7

could of course amend its complaint if necessary. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

## CONCLUSION

The Court should deny the motions to dismiss.

Dated: November 27, 2023                                    Respectfully submitted,

                                                            */s/ J. Michael Connolly*

                                                      Thomas R. McCarthy (*pro hac vice*)
J. Michael Connolly
Cameron T. Norris
Steven C. Begakis (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
mike@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com

*Counsel for Plaintiff Students for Fair Admissions, Inc.*

8

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record via the Court's electronic filing and service on November 27, 2023.

*/s/ J. Michael Connolly*
