IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CAUSE NO.: 1:20-cv-763-RP |
| UNIVERSITY OF TEXAS AT AUSTIN, et al., | § § § | |
| Defendants. | § § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS FOR MOOTNESS**

To the Honorable Judge Robert Pitman:

UT Austin and the officials sued in their official capacity (collectively, "Defendants") file this reply in support of Defendants' Motion to Dismiss for Mootness.

Following the Supreme Court's June 29 decision in *SFFA v. President and Fellows of Harvard College*, 600 U.S. 181 (2023) ("*SFFA*"), UT Austin eliminated race and ethnicity from the factors considered in its undergraduate admissions decisions. Because SFFA's purpose in bringing this lawsuit was to end UT Austin's consideration of race and ethnicity in admissions, this dispute is now moot. Nevertheless, SFFA argues that this case is not moot for three reasons: (1) UT Austin's admission staff could consider race in violation of university policy; (2) UT Austin's changes to its admissions policy fall within the "voluntary-cessation" exception to mootness; and (3) SFFA is entitled to an injunction prohibiting UT Austin from using a prior admissions policy that UT Austin no longer uses. Each ground is equally unavailing. This case is moot and should be dismissed.

**I.    UT Austin no longer considers race or ethnicity as factors in admissions decisions.**

UT Austin's evidence demonstrates that under the university's current admissions policy, implemented shortly after the *SFFA* decision, the race or ethnicity of an applicant is not considered

in admissions decisions. Doc. No. 85-1. SFFA hypothesizes that university employees could consider race in violation of university policy. But SFFA offers no evidence to support its conjectures. *Cf. Daves v. Dallas County*, 64 F.4th 616, 634 (5th Cir. 2023) (holding that a challenge to the county's bail practices became moot after a change in state bail law where the plaintiff offered "minimal evidence" about county bail proceedings after the new law took effect). Moreover, SFFA ignores that UT Austin instructs its officers and employees not to consider race as a factor in admissions decisions and has implemented processes to train and supervise file reviewers to ensure compliance with this policy. Doc. No. 85-1. SFFA's contention that "the parties' controversy over the policy in place when SFFA sued is still live," Doc. No. 88 at 3, is simply wrong.

SFFA also complains that UT Austin continues to collect race and ethnicity data, *id.* at 5, but it does not dispute that Texas law requires UT Austin to do so. In any event, merely collecting demographic data is not racial discrimination. *Cf. Caulfield v. Bd. of Ed. of City of New York*, 583 F.2d 605, 611 (2d Cir. 1978) (holding "the Constitution itself does not condemn the collection of [] data" on racial and ethnic identities). And in light of the changes in policy made and implemented by UT Austin, SFFA cannot show any connection between the collection of demographic data and the admissions decisions that are the sole focus of their pleaded causes of action.

II.     **The voluntary-cessation exception to mootness does not apply.**

SFFA next argues that UT Austin's formal cessation of the use of race in admissions does not moot this case because UT Austin's cessation was voluntary and the university could resume considering race if this lawsuit were dismissed. Doc. No. 88 at 3. This argument fails for two reasons. First, the voluntary-cessation exception does not apply because UT Austin's changes to its admissions policy were not voluntary; they were compelled by change in the law that resulted from a decision of the U.S. Supreme Court. Moreover, even if the voluntary-cessation doctrine were applicable, SFFA

has offered nothing to overcome the presumption that UT Austin's policy changes were made in good faith.

### A. UT Austin's changes to its admissions policy were compelled by a change in the law.

As the Fifth Circuit has recognized, the voluntary-cessation exception to mootness does not apply when a change in policy is compelled by a change in the law. *See Daves*, 64 F.4th at 634 (concluding that the voluntary-cessation exception was inapplicable when the defendant officials changed the county's bail policies to comply with changes to the state's bail law); *N.Y. State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (concluding a lawsuit challenging a rule regarding the transportation of firearms became moot after the state amended its firearm licensing statute and the city amended the challenged rule). Here, UT Austin changed its admissions policies in response to the Supreme Court's decision in *SFFA*. Accordingly, "[v]oluntary cessation is not involved here." *Daves*, 64 F.4th at 634.

