IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | CAUSE NO.: 1:20-cv-763-RP |
| UNIVERSITY OF TEXAS AT AUSTIN, et al., | § § § | |
| Defendants. | § § | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

To the Honorable Judge Robert Pitman:

UT Austin and the officials sued in their official capacity (collectively, "Defendants") file this response in opposition to SFFA's motion for summary judgment.

SFFA seeks an injunction to prohibit UT Austin from using a prior admissions policy that UT Austin no longer uses, and to prevent its admissions officers from using data on the race and ethnicity of applicants that UT Austin expressly prohibits its admissions officers from considering in the admission process. Because the undisputed evidence shows that UT Austin's current, race-neutral admissions process is fully compliant with the law, the Court should deny SFFA's motion and dismiss this case as moot.

**I.      Claims based on UT Austin's pre-*SFFA* admissions policies are moot.**

As explained in detail in UT Austin's motion to dismiss (Doc. No. 85), UT Austin changed its undergraduate admissions process several months ago in response to the United States Supreme Court's decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) (*SFFA*).

For many years prior to the Fall 2023 admissions cycle, race entered UT Austin's admissions process "at one stage and one stage only": in the calculation of a student's holistic review score. *Fisher v. Univ. of Tex. at Austin*, 579 U.S. 365, 374 (2016) ("*Fisher II*"). During that time, UT Austin "consider[ed] race as one of various factors in its undergraduate admissions process." *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297 (2013) ("*Fisher II*"). In 2016, the Supreme Court held that UT Austin's limited consideration of race did not violate the Equal Protection Clause. *Fisher II*, 579 U.S. at 381-88. *Fisher II* remained the law of the land until this past June, when the Supreme Court revised its interpretation of the Equal Protection Clause. *See SFFA*, 600 U.S. at 208-25.

Following the *SFFA* decision, UT Austin removed race and ethnicity as a subfactor for consideration during the holistic review process, as explained in the declaration of UT Austin's Vice Provost of Admissions. Doc. No. 85-1, Decl. of Miguel Wasielewski at ¶¶ 11, 19–21.[1] Under UT Austin's current admissions process, before an application is distributed to file reviewers, UT Austin removes the "checkbox" data describing an applicant's race or ethnicity. Doc. No 85-1 ¶¶ 13–17. And UT Austin has instructed all admissions staff that, if an applicant's essay responses or other application materials reveal their race or ethnicity, that information may not be considered as a positive or negative factor in scoring the application. Doc. No. 85-1 ¶¶ 22–25. As explained in UT Austin's motion to dismiss, these substantive changes to UT Austin's admissions policy—made in good faith in response to a change in the law by the Supreme Court—render this dispute moot and warrant dismissal. Doc. No. 85. At the very least, SFFA is not entitled to summary judgment based on UT Austin's past admissions policies that are no longer in effect.

---

[1] For summary judgment evidence, UT Austin relies on and incorporates by reference the previously filed Declaration of Miguel Wasielewski (Doc. No. 85-1) and his Supplemental Declaration attached to this response as <u>Exhibit 1</u>.

**II.     UT Austin's post-*SFFA* admissions policies do not discriminate on the basis of race.**

Focusing on UT Austin's collection of the "checkbox" demographic data from the Common App or Apply Texas, SFFA maintains that UT Austin's current policy unlawfully discriminates on the basis of race. But as established by the sworn declaration of UT Austin's Vice Provost of Admissions, UT Austin does not use that checkbox data to score applications during holistic review. Doc. No. 85-1; Exhibit 1 (Supplemental Declaration). That data is redacted from each applicant's file before review; admissions officers are instructed to consider only the materials in an applicant's file; and admissions officers are instructed not to consider an applicant's race in scoring the file. Doc. No. 85-1 ¶ 12; Exhibit 1 ¶ 3. The unrebutted evidence shows that "UT Austin no longer considers an applicant's race and ethnicity as part of the process for making admissions decisions for individual applicants." Doc. No. 85-1 ¶ 18.

That UT Austin still collects the checkbox data on race and ethnicity from the Common App and Apply Texas does not mean that UT Austin discriminates on the basis of race in the application process. The *SFFA* decision forbids universities to "make admissions decisions that turn on an applicant's race." *SFFA*, 600 U.S. at 208. It does not prohibit universities from collecting data on the race and ethnicity of applicants, or from using it for purposes other than making admissions decisions. Thus, to the extent SFFA is now complaining that UT Austin uses this demographic information for purposes other than making admissions decisions, its live pleading does not support that allegation. *See* Doc. No. 13.

Moreover, UT Austin has a legitimate reason to collect this demographic information. UT Austin is required by law to report data on the race and ethnicity of applicants to the Texas Higher Education Coordinating Board. *See* Tex. Educ. Code § 51.762 ("In addition to other information considered appropriate by the board, the board by rule shall require each institution to collect information regarding gender, ethnicity, and date of birth as part of the application process and report

3

this information to the board."); 19 Tex. Admin. Code § 4.10(c)(1)(A) (requiring the Texas App form to collect "biographical information including gender, ethnicity, and date of birth").[2] And UT Austin is required by law to publish an annual report "describing the composition of the institution's entering class of students," "including a breakdown by race, ethnicity, economic status, and high school class standing." Tex. Educ. Code § 51.4032. SFFA ignores these legal requirements.

