# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| Students for Fair Admissions, Inc.,<br>*Plaintiff*,<br><br>v.<br><br>University of Texas at Austin, et al.,<br>*Defendants*,<br><br>and<br><br>The Black Student Alliance, the Texas Orange Jackets, the Texas National Association for the Advancement of Colored People, Adaylin Alvarez, Morgan Bennett, Liz Kufour, Brianna Mallorie McBride, Desiree Ortega-Santiago, Nima Rahman, Alexandra Trujillo, and Rosaleen Xiong,<br>*Defendant- Intervenors*. | Case No. 1:20-cv-763-RP |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**................................................................................................................................1

**BACKGROUND**................................................................................................................................2

      I.      UT-Austin's Historical Use of Race in Admissions....................................................2

      II.     SFFA's Attack on UT-Austin's Admissions Policy....................................................3

      III.   The Supreme Court's *Harvard* Decision ..................................................................4

      IV.   UT-Austin's Response to *Harvard* ..........................................................................6

**ARGUMENT**....................................................................................................................................7

      I.      Summary Judgment Is Not Appropriate Because the Court Lacks Jurisdiction.....7

      II.     SFFA Is Not Entitled to Summary Judgment.............................................................7

      III.   SFFA Is Not Entitled to Any Permanent Injunction................................................11

**CONCLUSION**..............................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*De Boulle Diamond & Jewelry, Inc v. Boulle, Ltd.*,
No. 12-cv-1462, 2015 WL 5033893 (N.D. Tex. Aug. 25, 2015)............................................13

*Ala.-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484 (5th Cir. 2014) ..............................7

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..............................................................................7

*Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237 (6th Cir. 2006)................13

*Dallas Fire Fighters Ass'n v. City of Dallas, Tex.*, 885 F. Supp. 915 (N.D. Tex. 1995) ...........10

*Duarte v. City of Lewisville, Texas*, 858 F.3d 348 (5th Cir. 2017)...........................................8, 9

*E.T. v. Paxton*, 19 F.4th 760 (5th Cir. 2021)................................................................................14

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)............................................12, 13, 14

*Env't Conservation Org. v. City of Dallas*, 529 F.3d 519 (5th Cir. 2008)..................................12

*Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297 (2013)..............................................................2, 3

*Fisher v. Univ. of Tex. at Austin*, 579 U.S. 365 (2016).......................................................2, 3, 11

*Grutter v. Bollinger*, 539 U.S. 306 (2003) ....................................................................................3

*Haley v. DeSoto Par. Sch. Bd.*, 600 F. Supp. 3d 690 (W.D. La. 2022) ......................................11

*Hopwood v. Texas*, 78 F.3d 932 (5th Cir. 1996)............................................................................2

*Mejia v. Big Lots Stores, Inc.*,
No. 13-CA-504, 2014 WL 12495292 (W.D. Tex. Oct. 16, 2014) ........................................8, 9

*Milliken v. Bradley*, 433 U.S. 267 (1977) ...................................................................................14

*Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265 (1978)................................................................2

*Ryan v. Grapevine-Colleyville Indep. Sch. Dist.*,
No. 4:21-CV-1075, 2023 WL 2481248 (N.D. Tex. Mar. 13, 2023) ........................................8

*Students for Fair Admissions v. President and Fellows of Harvard College*,
600 U.S. 181 (2023) ........................................................................................................passim

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
37 F.4th 1078 (5th Cir. 2022)...................................................................................................4

*United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504 (5th Cir. 2008) .............................. 8

*United States v. Fordice*, 505 U.S. 717 (1992) ................................................................... 10, 11

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977) ......................... 8

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ............................................................ 12

## **Statutes**

Tex. Educ. Code § 51.803 (West Cum. Supp. 2015) ................................................................... 2

Title VI of the Civil Rights Act of 1964 ......................................................................... 1, 2, 4

## **Other Authorities**

Fed. R. Civ. P. 56(a) .......................................................................................................... 7

