# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| Students for Fair Admissions, Inc., <br> *Plaintiff*, <br><br> v. <br><br> University of Texas at Austin, et al., <br> *Defendants*, <br><br> and <br><br> The Black Student Alliance, the Texas Orange Jackets, the Texas National Association for the Advancement of Colored People, Adaylin Alvarez, Morgan Bennett, Liz Kufour, Brianna Mallorie McBride, Desiree Ortega-Santiago, Nima Rahman, Alexandra Trujillo, and Rosaleen Xiong, <br> *Defendant- Intervenors*. | Case No. 1:20-cv-763-RP |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF
## DEFENDANT-INTERVENORS' MOTION TO DISMISS FOR MOOTNESS

## INTRODUCTION

As a matter of fact and law, Plaintiff Students for Fair Admissions, Inc. ("SFFA") no longer has a case. SFFA's complaint is rooted in its claim that its members were being denied the opportunity to compete on equal footing for admission to the University of Texas at Austin ("UT-Austin") because UT-Austin used race as one of many factors in deciding whom to admit. This is no longer the case. In response to the Supreme Court's decision in *Students for Fair Admissions v. President and Fellows of Harvard College*, 600 U.S. 181 (2023) ("*Harvard*"), UT-Austin changed its admissions policy and training materials to make clear that race can no longer be used as a factor in admissions decisions. SFFA got its desired result, but now it wants more.

SFFA's desperation to keep this case alive appears to be nothing more than a transparent effort to use the court system to control UT-Austin's new admissions policy and force UT-Austin to accept additional policy changes that—though they may have been adopted by other schools in the wake of *Harvard*—are not required by *Harvard*. But SFFA's legal arguments and attempts to distance itself from the express allegations in its complaint are unavailing. It argues, for example, that it still has standing due to UT-Austin's "continued use of race in admissions"—a demonstrably false statement, and one premised wholly on SFFA's misreading of *Harvard* to impose on universities a completely "color-blind" Constitution.

In addition, SFFA's sole associational member—who purportedly applied to UT-Austin in 2022 under the Old Policy[1]—has not alleged any concrete and actionable racially discriminatory treatment and harm caused by UT-Austin's current admissions practices. Indeed, SFFA could not possibly allege any harm from the New Policy because its member has not reapplied to UT-Austin.

---

[1] Terms used herein have the same meeting ascribed to them in the opening motion, ECF No. 86.

The new standing member's allegations of harm, *see* ECF No. 87-17, are also entirely inconsistent with those in the Complaint.

As SFFA's claims stand today, they no longer hold water: UT-Austin's new admission policy complies with *Harvard* and its steps to enact this permanent change quickly and publicly support the conclusion that there is no reasonable likelihood that its conduct will change after this case ends. Because SFFA's claims and requests for relief are moot and its members do not have standing, Defendant-Intervenors respectfully request that SFFA's lawsuit be dismissed.

## ARGUMENT

### I. SFFA Does Not Have Standing Because None of Its Members Have Applied Or Been Denied Admission Under the New Policy.

SFFA argues that it still has standing because it "currently has at least one member who has applied to UT [in 2022], has been denied admission, and is able and ready to apply as a transfer student were a court to order UT to stop knowing or considering race or ethnicity when making admissions decisions." Opp. at 7. They further proffer that Defendant-Intervenors' focus on the New Policy relates to the merits of the case, not standing. *Id*. Neither argument passes muster.

To demonstrate standing, SFFA must adequately allege all three constitutional requirements: injury in fact, causation, and redressability.[2] *Moore v. Bryant*, 853 F.3d 245, 248–49 (5th Cir. 2017) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The gravamen of

---

[2] The question of whether a plaintiff must show standing after the initiation of a case, or if this is folded into a court's consideration of mootness, is unsettled. *See Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 557 (6th Cir. 2021) ("[W]hile it is widely accepted that a plaintiff must establish standing at the time the lawsuit commences, it is perhaps less clear whether the standing requirement persists. Recently, the Supreme Court has implied that in certain cases a plaintiff may have to maintain standing throughout the lawsuit.") (citing *Trump v. New York*, 592 U.S. ___, 141 S. Ct. 530, 536–37 (2020) (per curiam); *Carney v. Adams*, 592 U.S. 53, 59 (2020)). Even if it is more appropriately considered a mootness issue, however, the analysis nonetheless indicates that this court no longer has subject matter jurisdiction over this matter. *See La. Env't Action Network v. U.S. Env't Prot. Agency*, 382 F.3d 575, 580 (5th Cir. 2004) (stating that "mootness is a threshold jurisdictional inquiry").

