IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., *Plaintiff*, v. UNIVERSITY OF TEXAS AT AUSTIN, et al., *Defendants*. | Case No. 1:20-cv-763-RP |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS
MOTION SUMMARY JUDGMENT**

Thomas R. McCarthy (*pro hac vice*)
J. Michael Connolly
Cameron T. Norris
Steven C. Begakis (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
mike@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com

*Counsel for Plaintiff Students for Fair Admissions, Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ iii
INTRODUCTION ............................................................................................................................... 1
ARGUMENT ....................................................................................................................................... 1
    I.    This case is not moot and SFFA has standing. ........................................................... 1
    II.    It is undisputed that UT's longstanding admissions policy is unlawful. .................... 2
    III.    UT's revised admissions policy is unlawful. ............................................................... 2
    IV.    SFFA has satisfied all the criteria for permanent injunctive relief. .......................... 4
CONCLUSION .................................................................................................................................... 5
CERTIFICATE OF SERVICE ............................................................................................................ 7

## TABLE OF AUTHORITIES

**CASES**

*DOJ v. Daniel Chapter One*,
  89 F. Supp. 3d 132 (D.D.C. 2015) .................................................................................4

*Howe v. City of Akron*,
  801 F.3d 718 (6th Cir. 2015) ..........................................................................................5

*Magee v. Life Ins. Co. of N. Am.*,
  261 F. Supp. 2d 738 (S.D. Tex. 2003) ............................................................................2

*Milliken v. Bradley*,
  433 U.S. 267 (1977) ........................................................................................................5

*SFFA v. Harvard*,
  600 U.S. 181 (2023) ................................................................................................ 1, 2, 4

*SFFA v. Harvard*,
  No. 14-cv-14176 (D. Mass. Jan. 9, 2024) ......................................................................3

*United States v. Fordice*,
  505 U.S. 717 (1992) .....................................................................................................3, 4

**INTRODUCTION**

UT and Intervenors don't dispute that UT's longstanding admissions policy is unlawful under *SFFA v. Harvard*, 600 U.S. 181 (2023). Accordingly, if the Court denies UT's and Intervenors' motions to dismiss, there is no question that SFFA is entitled to summary judgment.

UT claims that its revised admissions policy is constitutional because *Harvard* "does not prohibit universities from collecting data on the race and ethnicity of applicants, or from using it for purposes other than making admissions decisions." UT Opp. 3; *see also* Intervenors Opp. 5. But that is not SFFA's position. UT's revised policy is unlawful because it gives *admissions officers* access to racial check-box data and provides *admissions officers* with aggregate reports on race during the admissions process. UT has never even attempted to explain why these individuals must receive this information if race is not relevant to their decision-making. And UT's policy diverges dramatically from the approach of other unviersities—including Harvard and UNC, who previously used race in the same illegal manner as UT. UT's continued use of race thus renders its revised policy unlawful.

UT insists that a permanent injunction is unnecessary simply because it has promised not to use race unlawfully again. But "trust us" is insufficient for past violators of the Constitution. And it is especially insufficient when the violator has given itself all the tools—without any explanation for why they are needed—to allow the discrimination to continue. The Court should grant summary judgment to SFFA and enter the requested permanent injunction.

**ARGUMENT**

**I.    This case is not moot and SFFA has standing.**

Referencing their motions to dismiss, UT argues that the case is moot, UT Opp. 1-2, and Intervenors also argue that SFFA lacks standing, Intervenors Opp. 7. Both arguments fail, as SFFA has explained. *See* Dkt. 88. For the reasons stated in SFFA's opposition to UT's and Intervenors' motions to dismiss, SFFA has standing and its claims are live. *See id.* SFFA's motion for summary judgment should not be denied on these grounds.

**II.   It is undisputed that UT's longstanding admissions policy is unlawful.**

In its motion for summary judgment, SFFA explained why UT's longstanding use of race in admissions is unlawful. *See* SFFA Mot. 2-3, 8-11. Although UT and Intervenors never explicitly concede that UT's policy is unlawful, they also make no effort to defend it. *See* UT Opp. 2; Intervenors Opp. 8. It thus is now undisputed that UT's longstanding admissions policy is unlawful. *See Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 (S.D. Tex. 2003) (a party who "does not address" an argument in a "summary judgment response . . . concedes" the issue). Accordingly, if the Court determines that the case is not moot and that SFFA has standing, there is no question that the Court should enter summary judgment for SFFA and declare UT's policy unconstitutional.

