IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| STUDENTS FOR FAIR ADMISSIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:20-CV-763-RP |
| | § | |
| UNIVERSITY OF TEXAS AT AUSTIN, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants'[1] Motion to Dismiss for Mootness, (Dkt. 85); Defendant-Intervenors'[2] Motion to Dismiss for Mootness, (Dkt. 86); Plaintiff Students for Fair Admissions, Inc.'s ("SFFA") Motion for Summary Judgment, (Dkt. 87); and the parties' responsive briefs. Having considered the parties' briefs, the record, and the relevant law, the Court issues the following order.

## I. BACKGROUND

SFFA initially filed suit on July 20, 2020, (Compl., Dkt. 1), and filed an amended complaint on November 16, 2020, (Am. Compl., Dkt. 13). SFFA alleged that UT Austin's undergraduate

---

[1] Defendants are The University of Texas at Austin ("UT Austin"); the Board of Regents of the University of Texas System (the "UT System Board of Regents"); James B. Milliken, Chancellor of the University of Texas System in his Official Capacity; Steven Leslie, Executive Vice Chancellor for Academic Affairs of the University of Texas System in his Official Capacity; Daniel H. Sharphorn, Vice Chancellor and General Counsel of the University of Texas System in his Official Capacity; Jay Hartzell, President of the University of Texas at Austin in his Official Capacity; David J. Beck, Christina Melton Crain, Kevin P. Eltife, R. Steven Hicks, Jodie Lee Jiles, Janiece Longoria, Nolan Perez, Kelcy L. Warren, and James C. "Rad" Weaver, as Members of the Board of Regents in their Official Capacities; Daniel Jaffe, Interim Executive Vice President and Provost; Rachelle Hernandez, Senior Vice Provost for Enrollment Management and Student Success; and Miguel Wasielewski, Executive Director for Office of Admissions.

[2] Defendant-Intervenors are eight UT Austin students—Adaylin Alvarez, Morgan Bennett, Brianna Mallorie McBride, Liz Kufour, Desiree Ortega-Santiago, Nima Rahman, Alexandra Trujillo, and Rosaleen Xiong—and three organizations—the Texas National Association for the Advancement of Colored People (the "Texas NAACP"), the Black Student Alliance (the "BSA"), and the Texas Orange Jackets. (*See* Order, Dkt. 35).

admissions process improperly considered race, contrary to the Fourteenth Amendment of the

United States Constitution, Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d *et seq.*), and

42 U.S.C. §§ 1981 and 1983.[3] SFFA alleged that (1) it had at least two members who "applied for

and were denied admissions to UT Austin's 2018 and 2019 entering classes;" (2) these two members

were "denied the opportunity to compete for admission to UT-Austin on equal footing with other

applicants on the basis of race or ethnicity because of UT-Austin's discriminatory admissions

policies;" and (3) these two members "are ready and able to apply to transfer to UT-Austin when it

stops discriminating against applicants on the basis of race and ethnicity." (*Id.* at ¶¶ 5–8).

On March 8, 2021, Defendants filed a motion to dismiss or, alternatively, for summary

judgment, (Dkt. 45), and Defendant-Intervenors filed a motion to dismiss, (Dkt. 44). Defendants

and Defendant-Intervenors made arguments about standing, *res judicata*, and collateral estoppel.

(Defs.' Mot., Dkt. 45, at 9; Def.-Intervenors' Mot. Dismiss, Dkt. 44). The parties participated in

initial discovery focused solely on these issues. (*See* Order, Dkt. 33). The Court then granted in part

Defendants' motion for summary judgment, (Dkt. 45), and dismissed SFFA's claims with prejudice

as barred under *res judicata* due to the earlier *Fisher* litigation. (Order, Dkt. 56, at 23; *see also* Final

Judgment, Dkt. 57).

SFFA then appealed. (Notice of Appeal, Dkt. 58). The Fifth Circuit found that *res judicata* did

not apply, and it reversed and remanded for further proceedings consistent with its order. *Students for*

*Fair Admissions, Inc. v. University of Texas at Austin et al.*, No. 21-50715 (5th Cir. June 20, 2022).