SFFA argues that compliance with new Supreme Court precedent is not the same as compliance with a new statute or regulation. Doc. No. 88 at 3. But the Supreme Court's new interpretation of a federal statute or constitutional provision is just as binding on a university as a new statute or regulation. *See Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1230–31 (4th Cir. 1989), *cert. denied*, 495 U.S. 904 (1990) (holding case was moot because there was no reasonable expectation Virginia would resume enforcing challenged statute in light of Supreme Court decision striking down similar statute); *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 307 (3d Cir. 2020) ("Once the Supreme Court changed course in *Janus*, the unions immediately stopped collecting agency fees. . . . So we see no reasonable likelihood that the unions will try to collect agency fees from the teachers ever again.").

SFFA cites *Freedom from Religion Foundation v. Abbott*, 955 F.3d 417 (5th Cir. 2020) ("*Abbott I*") to claim that an intervening Supreme Court decision cannot moot a case. Doc. No. 88 at 3. But SFFA misreads *Abbott I*. In that case, the governmental defendants contended that a lawsuit challenging a

3

nativity display became moot following the Supreme Court's decision in *Matal v. Tam*, 582 U.S. 218 (2017), a decision that they claimed "constituted a sea change in the law." *Abbott I*, 955 F.3d at 425. But the Fifth Circuit recognized that *Matal* merely "clarified the contours of the First Amendment" and "did *not* constitute a sea change in the law." *Id* (emphasis added). Here, by contrast, the *SFFA* decision represents a significant shift in the Supreme Court's interpretation of the Equal Protection Clause, which the Court had — only seven years earlier — interpreted to allow UT Austin's limited consideration of race under its prior admissions policy. *See Fisher v. Univ. of Tex. at Austin*, 579 U.S. 365 (2016). Further, the *Abbott I* court held that *Matal* did not moot the lawsuit because the government officials "ha[d] only presented arguments through counsel that their behavior *will* change post-*Matal*." *Abbott I*, 955 F.3d at 425 (emphasis added). In other words, the case was not moot because the government officials had not taken steps to comply with *Matal*. Here, by contrast, the unrebutted evidence shows that UT Austin changed its admissions policy to eliminate the consideration of race in direct response to the change in law announced by the Supreme Court in *SFFA*. *Abbott I* does not support SFFA's efforts to resist mootness.

### B. SFFA has not overcome the presumption that UT Austin's policy changes were made in good faith.

Even if UT Austin's compliance with the *SFFA* decision could somehow be considered "voluntary," *contra Daves*, 64 F.4th at 634, UT Austin would be entitled to a presumption of good faith, and nothing in SFFA's response justifies disregarding that presumption.

Under the voluntary-cessation exception, a private defendant cannot moot a lawsuit simply by ending its unlawful conduct after being sued. *Yarls v. Bunton*, 905 F.3d 905, 910 (5th Cir. 2018). But a governmental official or entity is not a self-interested private party. *Id.* at 911; *see Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009) (noting that "courts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity"), *aff'd*, 563 U.S. 277 (2011). Because a

4

governmental entity is a public representative, courts presume that it acts in good faith. *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) ("*Abbott II*"). Accordingly, a court must presume that changes to official governmental policy are not mere litigation posturing unless the record contains evidence to the contrary. *Id.* A governmental entity's theoretical ability to reimplement a challenged policy is insufficient to overcome this presumption. *Id.*; *U.S. Navy SEALS 1-26 v. Biden*, 72 F.4th 666, 674 (5th Cir. 2023).

Unable to produce any evidence that UT Austin is not acting in good faith, SFFA argues that the presumption of good faith does not apply to a public university. SFFA Resp. at 5 (citing *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020)). But in *Speech First*, the Fifth Circuit assumed that the presumption applied to the former president of the UT Austin. 979 F.3d at 328. Moreover, the presumption of good faith is based on a governmental entity's role as a representative of the public interest generally, not its particular function. *See Abbott II*, 58 F.4th at 833. There is no question that UT Austin is a public representative of the State. *See* Tex. Const. art. VII, § 10. As such, it is afforded the presumption that it acts in good faith when announcing a change to its admissions policy.