SFFA hypothesizes that an individual employee in the admissions office at UT Austin could, contrary to university policy, access and use the checkbox data in an impermissible way during the admissions process. But SFFA offers no evidence to support this speculation, and SFFA's unwarranted presumption that employees will disregard UT Austin's policy is not evidence that UT Austin is making unlawful admissions decisions. To the contrary, the undisputed evidence shows that UT Austin has trained its officers and employees not to consider race as a factor in admissions decisions, has a process to supervise file reviewers to ensure compliance with its admissions policies, and will conduct a review after the current admissions cycle to "make any changes necessary to those policies or the training and supervision of Office of Admissions staff to ensure that race and ethnicity are not considered as factors in UT Austin's undergraduate admissions." Doc. No. 85-1 ¶ 27.

Unable to point to any evidence that UT Austin considers race in an unlawful manner, SFFA instead relies on press releases from two other schools and a stipulation of dismissal in a lawsuit involving a third school to argue that UT Austin could do more to ensure that the checkbox data is not used in an improper manner. Doc. No. 87 at 6-7. SFFA does not claim that any of these other schools prohibit the collection of checkbox data, which would not be a viable option for UT Austin

---

[2]   *See also* Texas Higher Education Coordinating Board, Reporting and Procedures Manual for Texas Public Universities, at 154 (2023) (requiring that Texas universities report information on race and ethnicity of applicants) (available at: https://reportcenter.highered.texas.gov/agency-publication/guidelines-manuals/reporting-manual-universities-spring-2023/).

4

due to the reporting requirements of Texas law. To the contrary, one of them (Haverford College) has stated its intention to continue to use the checkbox information for data analysis purposes:

> Haverford will continue to ask applicants to select their race and ethnicity but will not be able to use that information to influence their decision. [Vice President and Dean of Admission and Financial Aid Jess] Lord clarifies that "We will still be able to use [applicants' race and ethnicity] for data analysis as long as it's not directly influencing any decision that we're making."

Doc. No. 87-5. In any event, the fact that another school may choose to implement different policies or procedures is no evidence that UT Austin's policy is unlawful. The relevant point, which SFFA offers no evidence to rebut, is that UT Austin—like the three schools SFFA cites—no longer uses racial checkbox data to determine who is offered admission. Doc. 85-1 ¶ 18.

SFFA cites *United States. v. Fordice*, 505 U.S. 717, 734 (1992) for the proposition that, despite SFFA's failure to provide any evidence of unlawful admissions practices, this Court can nevertheless enjoin UT Austin's facially nondiscriminatory admissions policy. But *Fordice* is easily distinguished and does not support SFFA's argument.

In *Fordice*, the State of Mississippi maintained *de jure* racial segregation in its higher education system for more than a decade after the Supreme Court outlawed it in *Brown v. Board of Education*, 347 U.S. 483 (1954). *See Fordice*, 505 U.S. at 721-22. Even after the State reluctantly began admitting Black students to some of its universities, it adopted admissions practices that were intended to exclude Black students from gaining admission to all-white universities and that had the effect of perpetuating segregation in Mississippi's university system. *See id.* at 734 ("The present admissions standards [at Mississippi universities] are not only traceable to the *de jure* system and were originally adopted for a discriminatory purpose, but they also have present discriminatory effects."). Under such circumstances, the Supreme Court held, the "State does not discharge its constitutional obligations until it eradicates policies and practices traceable to its prior *de jure* dual system that continue to foster segregation." *Id.* at 728.

5

This case is nothing like *Fordice*. In *Fordice*, the State of Mississippi maintained *de jure* segregation for years in defiance of the Supreme Court's *Brown* decision, and later adopted facially race-neutral admissions practices that were intended to maintain *de facto* segregation. By contrast, UT Austin's prior admissions program was upheld as lawful by the Supreme Court in *Fisher II*, and UT Austin promptly revised its admissions process to remove race as a factor in admissions decisions following the *SFFA* decision last June. Moreover, SFFA has not even alleged (much less offered evidence to prove) that UT Austin's current admissions policies are traceable to a *de jure* system of discrimination, were adopted for a discriminatory purpose, or have present discriminatory effects. In sum, *Fordice* provides no support for enjoining UT Austin's current admissions policies.

## Prayer

The Court should deny SFFA's motion for summary judgment and dismiss this cause for want of subject matter jurisdiction. Defendants pray for such other and further relief to which they may show themselves to be justly entitled.

Respectfully Submitted,

GRAVES DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2700
Austin, Texas 78701
(512) 480-5725 (phone)
(512) 539-9938 (fax)

By:   */s/ William Christian*
      Matthew C. Powers
      Texas State Bar No. 24046650
      mpowers@gdhm.com
      William Christian
      State Bar No. 00793505
      wchristian@gdhm.com
      Marianne W. Nitsch
      Texas State Bar No. 24098182
      mnitsch@gdhm.com

**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on counsel of record for Plaintiff via the Court's electronic filing and service system and also via email service as indicated below, on this the 11th day of January, 2024:

J. Michael Connolly
Cameron T. Norris
Steven C. Begakis
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, Virginia 22209
mike@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com
**Attorneys for Plaintiff**

David Hinojosa
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street, NW, Suite 900
Washington, DC 20005
dhinojosa@lawyerscommittee.org
**Attorneys for Intervenors**

*/s/William Christian*