## **Constitutional Provisions**

U.S. CONST. amend. XIV, § 1 .......................................................................................... 1, 2, 4

**INTRODUCTION**

Plaintiff Students for Fair Admissions, Inc.'s ("SFFA") Motion for Summary Judgment [ECF No. 87 ("Mot.")] is both improper and without merit. SFFA challenges Defendant University of Texas at Austin's ("UT-Austin") former race-based admissions policy under the Fourteenth Amendment's Equal Protection Clause and Title VI of the Civil Rights Act of 1964. However, and as further explained in Defendant-Intervenors' Motion to Dismiss [ECF No. 86], SFFA's case is moot because UT-Austin no longer uses race as a factor in admissions following the Supreme Court's decision in *Students for Fair Admissions v. President and Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"). Furthermore, SFFA does not have any members with standing to challenge the New Policy[1] as no members have applied under the New Policy, much less been harmed by it. Because the Court lacks jurisdiction, the Court must dismiss the case ahead of ruling on SFFA's motion.

Even if the Court determines that it has jurisdiction, SFFA's motion should be denied on the merits. At the heart of SFFA's equal protection and Title VI claims is intentional discrimination based on race. UT-Austin eliminated racial classifications in its admissions process and now has a race-neutral policy. Undeterred, SFFA now complains of UT-Austin's consideration and awareness of race for other purposes beyond admissions, including UT-Austin's aggregation of admissions data by race and inclusion of check-box data, which senior admissions officers may have access to but cannot consider for admissions decisions. But SFFA has provided zero evidence, much less uncontroverted evidence, demonstrating how such policies amount to intentional discrimination as a matter of law. SFFA's newly devised theories merely speculate that such policies and procedures *could possibly* be used in a discriminatory manner but

---

[1] Terms used herein have the same meeting ascribed to them in ECF No. 86.

on their face and based on existing evidence, they do not run afoul of the Equal Protection Clause or Title VI. SFFA's failure to establish this fundamental premise dooms its motion. Without a legal judgment in its favor, any discussion of the relief that SFFA is entitled to is irrelevant. Accordingly, Defendant-Intervenors respectfully request that the Court deny SFFA's motion for summary judgment.

## BACKGROUND

### I.     UT-Austin's Historical Use of Race in Admissions

UT-Austin has consistently abided by governing law concerning whether and how it can consider race in admission decisions. Prior to the Fifth Circuit's decision in *Hopwood v. Texas*, 78 F.3d 932 (5th Cir. 1996), UT-Austin considered race among other factors as permitted under precedent at the time. *See Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 304 (2013) ("*Fisher I*"); *see also Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 317–18 (1978) (holding that considering race as one among many factors is permissible under the Fourteenth Amendment). As required by *Hopwood*, UT-Austin stopped considering race in admissions decisions and instead relied on a new holistic metric of a candidate that did not include race (the Personal Achievement Index), to be used in conjunction with the Academic Index. *See Fisher I*, 570 U.S. at 304.

UT-Austin used this race-neutral admissions policy from 1996 to 2003, alongside the state's Top Ten Percent law implemented in 1998.[2] In 2003, the Supreme Court in *Grutter v. Bollinger* held that "student body diversity is a compelling state interest that can justify the use

---

[2] The Texas Legislature passed the Top Ten Percent Law in 1997, codified as Tex. Educ. Code § 51.803 (West Cum. Supp. 2015), which guarantees admission to public universities in Texas to students who graduate in the top ten percent of their class. *Fisher v. Univ. of Tex. at Austin*, 579 U.S. 365, 372 (2016) ("*Fisher II*").

of race in university admissions." 539 U.S. 306, 325 (2003). With this change in the law, which essentially overturned *Hopwood*, UT-Austin amended its admissions policy to allow for an applicant's race to be one of the factors considered in the holistic Personal Achievement Index (the "2004 Policy"). *See Fisher I*, 570 U.S. at 305–06.