SFFA's lawsuit is the alleged denial of its members' ability to compete "on equal footing with other applicants" because of UT's race-based policy. ECF No. 13 ¶ 6 ; *see also id.* ¶¶ 203, 214, 225, 240. When Defendant-Intervenors previously challenged SFFA members' standing, the Court found it sufficient that they "were denied admission" under the relevant policy and "[were] ready and able to apply to transfer to UT-Austin" should the university cease its race-based policy. ECF No. 56 at 13.

SFFA's associational standing now hinges on that of its single, newly recruited member who purportedly applied and was denied admission to UT-Austin under the Old Policy in 2022, *see* ECF No. 87-17 ¶ 3, but now stands "able and ready to [re-]apply," *id.* ¶ 5. But unlike his predecessors, the new member switches course about what would bring him to re-apply to UT-Austin. He expresses a willingness to reapply only if UT were to "blind[] its admissions officers to learning an applicant's race" and prohibit its admissions officers from having access to aggregate data on the racial composition of the class. *Id*. Such a change was necessary because the discriminatory policies that his predecessors alleged were preventing them from re-applying for admission—UT-Austin's race-based policies—are no longer in place. But the new member's allegations are divorced from the complaint's allegations that SFFA's members' injuries—and therefore its standing—stem from being forced to apply and re-apply under a policy that allowed race to be used as a factor in admissions decisions.

Even if the new member's allegations *did* align with the complaint, they would still be inadequate to establish standing here. The standing analysis in this case is no longer controlled by *Fisher* and *Grutter v. Bollinger*, as neither addresses the allegations to challenge a university's *race-neutral* admissions policy. See ECF No. 56 at 12–13; *see also Students for Fair Admissions v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1086 (5th Cir. 2022) (discussing relaxed standing

requirements applied in *race-conscious* programs). There is no shortcut. SFFA's allegations must demonstrate injury-in-fact, a causal connection, and redressability.

SFFA fails to show any of the three requirements. First, given that SFFA does not allege that its new standing member or *any* of its members have applied and been denied admission under the New Policy, it is unclear how its members can articulate an actual injury. Unsurprisingly, SFFA does not even try. Instead, its new standing member implies that the mere availability of racial data means that admissions officers will continue to use this information to make admissions decisions, despite the race-neutral New Policy. *See* ECF No. 87-17 ¶ 5. This sort of speculation, however, is insufficient to establish an injury in fact. *See Abdullah v. Paxton*, 65 F.4th 204, 208 (5th Cir. 2023) ("Allegations of only a 'possible' future injury similarly will not suffice" to establish standing.). Second, because SFFA has not alleged a cognizable injury and none of its members have applied under the New Policy, it cannot possibly allege how any injury is fairly traceable to UT-Austin's New Policy. Finally, SFFA fails to demonstrate how this Court could redress any purported injury based on UT-Austin's failure to blind its senior admissions officers from racial data. In fact, the Supreme Court explicitly sanctioned applicants' self-disclosure of their race, thus enabling admissions officers to learn of it as well. *Harvard*, 600 U.S. at 230–31. Therefore, it is impossible for SFFA to show how any purported injury could be redressed in a way that does not contradict Supreme Court precedent. *See Denning v. Bond Pharm., Inc.*, 50 F.4th 445, 451 (5th Cir. 2022) ("[T]o establish redressability, a plaintiff must show a substantial likelihood that the requested relief will remedy the alleged injury in fact.") (internal quotations omitted).