**III.   UT's revised admissions policy is unlawful.**

As explained, SFFA Mot. 11-13, UT's revised admissions process is unlawful because it is not "'color-blind.'" *Harvard*, 600 U.S. at 230. UT "gathers 'check-box' racial data from every applicant and that it makes that data available to every admissions officer who reviews applications and provides 'holistic' scores for each applicant." SFFA Mot. 12. And UT also "provides numerous 'senior admissions officers' with the aggregate racial composition of the admitted class, which is updated daily." *Id.* UT denies none of these facts, arguing only that UT "has a legitimate reason to collect this demographic information" because it is "required by law to report data on the race and ethnicity of applicants to the Texas Higher Education Coordinating Board." UT Opp. 3-4.

That misses the point. SFFA has not challenged whether UT *as an institution* can collect racial data. SFFA argues that UT can't give its *admissions* officers access to check-box data and provide them with aggregate racial reports throughout the admissions process. SFFA Mot. 12-13. UT refuses to address that argument because it has no answer. If racial check-box data will play no role in the admissions process, why does UT give every one of its admissions officers access to the data? Why not blind them to this forbidden tool like other universities? UT never says. And if the overall racial

2

makeup of the class is irrelevant after *Harvard*, why does UT continue to provide "senior admissions officers" with the aggregate racial composition of the admitted class? UT again has no explanation.

Indeed, since SFFA filed suit, the list of schools that blind their admissions officers to race has only grown. The District of Massachusetts recently issued a final judgment ordering Harvard to "ensure that admissions readers *do not have access* to either (1) self-reported check-box race or ethnicity from the Common App or any similar application form or (2) aggregated data (meaning data about two or more applicants assembled in any form, physical or digital) reflecting applicants' self-reported race or ethnicity at any time until after the admissions process has concluded." Final Judgment, *SFFA v. Harvard*, No. 14-cv-14176, Dkt. 754 (D. Mass. Jan. 9, 2024) (emphasis added). That three of the four universities SFFA sued—Harvard, Yale, and the University of North Carolina—have agreed without further litigation to these common-sense restrictions speaks volumes about the unreasonableness of UT's position.

Even if the Court believes that UT's new system is "race neutral," the Constitution requires more from a former discriminator like UT. When a State abandons *de jure* discrimination, the "adoption and implementation of race-neutral policies alone [do not] suffice to demonstrate that the State has completely abandoned its prior . . . system." *United States v. Fordice*, 505 U.S. 717, 729 (1992). Instead, UT has "the constitutional duty to dismantle" the race-based admissions policy that "its [policies] once mandated" and to "eradicat[e] policies and practices traceable to its prior *de jure*" policies that "continue to foster" racial discrimination. *Id.* at 727-28.

UT and Intervenors argue that *Fordice* does not apply because Mississippi had acted "in defiance of the Supreme Court's *Brown* decision" whereas UT "promptly revised its admissions process to remove race as a factor in admissions decisions following" *Harvard*. UT Opp. 6; *see* Intervenors Opp. 10-11. But *Fordice* did not turn on Mississippi's early defiance of *Brown*, *see Fordice*, 505 U.S. at 727-30, and even if it did, UT is continuing to defy *Harvard*'s commands, *see* SFFA

3

Mot. 11-13. Nor is it relevant that UT's admissions policy as of 2008 was "upheld as lawful by the Supreme Court in *Fisher II*." UT Opp. 6. *Plessy* also upheld racial segregation, but that didn't authorize Mississippi to merely adopt a race-neutral system. *See Fordice*, 505 U.S. at 729.