Pursuant to the Fifth Circuit's decision and mandate, the Court vacated its entry of final judgment,

---

[3] This case was not the first such challenge against UT Austin's admissions process. In 2008, Abigail Fisher
was denied admission to UT Austin and subsequently sued the university for its consideration of race in
student admissions. After the United States Supreme Court remanded the case to the Fifth Circuit to apply
the correct standard of scrutiny, *see Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297 (2013), the Fifth Circuit
granted summary judgment to UT Austin, which the Supreme Court later affirmed, *see Fisher v. Univ. of Tex. at*
*Austin*, 579 U.S. 365 (2016) ("*Fisher II*"). The Court will refer collectively to this litigation as "*Fisher.*"

(Dkt. 57), and vacated its summary judgment order solely as to the Court's grant of summary judgment based on *res judicata*, (Dkt. 56). (Order, Dkt. 62).

Meanwhile, SFFA also filed two lawsuits challenging the admissions policies and practices of Harvard College ("Harvard") and the University of North Carolina ("UNC"). The United States Supreme Court granted *certiorari* in those cases on January 24, 2022, while this case was on appeal at the Fifth Circuit. *See Students for Fair Admissions v. President and Fellows of Harvard College*, No. 20-1199, and *Students for Fair Admissions v. University of North Carolina et al.*, No. 21-707 (consolidated for oral argument) (collectively, the "*Harvard-UNC* litigation"). On July 20, 2022, the parties filed a joint motion to stay this case pending resolution of the *Harvard-UNC* litigation, (Mot. Stay, Dkt. 63), which the Court granted the next day, (Text Order, July 21, 2022). On June 29, 2023, the Supreme Court issued its opinion in the *Harvard-UNC* litigation. *See Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181 (2023) ("*SFFA v. Harvard-UNC*"). On July 17, 2023, the parties requested that the Court lift the stay in this case in light of the Supreme Court's decision. (Joint Status Report, Dkt. 71, at 2). Two days later, the Court lifted the stay. (Order, Dkt. 73).

Defendants and Defendant-Intervenors moved to dismiss for mootness, (Dkts. 85 and 86, respectively); SFFA responded in opposition, (Dkt. 88); and Defendants and Defendant-Intervenors replied, (Dkts. 89 and 92, respectively). SFFA also moved for summary judgment, (Dkt. 87); Defendants and Defendant-Intervenors responded in opposition, (Dkts. 90 and 91, respectively); and SFFA replied, (Dkt. 93).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court

properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

Article III of the Constitution restricts the jurisdiction of federal courts to "cases" and "controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). This case-or-controversy requirement "subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Generally, a case becomes moot when, after litigation has commenced, "any set of circumstances . . . eliminates [the] actual controversy" between the parties. *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A presumption against subject matter jurisdiction exists that "must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161. In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### III. DISCUSSION

As mootness goes to whether there is a case or controversy, the Court must first consider whether it still has subject matter jurisdiction over this action. For the reasons below, the Court finds that this case is moot because there is no case or controversy. Accordingly, the Court does not reach Defendant-Intervenors' argument regarding standing, (Dkt. 86, at 9–11), or SFFA's motion for summary judgment, (Dkt. 87).

Defendants and Defendant-Intervenors argue that UT Austin's admissions policy changes have rendered this case moot. (Defs.' Mot. Dismiss, Dkt. 85, at 5 ("In light of UT Austin's changes to its admissions policies, there is no longer a live case or controversy for this Court to adjudicate."); Def.-Intervenors' Mot. Dismiss, Dkt. 86, at 1 ("[T]his case is moot because the relief that SFFA seeks, *i.e.*, an admissions program that does not consider race as a factor in admission decisions, has already been implemented.")). In response, SFFA argues that (1) "UT's new admissions policy remains unlawful;" (2) "even if UT's new policy were lawful," the voluntary cessation doctrine prevents this case from being moot; and (3) "the case is not moot because SFFA seeks permanent injunctive relief and this Court's power to grant injunctive relief survives any discontinuance of illegal conduct." (Resp., Dkt. 88, at 1). The Court will address each of SFFA's arguments against mootness in turn.