Because SFFA offers no evidence to rebut the presumption that UT Austin acted in good faith when it changed its admissions policy, the voluntary-cessation exception is inapplicable. There is no evidence suggesting that the changes are mere litigation posturing. *See Yarls*, 905 F.3d at 910 ("But no matter whose actions are credited with mooting the case . . . this case neither invokes the skepticism normally associated with 'defendant-induced mootness' nor raises suspicions of 'litigation posturing.'"). And nothing in the record suggests that UT Austin will reimplement its previous race-conscious admissions policy. *Abbott II*, 58 F.4th at 833 ("We conclude that the voluntary-cessation exception to mootness does not apply here because nothing in the record suggests that the Board will reimplement the Capitol Exhibit Rule."). To the contrary, UT Austin's history of revising its admissions policy to comply with decisions of the Fifth Circuit and the U.S. Supreme Court —

5

eliminating consideration of race following *Hopwood v. Texas*, 78 F.3d 932 (5th Cir. 1996)), adding race as a factor following *Grutter v. Bollinger*, 539 U.S. 306 (2003), and again eliminating consideration of race in the wake of *SFFA* — demonstrates UT Austin's commitment to following the law as interpreted by the judiciary.

SFFA relies on *Speech First* to argue that a presumption of good faith is defeated by a lack of a controlling statement of future intention, SFFA Resp. at 3-4, but SFFA's reliance is misplaced. The Fifth Circuit did not hold in *Speech First* that any such statement is required; instead, it considered Sixth Circuit precedent "only *arguendo*" on that point. *Speech First*, 979 F.3d at 328–29 (citing *Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019)). The Fifth Circuit's subsequent holdings do not require such a statement, but instead require the plaintiff to produce some evidence to overcome the presumption of good faith. *See, e.g.*, *U.S. Navy SEALS 1-26*, 72 F.4th at 673–74 (explaining that the fact that a government entity could reimplement a challenged policy "does not change the mootness calculus"); *Abbott II*, 58 F.4th at 833 ("We conclude the voluntary-cessation exception to mootness does not apply here because nothing in the record suggests that the Board will reimplement the Capitol Exhibit Rule."). And even under the Sixth Circuit's test, the exception to mootness considers not just a failure to make "a controlling statement of future intent," but also a failure to explain the timing of the policy changes and a continued defense of the challenged policies. *Speech First*, 979 F.3d at 328–29. Neither element applies here: UT Austin has explained that the timing of its policy changes was due to changes in the law effected by the Supreme Court's decision in *SFFA*, and in the wake of *SFFA*, UT Austin is not seeking to defend the limited consideration that was given to race under its pre-*SFFA* admissions policy.

*Speech First* is also factually distinguishable. *Speech First* involved challenges to four UT Austin policies related to students' speech. *Speech First*, 979 F.3d at 323. In the middle of litigation, UT Austin amended three of these policies, but not the fourth. *Id.* at 327. With the fourth policy unaltered, the

6

case was not moot. *See id.* at 328 ("Of course, the University could reconcile the contradictory policies by revising the [fourth policy] to align with the newly fashioned Institutional Rules, but it could easily reconcile them in the opposite way."). Here, by contrast, no allegedly contradictory, unaltered policy exists to support SFFA's attempt to analogize this case to *Speech First*.

Even if a controlling statement of future intent were required, the Board of Regents of the University of Texas System has taken formal steps to make sure that its component institutions, including UT Austin, comply with *SFFA*. The Board of Regents previously had a rule that "Each institution is authorized to develop and propose plans regarding whether to consider an applicant's race and ethnicity, as part of the institution's admissions or financial assistance policies, in accordance with the standards enunciated in the United States Supreme Court cases of *Grutter v. Bollinger* and *Gratz v. Bollinger*." Regents' Rules and Regulations R. 40304.[1] In August, the Board voted to repeal Regents' Rule 40304 "based upon the June 29, 2023, United States Supreme Court decision prohibiting the use of race as a factor in student admissions." Minutes of the U.T. Sys. Bd. of Regents, Aug. 24, 2023, at 261.[2] In light of the *SFFA* decision and the Board's decision to repeal Regents' Rule 40304, the Court can be confident that UT Austin's admissions policy will remain in conformance with the law as articulated by the United States Supreme Court.