UT-Austin's limited consideration of race under the 2004 Policy then became the subject of a lawsuit by Abigail Fisher in 2008. *Id.* at 300–02. Edward Blum, who would later go on to found SFFA, orchestrated the lawsuit. *See* ECF No. 45-1, Blum 2018 Tr. at 7:22–8:15, 111:22–113:13; ECF No. 45-2, Blum 2021 Tr. at 15:9–18:15. After eight years of litigation, the Supreme Court upheld UT-Austin's holistic consideration of race in admissions. *Fisher II*, 579 U.S. at 375–76. Accordingly, UT-Austin continued to use race as a factor in its admissions decisions.

## II.    SFFA's Attack on UT-Austin's Admissions Policy

Despite *Fisher II*, Mr. Blum continued to look for ways to challenge UT-Austin's consideration of race in admissions decisions. *See* ECF No. 45-1, Blum 2018 Tr. at 17:3–11, 27:4–20, 137:12–138:9; ECF No. 45-2, Blum 2021 Tr. at 20:9–21:20. A year after *Fisher II*, Mr. Blum, through SFFA, filed the first of three complaints against UT-Austin in state court.[3] *See* ECF No. 45-3. That action was dismissed for lack of standing. *See* ECF No. 45-4. SFFA brought a second challenge, also in state court, in 2019. *See* ECF No. 45-6. SFFA voluntarily dismissed this suit before the court could address UT-Austin's standing and *res judicata* challenges. *See* ECF No. 45-7.

Finally, in July 2020, SFFA filed the instant action—its third against UT-Austin in as many years. SFFA alleges that the UT-Austin undergraduate admissions policy that was in effect at the time violated the rights of its members under the Equal Protection Clause of the Fourteenth

---

[3] At this point, SFFA had already filed lawsuits against Harvard and the University of North Carolina at Chapel Hill challenging the use of race in their admissions policies.

Amendment and Title VI of the Civil Rights Act of 1964. ECF No. 13 ("Am. Compl.") at 2. SFFA alleged that, pursuant to this admissions policy, UT-Austin (1) failed to use race merely as a plus factor in admissions decisions and failed to continually reevaluate the basis for relying on race; (2) failed to use race-neutral alternatives that could achieve the student body diversity sought by UT-Austin; and (3) engaged in impermissible racial balancing. *Id.* ¶¶ 200–29. SFFA also brought a claim asking that the Court prohibit "the use of race as a factor in admissions" altogether. *Id.* ¶¶ 231–44.

On July 26, 2021, the Court dismissed with prejudice SFFA's claims as barred by *res judicata*. *See generally* ECF No. 56. SFFA appealed, and on June 20, 2022, the Fifth Circuit reversed and remanded the case. *See Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1087–90 (5th Cir. 2022). On remand, the parties stipulated that the case be stayed pending a Supreme Court decision in two cases also brought by SFFA concerning other universities' race-conscious admissions programs: *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 20-1199, and *Students for Fair Admissions, Inc. v. University of North Carolina at Chapel Hill*, No. 21-707.

### III.     <u>The Supreme Court's *Harvard* Decision</u>

The Supreme Court decided both the Harvard and UNC cases in a joint opinion issued on June 29, 2023. In *Harvard*, the Supreme Court held that Harvard's and UNC's race-conscious admissions programs violated the Equal Protection Clause of the Fourteenth Amendment and Title VI. *See* 600 U.S. at 213. In so ruling, the Supreme Court *did not* hold that all race-conscious admissions programs in higher education are unconstitutional. Rather, the Court reaffirmed the strict scrutiny analysis previously articulated in *Grutter v. Bollinger*, under which a university may consider race in admissions if it has a compelling interest to do so and its consideration of race is narrowly tailored to achieve that interest. *See id.* at 206–07. The Court clarified and

tightened that framework, however, indicating that a race-conscious admissions program is narrowly tailored only if four criteria are met: (1) there exists a meaningful connection between the means the university employs and the goals it pursues; (2) the program does not use race as a negative; (3) the program's use of race does not reinforce racial stereotypes; and (4) the program has a logical end point. *Id.* at 213–26. Ultimately, the Court concluded that Harvard's and UNC's respective programs did not survive strict scrutiny.