SFFA also argues that any focus on the New Policy relates to the merits of the case, not standing. *See* Opp. at 7. This is false. Though courts must assume that facts alleged by plaintiffs to establish standing are true, it is both appropriate and *required* (since standing is a jurisdictional prerequisite) for courts to evaluate at the outset whether such facts are sufficient to establish

standing. Now that UT-Austin has implemented the New Policy, SFFA must plausibly allege that its members' asserted injury-in-fact, *i.e.*, the lack of opportunity to compete for admission on an equal footing by virtue of discriminatory admissions policies, is being *caused* by the New Policy, and that the Court could remedy such injury. *Lujan*, 504 U.S. at 560. SFFA is unable to establish that its members have standing to challenge UT-Austin's race-neutral admissions policy. *See* ECF No. 85-1 ¶ 11. Without standing, this Court lacks jurisdiction and must dismiss this action.

> II. **SFFA's Case Challenges UT-Austin's *Former* Race-Based Admissions Policy and Is Therefore Moot.**
>
>> *a. UT-Austin's policies are constitutional.*

At the heart of an equal protection claim is the harm that comes from differing treatment based on race. Here, SFFA has provided no information, much less sufficient allegations, as to how, under the New Policy, the consideration of race and racial data for limited purposes other than admissions decisions, has harmed or is likely to harm its members. All SFFA provides is broad platitudes that UT-Austin's "new policy is unlawful and injuring SFFA's member," Opp. at 2, which is insufficient to plausibly allege that the New Policy is unconstitutional.[3]

SFFA's reliance on cases like *City of Jacksonville* and *Texas v. Biden* are unpersuasive. In these cases, though defendants had changed their policies, the change was not sufficient to get rid of the harm entirely. In *City of Jacksonville*, for example, plaintiffs challenged an ordinance that required ten percent of the amount spent on city contracts to be set aside for businesses with

---

[3] In fact, SFFA's entire argument that UT-Austin's policies remain unconstitutional is based on a flawed premise: it conflates a university's use of race in determining who to admit—which *Harvard* circumscribes—with the university's consideration of race for other unrelated purposes. The *Harvard* decision expressly does *not* require that admissions officers be blinded from applicants' race. In fact, the Court makes clear that universities can still consider "an applicant's discussion of how race affected his or her life, be it through discrimination, inspiration, or otherwise," and that applicants can reveal their race so long as they are "treated based on his or her experience as an individual—not on the basis of race." *Harvard*, 600 U.S. at 230–31.

- 5 -

"minority" or female ownership. *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 658 (1993). The city repealed the ordinance and replaced it with a new ordinance that established participation goals and provided several methods for achieving those goals, including a plan that was "virtually identical" to the prior ordinance's set aside. *Id.* at 661. The Supreme Court determined that the case was not moot because "[t]he gravamen of petitioner's complaint is that its members are disadvantaged in their efforts to obtain city contracts. The new ordinance may disadvantage them to a lesser degree than the old one" but "it disadvantages them in the *same fundamental way*." *Id.* at 662 (emphasis added). Similarly, in *Texas v. Biden*, several states challenged the Department of Homeland Security's ("DHS") termination of a program under the Administrative Procedure Act. 20 F.4th 928, 941 (5th Cir. 2021). While the case was pending, DHS issued new explanations for the termination and argued that the case was moot. The Court disagreed, holding that because DHS replaced the termination explanation "with something substantially similar," the injury remained. *Id.* at 958.

The opposite is true here. The gravamen of SFFA's complaint is that UT-Austin's policies and procedures allowing for the use of race as a factor in admissions injured its members by denying them the opportunity to compete on equal footing. *See* ECF No. 13 ¶¶ 6, 86–98, 200–42. UT-Austin's policy change—getting rid of race as a factor bearing on who to admit—completely nullifies SFFA's legal theories and ameliorates the alleged harm.

  b. *UT-Austin does not and will not consider race in admissions.*

SFFA further argues that "[e]ven if UT's new policy were lawful," UT-Austin cannot moot claims concerning its Old Policy through "voluntary compliance." Opp. at 3. Notably, SFFA does not address UT-Austin's and Defendant-Intervenors' argument that voluntary compliance principles are inapplicable here because UT-Austin changed its admission policy in response to a

change in the law. *See Daves v. Dall. Cty., Tex.*, 64 F.4th 616, 635 (5th Cir. 2023) (en banc), *cert. denied*, 2024 WL 71911 (Jan. 8, 2024); *see also* ECF No. 85 at 3; Mot. at 8 n.6.