This Court also should reject UT's and Intervenors' invitation to limit *Fordice* to its facts. *See* UT Opp. 6; Intervenors Opp. 10-11. True, *Fordice* involved racial segregation after *Brown*. But the Supreme Court in *Harvard* built on *Brown*'s legacy, holding that "'[o]ur Constitution is color-blind,'" and that all "'racial discrimination in public education,'" including the race-based holistic admissions practiced by "[m]any universities," is prohibited. 600 U.S. at 204, 230-31. UT has no less of a burden to "eradicat[e]" racial discrimination in the admissions process. *Fordice*, 505 U.S. at 728.

**IV.     SFFA has satisfied all the criteria for permanent injunctive relief.**

In its opposition to SFFA's motion for summary judgment, UT does not respond to SFFA's request for a permanent injunction. UT's only discussion of the issue is a single paragraph in its reply to its motion to dismiss. *See* Dkt. 89 at 8. There, UT does not dispute that SFFA satisfies three of the four requirements for a permanent injunction. *Id.*; *see* SFFA Mot. 14-16. UT instead makes only one perfunctory argument—that a permanent injunction will "serve no meaningful purpose" because there is no "cognizable danger" that UT or its admissions officers will use race again in violation of the law. Dkt. 89 at 8; *see also* Intervenors Opp. 12. That argument fails.

As explained, SFFA Mot. 14-15, a permanent injunction is needed because there is a "'reasonable likelihood of future violations.'" *DOJ v. Daniel Chapter One*, 89 F. Supp. 3d 132, 143 (D.D.C. 2015). UT's past unlawful conduct is "'highly suggestive of the likelihood of future violations.'" *Id.* And UT's troubling response to *Harvard* provides additional strong evidence of future violations. Under UT's revised policy, "UT provides every person in the admissions office with access to each applicant's race, and it provides every senior admissions officer with a report containing *daily* aggregated racial data." SFFA Mot. 15. This revised policy itself is unlawful, as explained. *See* SFFA

4

Mot. 11-13. But even if the Court disagrees, the revised policy creates a high risk that admissions officers will unlawfully use race again. UT has never explained why individuals in the *admissions office*—and not other members of the university staff—must receive this racial data *during the admissions process*. UT's continued use of this forbidden admissions tool is highly suggestive of future violations.

Intervenors' additional arguments against a permanent injunction fare no better. Intervenors Opp. 13-15. SFFA's constitutional injury cannot be compensated with money damages. *See* SFFA Mot. 15. Whether UT "relies on [racial data] to further its recruitment, enrollment, and reporting obligations" is irrelevant, *see* Intervenors Opp. 13, because UT could accomplish these goals through individuals *outside* the UT admissions office. And SFFA's requested injuction "'directly address[es] and relate[s] to the constitutional violation itself.'" Intervenors Opp. 14 (quoting *Milliken v. Bradley*, 433 U.S. 267, 281-82 (1977)). No one disputes that UT's longstanding admissions policy is unconstitutional. *Supra* at 2. Because "'liability for racial discrimination has been established,'" this Court has "'the duty to render a decree that will eliminate the discretionary effects of past discrimination and prevent like discrimination in the future.'" *Howe v. City of Akron*, 801 F.3d 718, 753 (6th Cir. 2015). SFFA's requested injunction would ensure that UT follows the Constitution. *See* SFFA Mot. 17.

## CONCLUSION

The Court should grant SFFA summary judgment and enter a permanent injunction.

|  |  |
|---|---|
| Dated: January 29, 2024 | Respectfully submitted,<br><br>*/s/ J. Michael Connolly*<br>Thomas R. McCarthy (*pro hac vice*)<br>J. Michael Connolly<br>Cameron T. Norris<br>Steven C. Begakis (*pro hac vice*)<br>CONSOVOY MCCARTHY PLLC<br>1600 Wilson Blvd., Suite 700<br>Arlington, VA 22209<br>(703) 243-9423<br>tom@consovoymccarthy.com<br>mike@consovoymccarthy.com<br>cam@consovoymccarthy.com<br>steven@consovoymccarthy.com<br><br>*Counsel for Plaintiff Students for Fair Admissions, Inc.* |

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing has been served on counsel of record via the Court's electronic filing and service on January 29, 2024.

                                                                                                                         /s/ J. Michael Connolly
                                                                                                                      J. Michael Connolly