### A. UT's Revised Admissions Policy Is Lawful

The crux of SFFA's amended complaint—which it filed on November 16, 2020—is that UT Austin's undergraduate admissions process improperly considers race. (Am. Compl., Dkt. 13). Specifically, SFFA contends that: (1) it had at least two members who "applied for and were denied admissions to UT Austin's 2018 and 2019 entering classes;" (2) these two members were "denied the opportunity to compete for admission to UT-Austin on equal footing with other applicants on the basis of race or ethnicity because of UT-Austin's discriminatory admissions policies;" and (3) these two members "are ready and able to apply to transfer to UT-Austin when it stops discriminating against applicants on the basis of race and ethnicity." (*Id.* at ¶¶ 5–8).[4] In the more than three-and-a-half years that have elapsed since SFFA filed its amended complaint, there have been dramatic changes in both Supreme Court precedent and in many universities' admissions processes, including

---

[4] SFFA also states that it "currently has at least one member who has applied to UT, has been denied admission, and is able and ready to apply as a transfer student were a court to order UT to stop knowing or considering race or ethnicity when making admissions decisions." (Resp., Dkt. 88, at 7).

that of UT Austin. Accordingly, the Court must consider whether a case or controversy still exists—that is, whether UT Austin's changes to its admissions policy in the wake of *SFFA v. Harvard-UNC* render this case moot.

Prior to the Supreme Court's watershed ruling in *SFFA v. Harvard-UNC*, UT Austin's admissions process—which the Supreme Court had upheld as constitutional just seven years prior in *Fisher*—worked as follows. UT Austin admitted 75 percent of each entering class under the Top Ten Percent Plan, under which students in the top percentages of their high school class were admitted to UT Austin. (Am. Compl., Dkt. 13, at 17); Tex. Educ. Code § 51.1803(a-1). The rest of UT Austin's class was admitted through a "holistic-review calculus" where race was a "'factor of a factor of a factor'" that was considered "contextual[ly] and does not operate as a mechanical plus factor for underrepresented minorities." *Fisher II*, 579 U.S. at 375 (quoting district court). Under *Fisher*, which was binding United States Supreme Court precedent when SFFA filed its amended complaint, UT Austin's consideration of race in its holistic review process was constitutional. *See id.* at 381 (holding that universities "may institute a race-conscious admissions program as a means of obtaining the educational benefits that flow from student body diversity" on campus (internal quotation marks omitted)); *see also Grutter v. Bollinger*, 539 U.S. 306, 338 (2003) (holding that the consideration of an applicant's race as one factor in admissions decisions did not violate the Constitution).

However, while this case was on appeal before the Fifth Circuit, the Supreme Court upended longstanding affirmative action precedent by holding that the race-based admissions programs of Harvard and UNC violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *SFFA v. Harvard-UNC*, 600 U.S. 181. Specifically, the Supreme Court held that these admissions policies failed the two-step strict scrutiny inquiry: (1) "first, whether the racial classification is used to further compelling governmental interests;" and (2) if yes, "whether the government's use of race is narrowly tailored—meaning necessary—to achieve that

interest." *Id.* at 206–07 (cleaned up). However, while the Supreme Court found that Harvard and UNC's admissions programs "lack[ed] sufficiently focused and measurable objectives warranting the use of race, unavoidably employ[ed] race in a negative manner, involve[d] racial stereotyping, and lack[ed] meaningful end points," the Supreme Court specifically noted that "nothing in [its] opinion should be construed as prohibiting universities from considering an applicant's discussion of how race affected his or her life, be it through discrimination, inspiration, or otherwise." *Id.* at 230. And, while the Supreme Court found that Harvard and UNC's admissions programs did not survive strict scrutiny, notably, the Supreme Court declined to overturn *Grutter* outright.[5]

In response to the newly applicable law established by *SFFA v. Harvard-UNC*, UT Austin made the following changes to its admissions process:

> UT Austin has eliminated race and ethnicity from the factors considered in undergraduate admissions decisions, effective with the fall 2023 admissions cycle currently underway. In accordance with state law, UT Austin will continue to fill 75 percent of the university's enrollment capacity through "automatic admissions" based on class rank. Tex. Educ. Code § 51.803(a), (a-1). And UT Austin will continue to use "holistic review" to fill the remaining seats in the freshman class, *id.* § 51.805(b), and also to determine to which specific academic programs the automatic-admission candidates are admitted. But UT Austin will no longer consider an applicant's race or ethnicity in the holistic review process. . . . UT Austin has made the following specific changes to its admissions process, which are in effect now for the fall

---

[5] "While the Supreme Court decided that Harvard and UNC's admissions programs were unlawful, 600 U.S. at 230, 143 S.Ct. 2141, the Court did not expressly say it was overruling *Grutter* and its progeny in *Harvard.* The majority opinion relied heavily on *Grutter* as authority. *Id.* at 211–13, 143 S.Ct. 2141 (reasoning that the Court had permitted race-based admissions 'only within the confines of narrow restrictions' and that the respondents' admissions programs failed each of these criteria), 220 ('Yet by accepting race-based admissions programs in which some students may obtain preferences on the basis of race alone, respondents' programs tolerate the very thing that *Grutter* foreswore: stereotyping.'), 221 (reasoning that the respondent's admissions programs were unconstitutional under *Grutter* because they lacked a logical end point). Justice Brett Kavanaugh wrote separately 'explain[ing] why the Court's decision ... is consistent with and follows from . . . the Court's precedents on race-based affirmative action.' *Id.* at 311, 143 S.Ct. 2141 (Kavanaugh, J., concurring). . . . Justice Clarence Thomas wrote separately and stated "*Grutter* is, for all intents and purposes, overruled," *id.* at 287, 143 S.Ct. 2141 (Thomas, J., concurring), and Justice Sonia Sotomayor's dissent accused the majority of 'overruling decades of precedent' while "'disguis[ing]" its rulings as an application of "established law.'" *Id.* at 341–42, 143 S.Ct. 2141 (Sotomayor, J., dissenting). Still, given that *Harvard* relied heavily on *Grutter* as authority, . . . *Harvard*, at most, partially overruled *Grutter*." *Students for Fair Admissions v. United States Naval Acad.*, No. CV RDB-23-2699, 2023 WL 8806668, at *2 n.4 (D. Md. Dec. 20, 2023).

> 2023 admissions cycle: (1) race and ethnicity has been removed as a subfactor that file reviewers consider in the holistic review process; (2) applicants' self-supplied demographic "checkbox" information about their race and ethnicity has been removed from the application files provided to reviewers during the holistic review process; (3) reviewers have been instructed that an applicant's race and ethnicity cannot be considered in the holistic review process, and that only materials in the applicant's file may be considered; (4) based on guidance provided by the Supreme Court in the SFFA majority opinion, reviewers have been trained on how to appropriately handle an applicant's self-disclosure of race or ethnicity in essays or other file materials, including that the reviewer may not consider the applicant's race or ethnicity as a positive or negative factor; (5) during holistic review, the admissions office will supervise file reviewers and conduct quality checks to ensure compliance with these procedures; and (6) after close of the admissions cycle, UT Austin will conduct a review to identify and address any challenges experienced in the implementation of these changes. Exhibit 1, ¶¶ 12-27.

(Defs.' Mot. Dismiss, Dkt. 85, at 2–3). Accordingly, Defendants and Defendant-Intervenors argue that these changes mean that a live case or controversy no longer exists because UT Austin no longer considers race or ethnicity as a factor in undergraduate admissions. (*Id.* at 5; Def.-Intervenors' Mot. Dismiss, Dkt. 86). In response, SFFA argues that "UT's new admissions policy remains unlawful" because UT Austin still considers race in admissions. (Resp., Dkt. 88, at 1).