Finally, SFFA's argument that the presumption of good faith is irreconcilable with *West Virginia v. EPA*, 142 S. Ct. 2587 (2022), is unavailing. In *West Virginia*, the Supreme Court concluded that the EPA's representation that it "has no intention of enforcing the Clean Power Plan prior to promulgating a new Section 111(d) rule" did not moot an action reviewing the Clean Power Plan

---

[1] A copy of Regents' Rule 40304 is attached as **Exhibit 1** and can be accessed online at: https://www.utsystem.edu/sites/default/files/offices/board-of-regents/rules-regulations/40304.pdf. Defendants request the Court take judicial notice of this rule and its repeal.

[2] An excerpt of the relevant portion of the Board's minutes is attached as **Exhibit 2**. The full minutes are available online at: https://www.utsystem.edu/offices/board-of-regents/meetings. Defendants request the Court take judicial notice of these minutes.

because the government (1) did not suggest it would not reimpose emissions limits predicated on generation shifting if litigation were resolved in its favor and (2) vigorously defended the legality of its approach. 142 S. Ct. at 2607. This case is in a different posture. Unlike the EPA in *West Virginia*, UT Austin's mootness argument is not founded on its mere representation that it will change its admissions policy—UT Austin's changes to its admissions policy have already been implemented. Doc No. 85-1. In addition, UT Austin is not "vigorously defending" its previous race-conscious admissions policy, which UT Austin recognized had to be changed to comply with *SFFA*. And most significant, the Fifth Circuit has continued to apply the presumption of good faith in cases involving governmental defendants decided after *West Virginia*. *See U.S. Navy SEALS 1-26*, 72 F.4th at 673–74; *Abbott II*, 58 F.4th at 833. The presumption of good faith by governmental entities thus remains good law.

### III. SFFA is not entitled to injunctive relief.

SFFA claims this case is not moot because the Court could grant additional effectual injunctive relief by prohibiting UT Austin "from reinstituting its prior policy or considering race in admissions decisions" and by prohibiting any individuals in UT's admissions office from having access to racial data collected from applications forms. As the plaintiff, SFFA must satisfy the court that additional relief is needed. *See United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 126 (5th Cir. 1973) ("The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive."). There is no such cognizable danger here—only SFFA's baseless supposition that UT Austin or its employees will ignore university policy and U.S. Supreme Court precedent. UT Austin has formally changed its admissions policy to prohibit the consideration of race and trained its officers and employees not to consider race as a factor in admissions decisions. The requested injunction will serve no meaningful purpose.

**Prayer**

The Court should grant Defendants' Motion to Dismiss and dismiss this case on mootness grounds. Defendants pray for such other and further relief to which they may show themselves to be justly entitled.

                                          Respectfully Submitted,

GRAVES DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2700
Austin, Texas 78701
(512) 480-5725 (phone)
(512) 539-9938 (fax)

By:    /s/ *William Christian*
        Matthew C. Powers
        Texas State Bar No. 24046650
        mpowers@gdhm.com
        William Christian
        State Bar No. 00793505
        wchristian@gdhm.com
        Marianne W. Nitsch
        Texas State Bar No. 24098182
        mnitsch@gdhm.com

**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record for Plaintiff via the Court's electronic filing and service system and also via email service as indicated below, on this the 11th day of January, 2024:

J. Michael Connolly
Cameron T. Norris
Steven C. Begakis
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
mike@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com
**Attorneys for Plaintiff**

David Hinojosa
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW, Suite 900
Washington, DC 20005
dhinojosa@lawyerscommittee.org
**Attorneys for Intervenors**

*/s/ William Christian*