*Harvard* is also notable for what it does not foreclose.[4] The decision does not require a completely race-blind admissions process. For example, the ruling does not impact universities' ability to consider racial experiences as part of their admissions programs, holding that universities may consider "an applicant's discussion of how race affected his or her life, be it through discrimination, inspiration, or otherwise." *Id.* at 230. Universities also can continue to assess an applicant's mention of race in essay questions and other parts of an application so long as the applicant is "treated based on his or her experiences as an individual—not on the basis of race," *id.* at 231, and the decision does not foreclose universities from continuing to pursue and support diversity through other means, such as adopting race-neutral admissions programs that consider factors like high school class rank, socioeconomic status and wealth, overcoming adversity, and first-generation college student status. *See, e.g.*, *id.* at 284 (Thomas, J., concurring); *id.* at 317 (Kavanaugh, J., concurring).

---

[4] Though not relevant here, the decision also stated that its holding did not apply to military institutions because of "the potentially distinct interests that military academies may present." *Harvard*, 600 U.S. at 213 n.4. The decision also affirms that "remediating specific, identified instances of past discrimination that violated the Constitution or a statute" is a compelling interest that can "permit resort to race-based government action." *Id.* at 207.

IV.    **UT-Austin's Response to *Harvard***

In the wake of and in response to *Harvard*, UT-Austin swiftly began reviewing and amending its admissions policy and procedures and engaged in extensive communications concerning those modifications. At a hearing in this case on July 27, 2023, UT-Austin confirmed to this Court and all parties that it had amended its admission policy to no longer use race as a factor in admissions. In addition, UT-Austin decided to ensure that admissions file reviewers will not be able to access race and ethnicity data (known colloquially as "check the box" data) while an admissions decision is pending, which was not a step required by *Harvard*.[5] *See* ECF No. 85-1 ¶ 12. Finally, UT-Austin provided guidance and training to its admissions file reviewers before application reviews began in September. ECF No. 85-2.

To resolve the case, UT-Austin responded to several follow-up questions from SFFA and provided a written copy of its updated guidance for file reviewers. In response to SFFA's questions about the New Policy, UT-Austin indicated that, during the admissions cycle, "senior admissions officers have access to a 'dashboard' of aggregated data showing numbers of persons who have applied to, been admitted to, and enrolled at UT. This dashboard information includes the aggregate percentages of race/ethnicity for each category: applied, admitted, and enrolled." ECF No. 87-6 at 2. UT-Austin further explained that "[t]he dashboard data is not used in the holistic review process" but that "[t]he data is used by the admissions office to track general trends in the student body to help assess and improve UT's efforts at recruitment, enrollment, and retention and for purposes of compliance with mandatory reporting obligations." *Id.* at 2–3. UT-

---

[5] *Harvard* makes clear that applicants are welcome to self-disclose their race as part of their applications. *See* 600 U.S. at 230–31. UT-Austin has provided and says it will continue to provide guidance to its application reviewers to ensure that they do not use race as a factor in making their admissions decisions if race is self-disclosed, while also ensuring that an applicant is not punished or censored for doing so. ECF No. 85-2 at 15.

Austin's application season has started and application reviewers are actively reviewing files under the New Policy. No applicant in the 2023-24 admissions cycle is being considered under the Old Policy.

## ARGUMENT

### I.     Summary Judgment Is Not Appropriate Because the Court Lacks Jurisdiction.

As a summary judgment decision adjudicates issues on the merits, a court must first ensure that it has jurisdiction to decide those issues. *See, e.g.*, *Ala.-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 487 (5th Cir. 2014) ("When facing a challenge to subject-matter jurisdiction and other challenges on the merits, we must consider first the Rule 12(b)(1) jurisdictional challenge prior to addressing the merits of the claim."). As articulated in Defendant-Intervenors' Motion to Dismiss for Mootness and their reply filed concurrently with this response (both fully incorporated herein), this Court lacks jurisdiction because SFFA lacks standing to challenge UT-Austin's New Policy, and the New Policy addresses the gravamen of SFFA's complaint and therefore moots its case.