Even if the voluntary compliance doctrine applies, UT-Austin is a public entity that is entitled to a presumption of good faith. *See Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd sub. Nom Sossamon v. Texas*, 563 U.S. 277 (2011).[4] SFFA asserts that this presumption has not been applied to a public university because in *Speech First v. Fenves* the Fifth Circuit assumed, without deciding, that the exception applied. Opp. at 4–5. But SFFA fails to justify why the presumption should not apply to public universities, ignores that the analysis in *Fenves* supports application of the presumption here, and does not address the fact that it has been applied to public universities in other circuits. *See Keister v. Bell*, 29 F.4th 1239, 1250 (11th Cir. 2022); *Speech First, Inc. v. Killeen*, 968 F.3d 628, 646 (7th Cir. 2020).

In *Fenves*, the Fifth Circuit applied a three-factor test to the specific facts of that case to determine whether the good-faith presumption should apply. 979 F.3d 319, 328 (5th Cir. 2020), *as revised* (Oct. 30, 2020). The Fifth Circuit determined that applying the presumption was not appropriate because the university (1) had not issued "a controlling statement of future intent," (2) made the change right after litigation was filed, and (3) continued to defend the legality of their old policies. *Id.* at 328–29. Here, these three factors counsel in favor of applying the good-faith presumption. First, UT-Austin has made myriad of "controlling statement[s] of future intent," not just in litigation, but through the New Policy and its accompanying procedures and training materials. Second, as to timing, UT-Austin's change in policy was made not in response to SFFA's filing, but after the Supreme Court announced a new statement of law in *Harvard*. UT-Austin then

---

[4] SFFA argues, relying on a single district court case, that this presumption no longer exists. Opp. at 5. The Fifth Circuit, however, in its ensuing decision, expressly acknowledged the existence good-faith presumption. *See Netflix v. Babin*, 88 F.4th 1080 (5th Cir. 2023).

- 7 -

quickly enacted its New Policy in time for the 2023 admissions season. *The Minutes of the Board of Regents of the University of Texas System*, August 23–24, 2023, at 260–61 ["August 2023 Board of Regent Meeting Minutes"].[5] Third, UT-Austin does not defend the Old Policy; instead, it acknowledges that the Old Policy was no longer in compliance with the law, as articulated by *Harvard*. *See* ECF No. 85-1 ¶¶ 11–12. UT-Austin is therefore entitled to a good-faith presumption concerning its changed admissions policy.

Finally, assuming *arguendo* that the presumption does not apply, UT-Austin's voluntary compliance still moots the case because SFFA has achieved full relief as to the conduct and claims alleged in the complaint. *See* Mot. at 6–7; *see also N. Y. State Rifle & Pistol Ass'n, Inc. v. City of N. Y., N. Y.*, 140 S. Ct. 1525, 1526 (2020) (holding that case is moot when state made a change to the law that was the "precise relief that petitioners requested"); *see also Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (holding that a case was moot when the university amended the relevant regulations so that the "the regulation at issue is no longer in force"); *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) .

SFFA's arguments to the contrary are unavailing. For example, relying on *Tucker v. Gaddis*, SFFA argues that UT-Austin's "refusal to commit to its new path weighs heavily against mootness." Opp. at 3. In *Tucker*, however, the plaintiff was a prisoner who was seeking a change to a policy that prohibited his religion's ability to congregate. 40 F.4th 289, 292 (5th Cir. 2022). During litigation, the prison changed its policy so that the plaintiff could apply for permission to congregate but noted that permission could still be withheld based on "time, space, and security concerns." *Id*. Furthermore, at oral argument, counsel stated that the prison "would *not* guarantee

---

[5] *Available at* http://tinyurl.com/4z2fmce4 (last visited Jan. 11, 2024).

congregation in the future." *Id.* at 293. To the contrary, as explained *supra*, UT-Austin has changed its policy to fully address the crux of SFFA's complaint.

SFFA's argument that the case is not moot because UT-Austin can reenact the provision is similarly unpersuasive. Though the New Policy is not a statute or regulation, it nonetheless represents a change that was enacted by the Board of Regents, UT-Austin's governing board, and carefully implemented by the Admissions office with training and guidance. *See* August 2023 Board of Regent Meeting Minutes at 260–61; ECF No. 85-2. It is not a change that was merely noted in litigation, as in *Reynolds v. Preston*, No. 22-cv-8408, 2023 WL 2825932, at \*6 (N.D. Cal. Mar. 15, 2023), or a change that is subject to withdrawal at the behest of one official, as in *Hernandez v. Cremer*, 913 F.2d 230, 235 (5th Cir. 1990). UT-Austin's conduct, judged under any potentially applicable standard, demonstrates that its adoption of the New Policy moots this case.