The Court agrees with Defendants and Defendant-Intervenors. "[T]he claims as originally presented have lost their practical significance because the facts generating the original controversy have altered so substantially." *Lowery v. Tex. A&M Univ.*, No. 4:22-CV-3091, 2023 WL 6445788, at *6 (S.D. Tex. Sept. 29, 2023). In response to a watershed Supreme Court case, UT Austin overhauled its admissions policy to comply with new precedent. UT Austin has a new admissions policy not to consider race or ethnicity as a factor in the admissions process, which it began using during the fall 2023 admissions cycle. As part of this new policy, UT Austin has instructed its admissions officers and employees accordingly, and it has also created new processes to train and supervise its admissions officers and employees to ensure that they do not consider race or ethnicity as a factor in the admissions process. Accordingly, UT Austin no longer considers race or ethnicity

as a factor in admissions.[6] SFFA's entire case can be distilled to a single assertion: that UT Austin's undergraduate admissions process improperly considers race. (Am. Compl., Dkt. 13). Mootness pertains to situations where a "set of circumstances . . . eliminates actual controversy after the commencement of a lawsuit." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). Because UT Austin no longer considers race or ethnicity as a factor in undergraduate admissions, a live case or controversy no longer exists. *See Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (holding that case was moot because the university "substantially amended its regulations" such that "the regulation at issue [was] no longer in force"). Accordingly, the Court finds that this case is moot.

### B. The Voluntary Cessation Doctrine Does Not Apply

The Court next turns to SFFA's argument that the voluntary cessation doctrine means this case is not moot. When a case is rendered moot by the voluntary cessation of allegedly unlawful conduct, this "voluntary cessation of allegedly illegal conduct . . . does not make the case moot." *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)). However, "[r]ecent precedent from the Fifth Circuit makes clear that [a] change compelled by force of law is not voluntary." *Lowery*, 2023 WL 6445788, at *6 (citing *Daves v. Dallas Cty., Texas*, 64 F.4th 616, 634–35 (5th Cir. 2023); *Does 1–7 v. Round Rock Indep. School Dist.*, 540 F. Supp. 2d 735, 745–46 (W.D. Tex. 2007)). Here, UT Austin changed its admissions policies in response to a change in the law—that is, in the aftermath of the *SFFA v. Harvard-UNC* decision. Accordingly, UT Austin's admissions policy changes were compelled by force of law, so the voluntary cessation doctrine does not apply.

---

[6] For the sake of clarity, the Court notes that as detailed above, *see supra* pp. 7–8, these admissions changes only apply to the 25 percent of UT Austin's freshman class selected through the holistic review process. 75 percent of UT Austin's freshman class is admitted through an automatic admissions process on the basis of class rank. (*See* Defs.' Mot. Dismiss, Dkt. 85, at 2 (citing Tex. Educ. Code §§ 51.803(a), (a-1), 51.805(b))).

And even if UT Austin's changes to its admissions policy were somehow found to be voluntary, UT Austin would still be entitled to a presumption of good faith as a governmental entity—that is, as a public university. *See Freedom From Religion Found. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) ("governmental entities bear a lighter burden in proving that the challenged conduct will not recur once the suit is dismissed as moot") (cleaned up); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) ("Government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties. Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing."); *U.S.P.S. v. Gregory*, 534 U.S. 1, 10 (2001) ("[W]e note that a presumption of regularity attaches to the actions of Government agencies . . . .") (citing *U.S. v. Chem. Found.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.")). Therefore, in the absence of evidence to the contrary, the Court presumes that UT Austin made its changes to its admissions policy in good faith, rather than as a litigation maneuver. The Court finds that UT Austin is especially entitled to a presumption of good faith in light of the dramatic changes to affirmative action precedent that necessitated changes to its admissions policy. Accordingly, even if UT Austin's admissions policy changes were voluntary, UT Austin has met its lighter burden as a governmental entity of providing that the challenged conduct will not recur if this case is dismissed as moot.

## C. The Injunctive Relief SFFA Seeks Is Inapposite

SFFA also argues that this case is not moot because it "seeks an injunction prohibiting UT from reinstituting its prior admissions policy or considering race in admissions decisions" and "a permanent injunction prohibiting any individuals in UT's admissions office from receiving or having

access to racial check-box data or aggregate reports on race during the admissions process." (Resp., Dkt. 88, at 10).