### II.     SFFA Is Not Entitled to Summary Judgment.

Summary judgment is only appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This includes "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quotations omitted). "A movant for summary judgment who will bear the ultimate burden of proof at trial must submit evidentiary documents establishing all of the essential elements of her claim." *Mejia v. Big Lots Stores, Inc.*, No. 13-CA-504, 2014 WL 12495292, at *1 (W.D. Tex.

Oct. 16, 2014) (citing *Resolution Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1322 (5th Cir. 1992)). "If the moving party fails to meet this initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (internal quotation omitted).

SFFA argues that it is entitled to summary judgment because UT-Austin's Old Policy fails strict scrutiny, as articulated by the Supreme Court in *Harvard,* and that UT-Austin's adoption of the New Policy has "not eliminated the problem" because "UT's new admissions process is still unlawful." Mot. at 12. This is incorrect. First, SFFA's application of *Harvard* to the Old Policy is irrelevant, as that policy is no longer in effect. *See Ryan v. Grapevine-Colleyville Indep. Sch. Dist.*, No. 4:21-CV-1075, 2023 WL 2481248, at *4 (N.D. Tex. Mar. 13, 2023) (declining to decide summary judgment motion on mootness grounds when the claim was premised on a policy that was no longer in effect and plaintiff only sought injunctive relief).

Rather, to obtain summary judgment, SFFA must show that it is legally entitled to relief on its equal protection claim as it concerns UT-Austin's New Policy. *See id.* It cannot do this. SFFA's request for summary judgment is premised on its argument that the New Policy remains "unlawful" because, under the strict-scrutiny analysis promulgated in *Harvard*,[6] all university

---

[6] SFFA assumes that UT-Austin's New Policy will be subject to strict scrutiny. However, because the New Policy is facially neutral, SFFA would have to demonstrate that the New Policy discriminates on the basis of race. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267–68 (1977) (outlining several factors used to determine whether a facially neutral policy violates the Equal Protection Clause, including (i) the historical background and specific sequence of events leading to the decision; (ii) departures from the normal procedure and substantive norms; (iii) legislative history; and (iv) evidence that defendants' decision bears more heavily on one race than another (*i.e.*, disparate impact).). SFFA has offered no allegations and made no showing concerning the required factors. Without such a showing, SFFA can prevail as a matter of law only if UT-Austin's policy is not rational, which SFFA has not argued. *See Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 354 (5th Cir. 2017) ("If neither a suspect class nor a fundamental right is implicated, the classification need only bear a rational relation to a legitimate governmental purpose.").

admission processes must be "color-blind." Mot. at 12. In addition to being demonstrably wrong about *Harvard*'s holding, as discussed below, SFFA's analysis skips a crucial threshold step: "To establish an equal protection claim, [a plaintiff] must first show that two or more classifications of similarly situated persons were treated differently." *Duarte*, 858 F.3d at 353 (internal citation omitted). "Once that threshold element is established, the court then determines the appropriate level of scrutiny to apply." *Id.* As the party that bears this burden at trial, SFFA must present evidence to demonstrate that there is no genuine issue of material fact that the New Policy intentionally discriminates on the basis of race. *See Mejia*, 2014 WL 12495292, at *1.

SFFA cannot do so. It has not (and cannot) plausibly or credibly allege, much less provide undisputed evidence that under its New Policy, UT-Austin is, in fact, treating applicants differently on the basis of race. The language of the New Policy is facially neutral. Indeed, UT-Austin's policy explicitly states that it does not consider race when deciding who to admit, and its training documents reinforcing the policy specifically prohibit admissions officers from doing so. *See* ECF No. 85-1 ¶ 12. Likely recognizing this, SFFA speculates that unless admissions officers are completely shielded from race and data concerning racial composition, they might use this information when considering applications. *See* Mot. at 12; *see also id.* at 15 ("UT's assurances that admissions officers will be instructed not to use race doesn't come close to curing the problem. They have used race before and they still have the practical ability to do so in the future with ease."). But speculation alone, especially as specious as this, is insufficient even at the pleadings stage, and cannot conceivably be the basis for summary judgment.[7] *See Dallas Fire*

---

[7] It is undisputed that UT-Austin may consider race for the limited purposes of recruitment, enrollment, and reporting obligations. SFFA cannot establish that such considerations entitle it to summary judgment because SFFA has not, and cannot, demonstrate how its members are harmed by this consideration, especially because consideration for those purposes does not impede their members' ability to apply, be considered, or enroll at UT-Austin. *Cf.* Am. Compl. ¶ 6 (alleging that the harm to its members was a denial of "the opportunity to compete for admission to UT-

*Fighters Ass'n v. City of Dallas, Tex.*, 885 F. Supp. 915, 920 (N.D. Tex. 1995) ("[M]ere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment.") (internal quotation omitted). Indeed, the only evidence on record unequivocally and indisputably shows that UT-Austin's New Policy forbids the consideration of race and ethnicity, that UT-Austin has implemented guidance and trainings to ensure race is not considered, and that it will monitor implementation of its New Policy to ensure its admissions officers and file reviewers do not violate it.

SFFA's reliance on *United States v. Fordice* cannot cure these deficiencies because *Fordice* is inapplicable here. *Fordice* dealt with decades-long *de jure* segregation within the Mississippi state university system and the effect of longstanding policies and procedures that perpetuated that segregation. 505 U.S. 717, 721–25 (1992). That stands in stark contrast to UT-Austin, whose prior race-based admissions policies are not grounded in past *de jure* segregation. Indeed, UT-Austin's limited consideration of race was designed to foster racial integration and diversity and had been found constitutional as recently as 2016. SFFA nonetheless cites *Fordice*, arguing that UT-Austin has not taken "every reasonable effort" to eradicate *de jure* racial discrimination and its insidious residue. Mot. at 12 (internal alterations omitted).

In *Fordice*, the Supreme Court determined that Mississippi had not met its affirmative duty to dismantle its decades-old *de jure* segregated system because, even though it had adopted race-neutral admission policies regarding student enrollment at its formerly desegregated schools, there were still other policies that contributed to racial segregation. 505 U.S. at 729–30. The Court concluded that because student enrollment was determined "not simply by admissions policies,

---

Austin on equal footing with other applicants on the basis of race or ethnicity because of UT-Austin's discriminatory admissions policies"). Moreover, nothing in *Harvard* addresses the consideration of race for these purposes, much less prohibits it.

but also by many other factors," *id.* at 729, Mississippi had an affirmative obligation to review these other facially neutral policies to determine if they were nonetheless causing racial segregation, *id.* at 733. Moreover, though the Court acknowledged that desegregation did not require "any degree of racial balance," *id.* at 726, it acknowledged that several years into Mississippi's efforts, its universities remained largely segregated based on race, *id.* at 725.

None of these findings apply here. First, unlike *Fordice*, there is no deep evidentiary record evidencing a history of discrimination or its insidious residue. In fact, the Supreme Court found UT-Austin's admissions program lawful just eight years ago. *See Fisher II*, 579 U.S. at 375–76. Second, SFFA provides no evidence of any policy or practice of UT-Austin suggesting continued or covert support for a race-based admissions program. Moreover, the notion that the only way to "eradicate de jure discrimination and its insidious residue" is for UT-Austin to "blind itself to racial data," Mot. at 12, is at odds with the Supreme Court's decision in *Harvard*, which expressly contemplates that admissions officers can become aware of an applicant's race through that applicant's self-disclosure, *see* 600 U.S. at 230, and makes clear that such disclosures and awareness are lawful provided that the applicant is "treated based on his or her experiences as an individual—not on the basis of race," *id.* at 231.

Because SFFA fails to provide sufficient evidence to support its equal protection and Title VI claims, the Court should deny its motion for summary judgment.

### III.   SFFA Is Not Entitled to Any Permanent Injunction

Because SFFA is not entitled to summary judgment, any discussions regarding what relief it is entitled to are irrelevant. *See Haley v. DeSoto Par. Sch. Bd.*, 600 F. Supp. 3d 690, 702 (W.D. La. 2022) (declining to issue a permanent injunction when "there remain[ed] genuine disputes of material fact and questions of law outstanding"). However, even assuming *arguendo* that SFFA is entitled to judgment as a matter of law, it is not entitled to a permanent injunction because

"[t]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court" and the current facts and posture of the case do not warrant such extraordinary relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 530 (5th Cir. 2008) ("Traditional equitable principles control the decision to enter an injunction, under which the court has broad discretion to balance the interests of the parties."). "It is not a remedy which issues as of course, or to restrain an act the injurious consequences of which are merely trifling." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982) (cleaned up).

First, by SFFA's own admission, a permanent injunction is only appropriate when there is "cognizable danger of recurrent violation." Mot. at 15. SFFA has provided no indication or evidence of this danger. Instead, SFFA baldly speculates that, at some point in the future, rogue admissions officers might abuse their access to racial data, in violation of UT-Austin's policies prohibiting such, *see* ECF No. 85-1 ¶ 25, the training provided by UT-Austin, *see* ECF No. 85-2, and the restrictions that have been imposed on access to this information when actively reviewing applicant files, *see* ECF No. 87-6 at 2. Moreover, despite SFFA's vague assertion that UT-Austin's "past unlawful conduct is highly suggestive of the likelihood of future violations," Mot. at 14–15 (quotations omitted), as noted above, UT-Austin in fact has a long history of abiding by the governing law in this area. Indeed, in 1996, after the *Hopwood* decision, UT-Austin faced the same situation it does now: in response to a court decision, it removed the use of race from its admissions policy. There is no suggestion, other than SFFA's vague and speculative assertions, that UT-Austin has not effectively done the same now.

Second, SFFA has not demonstrated that it satisfies the four-factor test that is required before a court can grant a permanent injunction. Specifically,

> [a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc*., 547 U.S. at 391. As discussed above, SFFA has not presented any evidence demonstrating that it has suffered irreparable injury, much less how any injuries suffered can be compensated with the remedies sought. The balance of hardships also weighs heavily in UT-Austin's favor. Contrary to SFFA's unsupported assertion that it would not "be problematic to force UT to make minor administrative changes to stop making racial check-box data and aggregate racial data available to its admissions staff," Mot. at 16, UT-Austin has made it clear that the university relies on this information to further its recruitment, enrollment, and reporting obligations—all vital purposes that SFFA has not shown could be accomplished via other means.[8] SFFA's reliance on *Coalition to Defend Affirmative Action v. Granholm* does not alter the analysis.[9] There, in deciding whether to grant a preliminary injunction, the Sixth Circuit determined that the balance of hardships did not weigh in the university's favor when balanced against "the public interest in permitting a statewide initiative [banning the use of affirmative action] to go into effect on the date that the Michigan Constitution requires." 473 F.3d 237, 252 (6th Cir. 2006). Here, SFFA's interest is in no way comparable to the interest of the public in effectuating a statewide initiative, especially given that UT-Austin has already implemented

---

[8] UT-Austin's policies that allow it to monitor compliance with the New Policy are the kind of practices that SFFA and Defendant-Intervenors alike should support to ensure admissions staff are not abusing the process. This is not to suggest that any admissions decisions would be made on the basis of race, but it does allow for quality control.

[9] SFFA's reliance on *De Boulle Diamond & Jewelry, Inc v. Boulle, Ltd*. is likewise inapposite. Specifically, SFFA argues that a permanent injunction is needed to "create[] a safe distance between admissions officers and racial data." Mot. at 16. *De Boulle*, however, dealt with a permanent injunction in the trademark context and noted that using the "safe distance rule" was not applied in constitutional contexts, like the First Amendment, 12-cv-1462, 2015 WL 5033893, at *5 (N.D. Tex. Aug. 25, 2015), as is the context here.

protections to prevent the harm that SFFA speculates could occur. These protections include training its admissions staff and restricting staff reviewing applications from having access to this data. *See* ECF No. 85-2; ECF No. 87-6 at 2. Moreover, SFFA's assertion that "UT has *never* explained why it would be infeasible for it to take these steps," Mot. at 16, is not only factually inaccurate, as UT-Austin has explained such purposes, but also irrelevant to the Court's analysis. SFFA bears the burden of showing irreparable harm to its members and the greater public interest. *See eBay Inc*., 547 U.S. at 391. It has shown none.

Finally, SFFA's requested injunction is not carefully tailored to address the constitutional violation it is purportedly intends to address. "The well-settled principle that the nature and scope of the remedy are to be determined by the violation means simply that federal-court decrees must directly address and relate to the constitutional violation itself." *Milliken v. Bradley*, 433 U.S. 267, 281–82 (1977). SFFA's proposed injunction—which aims to further limit access to check-box data and aggregate reports—fails this principle. Even if SFFA *had* been able to establish a constitutional violation, that violation would concern UT-Austin's use of race in admissions decisions. That is the sole focus of this case, and SFFA has never argued otherwise. Yet, SFFA's proffered injunctive relief would limit the ability of UT-Austin's admissions office to access and use the data for other lawful purposes—purposes that SFFA has not and indeed cannot challenge under its intentional discrimination claims. *See E.T. v. Paxton*, 19 F.4th 760, 769 (5th Cir. 2021) ("[A]n injunction cannot encompass more conduct than was requested or exceed the legal basis of the lawsuit."). It also would not fully address the alleged constitutional violation that SFFA is concerned about, given that under *Harvard*, admissions officers would still be able to learn and account for the racial experiences of an applicant through the applicant's self-disclosure. The fact is that UT-Austin has already adopted and implemented the relief that SFFA would be entitled to if it was granted summary judgment: prohibiting the use of race as a factor in admissions, limiting

- 14 -

access to racial data by file reviewers, and providing training to admissions officers who do have access to such data about the appropriate ways to use it.

Accordingly, even if SFFA was entitled to summary judgment, it would not be entitled to the proposed permanent injunction.

## **CONCLUSION**

For the foregoing reasons, Defendant-Intervenors respectfully request that the Court dismiss Plaintiff's Amended Complaint for lack of jurisdiction, or, in the alternative, deny Plaintiff's Motion for Summary Judgment.

Dated: January 11, 2024                    Respectfully submitted,

                                          _/s/ David Hinojosa_
                                          Brian C. Pidcock
                                          State Bar No. 24074895
                                          HUNTON ANDREWS KURTH LLP
                                          600 Travis St.
                                          Houston, TX 77002
                                          Tel. (713) 220-4200
                                          brianpidcock@HuntonAK.com

                                          David Hinojosa
                                          Maya Brodziak*
                                          State Bar No. 24010689
                                          LAWYERS' COMMITTEE FOR
                                          CIVIL RIGHTS UNDER LAW
                                          1500 K Street, NW, Suite 900
                                          Washington, DC 20005
                                          Tel. (202) 662-8600
                                          dhinojosa@lawyerscommittee.org

                                          Alan R. Kabat (pro hac vice)
                                          Bernabei & Kabat, PLLC
                                          1400 - 16th Street, N.W., Suite 500
                                          Washington, D.C. 20036-2223
                                          Tel. (202) 745-1942 (ext. 242)
                                          Kabat@BernabeiPLLC.com

*Attorneys for Intervenor-Defendants*

*admitted pro hac vice

## CERTIFICATE OF SERVICE

On this the 11th day of January 2024, I e-filed this document using the Court's CM/ECF system, which emailed a copy to all counsel on record requiring service.

*/s/ David Hinojosa*