### c. *SFFA is not entitled to further relief.*

Finally, SFFA argues that its case is not moot because this Court can still grant effectual relief in the form of injunctions that prohibit UT-Austin from "reinstituting its prior admissions policy or considering race in admissions decisions" and "prohibiting any individuals in UT's admissions office from receiving or having access to racial check-box data or aggregate reports on race during the admissions process." Opp. at 6. SFFA notes that this relief is effectual because "UT admits that it is continuing these practices, which have no lawful purpose." *Id.* This is incorrect. First, UT-Austin has articulated a lawful reason for why it needs its admissions officers to have access to racial check-box data and aggregate reports. *See, e.g.*, ECF No. 85-1 ¶ 18 (stating that the admissions office uses this data to comply with state reporting requirements). SFFA's requested injunction is premised on the idea that access to this information allows individual admissions officers to use this information in ways prohibited by *Harvard*, despite UT-Austin's explicit policy, training, and assurances that admissions officers shall not consider race in

admissions decisions. SFFA provides no allegations or other information to suggest that there is any legitimate concern that this would happen, which is required to support a request for injunctive relief. *See United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 126 (5th Cir. 1973) ("The necessary determination [for an injunction] is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.").

More broadly, "[t]raditional equitable principles control the decision to enter an injunction, under which the court has broad discretion to balance the interests of the parties." *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 530 (5th Cir. 2008). Here, the requested injunctions would place an unfair burden on UT-Austin to change its policies and procedures dealing with recruitment, enrollment, and reporting mid-admissions cycle, while doing little to protect the interests of SFFA. SFFA has not articulated any specific harm caused to its lone member by UT-Austin's limited consideration of race for purposes outside admissions decisions, or any non-speculative support for the idea that UT-Austin will continue to use race in the manner recently prohibited by *Harvard*. This is especially true given that, until the *Harvard* decision, there was binding Supreme Court precedent stating that UT-Austin's use of race was constitutional. *See Fisher v. University of Texas*, 579 U.S. 365, 375 (2016). In response to that change in the law, UT-Austin promptly changed its policies and is conducting its current admissions cycle under its race-neutral New Policy. UT-Austin's actions demonstrate that it fully intends to comply with the law, making the injunctive relief requested by SFFA inappropriate and insufficient to prevent this case from being mooted.

## CONCLUSION

For the foregoing reasons, Defendant-Intervenors respectfully request that the Court dismiss SFFA's complaint in its entirety based on lack of standing and mootness.

- 11 -

Dated: January 11, 2024            Respectfully submitted,

                                           */s/ David Hinojosa*
                                           Brian C. Pidcock
                                           State Bar No. 24074895
                                           HUNTON ANDREWS KURTH LLP
                                           600 Travis St.
                                           Houston, TX 77002
                                           Tel. (713) 220-4200
                                           brianpidcock@HuntonAK.com

                                           David Hinojosa
                                           Maya Brodziak*
                                           State Bar No. 24010689
                                           LAWYERS' COMMITTEE FOR
                                           CIVIL RIGHTS UNDER LAW
                                           1500 K Street, NW, Suite 900
                                           Washington, DC 20005
                                           Tel. (202) 662-8600
                                           dhinojosa@lawyerscommittee.org

                                           Alan R. Kabat (pro hac vice)
                                           Bernabei & Kabat, PLLC
                                           1400 - 16th Street, N.W., Suite 500
                                           Washington, D.C. 20036-2223
                                           Tel. (202) 745-1942 (ext. 242)
                                           Kabat@BernabeiPLLC.com

                                           *Attorneys for Intervenor-Defendants*

                                          *admitted *pro hac vice*

- 12 -

**CERTIFICATE OF SERVICE**

On this the 11th day of January 2024, I e-filed this document using the Court's CM/ECF system, which emailed a copy to all counsel on record requiring service.

                                             */s/ David Hinojosa*