SFFA cites to a Fifth Circuit case to support its proposition that the Court can still grant injunctive relief. (Resp., Dkt. 88, at 10 (citing *United States v. Bob Lawrence Realty, Inc.*, 474 F.2d 115, 126 (5th Cir. 1973))). But while the Fifth Circuit noted in that case that "the court's power to grant injunctive relief survives discontinuance of the illegal conduct," it caveated this statement with the recognition that "the moving party must satisfy the court that relief is needed." *Bob Lawrence Realty, Inc.*, 474 F.2d at 126. Accordingly, "[t]he necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Id.* Moreover, district courts enjoy "broad discretion in granting injunctions." *Id.* at 127.

The Court finds that SFFA has not met its burden of demonstrating that the injunctive relief it seeks is needed. UT Austin revised its admissions policy so that race and ethnicity are no longer considered as part of the undergraduate admissions process. It is mere conjecture for SFFA to assert that UT Austin still considers race in its admissions practice, and the Court will not give credence to this unsubstantiated contention. Accordingly, "a permanent injunction prohibiting any individuals in UT's admissions office from receiving or having access to racial check-box data or aggregate reports on race during the admissions process," (Resp., Dkt. 88, at 10), would serve no purpose, as UT Austin does not consider race in admissions—and that is not even considering the lawful (and legally mandated) reasons UT Austin has articulated for continuing to maintain certain racial data, (Reply, Dkt. 89, at 2).

Furthermore, "an injunction prohibiting UT from reinstituting its prior admissions policy or considering race in admissions decisions," (Resp., Dkt. 88, at 10), also would be inappropriate. UT Austin's previously lawful practices do not and cannot give rise to a plausible inference of discrimination today. And as this case's history itself has demonstrated, the legal landscape for

affirmative action may well change in the future. Further, nothing in the record indicates that UT Austin has any intention of reverting to its prior admissions practices. It would be nonsensical for the Court to issue an injunction in light of the fact that UT Austin does not currently consider race or ethnicity in the admissions process. *See Telco Communications, Inc. v. Carbaugh*, 885 F.2d 1225, 1231 (4th Cir. 1989), *cert. denied*, 495 U.S. 904 (1990) ("We believe that respect for the role of the states . . . counsels against the issuance of unnecessary injunctions against state officials. 'To slap injunctions on state officials who have never violated the law or shown any intention to violate the law would exceed the proper bounds of equitable discretion.'") (quoting *Bloodgood v. Garraghty*, 783 F.2d 470, 476 (4th Cir. 1986)).

Accordingly, the Court declines to grant injunctive relief in this case. Therefore, SFFA's argument that its requested injunctive relief impedes mootness is unavailing. Having found that there is no case or controversy and that none of SFFA's arguments against mootness apply, the Court will dismiss SFFA's claims as moot.

## IV. CONCLUSION

For the reasons given above, the Court finds that it no longer has jurisdiction over SFFA's claims. *United States v. Lares-Meraz*, 452 F.3d 352, 354–55 (5th Cir. 2006) ("A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents.") (quoting *Golding v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999)). Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss for Mootness, (Dkt. 85), and Defendant-Intervenors' Motion to Dismiss for Mootness, (Dkt. 86), are **GRANTED**. The Court will therefore **DISMISS AS MOOT** SFFA's claims, as dismissal is appropriate "when the court lacks the statutory or constitutional power to adjudicate the claim." *In re Federal Emergency Management Agency Trailer Formaldehyde Products Liability Litigation*, 668 F.3d 281, 286 (5th Cir. 2012), quoting *Home Builders Association Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotations omitted).

Because the Court finds that SFFA's claims are moot, the Court does not reach Defendant-Intervenors' argument regarding standing. (Dkt. 86, at 9–11).

Having found that this case is moot, the Court does not reach SFFA's cross-motion for summary judgment, (Dkt. 87).

The Court will render amended final judgment in a separate order.

**SIGNED** on July 15, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE